# EXHIBIT  A

| AOC - 060<br>Rev. 5-04<br>Page 1 of 1 | 04/2/2008 10:49 am<br>Ver. 1.01 | | **CERTIFICATION OF**<br>**COURT RECORDS** | Case No. | 14-CI-400 |
|---|---|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice   www.kycourts.net | | | | Court | Circuit |
| | | | | County | Boone |

Kramer, Kelli E., ET AL.                                                    PLAINTIFF/PETITIONER

VS.

                                                                                          DEFENDANT/RESPONDENT

West Chester Medical Center, ET AL.

I, _____Dianne Murray_____,
Clerk of the _____Boone Circuit_____ Court, do certify that the following are true and correct copy(s) of the:
___Entire Case file of 14-CI-400, Kramer, ET AL. VS. West Chester Medical Center, ETAL
_____
_____
_____
_____
_____
_____
_____
_____

IN TESTIMONY WHEREOF, witness my hand as Clerk aforesaid, September 17 , 2 014

_____ Clerk

By: _____ D.C.



ENTERED
BOONE CIRCUIT/DISTRICT COURT
SEP 0 4 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-00400

WEST CHESTER MEDICAL CENTER                                    **PLAINTIFF**

VS.

KELLI E. KRAMER                                       **DEFENDANT AND
                                              THIRD-PARTY PLAINTIFF**

AND

JAMES KRAMER                                       **THIRD-PARTY PLAINTIFF**

AND

ABUBAKAR ATIZ DURRANI, M.D.                      **THIRD-PARTY DEFENDANTS**

AND

UC HEALTH, INC.

## <u>ORDER</u>

This matter is before the Court upon motion of the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer to compel Plaintiff West Chester Medical Center to Provide full and complete responses to Movant's First Set of Interrogatories and Requests for Production of Documents. The Court being sufficiently advised finds as follows.

This action involves claims of medical negligence, negligence in hospital administration, and negligence in hiring, credentialing, supervision, and retention of Dr. Durrani by West Chester Medical Center, among other claims.

West Chester Medical Center and UC Health argues that the requested discovery requires them to provide peer review documents and, therefore, is improper. They claim that special circumstances in this case dictate that Ohio law should apply to the discoverability of any peer

reviews, and that the requested peer review files are not discoverable under Ohio Revised Code Section 2305.252.

The Movants argue that the peer review files in question are plainly discoverable, and that the Court should apply Kentucky law since Defendant has not shown any special circumstances exist to allow the application of Ohio law.

If a communication, such as a peer review, is not privileged under the local law of the forum, the communication will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect. *Saleba v. Schrand*, 300 S.W.3d 177 (Ky.2009). Even if Ohio had the more significant relationship with the peer review documents, a special reason must exist before a Kentucky court will apply another state's law excluding evidence when Kentucky law plainly favors admission. *Id* at 183.

Kentucky has a long standing precedent deeming peer review documents to be discoverable in medical malpractice actions. In *Sisters of Charity Health Systems, Inc. v. Raikes*, 984 S.W.2d 464 (Ky. 1999), the court found that relevant or material peer review information in a medical malpractice case is not protected from discovery by KRS 311.377(2). The Court reiterated its holding that KRS 311.377(2) does not protect peer review records in medical malpractice suites in *McFall v. Peace, Inc.*, 15 S.W.3d 724, 726 (Ky.2000).

The Court finds that the items requested by the Plaintiff are properly discoverable.

**IT IS HEREBY ORDERED AND ADJUDGED** that the Plaintiff shall fully and completely respond to Interrogatories Nos. 11,17, 18, 19, and 20, and Requests for Production Nos. 2,9,12,13,14,17, and 19, with thirty (30) days of the entry of this Order. Plaintiff shall also fully and completely respond to the balance of Movant's discovery requests within thirty (30) days of the entry of this Order.

West Chester may redact any personal information in the produced material, including, but not limited to, name, address, date of birth, social security number, or other information which could be used to identify individuals by name.

Any and all peer review records shall be kept confidential. Distribution to anyone other than counsel is prohibited. Any such records submitted to the Court file shall be kept under seal.

**DATED** this the 2 day of September, 2014.

JAMES R. SCHRAND, JUDGE
BOONE CIRCUIT COURT

CC: ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit
Court, thereby certify that I have mailed a copy of the
foregoing order and notice to all parties hereto at
their last known addresses or their counsel of record
This ___ day of September, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____ D.C.





### COMMONWEALTH OF KENTUCKY
### BOONE CIRCUIT COURT
### DIVISION III
### CASE NO. 14-CI-00400

**WEST CHESTER MEDICAL CENTER**                      **PLAINTIFF**

**VS.**

**KELLI E. KRAMER**                            **DEFENDANT AND**
                                          **THIRD-PARTY PLAINTIFF**

**AND**

**JAMES KRAMER**                              **THIRD-PARTY PLAINTIFF**

**VS.**

**ABUBAKAR ATIQ DURRANI, M.D.**

**AND**

**UC HEALTH, INC.**                          **THIRD-PARTY DEFENDANTS**

<u>ORDER</u>

This matter is before the Court on West Chester Medical Center and UC Health's request for leave to file an amended answer *instanter*. The Court has reviewed the memorandums filed by the parties, heard arguments by counsel, reviewed the file, and being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that West Chester Medical Center and UC Health's request for leave to file an amended answer is **GRANTED**.

**SO ORDERED THIS THE** 29 **DAY OF AUGUST, 2014.**

**JAMES R. SCHRAND, JUDGE**
**BOONE CIRCUIT COURT**

**CC. ALL ATTORNEYS AND PARTIES OF RECORD**

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, hereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or their counsel of record This ____ day of September, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____ D.C.



# COMMONWEALTH OF KENTUCKY
## BOONE CIRCUIT COURT
## DIVISION III
## CASE NO. 14-CI-00400



ENTERED
BOONE CIRCUIT/DISTRICT COURT

SEP 0 2 2014

DIANNE MURRAY, CLERK
_____ D.C.

**PLAINTIFF**

## WEST CHESTER MEDICAL CENTER

## V.

**DEFENDANT**

## KELLI E. KRAMER

### ORDER

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction file by West Chester Medical Center and UC Health. The Court having reviewed the memorandums filed by the parties, heard argument by counsel, reviewed the file, and being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED.**

JAMES R. SCHRAND, JUDGE
BOONE CIRCUIT COURT            8/29/2014

CC.  ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, thereby certify that I have mailed a copy of the foregoing order and notice to all parties herein or their last known addresses or their counsel of record.
This __2__ day of September, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____ D.C.

Case: 2:14-cv-00171-WOB-JGW   Doc #: 1-1   Filed: 09/19/14   Page: 8 of 368 - Page ID#: 15

  

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION III**
**CASE NO. 14-CI-00400**

**WEST CHESTER MEDICAL CENTER**                                    **PLAINTIFF**

**VS.**

**KELLI E. KRAMER**                                          **DEFENDANT AND**
                                                   **THIRD-PARTY PLAINTIFF**

**AND**

**JAMES KRAMER**                                    **THIRD-PARTY PLAINTIFF**

**VS.**

**ABUBAKAR ATIQ DURRANI, M.D.**

**AND**

**UC HEALTH, INC.**                              **THIRD-PARTY DEFENDANTS**

**ORDER**

Plaintiff West Chester Medical Center d/b/a West Chester Hospital, LLC, having moved

this Court to realign the parties and the Court being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that the motion of West Chester

Medical Center is **GRANTED**, and the parties shall be realigned with West Chester Medical

Center realigned as a defendant and James Kramer and Kelli E. Kramer as plaintiffs. This change

shall be reflected in the Court's docket immediately upon entry of this Order.

DATED this ___28th___ day of August, 2014.

_____
**JAMES R. SCHRAND, JUDGE**
**BOONE CIRCUIT COURT**

COPIES TO:   ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit
Court, thereby certify that I have mailed a copy of the
foregoing order and notice to all parties hereto at
their last known addresses or their counsel of record
This ___ day of _____, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
BY: _____ D.C.

 

**COMMONEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION III**
**CASE NO. 14-CI-400**



WEST CHESTER MEDICAL
CENTER,                                          :
                                                :
                  Plaintiff,                     :
                                                :
        v.                                       :
                                                :   **AMENDED ANSWER OF**
KELLI KRAMER AND JAMES                           :   **COUNTERCLAIM DEFENDANTS WEST**
KRAMER                                           :   **CHESTER MEDICAL CENTER AND UC**
                                                :   **HEALTH TO DEFENDANTS/THIRD**
                  Defendants/Third               :   **PARTY PLAINTIFFS' COUNTERCLAIM**
                  Party Plaintiffs               :   **AND THIRD PARTY COMPLAINT**
                                                :
        v.                                       :
                                                :
ABUBAKAR ATIQ DURRANI, M.D.,                     :
et al.                                           :
                                                :
                  Third Party                    :
                  Defendants.                    :

        Come now Plaintiff West Chester Medical Center and Third-Party Defendant UC Health

("Counterclaim Defendants"), by and through counsel, and for their Amended Answer to

Defendants/Third Party Plaintiffs' ("Counterclaim Plaintiffs") Counterclaim and Third-Party

Complaint state and aver as follows:

<u>**FIRST DEFENSE**</u>

        1.      Counterclaim Defendants are without sufficient knowledge to form a belief as to the

truth of the allegations set forth in Paragraphs 1 and 2.

        2.      The allegations contained in Paragraph 3 are not directed at these answering

Counterclaim Defendants and thus no response is required.

3.     Counterclaim Defendants acknowledge that West Chester Hospital was a limited liability company authorized to transact business in the State of Ohio under the name "West Chester Hospital." Counterclaim Defendants deny the remaining allegations contained in Paragraph 4.

4.     Counterclaim Defendants admit that they initiated a lawsuit and have pursued collections options related to unpaid bills for medical services provided. Counterclaim Defendants deny the remaining allegations contained in Paragraph 5.

5.     Counterclaim Defendants deny the allegations in Paragraph 6.

6.     Counterclaim Defendants admit that UC Health was a licensed corporation and that West Chester Hospital was a member of UC Health. Counterclaim Defendants deny the remaining allegations contained in Paragraph 7.

7.     Counterclaim Defendants admit that UC Health transacts business in Kentucky, but denies the remaining allegations in Paragraph 8.

8.     Counterclaim Defendants deny the allegations in Paragraph 9.

9.     Counterclaim Defendants admit that West Chester Hospital is a hospital that provides competent and qualified nursing services, care and treatment by and through its nurse, employees and medical staff. Counterclaim Defendants deny the remaining allegations contained in Paragraph 10.

10.     Counterclaim Defendants deny the allegations contained in Paragraph 11.

11.     The allegations contained in Paragraphs 12 and 13 call for a legal conclusion and do not require a response. To the extent a response may be required, Counterclaim Defendants deny these Paragraphs.

12.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 14, 15, and 16.

2

13.    To the extent the allegations contained in Paragraph 17 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

14.    Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 18, 19, 20, 21, 22, and 23.

15.    To the extent the allegations contained in Paragraph 24 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

16.    Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 25 and 26.

17.    To the extent the allegations contained in Paragraph 27 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

18.    Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 28, 29, 30, and 31.

19.    To the extent the allegations contained in Paragraph 32 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

20.    Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 33, 34, 35, and 36.

21.    In response to Paragraph 37, Counterclaim Defendants state that they are without sufficient knowledge to form a belief as to the truth of Dr. Durrani's interest in Medtronic, and further affirmatively state that they had no obligation to disclose such a relationship, if one existed.

22.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 38 and 39.

23.     In response to Paragraph 40 and 41, Counterclaim Defendants affirmatively state that they had no obligation to disclose Dr. Durrani's use of BMP-2/Infuse and further deny the remaining allegations as they relate to West Chester and UC Health.

24.     The allegations contained in Paragraphs 42 through 45 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

25.     In response to Paragraph 46, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

26.     In response to Paragraph 47, Counterclaim Defendants admit a duty to provide care by and through its employees within the standard of care applicable under like or similar circumstances. To the extent the allegations set forth in Counterclaim Plaintiffs' Counterclaim and Third Party Complaint allege a breach of said duty, said Counterclaim Defendants deny same.

27.     Counterclaim Defendants deny the allegations contained in Paragraphs 48 and 49.

28.     The allegations contained in Paragraphs 50 through 53 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

29.     In response to Paragraph 54, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

30.     Counterclaim Defendants deny the allegations contained in Paragraphs 55, 56, 57, 58, 59, and 60.

31.     Paragraphs 61 and 62 contain no factual allegations and therefore do not require a response. TO the extent a response may be required, Counterclaim Defendants deny the allegations of Paragraphs 61 and 62.

32.     Counterclaim Defendants deny the allegations contained in Paragraphs 63, 64, 65, 66, 67, 68, 69, and 70.

33.     In response to Paragraph 71, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

34.     Counterclaim Defendants deny the allegations contained in Paragraphs 72, 73, 74, and 75.

35.     The allegations contained in Paragraphs 76 through 80 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

36.     In response to Paragraph 81, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

37.     Paragraphs 82 and 83 set forth a legal conclusion which requires no response. To the extent a response may be required, Counterclaim Defendants deny said allegations.

38.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 84, 85, and 86.

39.     The allegations contained in Paragraph 87 for a legal conclusion and do not require a response. To the extent a response may be required, Counterclaim Defendants deny Paragraph 87.

40.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 88.

41.     Counterclaim Defendants deny the allegations contained in Paragraph 89.

42.     In response to Paragraph 90, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

43.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 91.

44.     Counterclaim Defendants deny the allegations contained in Paragraph 92 and 93.

45.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 94.

46.     Counterclaim Defendants deny the allegations contained in Paragraph 95, 96, 97, and 98.

47.     The allegations contained in Paragraphs 99 through 107 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

48.     In response to Paragraph 108, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

49.     Counterclaim Defendants deny the allegations contained in Paragraphs 109, 110, and 111.

50.     In response to Paragraph 112, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

51.     Counterclaim Defendants deny the allegations contained in Paragraphs 113 and 114.

52.     In response to Paragraph 115, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

53.     Counterclaim Defendants deny the allegations contained in Paragraphs 116, 117, 118, 119, 120, and 121.

54.     In response to Paragraph 122, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

55.     Counterclaim Defendants are without sufficient information for form a belief as to the truth of the allegations in Paragraph 123.

56.     Counterclaim Defendants deny the allegations contained in Paragraph 124.

57.     In response to Paragraph 125, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

58.     Counterclaim Defendants deny the allegations contained in Paragraph 126.

59.     In response to Paragraph 127, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

60.     Counterclaim Defendants deny the allegations contained in Paragraph 128.

## SECOND DEFENSE

61.     The Counterclaim and Third Party Complaint fails to state a claim upon which relief may be granted as to these answering Counterclaim Defendants, including, but not limited to, a failure to state a claim for negligence, fraud, negligent credentialing or negligent retention, breach of hospital administrative duty, lack of informed consent, civil conspiracy, aiding or abetting, and joint venture.

## THIRD DEFENSE

62.     The Counterclaim and Third Party Complaint fails to join an indispensible party required for the just and complete adjudication of the claims.

## FOURTH DEFENSE

63.     The injuries and/or damages alleged in the Counterclaim and Third Party Complaint, which are denied, are the result of a pre-existing condition and/or underlying pathology. Accordingly, the alleged acts and/or omissions of these answering Counterclaim Defendants are not

7



the proximate cause of Counterclaim Plaintiffs' alleged injuries and/or damages; nor may said injuries and/or damages be attributed, in whole or in part, to these Counterclaim Defendants.

### FIFTH DEFENSE

64. If Counterclaim Plaintiffs sustained injuries and/or damages as a result of the acts and/or omissions of any person, such injuries and/or damages are the result of acts and/or omissions of persons not under the direction, supervision and/or control of these answering Counterclaim Defendants and for whom Counterclaim Defendants are not liable.

### SIXTH DEFENSE

65. Any injuries and damages as alleged are the result of an unforeseeable and untoward event and/or circumstance over which these answering Counterclaim Defendants had no control; and, as such, constitute an act of God for which these Counterclaim Defendants cannot be held liable.

### SEVENTH DEFENSE

66. If Counterclaim Plaintiffs suffered any injuries and/or damages as alleged, which allegations are denied, such injuries and/or damages are the result of a superseding intervening cause, thereby effectively eliminating any liability on the part of these Counterclaim Defendants.

### EIGHTH DEFENSE

67. If Counterclaim Plaintiffs suffered any injuries and/or damages due to the acts and/or omissions of any persons, which allegations are denied, Counterclaim Plaintiffs knowingly, intelligently and voluntarily assumed the risk of such injuries and/or damages, thereby eliminating entirely or reducing proportionately any liability of these answering Counterclaim Defendants.

### NINTH DEFENSE

68. Counterclaim Plaintiffs have failed to mitigate the damages claimed herein.

 

## TENTH DEFENSE

69.     The Counterclaim and Third Party Complaint as to these answering Counterclaim Defendants is barred by the applicable statute of limitations.

## ELEVENTH DEFENSE

70.     At all times relevant hereto, the care rendered to the Counterclaim Plaintiffs by Counterclaim Defendants and their employees was provided according to accepted standards of care.

## TWELFTH DEFENSE

71.     This Court lacks personal jurisdiction over the Counterclaim Defendant West Chester Medical Center.

## THIRTEENTH DEFENSE

72.     Counterclaim Defendants hereby give notice that they intend to rely upon, utilize and assert any affirmative defenses that become apparent during the course of discovery and thereafter and, accordingly, reserve the right to amend their Answer to assert the same.

WHEREFORE, Counterclaim Defendants, West Chester Hospital LLC and UC Health, pray for judgment as follows:

1.     Counterclaim Plaintiffs take nothing by their action;

2.     The Counterclaim and Third Party Complaint be dismissed;

3.     Counterclaim Defendants be awarded costs incurred to date; and

4.     Any such additional relief as this Court may deem proper.

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio 45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center
and UC Health*

 

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail,

postage prepaid, on this 14th day of July, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky  41011

*Co-counsel for Kelli E. Kramer and
James Kramer*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., LPA
312 Walnut Street, Suite 3100
Cincinnati , Ohio 45202

*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spinal Technologies, Inc*

And via e-mail to:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

FROST BROWN TODD LLC

0123682.0615403  4823-7446-3259v3

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                              PLAINTIFF

VS.

KELLI E. KRAMER                              DEFENDANT AND
                                             THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                 THIRD-PARTY PLAINTIFF

VS.                                          THIRD-PARTY DEFENDANTS

ABUBAKAR ATIQ DURRANI, M.D.
C.A.S.T, INC., AND
UC HEALTH, INC.

## ORDER

Upon motion of Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer (collectively, "Movants") for leave to file their Sur-Reply in Opposition to West Chester Medical Center's Motion to Realign the Parties, and the Court being sufficiently advised,

IT IS HEREBY ORDERED that the Defendant and Third-Party Plaintiffs' Motion to File Sur-Reply in Opposition to West Chester Medical Center's Motion to Realign the Parties is GRANTED. It is further ordered that the tendered Sur-Reply is deemed filed upon the entry of this Order.

SO ORDERED this 26 day of _AUGUST_, 2014.

HON. JAMES R. SCHRAND
JUDGE, BOONE CIRCUIT COURT

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

TD : 000001 of 000002

Tendered          14-CI-00400    08/15/2014          Dianne Murray, Boone Circuit Clerk

Copies to:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester
Medical Center*

David V. Kramer
Ryan M. McLane
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
COUNSEL FOR KELLI AND
JAMES KRAMER
859-341-1881 – Phone
859-341-1469 – Fax
e-mail address: dkramer@dbllaw.com

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Defendants Abubakar Atiq
Durrani, M.D. and Center for Advanced Spine
Technologies, Inc.*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Prepared by:

David V. Kramer (KBA #39609)
Ryan M. McLane (KBA #92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
COUNSEL FOR KELLI AND
JAMES KRAMER
859-341-1881 – Phone

434274v1

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone Circuit Court
Court, hereby certify that I have mailed a copy of the
foregoing order and notice to all parties and/or
their last known addresses on this date.
This ____ day of ___September 2014___
DIANNE MURRAY
BOONE CIRCUIT CLERK

2

BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**PROPOSED ORDER**

eFiled: 8/15/2014 ID: 1098
By: KRAMER, KELLI E
Pages total: 2    Image size: 0.06 MB

Case Number: 14-CI-00400

FILED / ENTERED
8/15/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



1

2

2 of 2 thumbnails shown



**Filed**     14-CI-00400    08/15/2014       Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER          **PLAINTIFF**

VS.

KELLI E. KRAMER          **DEFENDANT AND**
                                    **THIRD-PARTY PLAINTIFF**

AND

JAMES KRAMER          **THIRD-PARTY PLAINTIFF**

VS.

ABUBAKAR ATIQ DURRANI, M.D.          **THIRD-PARTY DEFENDANTS**
C.A.S.T., INC., AND
UC HEALTH, INC.

### MOTION FOR LEAVE TO FILE SUR-REPLY
### IN OPPOSITION TO MOTION TO REALIGN THE PARTIES
### [ELECTRONICALLY FILED]

Come now the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer (collectively, "Movants"), by and through counsel, and respectfully move this Court for an Order granting them leave to file the attached Sur-Reply in Opposition to Motion to Realign the Parties.

Plaintiff West Chester Medical Center's ("WCMC") Reply in Support of its Motion to Realign the Parties was filed on August 8, 2014, about one week after the hearing on its Motion to Realign. WCMC's Reply accuses the Kramers of misstating the law on realignment. Ironically, just the opposite is the case. WCMC misstates the majority of the cases on which it relies for its argument, starting with the incorrect statement that there is controlling Kentucky authority on this issue. This includes using quotes out-of-context, distorting several holdings, and ignoring the actual test for realignment. The problem is prevalent and concerns a critical

MOT : 000001 of 000003

issue in this case.  Therefore, the Kramers respectfully request leave to file their Sur-Reply, so

the trial record of legal authority may be corrected and so the Court may be accurately informed

of the law on realignment of parties prior to rendering its decision.  The tendered Sur-Reply in

Opposition to WCMC's Motion to Realign and a proposed order are attached.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:       859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:       859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

NOTICE

Please take notice that the foregoing will come on for hearing on August 26, 2014, at
9:00 a.m., or as soon thereafter as counsel may be heard.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-
mailed this 15th day of August, 2014, to the following:

MOT : 000002 of 000003

Filed          14-CI-00400     08/15/2014          Dianne Murray, Boone Circuit Clerk

Walt Haggerty, Esq.
Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spine Technologies, Inc.*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester
Medical Center*

/s/ David V. Kramer
David V. Kramer

433598v1

MOT : 000003 of 000003

3



BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

## TENDERED SUR-REPLY IN OPP. TO MOTION TO REALIGN

eFiled: 8/15/2014 ID: 1098
   By: KRAMER, KELLI E
Pages total: 9    Image size: 0.39 MB

**FILED / ENTERED**
8/15/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400



|  |  |  |
|---|---|---|
| 1 | 2 | 3 |
| 4 | 5 | 6 |
| 7 | 8 | 9 |

9 of 9 thumbnails shown

Tendered     14-CI-00400     08/15/2014         Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                    DEFENDANT AND
                                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                       THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                   THIRD-PARTY DEFENDANTS
C.A.S.T., INC.
UC HEALTH, INC.

### (TENDERED) SUR-REPLY OF KELLI AND JAMES KRAMER IN OPPOSITION TO WEST CHESTER MEDICAL CENTER'S MOTION TO REALIGN THE PARTIES [ELECTRONICALLY FILED]

Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer state as follows for their Sur-Reply in Opposition to Plaintiff West Chester Medical Center's Motion to Realign the Parties.

### MEMORANDUM IN OPPOSITION

In its Reply, West Chester Medical Center ("WCMC") misstates the majority of the cases on which it relies for its argument. This includes using quotes out of context, distorting several holdings, and ignoring the actual standard that must be met prior to realignment. The problem is prevalent and concerns a critical issue in this case. Therefore, it demands a response from the Kramers, so this Court may be accurately informed of the law on realignment of parties prior to rendering its decision. The Kramers will try to be as brief as possible, but untangling misstated

TD : 000001 of 000009

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

case citations can be cumbersome because it requires one to look carefully at each misstated case.

The issue of realignment essentially boils down to two conflicting positions. WCMC argues it should be realigned because it no longer has an active claim against the Defendant, Mrs. Kramer. The Kramers argue that the prevailing legal authority and even a leading civil procedure treatise (Wright and Miller) state that parties should only be realigned when they are "misaligned" by having parties with the same interests on opposite sides. Moreover, it is well-established that the question of realignment is properly tested *at the time of filing the original suit*. *E.g., Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 (E.D. Mo. 2013); *Nationwide Mut. Ins. Co. v. Barrett*, 2010 WL 3396818 (N.D. W. Va. 2010); *Texas Pac. Coal & Oil Co. v. Mayfield*, 152 F.2d 956 (5th Cir. 1946) ("Facts forming the basis of realignment must exist at the time of filing the original suit.") At the time of filing its Complaint, WCMC was properly aligned as a plaintiff on the opposite side of Mrs. Kramer, thus, realignment would be improper. WCMC's argument that the recent voluntary dismissal of its original claim necessitates realignment is, therefore, erroneous.

A. **WCMC incorrectly cites *Field v. Evans*, 675 S.W.2d 3 (Ky. App. 1983), as "controlling authority" on realignment in Kentucky.**

WCMC begins its Reply by arguing that *Field v. Evans*, 675 S.W.2d 3 (Ky. App. 1983), is "controlling Kentucky law that requires realignment to ensure that parties are properly aligned in accordance with their litigation interests." (Reply at 2) This is simply incorrect. *That case has absolutely nothing to do with realignment*. It is certainly not "controlling Kentucky law" on the issue. Instead, *Field* concerned an issue of whether the particular quiet title action was *in personam* or *in rem* and its corresponding effect on jurisdiction over out-of-state defendants. *Id.* at 4. The only mention of realignment came in a parenthetical that had no importance to the

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

TD : 000002 of 000009

Tendered          14-CI-00400   08/15/2014          Dianne Murray, Boone Circuit Clerk

*Field's* holding or outcome: "(Certain persons with interests comparable to the plaintiffs below had been included as defendants to compel their joinder. It was anticipated that once jurisdiction over them was assumed, the Court would properly realign the parties.)" *Id.* That is it.

WCMC goes on to call *Field* "dispositive of this motion [to realign]" and misstates that "*Fields* [sic] thus instructs that when a defendant has an interest 'comparable to' that of a 'plaintiff,' the party should be realigned to a plaintiff in accordance with its true litigation interest." (Reply at 3)  Again, this is just incorrect.  No such instruction exists in *Field*.  Even if one were to examine what the passing parenthetical refers to in *Field*, one would find that the realignment referenced was being used to realign parties so that those with the same ultimate interests in the outcome of the action are on the same side – i.e., to address a misalignment.[1]  The case involved a quiet title action between two dozen or more beneficiaries of an estate (with interest in the real property) and the holder of the subject real property. *Field*, 675 S.W.2d at 3-4. A number of the beneficiaries of the estate were sued as defendants because their interest in the suit made them indispensable parties. *Id.*  However, the parenthetical cited by WCMC shows that once the court obtained jurisdiction, it anticipated realigning them with the beneficiary that brought the quiet title action -- so all the beneficiaries (persons with the same interests) would be on the same side. *See id.*  It had nothing to do with who had interests like a plaintiff or defendant, rather, it concerned aligning those with the same interest on the same side.  This is a fundamental point in the federal cases cited by the parties in this case, which WCMC continues to ignore.

---

[1] Unlike WCMC's argument that parties with interests "comparable to that of **a plaintiff**" should be realigned to a plaintiff," *Field* merely stated in passing that "certain persons with interests comparable to **the plaintiffs below** had been included as defendants" were anticipated to be realigned with the plaintiffs. *Compare* Reply at 3 (emphasis added) *with Field*, 675 S.W.2d at 4 (emphasis added).

3

Tendered          14-CI-00400     08/15/2014          Dianne Murray, Boone Circuit Clerk

TD : 000003 of 000009

Tendered        14-CI-00400    08/15/2014          Dianne Murray, Boone Circuit Clerk

**B.**    WCMC's argument that this case is factually indistinguishable from *Eder* is false. Eder did not oppose WCMC's motion to realign in that case, which is a critically important distinction.

WCMC continues to argue that this Court's realignment of the parties in *West Chester Medical Center v. Eder*, which was unopposed, is somehow binding on the Kramers or on the Court. This argument defies basic Kentucky law on legal authority and, if accepted, would violate the Kramers' due process rights. They had no opportunity to challenge the unopposed motion to realign in *Eder* and should not be bound by that decision. This Court's action in *Eder* presumably did not involve a "ruling," but rather the routine entry of an order on an unopposed motion. Finally, WCMC's argument that *Eder* is "factually indistinguishable" is false, according to a case cited by both parties in the briefing on WCMC's Motion: "However, *Hickman* is *distinguishable* from the instant action, *as the counterclaimant in Hickman 'did not oppose the removal or the realignment of the parties . . . .'*" *Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 *3 (E.D. Mo. 2013) (emphasis added). Realignment is being strenuously opposed in the present case, for good reasons as previously asserted to the Court.

**C.**    WCMC repeatedly misstates the federal realignment cases.

First, WCMC states that the "Kramers attempt to limit issues of realignment to the insurance context." (Reply at 3 n. 1) This is untrue. While a number of the cases cited by the Kramers involve insurance companies (because the issue of realignment frequently arises in that context), the Kramers cited cases in a variety of other circumstances.[2]

WCMC next takes issue with the Kramers' citation of the case *U.S. Fid. & Guar. Co v. A&S Mfg. Co.*, 839 F. Supp. 347, 349 (D. Md. 1993). The Kramers quoted the case in their

---

[2] For example, three of the central cases cited by the Kramers, among others, were outside the insurance context: *Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 (E.D. Mo. 2013); *Zalcberg v. Yoost*, 2007 WL 1295809 (N.D. Ind. 2007); *State ex rel. Caszatt v. Gibson*, 2013 WL 310656 (Ohio Ct. App. 2013).

Tendered        14-CI-00400     08/15/2014        Dianne Murray, Boone Circuit Clerk

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

Response, stating "[o]nly when 'no antagonism exists . . . between the opposing parties' is realignment proper." *Id.* at 349. The Kramers were restating the ***actual test*** for realignment. The two versions of the test, verbatim, are:

> Under that test, a court must first identify the primary issue in controversy and then determine whether a real dispute exists between opposing parties over that issue. ***If no antagonism exists over the primary issue in dispute between the opposing parties, then realignment is proper.***

> According to that test, a court determines merely whether any substantial conflict exists between opposing parties, regardless of whether it is the primary issue in dispute or whether parties have a common position on equally important issues. ***As long as an actual, substantial conflict exists between opposing parties, realignment is not proper.***

*Id.* (internal citations omitted) (emphasis added). WCMC's criticism of the Kramers' citation is completely unfounded. The two tests are simply stated. They both deal with whether parties on the same side have antagonistic interests, i.e., are misaligned. It is clear -- if the parties on opposite sides have conflicting interests ***realignment is not proper***. *Id.* Here, "an actual, substantial conflict exists between opposing parties [WCMC and the Kramers], [thus] realignment is not proper." *Id.* The issue should end there.

WCMC next cites *Sersted v. Midland-Ross, Corp.*, 471 F. Supp. 298, 299 (E.D. Wis. 1979). That case involved a party being realigned from a defendant to a plaintiff because it "has an interest in the [other] plaintiff's claim . . . ." *Id.* at 300. The purpose was to realign parties so that parties with the same interest were on the same side, so one defendant with interests in line with the plaintiff could not veto removal.[3] *Id.* at 299-300 ("It cannot reasonably be understood to

---

[3] All defendants must join in a motion to remove. Thus, where one nominal defendant has interests in line with the plaintiff and opposed to the other defendant, that misaligned defendant could veto removal by refusing to join the petition for removal. 28 U.S.C. § 1441(a). That is an entirely different situation than the present case, where the parties are properly aligned on opposite sides, and where WCMC originally chose this forum to sue Mrs. Kramer for collection of surgical charges for one of the surgeries Dr. Durrani did on her at WCMC.

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

TD : 000005 of 000009

Tendered        14-CI-00400   08/15/2014            Dianne Murray, Boone Circuit Clerk

give a party who in reality occupies a position in conflict with that of other defendants a veto over the removal of the action."). Again, realignment concerned making sure parties with the same interests were on the same side, *not* realigning so the party that filed suit could dismiss it and ask to become a defendant and so it could remove the case (as WCMC seeks here).

WCMC next cites *Thompson v. Bankers and Shippers Ins. Co. of New York*, 479 F. Supp. 956, 958 (N.D. Miss 1979), and *Still v. DeBuono*, 927 F. Supp. 125, 130-31 (S.D.N.Y. 1996), for the same proposition. In doing so, WCMC again misses the boat. Here is the three-part test in *Thompson*, which WCMC ignores:

> In scrutinizing the real interests and realigning the parties in appropriate situations, the court must first examine the pleadings to determine if there is a justiciable controversy. Secondly, the court must examine the facts in existence at the time the action was commenced to determine if realignment is proper. Finally, the court must align the parties so that those with the same ultimate interest in the outcome of the action are on the same side.

*Thompson*, 479 F. Supp. at 958 (internal citations omitted). In running through the three elements of the test in *Thompson*, it is clear that realignment is not proper: (1) there is a justiciable controversy; (2) at the time of commencement, WCMC was the plaintiff who filed suit in this forum, and Mrs. Kramer was the defendant; and (3) the parties with the same ultimate interest in the outcome are on the same side (WCMC on one side, the Kramers on the other). Therefore, the parties are properly aligned. There is no misalignment. No realignment should take place under this test.[4]

Additionally, the second element of the test in *Thompson* emphasizes the well-established rule that "the court must examine the facts in existence *at the time the action was commenced* to

---

[4] WCMC's citation to *Still* suffers from the same problem. The court in *Still* realigned parties so those with the same interests were on the same side. *Still*, 927 F. Supp. at 130 ("In such situations, federal courts are generally required to realign parties according to their real interests *so as to produce an actual collision of interests*.") (emphasis added).

6

TD : 000006 of 000009

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

determine if realignment is proper." *Id.* (emphasis added). At the time WCMC commenced this action, it was a plaintiff aligned opposite Mrs. Kramer, who had a conflicting interest. That is the point in time at which realignment is to be evaluated -- not the facts as they exist after WCMC dismissed its claim to try to manipulate its way into federal court or another jurisdiction. *Id.* Therefore, WCMC's whole premise is false. The fact that it dismissed its claim cannot form the grounds for realignment because that concerns facts occurring after commencement of the action. In any event, there is currently no misalignment even after WCMC dismissed its collection claim. This case law is inapposite.

WCMC next argues that it is entitled to realignment out of some nebulous concept it calls "administrative convenience." (Reply at 4-5) It cites *Aetna Cas. & Sutely Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 870, 876 n.6 (E.D. Mich. 1999), in purported support of its argument. Again, the footnote cited by WCMC had no consequence to the case. In fact, the full quote reveals that the realignment for administrative convenience had no substantive effect on the parties' diversity jurisdiction issue: "Realignment was done 'only as an administrative convenience to the Court and parties' and it was 'without prejudice to the parties positions with respect to ... the substantive rights of any party.'" *Id.* Instead, the court in *Aetna* followed the same test already discussed above for the substantive question of realignment for jurisdictional purposes. That is, the court used the primary dispute test to align misaligned parties with opposite interests on opposite sides and vice versa. *Id.* at 875-76. ("It is this Court's responsibility to align Dow and the Insurers according to the primary dispute to ensure that there is a collision of interests between diverse parties sufficient to justify diversity jurisdiction.")[5]

---

[5] WCMC's lame argument that it should be realigned to avoid confusion by the courts and jury has no merit and is not supported by legal authority. The courts certainly will not be confused, and the jury instructions can properly inform the jury of the claims, law, and questions at issue.

Tendered        14-CI-00400    08/15/2014        Dianne Murray, Boone Circuit Clerk

TD : 000007 of 000009

Tendered       14-CI-00400   08/15/2014          Dianne Murray, Boone Circuit Clerk

WCMC next tries to distinguish two additional cases cited by the Kramers denying realignment in similar circumstances, *Zalcberg v. Yoost*, 2007 WL 1295809 (N.D. Ind. 2007), and *Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 (E.D. Mo. 2013). WCMC states that there is "one simple reason" those cases should not apply, *viz.* "they both involve *plaintiffs/counterclaim-defendants* that tried to remove." (Reply at 5) (emphasis in original) This argument does not make sense. The present case also involves a plaintiff/counterclaim-defendant, WCMC. WCMC then goes on to discuss when a realigned party may remove a case to federal court, but neglects to address *Zalcberg* and *Deaver* on the actual issue before the Court now, whether realignment is proper here.[6] WCMC essentially puts forth the circular argument that it should be realigned so it can remove this case. This puts the cart before the horse. WCMC does not meet the requirements for realignment in the first place because the parties are not misaligned. That is, the parties with conflicting interests are on opposite sides.

**D.  Conclusion**

WCMC's Reply obfuscates both the case law and the issue before the Court on its Motion to Realign the Parties. The test on the issue of realignment is whether the parties are properly aligned so that parties with conflicting interests are not on the same side of the action. This is to be measured as the facts existed at the time of commencement of the action. It is indisputable that at the time WCMC filed this action it had interests in conflict with the Kramers, and the parties remain on opposite sides of this action. Therefore, realignment is not proper.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc

---

[6] WCMC filed a Motion to Realign. That is before the Court, not a Petition for Removal.

8

Tendered     14-CI-00400   08/15/2014     Dianne Murray, Boone Circuit Clerk

207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:        859-341-1469
e-mail address: dkramer@dbllaw.com
                        rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 15th day of August, 2014, to the following:

Walt Haggerty, Esq.
Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*
*and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
Phone: (513) 421-6630 phone
Fax: (513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and*
*Center for Advanced Spine Technologies, Inc.*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester*
*Medical Center*

433602

/s/ David V. Kramer

9

TD : 000009 of 000009




BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION**

eFiled: 8/15/2014 ID: 1098
By: KRAMER, KELLI E
Pages total: 3    Image size: 0.08 MB

FILED / ENTERED
8/15/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400



1    2    3

3 of 3 thumbnails shown




COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 14-CI-00400



FILED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 8 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

WEST CHESTER MEDICAL CENTER
d/b/a WEST CHESTER HOSPITAL, LLC

PLAINTIFF/
COUNTERCLAIM-DEFENDANT

v.

KELLI E. KRAMER

DEFENDANT/
COUNTERCLAIM-PLAINTIFF/

JAMES KRAMER

INTERVENING DEFENDANT/
COUNTERCLAIM-PLAINTIFF

and

JAMES KRAMER
KELLI E. KRAMER

THIRD-PLAINTIFF PLAINTIFFS

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

THIRD-PARTY DEFENDANTS

REPLY OF WEST CHESTER MEDICAL CENTER D/B/A
WEST CHESTER HOSPITAL, LLC IN SUPPORT OF
MOTION TO REALIGN THE PARTIES

This Court has already rejected the arguments contained in Defendant/Counterclaim-Plaintiffs James and Kelli E. Kramer's response brief. During briefing on Plaintiff/Counterclaim-Defendant West Chester Medical Center's motion to voluntarily dismiss its complaint, the Kramers raised the same arguments about forum-shopping and the equities. This Court rejected those arguments when it granted West Chester Medical Center's motion to dismiss, and it should do so now. Kelli Kramer ignored this proceeding for nearly three years and allowed a default judgment to be entered against her. Only when she discovered that she had

a potential damages claim against West Chester Medical Center did she even bother to make an appearance in this proceeding.

The Kramers filed their counterclaims in this action to prevent West Chester Medical Center from removing this case to federal court. The Kramers admit that their counterclaims could have been filed as an independent action, which would have been removable due to diversity of citizenship. By asking this Court to dismiss its complaint and to realign the parties, West Chester Medical Center is actually putting this case in the posture it would have been in if not for the Kramers' procedural gamesmanship. This procedure has support under both Kentucky and federal law. This Court should not let the Kramers benefit from their dilatory conduct and procedural machinations to deprive West Chester Medical Center of its statutory right to potentially remove this case to federal court. Accordingly, West Chester Medical Center's motion to realign the parties should be granted.

## ARGUMENT

**I.   West Chester Medical Center's motion to realign is consistent with both Kentucky and federal law.**

The Kramers spend the majority of their response brief discussing the propriety of realignment under federal law to show that realignment is improper in this case. [Def.'s Resp. at 2-10.] They contend that realignment is only used by federal courts to ensure that "each party is truly opposed to all parties on the other side of the lawsuit." [*Id.* at 3.] This argument should be rejected for two reasons. First, it ignores controlling Kentucky law that requires realignment to ensure that parties are properly aligned in accordance with their litigation interests. Second, it misstates the federal case law governing realignment of the parties.

In their response brief, the Kramers do not even address the Court of Appeals' decision in *Field v. Evans*, 675 S.W.2d 3, 4 (Ky. Ct. App. 1983). In that case, the Court specifically noted

that the trial court should "properly realign the parties" because "[c]ertain persons with interests comparable to the plaintiffs below had been included as defendants to compel their joinder." *Field*, 675 S.W.2d at 4. *Fields* thus instructs that when a defendant has an interest "comparable to" that of a "plaintiff," the party should be realigned to a plaintiff in accordance with its true litigation interest. *See id.* That is precisely what West Chester Medical Center seeks in this case. *Fields* should be dispositive of this motion.

As the Kramers concede, this Court has "broad discretion in determining the course and proceeding of trial." [Def.'s Resp. at 2 (quoting *Huntington Nat'l Bank v. Porter*, Nos. 2001-CA-000505-MR, 2001-CA-000509-MR, 2003-CA-001022-MR, 2004 WL 1909295 at *5 (Ky. Ct. App. Aug. 27, 2004).] This Court has already used that discretion to grant realignment in a factually indistinguishable case. *See West Chester Medical Center v. Eder*, Case No. 13-CI-01028 (Boone Cir. Ct. July 25, 2013). As West Chester Medical Center explained in its motion to dismiss briefing, this Court allowed West Chester Medical Center to voluntarily dismiss its complaint and realign the parties after setting aside a default judgment against the then-defendant and allowing her to file an answer and counterclaim. [*See* Pl.'s Reply in Support of Mot. to Dismiss at 2.] The Kramers should be treated no different from the defendant in *Eder*.

Both *Fields* and this Court's past decision in *Eder* is reason enough to permit realignment. But the Kramers ignore those decisions and spend the bulk of their brief explaining federal law governing realignment. That argument misses the point. The importance of the federal case law is not the factual context in which *federal courts* permit realignment, but the analysis those courts use as a guide for exercising their discretion.[1]

---

[1] The Kramers attempt to limit issues of realignment to the insurance context. As explained in this brief, realignment comes up in a variety of factual scenarios. And even in those cases where federal courts are dealing with insurers, those courts are still asking the same vital question that is before this Court: whether parties should be realigned in accordance with their litigation interests. *See Employers Ins. of*

Even if this Court were to attribute some weight to federal case law, the Kramers simply do not get it right. For example, they say that one federal court has found that "[o]nly when no 'antagonism exists . . . between the opposing parties' is realignment proper." [Def.'s Resp. at 3.] That is not what that court said. Instead, that court recognized that *one* of the situations in which "realignment is proper" is "[i]f no antagonism exists over the primary issue in dispute between the opposing parties . . . ." *U.S. Fidelity & Guaranty Co v. A&S Manufacturing Co.*, 839 F. Supp. 347, 349 (D. Md. 1993). That court did not categorically exclude the use of realignment to ensure that parties are actually aligned according to their litigation interests.

When considering realignment, federal courts do not ignore the true litigation interests of the parties. As one federal court explained in granting a removal petition, "[i]t is clear that it is the established policy in the federal courts to consider the actual realities of the dispute, rather than the nominal positions assigned to the parties by the pleader." *Sersted v. Midland-Ross Corp.*, 471 F. Supp. 298, 299 (E.D. Wis. 1979). In fact, parties are frequently realigned to preserve a litigant's ability to remove and federal court diversity jurisdiction. *See id*; *see also Thompson v. Bankers and Shippers Ins. Co. of New York*, 479 F. Supp. 956, 958 (N.D. Miss 1979) (noting that in context of removal, "[t]he court must look beyond the pleadings and scrutinize the real interests of the parties, in order to conform the positions of the parties to those interests"); *Still v. DeBuono*, 927 F. Supp. 125, 130-31 (S.D.N.Y. 1996) ("Since [the] respondents are, practically speaking, in the shoes of petitioners, they should not have the power to frustrate [the right to removal].").

Federal courts also realign parties for the sake of administrative convenience, an issue that is front and center in this case. *See, e.g., Aetna Casualty & Surety Co. v. Dow Chemical Co.*,

---

*Wausau v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990) ("Although the pleadings are relevant, it is the court's duty to look beyond the pleadings and arrange the parties according to their sides in the dispute.") (internal quotations omitted).

4

44 F. Supp. 2d 870, 876 n.6 (E.D. Mich. 1999) (noting that case management order realigned parties "only as an administrative convenience to the [c]ourt and parties"). In this case, West Chester Medical Center is billed as the "plaintiff," but has no affirmative claims, and the Kramers are labeled as the "defendants," but have affirmative claims and no actual claims to defend against. This could lead to confusion among the Court, the Court's staff, jurors, and even the appellate courts as this case proceeds. This Court has the discretion under Kentucky law alone to realign the parties to ease the administrative burden on the courts, and federal case law only provides additional grounds for why this Court should exercise that discretion here.

II.     **West Chester Medical Center is entitled under federal law to seek removal if this Court realigns the parties.**

The Kramers suggest that realignment in this case would be futile because federal courts have not allowed removal where a plaintiff first voluntarily dismissed its complaint and the state court realigned the parties. [Def.'s Resp. at 8.] The three cases the Kramers rely upon, however, do not support their argument.

The two federal cases cited by the Kramers can be distinguished for one simple reason: they both involve *plaintiffs/counterclaim-defendants* that tried to remove. *Zaleberg v. Yoost*, NO. 2:06-CV-399, 2007 WL 1295809, at *1 (N.D. Ind. Apr. 26, 2007) ("[A]s a plaintiff/counterclaim defendant, Zaleberg is not entitled to remove."); *see also General Credit Acceptance Co., LLC v. Deaver*, No. 4:13CV00524 ERW, 2013 WL 2420392, at *3 (E.D. Mo. June 3, 2013) ("It is well-established that a plaintiff cannot remove an action to federal court on the basis that a counterclaim permits removal."). And the Ohio appellate case cited by the Kramers can be rejected because, unlike Kentucky, Ohio has no authority recognizing a trial court's discretion to realign the parties. *State ex rel. Caszall v. Gibson*, No. 2012-L-107, 2013

WL 310656, at *8 (Ohio Ct. App. Jan. 28, 2013) ("[T]he civil rules provide no authority for the trial court's act.").

The two federal cases cited by the Kramers also highlight their fundamental misunderstanding of the federal removal statute. No one disputes that plaintiffs/counterclaim-defendants cannot remove. "Removal is available only to 'the defendant or the defendants'; and procedurally, only a defendant or defendants may file a notice of removal." *Allstate Ins. Co. v. Blankenship*, No. Civ.A. 7:05-194-DCR, 2005 WL 2095679, at *2 (E.D. Ky. Aug. 30, 2005) (quoting 28 U.S.C. § 1441(a)). But West Chester Medical Center is not seeking to remove as a plaintiff/counterclaim-defendant. To the extent West Chester Medical Center intends to seek removal, it intends do so only after this Court has realigned the parties so that it is the actual defendant. None of the federal cases cited by the Kramers prohibit this procedure.

In fact, federal courts have explicitly allowed removal where a state court realigns the parties before a notice of removal is filed. As one federal court explained, "[w]hen a state court realigns the parties, the realigned defendant can properly remove an action to federal court." *Passmore v. Discover Bank*, No. 1:11-CV-01347, at *1 (N.D. Ohio June 14, 2012); *cf. Crump v. Wal-Mart Group Health Plan*, 925 F. Supp. 1214, 1220 (W.D. Ky. 1996) ("Grounds for removal on diversity jurisdiction arose when the state court severed [the plaintiff's] claim and realigned the parties."). "Such a realignment if accomplished properly (*i.e.*, prior to removal), may allow for a federal court to find subject matter jurisdiction based upon a newly-realigned defendant's notice of removal." *Stewart v. Bureaus Investment Group No. 1*, NO. 3:10-CV-1019-WKW, 2011 WL 2313213, at *5 (M.D. Ala. June 10, 2011). Indeed, the removal statute itself "compels the conclusion that a state court order realigning a particular party as a plaintiff or a particular

party as a defendant can create removal jurisdiction, where none previously existed . . . ."
*Hrivnak v. NCO Portfolio Management, Inc.*, 723 F. Supp. 2d 1020, 1028 (N.D. Ohio 2010).

Even the federal cases cited by the Kramers acknowledge this procedure. The court in *General Credit Acceptance*, which the Kramers quote on the front page of their brief, noted that "federal courts [have] held that when a state court realigns the parties, the realigned defendant can properly remove an action to federal court." *General Credit Acceptance*, at *3 (citation omitted). The court also expressly acknowledged that the reason why removal failed in that specific case due to the fact that "the state court did not realign the parties . . . ." *Id.* Thus, the Kramers' own authority supports West Chester Medical Center's ability to remove should this Court realign the parties here.

**III.   The Court has already rejected the Kramers' forum-shopping and equitable arguments and need not revisit them now.**

This Court has already seen the Kramers' forum-shopping and equitable arguments once before during briefing on West Chester Medical Center's motion to voluntarily dismiss the complaint. [*See* Def.'s Resp. to Mot. to Dismiss at 4-13.] This Court rejected those arguments when it granted West Chester Medical Center's motion to dismiss, so the Kramers should be foreclosed from raising those same arguments now.

The Kramers last argue that CR 21 grants this Court the power to add or drop parties "on such terms as are just," and, therefore, it is unjust to permit realignment in this case. [Def. Resp. at 11 (quoting CR 21).] But CR 21 does not govern here. That rule applies to the misjoinder and nonjoinder of parties, not the realignment of parties. The rule states that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." CR 21. The express terms of CR 21 does not address the realignment of parties, and the Kramers point to no authority holding that CR 21

7

governs issues of realignment.  Thus, the Kramers' attempt to shoehorn their forum-shopping and equitable arguments into CR 21 fails as a matter of law.

## CONCLUSION

For the foregoing reasons, West Chester Medical Center's motion to realign should be granted.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:    (513) 651-6800
FAX:  (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:    (502) 589-5400
FAX:  (502) 581-1087

*Counsel for Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, this 8th day of August 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:    (859) 341-1881
FAX:  (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:    (859) 578-4444
FAX:  (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff
Kelli E. Kramer and Intervening Defendant James
Kramer*

FROST BROWN TODD LLC

0123682.0615403   4821-7278-4156v1

9



FILED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 8 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

**COMMONEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION III**
**CASE NO. 14-CI-400**

WEST CHESTER MEDICAL CENTER                         PLAINTIFF

v.

KELLI E. KRAMER                    DEFENDANT AND THIRD-PARTY PLAINTIFF

and

JAMES KRAMER                                THIRD-PARTY PLAINTIFF

v.

ABUBAKAR ATIQ DURRANI                   THIRD PARTY DEFENDANT

and

UC HEALTH, INC.                              THIRD PARTY DEFENDANT

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE**
**AMENDED ANSWER *INSTANTER***

Comes West Chester Medical Center and UC Health (collectively, the "Hospital"), and for its Reply in Support of its Motion for Leave to File Amended Answer *Instanter*, states as follows:

**I.      Argument.**

In this case, Mrs. Kramer has been allowed to set aside a default judgment that was entered against her two and a half years ago in order to use it as the vehicle for bringing suit against all of the defendants in this matter. In their response, the Third-Party Plaintiffs give short shrift to the equitable argument presented by this fact because equity suggests that if Mrs. Kramer can be excused for her failure to defend a collection action for over two and a half years, the Hospital should be excused for inadvertently failing to include the affirmative defense of lack

of personal jurisdiction in its original Answer despite the fact that it pled lack of jurisdiction throughout its Answer. As the timeless maxim states, one "who seeks equity must do equity." *Gabbard v. Truett*, 283 S.W.2d 833,835 (Ky. 1955).

With this in mind, given the relief already obtained by Mrs. Kramer in this matter, it would be inequitable to not allow the Hospital to amend its answer to assert the affirmative defense of lack of personal jurisdiction.

## II.   Conclusion.

For the foregoing reasons, and those included in the previously filed motion and memorandum, the Hospital respectfully requests that this Court grant the instant motion and allow the Hospital to file its Amended Answer.

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio 45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center and UC Health*

2

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 8th day of August, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky 41011

*Co-counsel for Kelli E. Kramer and
James Kramer*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., LPA
312 Walnut Street, Suite 3100
Cincinnati , Ohio 45202

*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spinal Technologies, Inc*

And via e-mail to:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

FROST BROWN TODD LLC

0123682.0615403  4842-5296-2332v1

3

AOC-025.1     Doc. Code: RS
Rev. 3-09
Page 1 of 1
Commonwealth of Kentucky
Court of Justice   www.courts.ky.gov
CR 45; RCr 7.02

☐ SUBPOENA
☐ SUBPOENA DUCES TECUM

Case No. __14-CI-400__
Court __CIRCUIT__
County __BOONE__
Date __JULY 17, 2014__

WEST CHESTER MEDICAL CENTER

VS

KELLI E. KRAMER

FILED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 6 2014
DIANNE MURRAY, CLERK
BY: _____ D.C.

PLAINTIFF

DEFENDANT

The Commonwealth of Kentucky to:

Name  Children's Hospital Medical Center, Inc./ c/o Ronald C. Christian, Registered Agent
Address  Taft Stettinius & Hollister LLP
         1717 Dixie Highway, Suite 910
         Covington, KY 41011-2799

You are commanded to appear before: *(select one of three choices)*
_____ Court   ☐ The Grand Jury of _____ County
☐ Other _____

You are to appear at: _____

on the _____ day of _____, 20 ___ at _____ ☐ a.m. OR ☐ p.m. ☐ Eastern ☐ Central Time

☐ To testify in behalf of _____
☐ To produce  See below.

☐ To give depositions

You are commanded to produce and permit inspection and copying of the following documents or objects
(or to permit inspection of premises): _Certified copy of any and all credentialing, peer review, quality management_
_reviews, quality improvement reviews, and similar documents pertaining to Abubakar Atiq Durrani, M.D._

on the __31st__ day of __July__, 20 _14_ at _____ ☐ a.m. OR ☐ p.m. ☐ Eastern ☐ Central Time
at the following address: _Dressman Benziner LaVelle, psc_
         207 Thomas More Parkway, Crestview Hills, KY 41017

David V. Kramer  (#39609)
Issuing Officer/Attorney Licensed in Kentucky

By: _____

David V. Kramer
Name of Requesting Attorney
Phone#  859-341-1881

PROOF OF SERVICE

This subpoena was served by delivery of a true copy to: Koester, on behalf of Ronald C. Christian via
U.S.P.S. certified mail
This __21st__ day of __July__, 2 014    By: _____
                                                        Title

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

David V. Kramer
Dressman Benzinger LaVelle, psc
207 Thomas More Parkway
Crestview Hills, KY 41017

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Ronald C. Christian
Taft Stettinius &
    Hollister LLP
1717 Dixie Highway, Suite 910
Covington, KY 41011-2799

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X KOESTER
☑ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
1-21

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☑ No

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. Article Number
   (Transfer from service label)      7011 2970 0000 1908 2249

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

| AOC-025.1   Doc. Code: RS | | Case No. 14-CI-400 |
| Rev. 3-09 | | Court  CIRCUIT |
| Page 1 of 1 | | County  BOONE |
| Commonwealth of Kentucky | ☐ SUBPOENA | Date  JULY 17, 2014 |
| Court of Justice   www.courts.ky.gov | ☐ SUBPOENA DUCES TECUM | |
| CR 45; RCr 7.02 | | |

WEST CHESTER MEDICAL CENTER

FILED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 6 2014
DIANNE MURRAY, CLERK
BY: _____ D.C.

PLAINTIFF

VS

KELLI E. KRAMER                                                                 DEFENDANT

The Commonwealth of Kentucky to:

Name  Children's Hospital Medical Center, Inc./ c/o Ronald C. Christian, Registered Agent

Address  Taft Stettinius & Hollister LLP
1717 Dixie Highway, Suite 910
Covington, KY 41011-2799

You are commanded to appear before: (select one of three choices)
☐ _____ Court   ☐ The Grand Jury of _____ County
☐ Other _____

You are to appear at: _____

on the _____ day of _____, 20____ at _____ ☐ a.m. OR ☐ p.m. ☐ Eastern ☐ Central Time

☐ To testify in behalf of _____
☐ To produce  See below.

_____

☐ To give depositions

You are commanded to produce and permit inspection and copying of the following documents or objects
(or to permit inspection of premises):  Certified copy of any and all personnel file records in your possession pertaining to
Abubakar Atiq Durrani, M.D.

on the  31st  day of  July , 20 14  at _____ ☐ a.m. OR ☐ p.m. ☐ Eastern ☐ Central Time
at the following address:  Dressman Benziner LaVelle, psc
207 Thomas More Parkway, Crestview Hills, KY 41017

| David V. Kramer  (#39609) | David V. Kramer |
| Issuing Officer/Attorney Licensed in Kentucky | Name of Requesting Attorney |
| By: _Dianne Murray_ | Phone# 859-341-1881 |
| _Jan Neff_ | |

PROOF OF SERVICE

This subpoena was served by delivery of a true copy to: Koester, on behalf of Ronald C. Christian via
U.S.P.S. certified mail.
This  21st  day of  July , 20 14 .   By: _____   Title _____

UNITED STATES POSTAL SERVICE

First-Class M
Postage & Fe Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

David V. Kramer
Dressman Benzinger LaVelle, psc
207 Thomas More Parkway
Crestview Hills, KY 41017

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X KOESTER ☑ Agent ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery 1-21<br>D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☑ No |
| 1. Article Addressed to:<br>Ronald C. Christian<br>Taft Stettinius &<br>Hollister LLP<br>1717 Dixie Highway, Suite 910<br>Covington, KY 41011-2799 | 3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label)   7011 2970 0000 1908 2249 | |
| PS Form 3811, February 2004   Domestic Return Receipt | 102595-02-M-1540 |

Tendered      14-CI-00400   06/27/2014        Dianne Murray, Boone Circuit Clerk

FILED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 6 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                   PLAINTIFF

VS.

KELLI E. KRAMER                                     DEFENDANT AND
                                                    THIRD-PARTY PLAINTIFF
AND

JAMES KRAMER                                        THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                     THIRD-PARTY DEFENDANTS

AND

C.A.S.T., INC.

AND

UC HEALTH, INC.

### (TENDERED) SUR-REPLY OF KELLI AND JAMES KRAMER IN OPPOSITION TO WEST CHESTER MEDICAL CENTER'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE [ELECTRONICALLY FILED]

Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer state as follows for their Sur-Reply in Opposition to Plaintiff West Chester Medical Center's Motion for Voluntary Dismissal.

### MEMORANDUM IN OPPOSITION

Mr. and Mrs. Kramer received Plaintiff West Chester Medical Center's ("WCMC") Reply in Support of its Motion for Voluntary Dismissal in the mail on June 25, 2014. That was the day after the hearing on these matters. Mr. and Mrs. Kramer respectfully request leave to file

Tendered      14-CI-00400   06/27/2014          Dianne Murray, Boone Circuit Clerk

this Sur-Reply (by Motion filed concurrently herewith), so they may have an opportunity to address certain erroneous issues and quite frankly inflammatory arguments asserted in WCMC's Reply and sprung on them without advance notice at the hearing of this Motion.

Mr. and Mrs. Kramer's Response sets forth clear legal authority stating, among other things, that: (1) voluntary dismissal should be denied where it is sought to be used to move a case into a forum with different substantive law; and (2) voluntary dismissal shall be denied when it is sought to be used to avoid an adverse ruling.[1] WCMC failed to address this legal authority in a meaningful way.   Instead, WCMC raised several red herrings and otherwise inapposite arguments.

The first important take-away from WCMC's Reply is that it has now officially admitted its intended "procedural path." (Reply at 2-3)   That admitted path is to use the voluntary dismissal to seek realignment, removal, and transfer to an Ohio court where WCMC wishes to have a different body of substantive law applied that it perceives as more favorable to it. (Reply at 2, 8) (stating that the Kramers are trying to avoid "a potential transfer of this case to Ohio in the first place.")  Moreover, WCMC's position on production of the Peer Review further reveals that at least one primary purpose of their "procedural path" is to avoid an adverse ruling on discovery in Kentucky.   The Kramers have cited considerable legal authority that these are impermissible grounds on which a court should grant a CR 41.01 voluntary dismissal over a defendant's objection.

A.      **WCMC's first false (as well as illogical and irrelevant) argument:  It should be allowed to dismiss and move the case to Ohio because Mrs. Kramer "seeks**

---

[1] This includes an adverse ruling on a discovery issue—like the one before the Court now, where Kentucky law clearly holds that the Peer Review must be produced.  WCMC has been dragging out the ruling on the discoverability of the Peer Review, hoping to slip its way into Ohio before this Court rules on it—thereby avoiding an adverse ruling and enabling it to hide the Dr. Durrani Peer Review.

Tendered      14-CI-00400    06/27/2014        Dianne Murray, Boone Circuit Clerk

to profit from her indifference toward this Court three years ago." (Reply at 2)

WCMC repeats that Mrs. Kramer "ignored [this proceeding] three years" and that "she seeks to manipulate and profit from her indifference toward this Court . . . ." (Reply at 2)  Three years ago, Mrs. Kramer had not yet discovered the hidden, unlawful implantation of BMP-2 into her spine, Dr. Durrani's negligence and frauds, nor WCMC's support of and involvement in all of that tortious conduct.  Her health and finances, however, had already been devastated.  She was not "indifferent" to this Court (nor more accurately to the Boone District Court), she was unable to pay WCMC's residual charges for the second of four spinal fusion surgeries Dr. Durrani performed on her in just 37 months.  (That did not stop WCMC from accommodating the final two fusion surgeries he did on her.)  To state that Mrs. Kramer is "manipulating and profiting" from not having answered WCMC's collection action before she discovered the harm inflicted on her by Dr. Durrani and WCMC is an insulting and inflammatory argument.  Mrs. Kramer's health and ability to work have been ruined by the tortious conduct of Dr. Durrani that was aided and abetted (and concealed) by WCMC -- at its great financial profit.  No matter what happens in this litigation, she will never "profit" from the suffering inflicted on her.  On the other hand, WCMC has had no problem garnishing Mrs. Kramer's wages, opposing the motion to vacate the default on which the garnishment was based, or generally "profiting" from Dr. Durrani's improper medical care (see the hundreds of cases filed against it.)  It is clear from WCMC's attitude and conduct that its only regret is that it and Dr. Durrani have now been exposed.

At any rate, WCMC has already lost on its attempt to prevent vacating the default judgment, and this Court should ignore WCMC's continued and pointless arguments on the subject.

Tendered          14-CI-00400      06/27/2014          Dianne Murray, Boone Circuit Clerk

**B.    WCMC's second false and inapplicable argument:  Courts have "endorsed" its "procedural path." (Reply at 2-3)**

WCMC cites several federal cases approving removal after realignment of parties in supposed support of its "procedural path." ***Realignment and removal are not the issues here.*** There has been no motion to realign the parties at this point.  There has been no removal.  The sole question before this Court on the present motion is whether WCMC should be able to voluntarily dismiss its claim in order to forum-shop the case into another state with different (and, to the Kramers, prejudicial) substantive law and to avoid an adverse ruling on discovery. Absolutely none of the cases cited by WCMC involved a party dismissing its claim in order to land in a court with different substantive law or to avoid an adverse ruling.[2]  WCMC's cases approving removal after realignment do not address the issue before the Court and do not address Mr. and Mrs. Kramer's authority holding that voluntary dismissal should be denied when sought to be used to avoid an adverse ruling or enter a different forum with different substantive law.

**C.    WCMC's third false argument:  "[T]he Kramers believe they are exempt from *Eder* . . . ." (Reply at 3-4)**

This argument is patently frivolous.  In a similar case, *West Chester Medical Center v. Eder*, this Court granted WCMC's motion to voluntarily dismiss and realign the parties.  WCMC cite "*Eder*" as if it amounted to a reported appellate holding that is precedentially binding on this Court.  Of course, a trial court ruling is not binding precedent or authority on any court, even the court that made it.  Even more to the point, according to a review of the online docket of the *Eder* case on CourtNet and of the state court pleadings submitted to the federal court on PACER,

---

[2] The cases cited by WCMC for this proposition are *Crump v. Wal-Mart Group Health Plan*, 925 F.Supp. 1214 (W.D. Ky. 1996), *Hrivnak v. NCO Portfolio Management, Inc.*, 723 F.Supp.2d 1020 (N.D. Ohio 2010), and *Passmore v. Discover Bank*, 2012 WL 2332233 (N.D. Ohio 2012). They involved state and federal courts located within the same state, and there was no discussion about avoiding adverse ruling or changing states where a different substantive law would apply.

4

TD : 000004 of 000009

Tendered      14-CI-00400   06/27/2014         Dianne Murray, Boone Circuit Clerk

this Court's order was entered on an apparently unopposed motion in *Eder*.[3]  There was no "holding" or "ruling." This Court's order granting an unopposed motion in another case clearly should not preclude its consideration of the pertinent authority cited by Mr. and Mrs. Kramer in this case. Nor should it bind the Court in the present case or any other case.  In short, the fact that the attorney for the aggrieved patient in *Eder* chose not to contest voluntary dismissal and realignment cannot serve as any sort of authority or binding precedent for this Court, nor may it prejudice Mr. and Mrs. Kramer's ability to object to WCMC's Motion here and to present arguments and authority for the Court's consideration.

> **D.    WCMC's fourth false argument:    The Kramers' interpretation of CR 41.01(2) is somehow "unconstitutional" (Reply at 4)**

WCMC falsely contends that "if Kramers were correct that the intended purpose of CR 41.01(2) is to prevent removal, then the Rule is unconstitutional under the Supremacy Clause." (Reply at 4)  Mr. and Mrs. Kramer have never claimed that the intended purpose of CR 41.01(2) is to prevent removal.  Rather, Mr. and Mrs. Kramer cited a plethora of federal case law holding that a party cannot voluntarily dismiss claims over objection where the voluntary dismissal is being used for the purpose of avoiding an adverse ruling or moving the case into a forum (e.g., a different state) with different substantive law.

The key point that WCMC fails to acknowledge in its argument is that it is a plaintiff, not a defendant, and it thus has no right of removal under federal law. 28 U.S.C. § 1441(a); *see also, West Chester Medical Center v. Eder*, 2:13-cv-187-WOB-CJS, (E.D. Ky. 2013), Order Remanding WCMC to the Boone Circuit Court (because WCMC was not a defendant), attached

---

[3] The trial court record from *Eder* reflects that Ms. Eder filed no response opposing to WCMC's motion to voluntarily dismiss and realign the parties.

Tendered      14-CI-00400   06/27/2014         Dianne Murray, Boone Circuit Clerk

TD : 000005 of 000009

Tendered        14-CI-00400   06/27/2014        Dianne Murray, Boone Circuit Clerk

as **Exhibit A**.[4]  Thus, CR 41.01(2) is not preventing WCMC from exercising is purported right to remove—as a plaintiff, it has no such right.  Lastly, CR 41.01(2) is modeled after Fed. R. Civ. P. 41(a)(2).  Mr. and Mrs. Kramer have cited persuasive federal case law interpreting the language of the rule, and it is bizarre to suggest that following that authority would be unconstitutional or violate the Supremacy Clause.

    **E.**    **WCMC's fifth false argument:  The Kramers' argument is "based on a misreading of CR 41.01(2)" (Reply at 3-4)**

WCMC repeats throughout its Reply that Mr. and Mrs. Kramer "admitted" that they could have brought their action independently of the collections action.  First and foremost, this argument is a red herring.  What Mr. and Mrs. Kramer could or could not have done in terms of filing their claims against WCMC if the Boone District Court had not vacated the default judgment is an irrelevant hypothetical that has nothing to do with the issue before the Court now.  WCMC tries to use this to say that Mr. and Mrs. Kramer have "misread" CR 41.01(2).  That is, WCMC states:  "The Kramers have already conceded that their counterclaims could have been pleaded as an independent action before this Court." (Reply at 3)

CR 41.01(2) states:

> If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action ***shall not be dismissed against the defendant's objection*** unless the counterclaim can **<u>remain pending</u>** for independent adjudication by ***the court***.

*Id.* (emphasis added).  The defendant here has objected.  WCMC should remain the plaintiff in the lawsuit that it filed.  In such event, the case is not removable under federal law.

---

[4] WCMC first tried to remove the *Eder* case to federal court while a plaintiff in that action. Judge Bertelsman denied removal and remanded the case to Boone Circuit Court.  WCMC later voluntarily dismissed its claim against Eder and was realigned as a defendant, but Eder filed no responses objecting to these procedures—unlike Mr. and Mrs. Kramer.

Tendered        14-CI-00400       06/27/2014        Dianne Murray, Boone Circuit Clerk

TD : 000006 of 000009

Tendered          14-CI-00400   06/27/2014          Dianne Murray, Boone Circuit Clerk

Instead, WCMC tries to convince the Court to focus on what *"could have"* happened in an irrelevant hypothetical. Even assuming that Mr. and Mrs. Kramer could have originally brought their claims independent of the collection action,[5] that has nothing to do with whether their *counterclaims* can *remain pending* for adjudication by this Court if WCMC is permitted to dismiss. In fact, by WCMC's own admission, Mrs. Kramer's counterclaim will not remain pending by this Court because WCMC will remove that claim to federal court (and seek to transfer the matter to Ohio).

WCMC's argument here is representative of an ongoing fallacy throughout the majority of its briefs filed in this Court. Specifically, it continues to argue as if it were in an alternative reality where it had not first initiated legal action against Mrs. Kramer in Boone County arising out of one of the tortious surgeries on her by Dr. Durrani. For example, WCMC concludes its Reply stating: "Had the Kramers properly filed this case as an independent action in this Court, they would be in the same position they are now." (Reply at 8)  The reality is, however, that is not what happened. Instead, WCMC chose first to file its suit against Mrs. Kramer in Boone County, and to garnish her wages for a dubious surgery performed by someone who was by that time a fugitive from justice. Mrs. Kramer then *properly* filed her counterclaim after she uncovered the tortious conduct of WCMC and Dr. Durrani, which had previously been concealed from her. There are legal consequences to choosing a forum and filing suit against someone. There are also legal consequences to pursuing a judgment and garnishing wages of a patient who

---

[5] Mr. and Mrs. Kramer must further correct WCMC's characterization of their statement during the briefing of their Motion to Vacate Default. They stated that they *intended* to pursue their claims independently if the default was permitted to stand. Mrs. Kramer believes that her counterclaim is compulsory. As well, the undersigned strongly suspect that had they attempted to file an independent action rather than a counterclaim, then WCMC would have moved to dismiss based on her not filing a compulsory counterclaim. Finally, the only reason Mrs. Kramer did not file a counterclaim originally in the collection action is that the negligence and wrongful conduct of Dr. Durrani and WCMC were concealed from her.

7

TD : 000007 of 000009

Tendered      14-CI-00400   06/27/2014        Dianne Murray, Boone Circuit Clerk

was been harmed in one's hospital—especially after the surgeon has been indicted for identical acts and has fled the county, and especially after the hospital has been sued hundreds of times for similar conduct. WCMC choose to sue in Boone County, and then to garnish wages and collect against Mrs. Kramer under these circumstances, and it should be forced to live with the legal consequences of that choice.

For the foregoing reasons, Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer respectfully ask this Court to deny Plaintiff West Chester Medical Center's Motion to Dismiss its claim against Mrs. Kramer or, in the alternative, to impose the conditions set forth above in order to remove or mitigate the substantial prejudice to which Mr. and Mrs. Kramer could otherwise be subjected.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:       859-341-1469
e-mail address: dkramer@dbllaw.com
                      rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:       859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Tendered      14-CI-00400    06/27/2014         Dianne Murray, Boone Circuit Clerk

TD : 000008 of 000009

Tendered    14-CI-00400  06/27/2014         Dianne Murray, Boone Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 27th day of June, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
Phone: (513) 421-6630 phone
Fax: (513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

426676v2

9

TD : 000009 of 000009




BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

## TENDERED SUR-REPLY IN OPP. TO MOTION TO DISMISS

eFiled: 6/27/2014 ID: 528
By: KRAMER, KELLI E
Pages total: 9    Image size: 0.43 MB

```
Case Number: 14-CI-00400
```

FILED / ENTERED
6/27/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



9 of 9 thumbnails shown

Tendered      14-CI-00400   06/27/2014        Dianne Murray, Boone Circuit Clerk



ENTERED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 6 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                    DEFENDANT AND
                                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                       THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                        THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

## ORDER GRANTING MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO MOTION FOR VOLUNTARY DISMISSAL

Upon Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer (collectively, "Movants") motion to grant leave to file a Sur-Reply to Plaintiff West Chester Medical Center's Reply in Support of its Motion for Voluntary Dismissal, and the Court being in all ways sufficiently advised,

IT IS HEREBY ORDERED that the Defendant and Third-Party Plaintiffs' Motion to File Sur-Reply in Opposition to Motion for Voluntary Dismissal is GRANTED. It is further ordered that the tendered Sur-Reply is deemed filed upon the entry of this order.

SO ORDERED this _4th_ day of _August_, 2014.

HON. JAMES R. SCHRAND
JUDGE, BOONE CIRCUIT COURT

TD : 000001 of 000002

Tendered      14-CI-00400   06/27/2014        Dianne Murray, Boone Circuit Clerk

Tendered   14-CI-00400  06/27/2014   Dianne Murray, Boone Circuit Clerk

Copies to:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Defendants Abubakar Atiq
Durrani, M.D. and Center for Advanced Spine
Technologies, Inc.*

David V. Kramer
Ryan M. McLane
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
COUNSEL FOR KELLI AND
JAMES KRAMER
859-341-1881 – Phone
859-341-1469 – Fax
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:   859-578-4444
Fax No.:     859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Prepared by:

David V. Kramer (KBA #39609)
Ryan M. McLane (KBA #92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
COUNSEL FOR KELLI AND
JAMES KRAMER
859-341-1881 – Phone
859-341-1469 – Fax
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com

426782v1

TD : 000002 of 000002

Tendered   14-CI-00400   06/27/2014   Dianne Murray, Boone Circuit Clerk



BOONE

## CI 14-CI-00400
WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

### PROPOSED ORDER GRANTING MOTION FOR LEAVE

eFiled: 6/27/2014 ID: 528
By: KRAMER, KELLI E
Pages total: 2    Image size: 0.10 MB

FILED / ENTERED
6/27/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400



1          2

### CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, thereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or their counsel of record This _____ day of __August__, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_Kathy Clayton_ D.C.

2 of 2 thumbnails shown



ENTERED
BOONE CIRCUIT/DISTRICT COURT
AUG 0 6 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

## COMMONWEALTH OF KENTUCKY
## BOONE CIRCUIT COURT
## DIVISION III
## CASE NO. 14-CI-00400

**WEST CHESTER MEDICAL CENTER**                                    **PLAINTIFF**

**VS.**

**KELLI E. KRAMER**                                            **DEFENDANT AND**
                                                         **THIRD-PARTY PLAINTIFF**

**AND**

**JAMES KRAMER**                                        **THIRD-PARTY PLAINTIFF**

**VS.**

**ABUBAKAR ATIQ DURRANI, M.D.**

**AND**

**UC HEALTH, INC.**                                    **THIRD-PARTY DEFENDANTS**

## AMENDED ORDER

This matter came before the Court on June 24, 2014 on the Motion to Voluntarily

Dismiss Complaint in Accordance with CR 41.01(2) by Plaintiff/Counterclaim-Defendant West

Chester Medical Center d/b/a West Chester Hospital, LLC. The parties appeared through

counsel. The Court granted Plaintiff's Motion on June 27, 2014. Defendant/Third-Party

Plaintiff Kelli Kramer and Third-Party Plaintiff James Kramer filed a Motion for Leave to File

Sur-Reply which the Court granted at Hearings on the parties' Motions on July 29, 2014. The

Court having reviewed the file, read the memorandums filed by the parties, including

Defendant/Third-Party Plaintiff Kelli Kramer's and Third-Party Plaintiff James Kramer's Sur-

Reply, heard argument of counsel and being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** the Plaintiff's Motion is **GRANTED.**

DATED this ___4___ day of August, 2014.

JAMES R. SCHRAND, JUDGE
BOONE CIRCUIT COURT

COPIES TO:  ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, thereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or their counsel of record This ___4___ day of ___AUGUST___, 2014
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
Kati Claxton D.C.

Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                   PLAINTIFF

VS.

KELLI E. KRAMER                                   DEFENDANT AND
                                                 THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                     THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.,          THIRD-PARTY DEFENDANTS
C.A.S.T., INC., AND
UC HEALTH, INC.

### RESPONSE AND OBJECTION OF KELLI E. KRAMER AND JAMES P. KRAMER TO MOTION OF WEST CHESTER MEDICAL CENTER FOR REALIGNMENT OF THE PARTIES
(ELECTRONICALLY FILED)

Defendant and Third-Party Plaintiff, Kelli E. Kramer, and Third-Party Plaintiff, James Kramer, respectfully object to Plaintiff West Chester Medical Center's ("WCMC") Motion for Realignment of Parties. WCMC's motion is not supported by existing law, including the case law it has cited. In fact, the case law most nearly on point establishes that parties should not be realigned solely to "manufacture federal jurisdiction," *see Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 at *6 (E.D. Mo. 2013), or to enable the party seeking realignment to "engage in … forum shopping," *see State ex rel. Caszatt v. Gibson*, 2013 WL 310656 at *8 (Ohio Ct. App. 2013).

### MEMORANDUM IN OPPOSITION

### I.     INTRODUCTION

1

RES : 000001 of 000013



Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk

WCMC is requesting realignment of the parties by which the Kramers would become the plaintiffs and West Chester would become the defendant.  If the Court grants the motion, WCMC will attempt to remove the case to federal court in Kentucky and then seek a *forum non conveniens* transfer to a federal court in Ohio. WCMC is pursuing this course of action in order to subject the Kramers' claims to a body of substantive law that is more favorable to WCMC and that contravenes clearly expressed Kentucky public policy on discovery (primarily the discovery of peer review) and damages (including Ohio's statutory caps that would arguably be in violation of Kentucky's Constitution).

Although Kentucky case law is virtually non-existent with regard to realignment of parties, other state courts and the federal courts provide guidance, as illustrated below.  However, in an unpublished opinion, the Kentucky Court of Appeals has suggested that a trial court's decision with regard to the realignment of parties is subject to an abuse-of-discretion standard of review.  See *Huntington Nat. Bank v. Porter*, 2004 WL 1909295, at *5 (Ky. App. Aug. 27, 2004) (noting that the trial court has "broad discretion in determining court and proceeding of trial," and that the movant "failed to show that the trial court abused its discretion by denying its motion to realign the parties"). The Kramers respectfully submit that realignment under the present circumstances would not be an appropriate exercise of discretion and should be denied.

## II.   THIS COURT SHOULD DENY WCMC'S MOTION FOR REALIGNMENT OF THE PARTIES BECAUSE REALIGNMENT IS NOT WARRANTED IN THE PRESENT CIRCUMSTANCES.

WCMC cites several federal cases for the proposition that realigning parties to reflect their litigation interests is a common procedure that has universally been employed by the federal courts.  However, WCMC mischaracterizes the purpose of party realignment by citing these cases without articulating the general standard used by these courts to determine whether

RES : 000002 of 000013

2

Filed          14-CI-00400    07/28/2014           Dianne Murray, Boone Circuit Clerk

realignment is warranted. Instead, WCMC argues that a simple "functional test" is the primary standard used by federal courts when considering realignment. An analysis of the cases relied upon by WCMC and the very limited "functional test" reveals that realignment is clearly not proper under these circumstances.

### A.   The Primary Purpose of Party Realignment Is To Place Parties With Adverse Interests On Opposite Sides of the Litigation.

By virtue of the cases cited by WCMC, Plaintiff seems to argue that courts regularly realign parties so that the party actually prosecuting a claim be labeled the plaintiff and the party actually defending a claim be labeled the defendant. However, this is a mischaracterization of party realignment. The primary purpose for realignment is to ensure that opposing parties are not misaligned, that is, that co-parties are antagonistic to the opposing party, and not friendly to the opposing party while being antagonistic to each other. Accordingly, realignment is generally ordered by a court in multi-party litigation in order to ensure that each party is truly opposed to all parties on the other side of the lawsuit. This issue often arises in the context of insurance litigation, whereby one insurer sues an insured and all other parties that have issued policies to the insured, in order to determine which policy the insured may recover under.

Thus, the test for realignment is "whether the parties with the same . . . [interests] in the outcome of action are on the same side of the litigation." 13E Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3607 (3d ed. 2014). Accordingly, courts considering realignment must only focus on the interests of the named plaintiffs relative to the interests of the named defendants. Only when "no antagonism exists . . . between the opposing parties" is realignment proper. *U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*, 839 F.Supp. 347, 349 (D. Md. 1993). "As long as the parties with the same ultimate interests in the outcome of the action are on the same side, the parties will be considered aligned

RES : 000003 of 000013

3

 

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

properly." Wright, *supra*; *see also Continental Airlines, Inc v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987) (noting that a defendant should be realigned as a plaintiff "[i]f the interests of a . . . defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit").

The cases cited by Plaintiff illustrate WCMC's mischaracterization of the true purpose of party realignment. In fact, every case initially cited as an example of party realignment involved multi-party suits in which the basis for realignment was the fact that a named defendant had the same interests as the named plaintiff, i.e., that co-parties were misaligned. None of these cases granted realignment solely for the purpose of having both the plaintiff and the defendant "switch sides" in the suit. *See, e.g., Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559-560 (6th Cir. 2010) (holding that realignment was warranted because the city of Cleveland, although initially named as a defendant, had the same interests as the plaintiff in the action); *U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*, 48 F.3d 131, 134 (4th Cir. 1995) (holding that realigning all the insurers as plaintiffs was proper because they all had the same interest in avoiding liability to the insured); *Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 46-47 (3d Cir. 1990) (remanding for a determination of the suit's primary purpose, because if such purpose was the insurers' interest in avoiding liability under various insurance policies, all of the insurers would have to be opposite the insured); *Continental Airlines, Inc v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987) (holding that the defendant supplier must be realigned as a plaintiff because it had the identical interest of the plaintiff in that they both sought to prove that the exculpatory clause in the plaintiff's policy precluded liability to the defendant insured); *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 (7th Cir. 1981) (holding that realignment of a defendant insurer was not proper because

RES : 000004 of 000013

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk



"an actual and substantial conflict among the insurers was apparent from the outset of this action").

In the case at hand, WCMC and the Kramers have unquestionably been opposed to each other since the filing of this action. Moreover, none of the third-party defendants is misaligned with either WCMC or the Kramers. Although realignment may in fact be a "common procedure," this is simply not a situation in which a named party is not adverse to an opposing party. Quite simply, the cases cited by WCMC provide no support to its argument that realignment is proper for the sole purpose of re-labeling a defendant as a plaintiff when a counterclaim has been asserted and the initial claim is voluntarily dismissed for tactical procedural reasons.

**B.     The Limited "Functional Test" For Party Realignment Does Not Apply Because WCMC's Original Claim Was Not Ancillary to the Kramers' Counterclaims.**

WCMC asserts that federal courts use a "functional test" to determine whether a party is properly aligned as a plaintiff or a defendant. However, this functional test is a "limited exception" to the general rule that a plaintiff who elects to file a complaint in state court cannot later remove the action, even though a counterclaim would treat the plaintiff as a defendant. *Allstate Ins. Co. v. Blankenship*, 2005 WL 2095679, at *2 (E.D. Ky. 2005). In very narrow circumstances, the functional test permits a plaintiff to remove a case if the original state court action was filed for a purpose that is *ancillary* to the asserted counterclaims. *Id* (emphasis added). Only in this very limited scenario is the defendant's counterclaim the "mainspring" of the action. *Id.* (emphasis added).

Once again, none of the authority relied upon by WCMC supports realignment in this case under this very limited functional test. For example, in *Gen. Motors Corp. v. Gunn*, 752

5

RES : 000005 of 000013

Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk

F.Supp. 729 (N.D. Miss. 1990), after learning that Philip Gun was acquiring information for the purpose of pursing a wrongful death claim, General Motors filed a "Bill of Discovery" in state court seeking to acquire the same information in order to prepare its defense. *Id.* at 729-730. Gunn then answered and asserted the wrongful death claim as a counterclaim. *Id.* at 730.  In holding that General Motors was the defendant for removal purposes, the Court likened the "Bill of Discovery" to a petition under Rule 27(a) that seeks to depose a witness for the purpose of perpetuating testimony in lieu of an expected suit. *Id.* at 732.  The Court noted that such a petition is not a separate action in the usual sense because it only "creates a *separate ancillary or auxiliary proceeding.*" *Id.* (emphasis added) (internal quotation marks omitted).  Therefore, because the Bill of Discovery was filed for the "limited purpose" of obtaining evidence for use in the anticipated wrongful death action, the counterclaim was actually the "mainspring" of the case. *Id.* As a result, by filing the Bill of Discovery in state court, "General Motors should not be deemed to have selected a forum for purposes of Gunn's action."

Similarly, in *Int'l Tin Council v. Amalgamet Inc.*, 645 F.Supp. 879 (S.D.N.Y. 1986), the plaintiff filed a declaratory judgment action seeking to stay arbitration proceedings that had been commenced by the defendant. *Id.* at 880.  Applying the functional test, the Court noted that the plaintiff pursued the action "not to effect its own ends, but rather to avoid claims made upon it." *Id.* at 882.  Therefore, because the defendant's commencement of arbitration proceedings was the "mainspring" of the suit, the Court held that the named plaintiff should be deemed the defendant for removal purposes. *Id.*

In the case at hand, WCMC's suit was not initiated for any purpose that is "ancillary" to the Kramers' counterclaims. Rather, WCMC brought suit in this Court for the purpose of "effect[ing] its own ends" by recovering on an alleged debt for a tortious surgery—the same

6

RES : 000006 of 000013

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

surgery that is the subject of the counterclaim. *See Int'l Tin Council, supra*, 645 F.Supp. at 882. Judging by its current procedural strategy, if WCMC had in fact anticipated counterclaims from the Kramers, it would have certainly refrained from bringing suit in Kentucky state court. Therefore, at the time the suit was initiated, the "mainspring" of the suit was the desired recovery of a debt, not an anticipated counterclaim.

In fact, the Northern District of Indiana rejected the functional test argument in this very scenario. In *Zalcberg v. Yoost*, 2007 WL 1295809 (N.D. Ind. 2007), the plaintiff filed suit in state court to collect on a debt, and the defendant filed counterclaims. *Id.* at *1. The plaintiff filed a notice of removal, arguing that the functional test warranted his realignment as the defendant. *Id.* The Court rejected this argument, holding that the plaintiff's complaint commenced a distinct civil action designed "to *achieve its own ends*, i.e., recovery of an alleged debt." *Id.* at *2. Therefore, the complaint was not ancillary to the defendant's counterclaims, and removal was not proper because the parties were already properly aligned. *Id.* This case is directly on point and rejects WCMC's argument.

In addition, WCMC's reliance on a case from the Eastern District of Kentucky is misplaced. In *Allstate Ins. Co. v. Blankenship*, 2005 WL 2095679 (E.D. Ky. 2005), Allstate filed a "Petition for a Rule 35 Examination" in state court seeking a court-ordered examination of the insured following an automobile accident. *Id.* at *1. After the examination was conducted, the Kentucky state court ordered that the action be stricken from the docket. *Id.* Six months later, upon a motion by Blankenship, the state court reopened the civil action and allowed Blankenship to file a claim for failure to pay medical expenses. *Id.* In assessing whether removal was proper, the Eastern District of Kentucky identified the key issue as whether Blankenship's claim marked the beginning of a new suit or was just a counterclaim within the original suit. *Id.*

RES : 000007 of 000013

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

**Filed**      14-CI-00400   07/28/2014      Dianne Murray, Boone Circuit Clerk

at *3.  The Court held that because the original action (which was ancillary to Blankenship's right of action) had been stricken *before* Blankenship had asserted any counterclaims, the new claim initiated a new action. *Id.* at *4. Therefore, realignment was warranted because Allstate's original claim was ancillary to Blankenship's right of action, and Allstate was properly deemed the defendant with respect to this new action. *Id.*

It is clear that *Allstate v. Blankenship* is not applicable here.  The original action here was not ancillary to the Kramers' subsequent counterclaims, and the Kramers' counterclaims were asserted before WCMC voluntarily dismissed its original claim, so this is not a situation in which the original ancillary suit was finally concluded before any counterclaims were filed.  Therefore, the Kramers' counterclaims did not initiate a new action, and the Kramers are properly aligned as defendants.

C.   **Courts Have Explicitly Rejected Realignment Sought for the Purpose of "Manufactur[ing] Federal Jurisdiction."**

In addition to the above, there is very recent authority directly contrary to WCMC's procedural gambit. First, in *Gen. Credit Acceptance, Co., LLC v. Deaver*, 2013 WL 2420392 (E.D. Mo. 2013), GCAC filed a breach of contract action against David Deaver in Missouri state court; in response, Deaver asserted a consumer class action counterclaim. *Id.* at *1.  GCAC voluntarily dismissed its claim and attempted to remove the case to federal court, although it was still the plaintiff in the action. *Id.*  After Deaver filed a motion to remand to state court, GCAC filed a motion to realign parties, arguing that because it had no claims pending against Deaver, it was the "true defendant." *Id.* at *2; *see also id.* at *4 ("GCAC contends that, as it dismissed with prejudice all of its claims . . . Deaver substantively was the plaintiff, and GCAC substantively was the defendant").

RES : 000008 of 000013

**Filed**      14-CI-00400   07/28/2014      Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400   07/28/2014           Dianne Murray, Boone Circuit Clerk

After first concluding that a "court should . . . assess realignment at the time of filing the complaint," the court held that realignment was not warranted. *Id.* at \*5-6. The court expounded on its reasoning:

> Ultimately, here, there is not a situation where antagonistic parties are on the same side, and ***realignment would only serve to manufacture federal jurisdiction***. GCAC chose to pursue its claim in state court. Defendant Deaver answered and filed a counterclaim. The only justification for realignment here is that the original complaint by GCAC has been voluntarily dismissed, and GCAC no longer wishes to litigate in the forum it originally selected. This justification does not comprise a valid reason to grant GCAC a change in status for removal purposes.

*Id.* at \*6 (emphasis added) (internal citations omitted).   This case is directly on point and expressly rejects both WCMC's argument and its ultimate goal of manufacturing federal jurisdiction.

A recent case from Ohio state court also specifically addressed the very procedural strategy WCMC is attempting to use in order to land a state action in federal court. In *State ex rel. Caszatt v. Gibson*, 2013 WL 310656 (Ohio Ct. App. 2013), the plaintiff brought a collection suit against Sean Caszatt in Ohio state court; in response, Caszatt brought a counterclaim under the Fair Debt Collections Practices Act. *Id.* at \*1. Summary judgment was granted for Caszatt with respect to the initial collection claim, but summary judgment was denied with respect to the counterclaim. *Id.* After another adverse decision from the trial court, the plaintiff filed a motion to realign the parties "for the express purpose of removing [the] case to federal court." *Id.* at \*2; *see also id.* at \*6 (noting that the motion sought to "circumvent [the] procedural obstacle" that prevents plaintiffs from removing cases to federal court). The trial court granted the motion, reasoning that the parties should be "realigned to reflect their true roles in the remaining claim." *Id.* at \*2. Also, the trial court ordered Caszatt (the defendant) to file an amended complaint showing the parties' new alignment. *Id.*

RES : 00009 of 000013

9

Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

First, the Ohio Court of Appeals for the Eleventh District completely rejected the notion that the trial court had the authority to order a counterclaimant to file a separate complaint. *Id.* at *7. Second, and most significantly for the present discussion purposes, the Court expressly rejected the plaintiff's argument that realignment was warranted under these circumstances. *See id.* (concluding that realignment is "clearly inapplicable in this case"). The Court explained:

> After receiving adverse outcomes on both appeals, [the plaintiff] sought a second bite at the apple in federal court. The district court . . . recognized this as well, stating in its decision: *"The court should not permit a party to engage in such blatant acts of forum shopping. Forum shopping frustrates the notion of federalism and stifles judicial economy."*

*Id.* at *8 (emphasis added). The Court held that Caszatt was entitled to a writ of mandamus compelling the trial court to vacate the order that realigned the parties. *Id.* at *10.

As is clear from these two cases, courts do not look favorably on procedural strategies that are designed to circumvent the rules of civil procedure by manufacturing federal jurisdiction or to shop for a different forum. Realignment is rejected under these circumstances.

## III. REALIGNING THE PARTIES TO ALLOW REMOVAL WOULD BE UNJUST TO THE KRAMERS.

Although courts have long considered the realignment of parties, there is no uniformly-accepted basis for a court's authority to do so. *Compare First Nat'l Bank of Shawnnee Mission v. Roeland Park State Bank & Trust Co.*, 357 F.Supp. 708, 711 (D. Kan. 1973) ("[p]ursuant to Rule 21 . . . the court may order a realignment of the parties on such terms as are just") (internal quotation marks omitted), with *City of Indianapolis v. Chase Nat'l. Bank of New York*, 314 U.S. 63, 69-70 (1941) (discussing the "familiar doctrines governing the alignment of parties" without mentioning Rule 21). Considering that Kentucky courts have not established a standard for party realignment, it is important to consider how other states analyze the issue.

RES : 000010 of 000013

10

Filed          14-CI-00400    07/28/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400     07/28/2014          Dianne Murray, Boone Circuit Clerk

While federal courts have been instructed to make their own determination of whether the parties should be realigned, *see Allstate Ins. Co. v. Blankenship*, 2005 WL 2095679, at *2 (E.D. Ky.), state courts generally rely on the state counterpart to Rule 21 for the court's authority to realign parties. *See, e.g., Branham v. Ford Motor Co.*, 701 S.E.2d 5, 26 (S.C. 2010); *Cawthon v. Waco Fire & Cas. Ins. Co.*, 386 S.E.2d 32, 33 (Ga. 1989). Therefore, when the time comes for a Kentucky court to establish a clear realignment standard, it will likely follow suit and rely upon CR 21.

CR 21 grants trial courts the authority to add or drop parties "on such terms as are just." Accordingly, this rule provides yet another reason why realignment is not warranted in this case. Because WCMC has admittedly sought realignment in order to remove and transfer the case to obtain more favorable substantive law, the Kramers would unquestionably be prejudiced by realignment. Subjecting the Kramers to such prejudice would clearly be unjust, especially considering that WCMC specifically chose to litigate in this forum. *See Allstate Ins. Co. v. Blankenship, supra*, 2005 WL 2095679, at *2 (noting the general rule that a plaintiff who *elects* state court jurisdiction when filing the complaint cannot later remove the action to federal court). Therefore, because allowing realignment would not be just, CR 21 provides independent support for the denial of WCMC's motion in addition to those grounds set forth above.

## IV.   CONCLUSION

Because party realignment is not applicable to these circumstances and because WCMC is admittedly engaged in a scheme to "manufacture federal jurisdiction," *see Gen. Credit Acceptance, Co., LLC v. Deaver, supra*, 2013 WL 2420392 at *6, and also admittedly "engag[ing] in blatant acts of forum shopping," *see State ex rel. Caszatt v. Gibson*, 2013 WL 310656 at *8, its motion should be denied.

Filed          14-CI-00400      07/28/2014          Dianne Murray, Boone Circuit Clerk

RES : 000011 of 000013

**Filed**       14-CI-00400   07/28/2014        Dianne Murray, Boone Circuit Clerk

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:   859-341-1881
Fax No.:     859-341-1469
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:   859-578-4444
Fax No.:     859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was emailed this 28th day of July, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*
*and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and*
*Center for Advanced Spine Technologies, Inc.*

**Filed**       14-CI-00400   07/28/2014       Dianne Murray, Boone Circuit Clerk

RES : 000012 of 000013

Filed          14-CI-00400   07/28/2014          Dianne Murray, Boone Circuit Clerk

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester
Medical Center*

/s/ David V. Kramer_____
David V. Kramer

431413v3

RES : 000013 of 000013

Filed          14-CI-00400     07/28/2014          Dianne Murray, Boone Circuit Clerk




BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**RESPONSE AND OBJECTION TO MOTION FOR REALIGNMENT**

eFiled: 7/28/2014 ID: 831
  By: KRAMER, KELLI E
Pages total: 13    Image size: 1.02 MB

FILED / ENTERED
7/28/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400



9 of 13 thumbnails shown

Filed    14-CI-00400  07/24/2014    Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                    DEFENDANT AND
                                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                       THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.,                       THIRD-PARTY DEFENDANTS
C.A.S.T., INC., AND
UC HEALTH, INC.

### RESPONSE AND OBJECTION OF KELLI E. KRAMER AND JAMES P. KRAMER TO MOTION OF WEST CHESTER MEDICAL CENTER TO FILE AMENDED ANSWER
(ELECTRONICALLY FILED)

Defendant and Third-Party Plaintiff, Kelli E. Kramer, and Third-Party Plaintiff, James Kramer, respectfully object to Plaintiff West Chester Medical Center's ("WCMC") Motion to File Amended Answer, as such amendment would be in violation of the Kentucky Rules of Civil Procedure.  A party may not amend a responsive pleading to add a waivable defense except when such amendment is permitted as a matter of course under CR 15.01.  Plaintiff WCMC's proposed amendment does not qualify and must be denied.

### ARGUMENT

Under CR 12.08(1), the defense of lack of personal jurisdiction is waived if it is not asserted in a motion to dismiss made under CR 12.02 or 12.07 or in an amendment permitted *as a matter of course* under CR 15.01.  Civil Rule 15.01 permits an amendment as a matter of

RES : 000001 of 000008

Filed          14-CI-00400    07/24/2014       Dianne Murray, Boone Circuit Clerk

course of an answer (which is a "pleading . . . to which no responsive pleading is permitted" under the Rule) only if made within 20 days after it is served.  In the present case, Plaintiff WCMC served its initial Answer on May 14, 2014, and did not therein assert the defense of lack of personal jurisdiction.  WCMC thereafter did not amend its Answer as a matter of course within 20 days after May 14, 2014.

In its Motion to Voluntarily Dismiss Complaint filed on May 30, 2014, WCMC graciously described Volumes 6 and 7 of the Kentucky Practice series (which quite frankly provided no substantive support whatsoever for their motion to voluntarily dismiss) as the "definitive treatise on Kentucky Civil Procedure." (Motion to Voluntarily Dismiss at p. 2)  For that matter, the Kentucky Supreme Court itself described the 5th edition of the treatise as "the leading authority on the Kentucky Rules of Civil Procedure." *See Terwilliger v. Terwilliger*, 64 S.W.3d 816, 818 (Ky. 2002).

Concerning the issue before the Court, Volume 6 of the treatise provides unequivocally as follows:

> *A party cannot escape the penalty of waiver by amended pleadings.  A court does not have authority to grant leave to amend in order to add one of the waivable defenses.*  They may be alleged only by an amendment as a matter of course under CR 15.01.  This limitation applies only to the defenses enumerated in CR 12.02(b-e).  CR 12.02(b) contains the affirmative defense of "lack of jurisdiction over the person."

6 Kentucky Practice, Rules of Civil Procedure Annotated, CR 12.08 cmt. 2 at p. 317 (6th Ed. 2005) (emphasis added).[1]  Of course, the defense of lack of personal jurisdiction is enumerated in CR 12.02(b) and thus falls within the Rule's prohibition on assertion of

---

[1]  The exact same paragraph of commentary appears at p. 251 in the 4th edition of the treatise authored by Bertelsman & Philipps published in 1984, and at p. 250 in the 5th edition authored by Philipps published in 1995.  Thus, while the undersigned claims no personal credit for authoring that particular point of authority, the pertinent language of the Civil Rules has not changed, and the statement in the treatise was and remains authoritative.

Filed          14-CI-00400    07/24/2014       Dianne Murray, Boone Circuit Clerk

RES : 000002 of 000008

Filed        14-CI-00400   07/24/2014        Dianne Murray, Boone Circuit Clerk

the defense by amended answer on motion rather than only by amendment as a matter of course.

In *Williams v. Indiana Refrigerator Lines, Inc.*, 612 SW2d 350 (Ky. App. 1981), the Kentucky Supreme Court noted that a party that files an answer without pleading the defense of lack of personal jurisdiction makes a general appearance, waives the defense of personal jurisdiction, and thereby submits itself to the jurisdiction of the trial court. (This holding is further basis for the trial court to deny WCMC's motion to dismiss for alleged lack of personal jurisdiction, if any more is needed.) Thus, WCMC has waived the defense and submitted itself to the jurisdiction of this honorable Court.

WCMC's argument that its denials in its Answer of factual averments relating to jurisdiction in the Counterclaim are the legal equivalent of asserting a defense is plainly and absolutely wrong for a variety of reasons. First, it is fundamental that the denial of another party's factual averment does not equate to affirmatively asserting a defense. They are in essence two separate things. *See* CR 8.02 ("A party shall state in short and plain terms his *defenses* to each claim asserted *and* shall admit or *deny the averments* upon which the adverse party relies.") (emphasis added). *See also Bolognese v. Forte*, 292 P.3d 248, 253-54 (Idaho 2012) ("there's a difference between an affirmative defense and denial of averment in a Complaint."). WCMC made certain denials of fact in its Answer, but it did not raise the *defense* of lack of personal jurisdiction. Thus, WCMC waived it. CR 12.08(1); 6 Ky. Prac. *supra* at p. 317.

Secondly, and perhaps even more conclusively, it is black-letter law that "every well-pleaded allegation of the complaint must be taken as true and construed in the light most favorable to the party against whom the motion is made." *City of Louisville v.*

RES : 000003 of 000008

Filed        14-CI-00400   07/24/2014        Dianne Murray, Boone Circuit Clerk

Filed        14-CI-00400    07/24/2014        Dianne Murray, Boone Circuit Clerk

*Stock Yards Bank & Trust Co.*, 843 S.W.2d 327, 328 (Ky. 1992). *See also Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007) ("It is well settled in this jurisdiction when considering a motion to dismiss under this rule [CR 12.02] that the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true"); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

This long-established point of law further supports the principle that a denial of a factual averment cannot equate to assertion of an affirmative defense. If a denial of a factual averment equated to assertion of a defense, then the foregoing case law holding that all factual averments must be taken as true on a motion to dismiss would make no sense. This being the case, WCMC's argument that its denials of the Kramers' factual averments equate to an implied assertion of the defense of lack of personal jurisdiction simply cannot be correct. That is, in deciding WCMC's motion to dismiss for lack of personal jurisdiction, this honorable Court must treat all of the Kramers' factual averments in their Counterclaim as being true. Therefore, WCMC cannot prevail on its motion to dismiss for lack of personal jurisdiction based on denials of factual averments because those factual averments must – *must* -- be treated as true by the Court. Instead, WCMC was required to expressly assert the defense of lack of personal jurisdiction, which it did not do.

With respect to WCMC's activities in Kentucky, review of CourtNet reveals that since it opened in 2009, WCMC has availed itself of the use of Kentucky courts to pursue Kentucky residents for hospital charges at least nine times. A list of such Kentucky residents and their counties and case numbers is attached as "Exhibit A." At

4

RES : 000004 of 000008

Filed          14-CI-00400   07/24/2014          Dianne Murray, Boone Circuit Clerk

least two of those patients, and probably more, were surgical patients of Dr. Durrani, the serial tortfeasor who has returned to his native Pakistan, after illegally absconding from the United States to avoid justice for surgeries such as those he performed on Mrs. Kramer at WCMC.

The Court should not be impressed by WCMC's ongoing disingenuous portrayal of itself as an innocent victim in this matter, nor of its claim that it is somehow inequitable that, in a collection action it filed for recovery of its charges for an unnecessary and tortious surgery, it could be countersued for aiding and abetting the very same unnecessary and tortious surgery. To suggest that the counterclaim for various torts committed relating to that surgery does not arise out of the "same transaction or occurrence," within the meaning of CR 13.01 governing compulsory counterclaims, as the charges for that very surgery is plainly incorrect. Those very charges are clearly damages arising from the surgery. The Kramers respectfully refer the Court back to the authority cited in response to the motion to dismiss for lack of personal jurisdiction establishing that, even if WCMC had not irrevocably waived the defense of lack of personal jurisdiction by failing to plead it or timely amend their answer, the Court automatically has jurisdiction over a counterclaim filed in a suit over which the Court has jurisdiction.

As the Kramers have previously stated, they were quite understandably unaware of the wrongful nature of the surgery in question at the time WCMC sued Mrs. Kramer for collection, and due in part to the disabling effects of Dr. Durrani's performance of four spinal fusions on her at WCMC in just 37 months they were unable to pay the remaining charges for that surgery at the time the default was entered. This lack of

5

Filed          14-CI-00400      07/24/2014          Dianne Murray, Boone Circuit Clerk

Filed        14-CI-00400    07/24/2014        Dianne Murray, Boone Circuit Clerk

knowledge on their part was facilitated in part by the concealment by Dr. Durrani and WCMC of the wrongful nature of the surgery and of the unconsented implantation of a product in her spine that was not approved for such use, all of which wrongful conduct WCMC directly aided, abetted, and profited from. In any event, the default has been vacated. There is no default judgment. There was a claim (until the Court recently granted WCMC leave to voluntarily dismiss the claim), and there remains a counterclaim and third-party claims.

Finally, this Court, which is not sitting as court of equity, should have absolutely no sympathy for a hospital that garnished a patient's wages long after it knew or should have known that the spinal surgery underlying its unpaid charges was unnecessary. This is particularly where WCMC pursued the garnishment in early 2014 – seven months after Dr. Durrani fled the country.

## CONCLUSION

For the foregoing reasons, Plaintiff West Chester Medical Center's motion for leave to file an Amended Answer must be denied.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

RES : 000006 of 000008

Filed        14-CI-00400    07/24/2014        Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400    07/24/2014           Dianne Murray, Boone Circuit Clerk

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:      859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was emailed this 24th day of July, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*
*and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and*
*Center for Advanced Spine Technologies, Inc.*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester*
*Medical Center*

/s/ David V. Kramer
David V. Kramer

429502v4

RES : 000007 of 000008

Filed          14-CI-00400    07/24/2014          Dianne Murray, Boone Circuit Clerk

EXHIBIT A

WESTCHESTER MEDICAL CENTER, (P)
BOONE - 13-CI-01028 (CO)
WESTCHESTER MEDICAL CENTER, VS. EDER, MONA

WESTCHESTER MEDICAL CENTER, (P)
BOONE - 11-C-03189 (CO)
WESTCHESTER MEDICAL CENTER, VS. ELLIOTT, ROBERT G

WESTCHESTER MEDICAL CENTER, (P)
BOONE - 11-C-02056 (CO)
WESTCHESTER MEDICAL CENTER, VS. KRAMER, KELLI E.

WESTCHESTER MEDICAL CENTER, (P)
CAMPBELL - 12-C-02412 (CO)
WESTCHESTER MEDICAL CENTER, VS. FREEMAN, LISA A

WEST CHESTER MEDICAL, (P)
KENTON - 11-C-04209 (CO)
WEST CHESTER MEDICAL, VS. BAILEY, SHAWN E

WEST CHESTER MEDICAL, (P)
KENTON - 10-C-04576 (CO)
WEST CHESTER MEDICAL VS HARVEY, JANET M

WESTCHESTER MEDICAL CENTER, (P)
KENTON - 13-C-01206 (CO)
WESTCHESTER MEDICAL CENTER, VS. HICKS, CHRISTINA , ET AL

WESTCHESTER MEDICAL CENTER, (P)
KENTON - 11-C-01871 (CO)
WESTCHESTER MEDICAL CENTER, VS. BREWER, JOSEPH W

WESTCHESTER MEDICAL CENTER, (P)
GRANT - 11-C-00331 (CO)
WESTCHESTER MEDICAL CENTER, VS. KIDD, SHERRY L

429574v1

RES : 000008 of 000008




BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

## RESPONSE AND OBJECTION TO MOTION OF WEST CHESTER

eFiled: 7/24/2014 ID: 779
  By: KRAMER, KELLI E
Pages total: 8    Image size: 0.52 MB



Case Number: 14-CI-00400

FILED / ENTERED
7/24/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

---

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION IB
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER          PLAINTIFF

VS.

KELLI E. KRAMER                      DEFENDANT AND
                                     THIRD-PARTY PLAINTIFF
AND

JAMES KRAMER                         THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.,         THIRD-PARTY DEFENDANTS
C.A.S.T., INC., AND
UC HEALTH, INC

**RESPONSE AND OBJECTION OF KELLI E. KRAMER AND
JAMES P. KRAMER TO MOTION OF WEST CHESTER
MEDICAL CENTER TO FILE AMENDED ANSWER
(ELECTRONICALLY FILED)**

Defendant and Third-Party Plaintiff, Kelli E. Kramer, and Third-Party Plaintiff, James
Kramer, respectfully object to Plaintiff West Chester Medical Center's ("WCMC") Motion to
File Amended Answer, as such amendment would be in violation of the Kentucky Rules of Civil
Procedure. A party may not amend a responsive pleading to add a waivable defense except
when such amendment is permitted as a matter of course under CR 15.01. Plaintiff WCMC's
proposed amendment does not qualify and must be denied.

**ARGUMENT**

Under CR 12.08(1), the defense of lack of personal jurisdiction is waived if it is not
asserted in a motion to dismiss made under CR 12.01 or 12.07 or in an amendment permitted as
a matter of course under CR 15.01. Civil Rule 15.01 permits an amendment as a matter of

| 1 | 2 | 3 |
| 4 | 5 | 6 |
| 7 | 8 | |

8 of 8 thumbnails shown

1-2a-2014



FILED
BOONE CIRCUIT/DISTRICT COURT
**JUL 2 2 2014**
DIANNE MURRAY, CLERK
BY:_____D.C.

### COMMONWEALTH OF KENTUCKY
### BOONE CIRCUIT COURT
### DIVISION III
### CIVIL ACTION NO. 14-CI-00400

WEST CHESTER MEDICAL CENTER                          **PLAINTIFF/**
d/b/a WEST CHESTER HOSPITAL, LLC             **COUNTERCLAIM-DEFENDANT**

v.

KELLI E. KRAMER                                              **DEFENDANT/**
                                              **COUNTERCLAIM-PLAINTIFF/**

JAMES KRAMER                              **INTERVENING DEFENDANT/**
                                              **COUNTERCLAIM-PLAINTIFF**

and

JAMES KRAMER
KELLI E. KRAMER                              **THIRD-PLAINTIFF PLAINTIFFS**

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

                                              **THIRD-PARTY DEFENDANTS**

### <u>NOTICE</u>

    Please take notice that the undersigned will make the following motion and tender the

attached order on July 29, 2014 at 9:00 A.M.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:    (513) 651-6800
FAX:  (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:    (502) 589-5400
FAX:  (502) 581-1087

*Counsel for Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, and electronic mail this 22nd day of July 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:    (859) 341-1881
FAX:  (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:    (859) 578-4444
FAX:  (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff
Kelli E. Kramer and Intervening Defendant James
Kramer*

FROST BROWN TODD LLC



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 14-CI-00400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF/
d/b/a WEST CHESTER HOSPITAL, LLC                    COUNTERCLAIM-DEFENDANT

v.

KELLI E. KRAMER                                               DEFENDANT/
                                                  COUNTERCLAIM-PLAINTIFF/

JAMES KRAMER                                       INTERVENING DEFENDANT/
                                                  COUNTERCLAIM-PLAINTIFF

and

JAMES KRAMER
KELLI E. KRAMER                                    THIRD-PLAINTIFF PLAINTIFFS

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

                                                  THIRD-PARTY DEFENDANTS

MOTION OF PLAINTIFF/COUNTERCLAIM-DEFENDANT
WEST CHESTER MEDICAL CENTER D/B/A WEST CHESTER
HOSPITAL, LLC FOR REALIGNMENT OF THE PARTIES

For a second time, this Court is being asked to rule on a matter that should have been agreed-upon by the parties. Recently, this Court granted Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC's motion to voluntarily dismiss its Complaint against Defendant/Counterclaim-Plaintiff Kelli E. Kramer. Legal counsel for West Chester Medical Center asked that opposing counsel agree to realignment of the parties since West Chester Medical Center no longer has an affirmative claim and thus cannot be considered a plaintiff. Opposing counsel has refused, therefore requiring the filing of this motion.

This Court's dismissal of West Chester Medical Center's Complaint requires realignment of the parties. "Dismissal" is defined as the "termination of an action or claim without further hearing, especially before the trial of the issues involved." BLACK'S LAW DICTIONARY 502 (8th ed. 2004). A dismissal with prejudice "connotes an adjudication or final determination on the merits and extinguishes or bars any future claim." 24 AM. JUR. 2d *Dismissal* § 1 (Westlaw 2014); *see also Stephenson v. Boswell*, 319 S.W.2d 457, 458 (Ky. 1958). Accordingly, once an order or stipulation is entered dismissing a claim, there is nothing left for the court to adjudicate related to the dismissed claim. *See Stephenson*, 319 S.W.2d at 457-58. Under that rule, once this Court dismissed West Chester Medical Center's Complaint with prejudice, the dismissal extinguished the claims contained in the Complaint. West Chester Medical Center thus no longer has an affirmative claim against Kelli E. Kramer and cannot be considered a "plaintiff."

Realigning parties consistent with their litigation interests is a common procedure. Federal courts have universally endorsed its use. *See, e.g., Indianapolis v. Chase National Bank*, 314 U.S. 63, 69 (1941); *see also Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010).[1] The U.S. Supreme Court has specifically instructed trial courts "to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Chase National Bank*, 314 U.S. at 69. That rule is generally accepted in Kentucky courts. *See Field v. Evans*, 675 S.W.2d 3, 4 (Ky. Ct. App. 1983) (noting that trial court "would properly realign the parties" because "[c]ertain persons with interests comparable to the plaintiffs below had been included as defendants to compel their joinder").

---

[1] *See also United States Fidelity and Guaranty Co. v. A&S Manufacturing Co., Inc.*, 48 F.3d 131, 133 (4th Cir. 1995); *Employers Insurance of Wausau v. Crown Cork and Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987); *American Motorist Insurance Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981); *Peters v. Standard Oil Co. of Texas*, 174 F.2d 162, 163-64 (5th Cir. 1949).

Although Kentucky courts have not outlined the analysis to determine when parties should be realigned, a number of federal courts have applied a "functional test" to determine whether a party's litigation interests are consistent with those of a "plaintiff" or those of a "defendant":

> The plaintiff . . . is the party whose intent to achieve a particular result, such as the recovery of property or money, is the "mainspring of the proceedings," and who is responsible for the continued existence of the action. The party opposing or resisting the claim is the defendant, who may remove.

*General Motors Corp. v. Gunn*, 752 F. Supp. 729, 731 (N.D. Miss. 1990) (quotations omitted); *see also International Tin Council v. Amalgamet Inc.*, 645 F. Supp. 879, 881 (S.D.N.Y. 1986); *Allstate Insurance Co. v. Blankenship*, No. Civ.A. 7:05-194-DCR, 2005 WL 2095679, at *2 (E.D. Ky. Aug. 30, 2005). When there is no Kentucky authority on a specific procedural issue, Kentucky courts often look to federal court decisions that have previously addressed the same issue. *See Sexton v. Bates*, 41 S.W.3d 452, 456 (Ky. Ct. App. 2001).

With this Court's grant of West Chester Medical Center's motion to voluntarily dismiss its Complaint, West Chester Medical Center is only in this case to oppose the claims of the Kramers. Under the "functional test," then, West Chester Medical Center is the "defendant" in this action. By contrast, the Kramers are not defending against any claim by West Chester Medical Center; indeed, they cannot defend against any claim by West Chester Medical Center where West Chester Medical Center's Complaint has been dismissed with prejudice by this Court. The Kramers instead are in this case to pursue their affirmative claims against West Chester Medical Center for damages, or in the words of the "functional test," for "the recovery of . . . money[.]" *Gunn*, 752 F. Supp. at 731. The Kramers are thus the "plaintiffs" in this case, and

3

the caption should be adjusted to reflect the changed litigation interests of the parties after this Court's dismissal of West Chester Medical Center's Complaint.

Realigning the parties also eases the administrative burdens on the Court. There is a high risk of confusion for the Court, the Court's staff, and the public where the party listed as the "plaintiff," is not really the "plaintiff," but is instead defending against the claims of the "defendant," which is the only party in the case with affirmative claims. By realigning the parties, this Court can ensure that each litigant has the proper designation and therefore receives the correct procedural and administrative treatment from this Court as this case proceeds to trial and beyond.

For the foregoing reasons, West Chester Medical Center's motion to realign the parties should be granted, and the caption should be changed to accurately reflect the litigation interests of the parties. A proposed order has been tendered with this motion.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:    (513) 651-6800
FAX:  (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:    (502) 589-5400
FAX:  (502) 581-1087

*Counsel    for    Plaintiff/Counterclaim-*
*Defendant  West  Chester  Medical  Center*
*d/b/a West Chester Hospital, LLC*

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, and electronic mail this 22nd day of July 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:    (859) 341-1881
FAX:  (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:    (859) 578-4444
FAX:  (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff*
*Kelli E. Kramer and Intervening Defendant James*
*Kramer*

FROST BROWN TODD LLC



FILED
BOONE CIRCUIT/DISTRICT COURT
JUL 1 4 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

## COMMONEALTH OF KENTUCKY
## BOONE CIRCUIT COURT
## DIVISION III
## CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

v.

KELLI E. KRAMER                          DEFENDANT AND THIRD-PARTY PLAINTIFF

and

JAMES KRAMER                                          THIRD-PARTY PLAINTIFF

v.

ABUBAKAR ATIQ DURRANI                            THIRD PARTY DEFENDANT

and

UC HEALTH, INC.                                     THIRD PARTY DEFENDANT

* * * * * * * *
## NOTICE – MOTION - ORDER
* * * * * * * *

## NOTICE

Please take notice that counsel for West Chester Medical Center and UC Health will make the following Motion and tender the following Order on Tuesday, July 29, 2014, at 9:00 a.m. before Judge James R. Schrand at the Boone County Justice Center, 6025 Rogers Lane, Burlington, Kentucky 41005.

## MOTION FOR LEAVE TO FILE AMENDED ANSWER *INSTANTER*

Comes West Chester Medical Center and UC Health (collectively, the "Hospital"), and moves this Court for leave to file the attached Amended Answer. In support of this Motion, the Hospital states as follows:

1

## I.    Argument.

As this Court well knows, CR 15.01 states that leave to amend pleadings "shall be freely given when justice so requires."  In this case, justice requires that the Hospital be allowed to amend its answer to include the affirmative defense of lack of personal jurisdiction.

As stated in The Hospital's Reply in Support of West Chester Medical Center and UC Health's Motion to Dismiss for Lack of Personal Jurisdiction, the Hospital acknowledges that it inadvertently omitted the affirmative defense of lack of personal jurisdiction when it filed its original Answer in this matter.  But the Hospital suggests that allowing it to amend its Answer in this instance is justifiable considering the equities at play in this particular case.

In this matter, Mrs. Kramer has been allowed to use a default judgment entered against her two and a half years ago as the vehicle for bringing suit against all of the defendants in this matter.  Before doing so, however, Mrs. Kramer had to have the default judgment entered against her set-aside, which she successfully did in the district court below.  Clearly, if Mrs. Kramer can be excused for her failure to defend a collection action for over two and a half years, the Hospital should be excused for inadvertently failing to include the affirmative defense of lack of personal jurisdiction in its original Answer.  Given the history of this case, to suggest otherwise would be inequitable.

In addition, allowing the Hospital to file the attached Amended Answer would not prejudice Plaintiffs.  Although the affirmative defense was inadvertently not included in the original Answer, the substance of that defense was pled throughout.  Specifically, although the Hospital admitted that UC Health transacts business in Kentucky, it specifically denied that West Chester Hospital regularly avails itself of Boone County courts,[1] denied that it did anything to

---

[1] Answer at ¶ 6.

proactively make representations to Kelli Kramer,[2] and denied all other facts that Plaintiff pled in support of jurisdiction and venue related to West Chester Hospital. In addition, the parties have not engaged in any substantive discovery and the Court has not expended any significant time or energy on this matter. For this reason, parties are frequently entitled to amend their answers in order to set forth grounds for defense that were originally omitted,[3] or even when certain underlying facts were originally admitted by the party defendant.[4]

**II.   Conclusion.**

Under CR 15.01, leave to amend a pleading shall be freely given when justice requires. Mrs. Kramer has already been relieved from a default judgment which was entered over two and half years ago. As a result, it would be inequitable to not allow the Hospital to amend its original answer to include the affirmative defense of lack of personal jurisdiction. As indicated above, granting the relief sought herein would not prejudice Plaintiffs and discovery has not yet begun. Accordingly, the Hospital submits that justice requires that this Court grant the instant motion and allow the Hospital to file the attached Amended Answer.

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

---

[2] Answer at ¶9.
[3] *Holzhauser v. West American Ins. Co.* 772 S.W.2d 650 (Ky.App. 1989).
[4] *Downing v. Bacon* 70 Ky. 680 (Ky. 1871).

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio 45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center and UC Health*

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 14th day of July, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky 41011

*Co-counsel for Kelli E. Kramer and James Kramer*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., LPA
312 Walnut Street, Suite 3100
Cincinnati , Ohio 45202

*Counsel for Abubakar Atiq Durrani, M.D. and Center for Advanced Spinal Technologies, Inc*

And via e-mail to:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

FROST BROWN TODD LLC

Filed

14-CI-00400   07/14/2014          Dianne Murray, Boone Circuit Clerk

7 29

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                         PLAINTIFF

VS.

KELLI E. KRAMER                                      DEFENDANT

## AMENDED NOTICE OF HEARING
[ELECTRONICALLY FILED]

All parties please take notice that the motion for leave to file sur-reply in opposition to

motion for voluntary dismissal, which was filed by Defendant and Third-Party Plaintiff Kelli E.

Kramer and Third-Party Plaintiff James Kramer and was originally scheduled for hearing on July

15, 2014, **will now be heard on July 29, 2014 at 9:00 a.m.,** or as soon thereafter as the parties

may be heard.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:   859-341-1881
Fax No.:     859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:   859-578-4444
Fax No.:     859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

NH : 000001 of 000002

Filed          14-CI-00400    07/14/2014          Dianne Murray, Boone Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-mailed this 14th day of July, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester Medical Center*

/s/ David V. Kramer
David V. Kramer

429180v1

NH : 000002 of 000002

2

Filed          14-CI-00400    07/14/2014          Dianne Murray, Boone Circuit Clerk

**Filed**        14-CI-00400   07/14/2014        Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                    PLAINTIFF

VS.

KELLI E. KRAMER                          DEFENDANT AND
                                         THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                             THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.,             THIRD-PARTY DEFENDANTS
C.A.S.T., INC., AND
UC HEALTH, INC.

## RE-NOTICE OF HEARING ON MOTION TO COMPEL
### [ELECTRONICALLY FILED]

All parties and the Court please take notice that the hearing on motion of Defendant and

Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer to compel Plaintiff

West Chester Medical Center to answer discovery, previously scheduled for June 10, 2014, will

now be heard on July 29, 2014 at 9:00 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

NH : 000001 of 000002

Filed          14-CI-00400    07/14/2014          Dianne Murray, Boone Circuit Clerk



Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:      859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 14th day of July, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*
*and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and*
*Center for Advanced Spine Technologies, Inc.*

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
*Co-Counsel for West Chester*
*Medical Center*

/s/ David V. Kramer
David V. Kramer

428534v1

NH : 000002 of 000002

Filed          14-CI-00400    07/14/2014          Dianne Murray, Boone Circuit Clerk

 

BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

## AMENDED NOTICE OF HEARING

## FILED / ENTERED
7/14/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

eFiled: 7/14/2014 ID: 702
 By: KRAMER, KELLI E
Pages total: 2    Image size: 0.05 MB



Case Number: 14-CI-00400



1

2

2 of 2 thumbnails shown

 

BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**RENOTICE OF HEARING**

eFiled: 7/14/2014 ID: 702
By: KRAMER, KELLI E
Pages total: 2    Image size: 0.10 MB

**FILED / ENTERED**
7/14/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



Case Number: 14-CI-00400

1   2

2 of 2 thumbnails shown



FILED
BOONE CIRCUIT/DISTRICT COURT
JUL 1 0 2014
DIANNE MURRAY, CLERK
BY:_____ JW _____ D.C.

**COMMONWEALTH OF KENTUCKY**
**BOONE DISTRICT COURT**
**CASE NO.** ~~11-C-2056~~
14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

v.

KELLI E. KRAMER                    DEFENDANT AND THIRD-PARTY PLAINTIFF

and

JAMES KRAMER                                    THIRD-PARTY PLAINTIFF

v.

ABUBAKAR ATIQ DURRANI                          THIRD PARTY DEFENDANT

and

UC HEALTH, INC.                                THIRD PARTY DEFENDANT

---

**REPLY IN SUPPORT OF WEST CHESTER MEDICAL CENTER AND UC HEALTH'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

All of Ms. Kramer's arguments for jurisdiction under the long-arm statute relate to activities of Dr. Durrani or UC Health within the Commonwealth. Nowhere does Ms. Kramer allege that West Chester Hospital actually transacts any direct business in the Commonwealth because it does not. Alternatively, Ms. Kramer argues that by filing a collection action in Kentucky, West Chester Hospital has somehow automatically waived any possible defense of lack of personal jurisdiction. But that argument ignores established Kentucky law requiring there to be a nexus between the specific act that might give rise jurisdiction (in this case, the filing of the initial lawsuit for unpaid bills) and the injuries alleged in the counterclaim (in this case, medical malpractice and negligent credentialing). Ms. Kramer's argument is further weakened by this Court's recent ruling allowing the Hospital to voluntarily dismiss its original collection

action against Ms. Kramer so that only her medical malpractice and negligent credentialing claims remain. It is more evident than ever that Ms. Kramer is simply using her failure to pay her bills as a springboard to bring her medical malpractice case – which under any other circumstances would be impermissible in Kentucky – under Kentucky law and in a Kentucky court.

### A.   Plaintiff Still Has Not Presented a Case for Jurisdiction Under the Long-Arm Statute.

Of the nine possible circumstances under which Kentucky may have personal jurisdiction over West Chester Hospital, Ms. Kramer points primarily to KRS 454.210(2)(a)(4). That section states that a Kentucky Court may have jurisdiction over a person who (1) causes tortious injury in the Commonwealth by an act or omission occurring outside the Commonwealth, (2) if that party regularly does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods used or services rendered in the Commonwealth, and (3) the tortious injury must arise from the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

UC Health does business in Kentucky and is registered to do so. Dr. Durrani apparently did the same. West Chester Hospital, on the other hand, does not and never has. Attempting to shoehorn West Chester Hospital into this portion of the long-arm statute, Ms. Kramer refers to the concept that West Chester Hospital engaged in persistent "solicitation or acceptance" of Kentucky residents as patients. But in the very next sentence, she acknowledges that she herself was referred to Dr. Durrani in Kentucky by another Kentucky physician, and that Dr. Durrani scheduled the procedures to occur at West Chester Hospital. The statute requires Ms. Kramer to show solicitation within Kentucky, not acceptance of patients from Kentucky. The fact that West Chester Hospital provided a facility in Ohio for Dr. Durrani to perform surgery is certainly not

2

solicitation. And because West Chester Hospital and Dr. Durrani billed patients separately, the only revenue derived by the West Chester Hospital from Dr. Durrani's patients was a result of services rendered in Ohio – surgeries performed there.

In addition, Kentucky courts have long faced situations such as this and consistently hold that an out-of-state facility is not subject to this provision of the long-arm statute simply by virtue of treating a Kentucky resident. In *Kennedy v. Zeismann*, a Kentucky physician referred a Kentucky resident to an Ohio physician for a medical procedure that occurred in Ohio.[1] Holding that there was no personal jurisdiction, the Court found that "the cause of action against [the physician] did not arise from activities in Kentucky merely because he treated a Kentucky resident in Ohio who then returned to Kentucky."[2] Her cause of action was for medical malpractice that (if it occurred) had occurred in Ohio.

Ms. Kramer continues to improperly and without authority impute the actions of UC Health and Dr. Durrani to West Chester Hospital. Ms. Kramer cannot honestly dispute that West Chester Hospital itself did not solicit business from Kentucky, did not engage in any persistent conduct in Kentucky other than the filing of occasional collection lawsuits related to unpaid bills, and does not derive revenue for services rendered in Kentucky. The fact that UC Health or Dr. Durrani may fit one or more of these categories cannot be imputed to West Chester Hospital. And the fact that West Chester Hospital occasionally provides facilities for treatment of Kentucky residents is not sufficient to invoke personal jurisdiction.

---

[1] 526 F.Supp. 1328 (1981).
[2] *Id.* at 1331.

3



**B.** **Plaintiff's Collection Action Did Not Waive Jurisdictional Issues Because There Is Still No Nexus Between That Action and Ms. Kramer's Counterclaims.**

Ms. Kramer turns to federal law primarily from the 1930s and 1940s to argue the principle that anytime a party files suit in a state, they waive all issues of personal jurisdiction for any and all counterclaims that the initial defendant may wish to allege. But Ms. Kramer ignores the fact that if the legislature had intended for this to be a basis for jurisdiction, they could very simply have included it within the long-arm statue.

More importantly, however, this federal law does not account for the principle of law already articulated by Kentucky courts that there must be some "reasonable and direct nexus" between a party's activity in Kentucky and the claims levied against them levied in order for there to be personal jurisdiction.[3] By filing a lawsuit in Kentucky, a plaintiff does waive issues of personal jurisdiction with regard to any counterclaims that have a "reasonable and direct nexus" between that lawsuit and the defendant's counterclaims. The distinction is really that of a compulsory versus a permissive counterclaim.

A compulsory counterclaim is defined by CR 13.01 as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." By definition, then, a compulsory counterclaim would have a reasonable and direct nexus with the claims alleged in the initial pleading. In such a case, it only makes sense that the plaintiff – by bringing the suit in the first place – must have waived issues of jurisdiction related to his or her claims and any compulsory counterclaims. A permissive counterclaim, on the other hand, is defined as "any claim" that can be asserted against an opposing party that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claims.[4] Again, application of the

---

[3] *Caesar's Riverboat Casino v. Beach*, 336 S.W.3d 51, 58 (Ky. 2011).
[4] CR 13.02.

4

reasonable and direct nexus test makes sense. It does not make sense that a party suing to enforce a contract in the only jurisdiction available thereby automatically waives the question of personal jurisdiction regarding any and all claims that the defendant might be able to dream up.

Here, West Chester Hospital's claim against Ms. Kramer was a contract claim for unpaid bills resulting from surgeries performed at their facility and care provided to her there. Ms. Kramer's counterclaim is a claim of medical malpractice and negligent credentialing relating to the necessity of the surgeries in the first place and their efficacy in resolving her pain. This is a permissive counterclaim and does not have enough of a nexus with West Chester Hospital's initial claims for unpaid bills to constitute a waiver of personal jurisdiction.

Moreover, the Hospital believes that this issue has been resolved now that the Court has permitted the Hospital to dismiss its claims for unpaid bills with prejudice. The Hospital will be seeking realignment of the parties now that the only claims remaining before this Court are Ms. Kramer's claims of medical malpractice and negligent credentialing.

### C.   The Hospital Should be Granted Leave to Amend and Will be Filing a Motion to That Effect Shortly.

The Hospital acknowledges that it inadvertently omitted the defense of personal jurisdiction when it filed its original Answer in this matter. As this Court is aware, amendment should be freely granted when justice so requires.[5] This is especially the case where, as here, the parties have not engaged in any substantive discovery and the Court has not expended any significant time or energy on a matter. For this reason, parties are frequently entitled to amend their answers in order to set forth grounds for defense that were originally omitted,[6] or even when certain underlying facts were originally admitted by the party defendant.[7]

---

[5] Civ. R. 15.01.
[6] *Holzhauser v. West American Ins. Co.* 772 S.W.2d 650 (Ky.App. 1989).
[7] *Downing v. Bacon* 70 Ky. 680 (Ky. 1871).

The Hospital did inadvertently omit a specific and separate portion of its Answer designating a defense of lack of personal jurisdiction. But the substance of that defense was pled throughout the original Answer. Specifically, although the Hospital admitted that UC Health transacts business in Kentucky, it specifically denied that West Chester Hospital regularly avails itself of Boone County courts,[8] denied that it did anything to proactively make representations to Kelli Kramer,[9] and denied all other facts that Plaintiff pled in support of jurisdiction and venue related to West Chester Hospital. Because there is no prejudice to the Plaintiff in allowing this amendment, and because the Hospital pled a lack of personal jurisdiction in the substance of its Answer, the Hospital hopes that the Court will allow it to amend its Answer to make its defense of lack of personal jurisdiction more specific and clear.

Plaintiff further appears to argue that because the amendment, if granted, will not have been granted as a matter of course then the Hospital's defense of personal jurisdiction must be deemed waived. This does not make sense in light of the general rule that when an amended pleading is filed, it completely supercedes the original pleading and in such a way that the original pleading is considered to be abandoned.[10]

### D.   Conclusion.

Plaintiff seeks to bring claims against the Hospital that have no nexus with the claims originally brought by the Hospital against her. And even if it did, those original claims are now extinguished and the Hospital is seeking realignment of the parties because Ms. Kramer's claims are the only ones remaining before the Court. Now that the case is positioned as it should have been from the outset – as a medical malpractice and negligent credentialing claim against Dr. Durrani and the Hospital, it is obvious that this Court is an improper jurisdiction.

---

[8] Answer at ¶ 6.
[9] Answer at ¶9.
[10] *Louisville Taxicab & Transfer Co. v. Johnson*, 311 Ky. 597, 224 SW2d 639 (1949).

And if the Court determines it is a proper jurisdiction, the Hospital will certainly be seeking to have the matter transferred under the doctrine of *forum non conveniens*. The only relationship that this Court has to any issue in this case is that Ms. Kramer lives there. Otherwise, the alleged injuries occurred in Ohio and the medical care provided by Dr. Durrani in Kentucky occurred in Kenton County. There is no sense in Boone County retaining jurisdiction or venue over this case.

Moreover, there is no need for discovery on this issue, and Ms. Kramer has not made any indication of what she would seek to discover regarding jurisdiction in any event. On the facts and circumstances of this case as pled by the parties, it is obvious that Ohio is the only forum with jurisdiction over this matter. Discovery is not to be used as a fishing expedition and the Court need look only to the pleadings – where Plaintiff has not and cannot plead any contacts with the state of Kentucky other than the collections lawsuit that has now been dismissed.

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio 45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center*

7

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 10th day of July, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky  41011

*Co-counsel for Kelli E. Kramer and
James Kramer*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., LPA
312 Walnut Street, Suite 3100
Cincinnati , Ohio 45202

*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spinal Technologies, Inc.*

C:\Users\sdr\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\FU3MU6AJ\Kramer v Durrani - Reply in Support of Motion to Dismiss - 4825-3017-6540 1.doc

8



**Filed**      14-CI-00400  07/09/2014          Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                              PLAINTIFF

VS.

KELLI E. KRAMER                        DEFENDANT AND
                                       THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                           THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.            THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

### NOTICE OF ELECTION TO EFFECTUATE
### AND RECEIVE SERVICE VIA ELECTRONIC MEANS
### [ELECTRONICALLY FILED]

Come now Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer, by and through counsel, and provide notice pursuant to Rule 5.02(2) of the Kentucky Rules of Civil Procedure of their election to effectuate and receive service in this action via electronic means. The following are the electronic notification addresses at which counsel for Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer agree to accept service:

dkramer@dbllaw.com

rmclane@dbllaw.com

pschachter@pschachter.com

Respectfully submitted,

NO : 000001 of 000002

Filed       14-CI-00400  07/09/2014       Dianne Murray, Boone Circuit Clerk

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
              rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 9th day of July, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

426859v1

2

NO : 000002 of 000002

BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**NOTICE OF ELECTION OF ELECTRONIC SERVICE**

eFiled: 7/9/2014 ID: 664
By: KRAMER, KELLI E
Pages total: 2    Image size: 0.10 MB

Case Number: 14-CI-00400

**FILED / ENTERED**
7/9/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

1    2

2 of 2 thumbnails shown

 



### COMMONWEALTH OF KENTUCKY
### BOONE CIRCUIT COURT
### DIVISION III
### CASE NO. 14-CI-00400

WEST CHESTER MEDICAL CENTER                          **PLAINTIFF**

VS.

KELLI E. KRAMER                              **DEFENDANT AND**
                                    **THIRD-PARTY PLAINTIFF**
AND

JAMES KRAMER                          **THIRD-PARTY PLAINTIFF**

VS.

ABUBAKAR ATIQ DURRANI, M.D.

AND

UC HEALTH, INC.                          **THIRD-PARTY DEFENDANTS**

### ORDER

This matter came before the Court on June 24, 2014 on the Motion to Voluntarily Dismiss Complaint in Accordance with CR 41.01(2) by Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC. The parties appeared through counsel. The Court having reviewed the file, read the memorandums filed by the parties, heard argument of counsel and being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** the Plaintiff's Motion is **GRANTED.**

DATED this ___27___ day of June 2014.

                              _____
                              JAMES R. SCHRAND, JUDGE
                              BOONE CIRCUIT COURT

COPIES TO:   ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit Court, thereby certify that I have mailed a copy of the foregoing order and notice to all parties hereto at their last known addresses or their counsel of record
This ___2___ day of ___July___, 2014
                              DIANNE MURRAY
                              BOONE DISTRICT/CIRCUIT COURT

Filed

7-15-14

14-CI-00400   06/27/2014          Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                          PLAINTIFF

VS.

KELLI E. KRAMER                           DEFENDANT AND
                                          THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                              THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.               THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

## MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO MOTION FOR VOLUNTARY DISMISSAL

Come now the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer (collectively, "Movants"), by and through counsel, and respectfully move this Court for an Order granting them leave to file the attached Sur-Reply in Opposition to Motion for Voluntary Dismissal.

Mr. and Mrs. Kramer received Plaintiff West Chester Medical Center's ("WCMC") Reply in Support of its Motion for Voluntary Dismissal in the mail on June 25, 2014. That was the day after the hearing on these matters. Mr. and Mrs. Kramer respectfully request leave to file their Sur-Reply, so they may have an opportunity to address certain erroneous issues and quite frankly inflammatory arguments asserted in WCMC's Reply and sprung on them without

advance notice at the hearing of this Motion.  The tendered Sur-Reply in Opposition to WCMC's

Motion for Voluntary Dismissal and a proposed order are attached.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:        859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

MOT : 000002 of 000003

Filed          14-CI-00400   06/27/2014          Dianne Murray, Boone Circuit Clerk

## NOTICE

Please take notice that the foregoing will come on for hearing on July 15, 2014, at 9:00 a.m., or as soon thereafter as counsel may be heard.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 27th day of June, 2014, to the following

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

3

BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

## MOTION FOR LEAVE TO FILE SUR-REPLY

eFiled: 6/27/2014 ID: 528
  By: KRAMER, KELLI E
Pages total: 3    Image size: 0.11 MB

FILED / ENTERED
6/27/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400

---

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CASE NO. 14-CI-00

WEST CHESTER MEDICAL CENTER,                                    PLAINTIFF

VS

KELLIE KRAMER                                    DEFENDANT AND
                                                 THIRD PARTY PLAINTIFF
AND

JAMES KRAMER                                    THIRD PARTY PLAINTIFF

VS

SHERRAYAH ATIQ MEDRARI, MD                      THIRD PARTY DEFENDANTS

AND

C/O HOUSE ETC

## MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO MOTION FOR VOLUNTARY DISMISSAL

Come now the Defendant and Third Party Plaintiff, Kelli E. Kramer and James Kramer by counsel respectfully move the Court for an Order granting them leave to file the attached Sur-Reply in Opposition to Motion for Voluntary Dismissal...

3 of 3 thumbnails shown

Filed Case: 2:13-cv-00204-DLB-CJS   Doc #: 6-4   Filed: 12/11/13   Page: 2 of 2 - Page ID#: 179   Dianne Murray, Boone Circuit Clerk

Case: 2:13-cv-00187-WOB-CJS   Doc #: 8   Filed: 10/23/13   Page: 1 of 1 - Page ID#: 71

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 2013-187

WESTCHESTER MEDICAL CENTER                          PLAINTIFF

VS.                                    <u>ORDER</u>

MONA EDER, ET AL.                                   DEFENDANTS

The Court has examined the record in this matter, and, notwithstanding the caption placed on the Notice of Removal by the removing parties, West Chester Medical Center and UC Health, Inc., it appears from the attached state court record that these parties are not, in fact, defendants in the underlying state court action.  These parties thus may not remove the action to this Court.  *See* 28 U.S.C. § 1441(a).

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that this case be, and is hereby, **REMANDED TO THE BOONE CIRCUIT COURT.**

This 23rd day of October, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

Ex. A




BOONE

## CI 14-CI-00400
WEST CHESTER MEDICAL CENTER,
KRAMER, KELLI

## EX. A TO SUR-REPLY

eFiled: 6/27/2014 ID: 528
By: KRAMER, KELLI E
Pages total: 1    Image size: 0.09 MB

**FILED / ENTERED**
6/27/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



Case Number: 14-CI-00400



Ex. A

1

1 of 1 thumbnails shown

Filed      14-CI-00400    06/23/2014      Dianne Murray, Boone Circuit Clerk



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

FILED
BOONE CIRCUIT/DISTRICT COURT
JUN 2 3 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

WEST CHESTER MEDICAL CENTER                                                    PLAINTIFF

VS.

KELLI E. KRAMER                                    DEFENDANT AND
                                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                       THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                        THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

**RESPONSE OF KELLI AND JAMES KRAMER IN OPPOSITION
TO WEST CHESTER MEDICAL CENTER AND UC HEALTH'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION
[ELECTRONICALLY FILED]**

Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James
Kramer state as follows for their Response in Opposition to Plaintiff West Chester Medical
Center and UC Health's Motion to Dismiss for lack of personal jurisdiction.

**MEMORANDUM IN OPPOSITION**

**I.      INTRODUCTION**

Plaintiff West Chester Medical Center's ("WCMC") and Third-Party Defendant UC
Health's Motion to Dismiss for Lack of Personal Jurisdiction should be denied, primarily for the
reason that both parties have waived the right to raise the defense of lack of personal jurisdiction
in this action. WCMC in fact waived its right twice, first by filing this suit in a Boone County
state court and voluntarily submitting to this Court's jurisdiction, and then by failing to raise the

RES : 000001 of 000011

Filed          14-CI-00400     06/23/2014          Dianne Murray, Boone Circuit Clerk

defense in its Answer. WCMC's corporate parent UC Health joined in the Answer and thereby also waived its right to raise the defense. Even assuming *arguendo* that WCMC and UC Health had not waived the defense of lack of personal jurisdiction, such jurisdiction nevertheless is proper under the Kentucky Civil Rules, long-arm statute, and federal due process standards.

Should this Court be persuaded by WCMC and UC Health that it might or does not have personal jurisdiction over WCMC and UC Health notwithstanding the authority presented herein, Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer respectfully request that the Court first grant limited discovery on the subject of personal jurisdiction in order that the parties may establish a more complete record on the issue.

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

WCMC initiated the present action in July 2011 in Boone District Court for collection of hospital charges against Kelli Kramer. (Counterclaim at ¶5) As WCMC and UC Health state in their Motion to Dismiss, much of the care she received that is the subject of her Counterclaim was provided in Kentucky by Third-Party Defendant Dr. Abubakar Durrani. (Counterclaim at ¶14-35) WCMC regularly solicits or accepts Kentucky patients like Ms. Kramer who are seen by its employed or credentialed physicians, and UC Health, WCMC's corporate parent, has significant operations in Kentucky, including offices in Boone County, where it has another medical facility under construction. (Counterclaim ¶8) On May 14, 2014, WCMC and UC Health filed an Answer to Defendant's Counterclaims, omitting any defense that this Court lacked personal jurisdiction.

## III.   WEST CHESTER MEDICAL CENTER WAIVED ITS ABILITY TO CONTEST PERSONAL JURISDICTION AS TO THE COUNTERCLAIM BY FILING SUIT IN KENTUCKY

RES : 000002 of 000011

Filed      14-CI-00400   06/23/2014      Dianne Murray, Boone Circuit Clerk

It appears that no Kentucky court has spoken on the issue of a court's personal jurisdiction over a plaintiff for a defendant's counterclaim. However, "[i]t is well established that Kentucky courts rely upon federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010). The issue of personal jurisdiction with respect to counterclaims involves Civil Rule 12 (concerning raising it as an affirmative defense and its waiver) and Civil Rule 13 (concerning the ability – and in cases of compulsory counterclaims, the obligation – of a defendant to plead counterclaims in the action brought by the plaintiff). The language of Fed. R. Civ. P. 12 and 13 are nearly identical to their Kentucky counterparts. Thus, the federal courts' analysis may be relied on by this Court, since no Kentucky cases address the issue.

The Supreme Court of the United States held in *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932), that a party bringing suit in a district court submits itself to the jurisdiction of the court "with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." The Supreme Court subsequently acknowledged the ability of state courts to adopt the same rule, reasoning that "[t]he plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence." *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (cited approvingly by *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 473 (1985)).

Many federal courts since *Leman* have stated versions of the same rule. The rule as formulated by a federal district court in the Sixth Circuit, as well as numerous district courts from other federal circuits, is that a plaintiff that files suit in a district court "subjects itself to the

RES : 000003 of 000011

Filed      14-CI-00400   06/23/2014      Dianne Murray, Boone Circuit Clerk

jurisdiction of [the] Court in respect to all possible grounds of counterclaim." *Rubsam v. Harley C. Loney Co.*, 86 F. Supp. 350, 352 (E.D. Mich. 1949). *See also Depew v. Sec'y of Treasury*, 1995 WL 776925 (D. Colo. 1995) (denying motion to quash counterclaim, stating, *"[i]t is elementary* that one who invokes the jurisdiction of the Court by filing suit becomes subject to the Court's jurisdiction with respect to any counterclaim filed by the opposing party") (emphasis added); *Star Brit Distrib., Inc. v. Gavin*, 746 F. Supp. 633, 636 (N.D. Miss. 1990); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 286 F. Supp. 62, 65 (N.D. Ill. 1968); *Stewart-Warner Corp. v. Universal Lubricating Sys.*, 29 F. Supp. 846, 847 (W.D. Pa. 1939). As set forth above, this is an "elementary" rule.

By filing its collection claim in Boone County, WCMC submitted itself to the jurisdiction of Boone County courts with respect to any possible counterclaims later filed. *Rubsam*, 86 F. Supp. at 352. WCMC voluntarily chose to pursue its claims in a Kentucky court, thereby acknowledging this Court's jurisdiction to adjudicate its claim, and cannot now aver that the same court has no jurisdiction over it with regard to a counterclaim in the same action. *Id.*

## IV. WEST CHESTER MEDICAL CENTER AND UC HEALTH WAIVED THEIR ABILITY TO OBJECT TO PERSONAL JURISDICTION BY NOT RAISING IT AS AN AFFIRMATIVE DEFENSE IN THEIR ANSWER

Kentucky CR 12.08(1) states that "[a] defense of lack of jurisdiction over the person . . . is waived . . . (b) if it is neither made by motion under Rule 12 nor included in a responsive pleading or an amendment thereof permitted by Rule 15.01 to be made as a matter of course." WCMC and UC Health filed no motion under Rule 12 prior to their Answer to Mr. and Mrs. Kramer's Counterclaim and Third-Party claim, and in their Answer failed to plead the affirmative defense of lack of personal jurisdiction. Nor may they amend their Answer at this time to include the affirmative defense, since the time has passed during which they could have

RES : 000004 of 000011

4

Filed        14-CI-00400   06/23/2014              Dianne Murray, Boone Circuit Clerk

amended their Answer *as a matter of course*. In this regard, CR 15.01 states that "[a] party may amend his pleading *once as a matter of course* at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been place upon the trial calendar, he may so amend it at *any time within 20 days after it is served.*" *Id.* (emphasis added). Because the pleading in this case is an Answer, and because this action has not been placed upon the trial calendar, WCMC and UC Health could have amended their Answer as a matter of course to include a defense of lack of personal jurisdiction only within twenty days from the day it was filed, May 14, 2014, i.e., on or before June 3, 2014. (The Motion to Dismiss itself was not filed until June 10, 2014, and of course the Motion does not seek to amend the Answer filed by WCMC and UC Health.) Since these 20 days have expired, WCMC and UC Health no longer have the option to amend their Answer as a matter of course, and therefore they have waived their ability to assert the affirmative defense of lack of personal jurisdiction.

## V.   KENTUCKY DOES HAVE PERSONAL JURISDICTION OVER WEST CHESTER HOSPITAL AND UC HEALTH.

### A.   The Kentucky Long-Arm Statute Does Grant Jurisdiction

#### 1.   Plaintiffs' Argument Against Personal Jurisdiction is Flawed

Plaintiffs argue in their Motion to Dismiss that the only fact Ms. Kramer has alleged to support jurisdiction over WCMC is its collection claims against Kentucky residents. They argue that this mere fact is not enough to support personal jurisdiction over WCMC in Kentucky. This argument is false for two reasons. First, the mere fact that WCMC "occasionally seeks to collect unpaid amounts from Kentucky residents" (Motion to Dismiss at 4) is more than sufficient to establish personal jurisdiction over WCMC in Kentucky, since one of these collection actions led to this suit, and by bringing it, WCMC waived its right to object to personal jurisdiction in this

RES : 000005 of 000011

5

Filed          14-CI-00400   06/23/2014               Dianne Murray, Boone Circuit Clerk

forum. If this were the *only* collection action WCMC had ever filed in Kentucky, nevertheless it would suffice to guarantee this court's jurisdiction. Secondly, while it is true that in support of jurisdiction Ms. Kramer alleged that WCMC "has regularly availed itself of Boone County courts for collection of charges from patients" including her, yet other facts alleged in the Counterclaim also support personal jurisdiction in Kentucky over WCMC, as is shown below. (Counterclaim at ¶6)

### 2.    Personal Jurisdiction is Proper Over UC Health and WCMC

The Kentucky Supreme Court has established a two-step process for determining whether a court has personal jurisdiction over a non-resident party. *Caesers Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). A court must first determine whether it has personal jurisdiction according to the Kentucky long-arm statute, KRS 454.210. *Id.* Should it conclude that it has jurisdiction under the statute, it must then determine whether its exercise of jurisdiction will offend the non-resident party's federal due process rights. *Id.*

KRS 454.210 grants jurisdiction over non-resident defendants if the claim before the court arises from one of nine enumerated categories of actions engaged in by the defendant. KRS 454.210(2)(a)(1)-(9). Ms. Kramer's claim before this Court arises out of actions of UC Health and West Chester Hospital which do in fact fall into one or more of the enumerated categories.

The fourth statutory category is:

> Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he [the non-resident party] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

RES : 000006 of 000011

Filed          14-CI-00400   06/23/2014               Dianne Murray, Boone Circuit Clerk

Filed        14-CI-00400   06/23/2014           Dianne Murray, Boone Circuit Clerk

KRS 454.210(2)(a)(4). WCMC, and UC Health as its parent corporation, engaged in a persistent course of conduct in the Commonwealth, from which, upon information and belief, it has derived substantial revenue, consisting of the regular solicitation or acceptance by referral of Kentucky residents as patients of Dr. Durrani at WCMC. UC Health and WCMC knew that Dr. Durrani saw patients at his Kentucky office, knew that Dr. Durrani would be working them up for surgery at WCMC in his Kentucky office, and knew that they would be profiting from these transactions.

That many of the hundreds of other cases pending against WCMC and Dr. Durrani arose out of torts committed on patients who are residents of Kentucky demonstrates the regularity and persistence of this solicitation or acceptance of Kentucky patients. Furthermore, Ms. Kramer's counterclaims and third-party complaint arise directly out of one instance of this solicitation or acceptance of Kentucky patients. Ms. Kramer was referred to Dr. Durrani by her primary care doctor in Kentucky and was then seen in Kentucky by Dr. Durrani, who scheduled at least three of the four surgical procedures at issue herein from his Kentucky office. Thus, it was as the direct and proximate result of the negligent credentialing, retention, and supervision of Dr. Durrani by WCMC and UC Health, that he committed various torts against her in his Kentucky offices and also at WCMC. (Counterclaim passim) WCMC and UC Health's acts or omissions in Ohio – their negligent hiring, supervision, and credentialing practices, etc. – were the direct and proximate cause of Ms. Kramer's tortious injuries in Kentucky, which arose out of WCMC and UC Health's persistent course of conduct and derivation of substantial revenue from Kentucky. Therefore, there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Caesar's Riverboat*, 336 S.W.2d at 58. In fact, the present case is the textbook example of a factual scenario satisfying

Filed           14-CI-00400   06/23/2014           Dianne Murray, Boone Circuit Clerk

RES : 000007 of 000011

Filed    14-CI-00400    06/23/2014    Dianne Murray, Boone Circuit Clerk

subpart (2)(a)(4) of the long-arm statute: acts or omissions by the hospital administrators in Ohio, transactions arranged in and profits derived from Kentucky, all giving rise to tortious injury in Ohio *and Kentucky* to a Kentucky resident.

Ms. Kramer's claims not only satisfy a category for which jurisdiction is proper under the Kentucky long-arm statute, but they also comport with federal standards of due process since this Court may exercise both general and specific jurisdiction over WCMC and UC Health.

"General jurisdiction exists when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" *Aristech Chem. Int'l Ltd. V. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627-28 (6th Cir. 1998) (citations omitted). Not only does WCMC engage in the regular solicitation or acceptance by referral of patients in Kentucky and file collection lawsuits in Kentucky courts, but UC Health further continuously and systematically solicits business and provides services in Kentucky, including in offices in Boone County, Kentucky, where it is also currently building a new medical facility. (Counterclaim ¶8)

Specific jurisdiction exists when the action arises out of or is related to the defendant's "'certain minimum contacts' with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (citations omitted). The test to determine the limits of specific jurisdiction as formulated by the Sixth Circuit states:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

RES : 000008 of 000011

8

Filed          14-CI-00400   06/23/2014          Dianne Murray, Boone Circuit Clerk

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012).

As stated above, WCMC and UC Health regularly and persistently solicited or accepted patients here, and in the case of UC Health, systematically and continuously conducted business and treated patients *in Kentucky*. Ms. Kramer's claims arise in part out of these actions, as shown above, and for this reason, as well as the fact that so many other Kentucky residents have been treated by UC Health *in Kentucky*, and so many WCMC patients (including Mrs. Kramer) have been worked up by Dr. Durrani in Kentucky for surgery at WCMC, it is perfectly reasonable for this Court to exercise jurisdiction over these parties, even if their waivers of the affirmative defense of personal jurisdiction and the initiation of the present litigation in Kentucky by WCMC were not sufficient bases to deny the Motion.

Finally, the long-arm statute contains a "catch-all" provision that the statute does not preclude the exercise of personal jurisdiction where it is authorized by other statutes or the Kentucky Civil Rules:

> A court of this Commonwealth may exercise jurisdiction on any other basis authorized in the Kentucky Revised Statutes or by the Rules of Civil Procedure, notwithstanding this section.

KRS 454.210(5). The Civil Rules should be deemed to provide jurisdiction under the federal case law interpreting Fed. R. Civ. P. 12 and 13, which establish that a plaintiff submits itself to a court's jurisdiction for a counterclaim by filing a lawsuit in that court. *See supra* at Sections III and IV. Additionally, the text of CR 13.01 and 13.02 itself provides personal jurisdiction by pointedly stating that a party must (for compulsory counterclaims) and may (for permissive counterclaims) bring a counterclaim against the plaintiff. *Id.* Jurisdiction is authorized by those Civil Rules, thus the long-arm statute may not take it away. *See* KRS 454.210(5).

RES : 000009 of 000011

Filed          14-CI-00400   06/23/2014          Dianne Murray, Boone Circuit Clerk

Filed   14-CI-00400   06/23/2014   Dianne Murray, Boone Circuit Clerk



## VI.   CONCLUSION.

For the foregoing reasons, Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer respectfully ask this Court to deny the motion of Plaintiff West Chester Medical Center and Third-Party Defendant UC Health to dismiss Mr. and Mrs. Kramer's claims against them.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:     859-341-1469
e-mail address: dkramer@dbllaw.com
            rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:     859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-mailed this 23rd day of June, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100

10

RES : 000010 of 000011

Filed  14-CI-00400  06/23/2014  Dianne Murray, Boone Circuit Clerk

Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center
and UC Health*

Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and
Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

424703v3

11

RES : 000011 of 000011

Public Relations Office: (513) 584-8865media@uchealth.com

**MEDIA CONTACT**
Dama Ewbank
(513) 558-4519
(513) 348-8085

**NEXT POST**
Kenter Named Among
'Top 28' North American
Shoulder Surgeons

**PREVIOUS POST**
Comprehensive health
evaluation in just one
day

**SHARE**

# UC Health Breaks Ground at New Florence Location

October 31, 2013

Cincinnati–Oct. 31, 2013–UC Health today broke ground at what's to become a new outpatient medical office building in Florence, Ky.

The two-story facility--nearly 42,000 square feet--will be located at 58 Cavalier Blvd., with convenient access from Interstates 71/75.

The site is expected to be complete in July 2014 and is being designed and constructed by Al. Neyer LLC.

UC Health already has orthopaedics and dermatology practices in Northern Kentucky. Those practices will remain open in their current locations (Southgate and Florence) during construction of the new location, but will move to the new Cavalier Blvd. facility upon its completion in July.

The new facility will also allow UC Health to add services in Northern Kentucky. The Cavalier Blvd. office will serve as another one of UC Health's primary care centers (one of eight opening or relocating in 2014-15), and will also include specialty practices in cardiology, endocrinology, neurology and obstetrics and gynecology.

Peter Iacobell, vice president of strategic planning/development for University of Cincinnati Physicians and UC Health, says the expansion in Florence is part of UC Health's comprehensive strategy to grow where there is an increasing need for access to quality health care.

"Access is a top system priority, so our expansion plan focuses on enhancing access to quality health care--both in terms of geography and specialty care--for patients throughout the Tristate," Iacobell says.

UC Health is working with Cincinnati-based Al. Neyer LLC. to design and construct the space, which will have easy access to parking and an open interior.

"We are the leading developer for medical office space in Greater Cincinnati, and we are committed to delivering a state-of-the-art building for UC Health," said Jim Neyer, executive vice president. "Our design-build method gives us the edge when defining the project scope and committing to cost early in the process. This greatly benefits UC Health as we are able to move on this project sooner."

Chris Vollmer, SIOR, and Chris Vollmer Jr., members of the Colliers International Healthcare Services Practice Group, represented UC Health in this transaction.

*###*

*About UC Health*

*UC Health, the University of Cincinnati's affiliated health system, includes UC Medical Center, ranked one of the best hospitals in the region by U.S. News & World Report; West Chester Hospital, one of Cincinnati's newest hospitals and the recipient of the 2012 HealthGrades® Outstanding Patient Experience Award\*, ranking it above 90 percent of hospitals nationally for patient satisfaction; Drake Center, Cincinnati's premier provider of long-term acute care; University of Cincinnati Physicians, Cincinnati's largest multi-specialty practice group with more than 700 board-certified clinicians and surgeons; Lindner Center of HOPE, the region's premier mental health center; and several institutes focusing on the areas of cancer, the neurosciences, cardiovascular and diabetes. To learn more, visit UCHealth.com.*

This entry was posted in Press Releases. Bookmark the permalink. Both comments and trackbacks are currently closed.

©2014 UC Health. All rights reserved.



EXHIBIT
A

EXH : 000001 of 000001




BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**EXHIBIT A**

eFiled: 6/20/2014 ID: 488
By: KRAMER, KELLI E
Pages total: 1    Image size: 0.36 MB

FILED / ENTERED
6/20/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400



1

1 of 1 thumbnails shown

Filed C Health to build in Northern Kentucky 06/20/2014 Cincinnati Business Murray, Boone Circuit Clerk    Page 1 of 1

**From the Cincinnati Business Courier**
**:http://www.bizjournals.com/cincinnati/blog/2013/04/uc-health-to-build-in-northern-kentucky.html**

Apr 19, 2013, 2:56pm EDT Updated: Apr 19, 2013, 3:15pm EDT

# UC Health to build in Northern Kentucky



James Ritchie
    Staff Reporter- *Cincinnati Business Courier*
    Email | Twitter | LinkedIn

A Northern Kentucky office building is part of expansion plans for **University of Cincinnati Physicians**.

Dr. Myles Pensak, CEO of the group, said this week that the structure, to be constructed just off Interstate 75, might eventually be expanded into an ambulatory surgery center.

Pensak announced the plans in a speech updating progress at the 700-doctor **UC Physicians**. There's a UC video of his talk here.

In a slideshow, Pensak showed a site plan for proposed buildings on Cavalier Drive in Florence. He did not reveal other details except to say the surgery center could happen in the "non-too-distant future."

Other expansion opportunities, he said, are being explored on Cincinnati's West Side, in the Tri-County area and in Trenton.

The multispecialty practice is working to improve efficiency and customer service, he told a crowd of 150.

"The key for our continued growth is going to be how we distinguish ourselves, how we comport ourselves as an organization," Pensak said. "Are we patient-centric? Do we provide the very best quality care by whatever metrics you choose to measure quality?"

UC Health, the parent of UC Physicians, is also seeking to provide emergency response services in Northern Kentucky, as I reported March 26.

    Ritchie covers Procter & Gamble Co. and health care.

EXHIBIT

*B*

EXH.: 000001 of 000001

| | |
|---|---|
| BOONE<br><br>## CI 14-CI-00400<br>WEST CHESTER MEDICAL CENTER,<br>KRAMER,KELLI<br><br>**EXHIBIT B**<br><br><br>eFiled: 6/20/2014 ID: 488<br>  By: KRAMER, KELLI E<br>Pages total: 1    Image size: 0.41 MB | **FILED / ENTERED**<br>6/20/2014<br>BOONE<br>Dianne Murray, Boone Circuit Clerk<br>BY: _____ D.C. |

Case Number: 14-CI-00400

---



From the Cincinnati Business Courier
:http://www.bizjournals.com/cincinnati/blog/2013/04/uc-health-to-build-in-northern-kentucky.html

Apr 19, 2013, 2:56pm EDT Updated: Apr 19, 2013, 3:15pm EDT

### UC Health to build in Northern Kentucky

James Ritchie
Staff Reporter- Cincinnati Business Courier

A Northern Kentucky office building is part of expansion plans for University of Cincinnati Physicians.

Dr. James Pancoe, CEO of the group, said this week that the structure, to be constructed just off Interstate 75, might eventually be expanded into an ambulatory surgery center.

Pancoe announced the plans in a speech updating progress at the 700-doctor UC Physicians.

In a slideshow, Pancoe showed a site plan for proposed buildings on Cavalier Drive in Florence. He did not reveal other details except to say the surgery center could happen in the "not-too-distant future."

Other expansion opportunities, he said, are being explored on Cincinnati's West Side, in the Tri County area and in Trenton.

The multispecialty practice is working to improve efficiency and customer service, he told a crowd of 150.

"The key for our continued growth is going to be how we distinguish ourselves, how we compare ourselves as an organization," Pancoe said. "Are we patient-centric? Do we provide the very best quality care by whatever metrics you choose to measure quality?"

UC Health, the parent of UC Physicians, is also seeking to provide emergency room services in Northern Kentucky, as I reported March 26.

Ritchie covers Procter & Gamble Co. and health care.

1

1 of 1 thumbnails shown

News & Events- Beacon Orthopaedics and Sports Medicine, Cincinnati, Ohio    Page 1 of 1

· Pay Online  · Employment Opportunities  · Contact Us    **513-354-3700**
848-773-4353

Why Beacon    Physicians    Preventative Care    Services    Locations    What Hurts?



Whats New
In the News
Events

News > Whats New

## Northern Kentucky Ribbon Cutting!

10/14/2015 10:45:43 AM

Yesterday evening, Beacon employees, physicians, members of the Northern Kentucky Chamber of Commerce and members of the community gathered at 600 Rodeo Drive for our grand opening! It was fantastic to see the community support of our newest location. Thank you everyone for attending!



Follow us on:    Schedule an appointment today.    Home / Why Beacon / Physicians / Preventative Care
Services / Locations / What Hurts?
**513-354-3700**
888-773-4353    Copyright © 2005-2014, Beacon Orthopaedics
Privacy Policy

EXHIBIT

EXH : 000001 of 000001




| | |
|---|---|
| **BOONE**<br><br>**CI 14-CI-00400**<br>WEST CHESTER MEDICAL CENTER,<br>KRAMER, KELLI<br><br>**EXHIBIT C**<br><br><br>eFiled: 6/20/2014 ID: 488<br>  By: KRAMER, KELLI E<br>Pages total: 1    Image size: 0.29 MB | **FILED / ENTERED**<br>6/20/2014<br>BOONE<br>Dianne Murray, Boone Circuit Clerk<br>BY: _____ D.C. |

Case Number: 14-CI-00400





513-354-3700



1 of 1 thumbnails shown

Filed   Christ Hospital medical office building to jump-start Dr... Dianne Murray, Boone Circuit Clerk..   Page 1 of 2

From the Cincinnati Business Courier
:http://www.bizjournals.com/cincinnati/news/2014/01/23/christ-hospital-medical-office.html

Jan 23, 2014, 6:36pm EST

# Christ Hospital medical office building to jump-start Drawbridge Inn redevelopment



Tom Demeropolis
Reporter- *Cincinnati Business Courier*
Email | Twitter | Google+ | LinkedIn

The **Christ Hospital** purchased about 21 acres of land in Northern Kentucky for a new medical office building that will be part of a larger mixed-use development at the home of the former Drawbridge Inn in Fort Mitchell.

Christ Hospital plans to build a 75,000-square-foot medical office building at the site, which will be part of a larger mixed-use project that will be led by Bellevue-based **Brandicorp**.

"The former Drawbridge Inn site presents an exceptional opportunity for us to expand our presence in Northern Kentucky and provide more choice and access for consumers," said Mike Keating, President and CEO of The Christ Hospital Health Network..

"Brandicorp shares with the city of Fort Mitchell a vision to create a vibrant community with residential, retail and medical office uses at the southern gateway into Cincinnati," Michael Brandy, CEO of Brandicorp. "Having The Christ Hospital Health Network serve as the anchor tenant for this site is a tremendous jump-start to the project."

Details of the development haven't been finalized.

Christ Hospital paid $3.65 million for a 5.75-acre parcel that was the home of the former Oldenberg Brewing Co., according to property records. Officials with Christ Hospital did not disclose the purchase price of the Drawbridge Inn site. Property records show the Drawbridge property was purchased by Buttermilk Pike Land Co. LLC for $5.5 million in November.

EXHIBIT
D

EXH : 000001 of 000002

Filed Christ Hospital medical office building to jump-start Drawbridge mixed-development Cin... Page 2 of 2
Filed 14-CI-00400 06/20/2014 Dianne Murray, Boone Circuit Clerk

An affiliate of **Neyer Properties Inc.**, 400 Buttermilk Pike LLC, acquired the Oldenberg property in September, rebranding it as Buttermilk Square. The Neyer Properties affiliate purchased it for $2.25 million. Christ Hospital purchased that 5.75-acre parcel in early January.

Neyer Properties demolished the great hall of the former Oldenberg Brewing Co., while keeping the existing Montgomery Inn restaurant on the site.

Chris Dobrozsi, director of real estate development for Evanston-based Neyer Properties, confirmed the sale. But Neyer Properties did retain a one-acre outlot along Buttermilk Pike, with plans to develop for service retail or a restaurant. More than 24,000 cars per day drive past the site, according to Neyer Properties.

Demeropolis covers real estate, retail and restaurants.

EXH : 000002 of 000002




BOONE

# CI 14-CI-00400
WEST CHESTER MEDICAL CENTER, KRAMER,KELLI

**EXHIBIT D**

eFiled: 6/20/2014 ID: 488
By: KRAMER, KELLI E
Pages total: 2    Image size: 0.45 MB

**FILED / ENTERED**
6/20/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.

Case Number: 14-CI-00400

From the Cincinnati Business Courier
(http://www.bizjournals.com/cincinnati/news/2014/01/23/christ-hospital-medical-office.html)

Jan 23, 2014, 6:36pm EST

## Christ Hospital medical office building to jump-start Drawbridge Inn redevelopment

Tom Demeropolis
Reporter- Cincinnati Business Courier
Email | Twitter | Google+ | LinkedIn

The Christ Hospital purchased about 21 acres of land in Northern Kentucky for a new medical office building that will be part of a larger mixed-use development at the home of the former Drawbridge Inn in Fort Mitchell.

Christ Hospital plans to build a 75,000-square-foot medical office building at the site, which will be part of a larger mixed-use project that will be led by Bellevue-based Brandicorp.

"The former Drawbridge Inn site presents an exceptional opportunity for us to expand our presence in Northern Kentucky and provide more choice and access for consumers," said Mike Keating, President and CEO of The Christ Hospital Health Network.

"Brandicorp shares with the city of Fort Mitchell a vision to create a vibrant community with residential, retail and medical office uses at the southern gateway into Cincinnati," Michael Rawnsley, CEO of Brandicorp, "Having The Christ Hospital Health Network serve as the anchor tenant for this site is a tremendous jump start to the project."

Details of the development haven't been finalized.

Christ Hospital paid $1.65 million for a 3.75-acre parcel that was the home of the former Oldenberg Brewing Co., according to property records. Officials with Christ Hospital did not disclose the purchase price of the Drawbridge Inn site. Property records show the Drawbridge property was purchased by Buttermilk Pike Land Co. LLC for $5.1 million in November.



EXHIBIT
D



1          2

2 of 2 thumbnails shown

Filed    14-CI-00400   06/20/2014    Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                    PLAINTIFF

VS.

KELLI E. KRAMER                    DEFENDANT AND
                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                    THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                    THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

## REPLY OF KELLI AND JAMES KRAMER
## IN SUPPORT OF THEIR MOTION TO COMPEL
### [ELECTRONICALLY FILED]

Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer (collectively, "Movants") state as follows for their Reply in Support of their Motion to Compel Plaintiff West Chester Medical Center ("WCMC") to produce full, complete, and non-evasive answers to Movants' interrogatories and requests for production of documents propounded on Plaintiff West Chester Medical Center.

WCMC goes to great lengths in its Response in attempting to avoid clear legal authority and public policy in Kentucky holding that an Ohio hospital's peer review and similar information is discoverable in a Kentucky medical negligence action. The obvious purpose of WCMC's strained efforts is to conceal the most direct evidence in support of Movants' claims against WCMC and its parent UC Health. Hiding this evidence would directly contravene

RPL : 000001 of 000009

Filed        14-CI-00400      06/20/2014           Dianne Murray, Boone Circuit Clerk

"Kentucky's long-standing precedent deeming peer review documents to be discoverable in medical malpractice actions" as well as the Supreme Court's statement that "the intent and purpose [of the Kentucky peer review law] is not to hinder an aggrieved patient's search for the truth in a medical malpractice suit against a negligent physician or hospital." *Saleba v. Schrand*, 300 S.W.3d 177, 183 (Ky. 2009) (internal quotations and citation omitted).   The Kentucky Supreme Court has already held that this Court was "clearly justified in applying Kentucky law" to order an Ohio hospital's peer and quality review information to be produced in a similar case. *Id.* There is no reason to abandon this principle in the present case and no reason to permit WCMC to "hinder an aggrieved patient's search for the truth." *Id.*

In *Saleba*, a Kentucky resident saw a Kentucky physician who performed a pap smear at his Kentucky office. *Id.* at 178.  The pap smear specimen was sent to Good Samaritan Hospital in Cincinnati and interpreted by a cytotechnologist there as being negative for cervical cancer. *Id.* Five years later, the patient died of cervical cancer. *Saleba*, 300 S.W.3d at 179.  The plaintiff filed suit in the Boone Circuit Court alleging that the cytotechnologist at Good Samaritan had negligently misread the specimen. *Id.* The negligent act occurred in Ohio. The plaintiff sought discovery of Good Samaritan's peer and quality review of the cytotechnologist, and the hospital resisted. This Division of this honorable Court ordered production of the peer and quality review, holding that Kentucky law, not Ohio's peer review privilege, applied to the case. *Id.* at 179.  The Court of Appeals denied the hospital's petition for writ of prohibition to prevent the trial court from compelling production of the documents and information, and the Supreme Court affirmed the ruling. *Id.* at 180.

In *Saleba*, our Supreme Court stated: "[a]pplying this rule to the case at hand, we again conclude that there is no special reason to warrant ignoring Kentucky's policy of permitting peer

RPL : 000002 of 000009

2

Filed        14-CI-00400   06/20/2014        Dianne Murray, Boone Circuit Clerk

review documents to be discoverable in medical malpractice suits." *Id.* at 182.  Notwithstanding, WCMC has proffered reasons in its Response why this Court should "ignore Kentucky's policy of permitting peer review documents to be discoverable in medical malpractice suits." *Id.* Movants will address and rebut each of WCMC's reasons asking this Court to ignore Kentucky's policy and law and to permit WCMC to hide highly relevant evidence in this case.

First, WCMC states that "the Kentucky Supreme Court emphasized the fact that the Kentucky resident in *Saleba* sought treatment from a Kentucky physician and had no say or even advance notice of the fact that her lab tests would be analyzed by an Ohio lab." (Response at 6) That statement is not accurate. The Supreme Court did not "emphasize" that point, and it had no bearing on the Court's holding. *See id.* at 182. Instead, it was mentioned in passing as a contrast to Ohio's more significant relationship to the peer review. *Id.* at 182-83.  The Supreme Court in *Saleba* actually acknowledged that Ohio had the most significant relationship with the peer review, but nevertheless applied Kentucky law under Kentucky's choice of law jurisprudence. *Id.* at 182-83.[1]

WCMC argues that Mrs. Kramer "certainly should have known that Ohio law would govern any eventual lawsuit." (Response at 7) This argument is highly flawed. First, it is far from "certain" that Mrs. Kramer, a layperson, should or would know that Ohio law would apply to this lawsuit. She has no law degree nor any knowledge whatsoever of the complexities of

---

[1] The passage to which WCMC refers states:  "*Although* Soard—a Kentucky resident who saw a Kentucky physician and who had no control over her lab results being sent by a Kentucky laboratory to an Ohio hospital—arguably has a significant interest in the peer review communications, Ohio does appear to have the more significant relationship with the peer review documents: an Ohio healthcare provider was the subject of the documents, and they were generated in Ohio by an Ohio hospital. *However, as the Restatement explains, even if Ohio had the more significant relationship, a special reason must still exist before a Kentucky court will apply another state's law excluding evidence when Kentucky law plainly favors admission.*" *Id.* (emphasis added).

Filed        14-CI-00400   06/20/2014        Dianne Murray, Boone Circuit Clerk

RPL : 000003 of 000009

Filed          14-CI-00400      06/20/2014          Dianne Murray, Boone Circuit Clerk

choice of law jurisprudence. Even more importantly, WCMC's reasoning is circular and its underlying premise is false because Ohio law does not apply to this lawsuit. Mrs. Kramer "certainly" cannot be expected to know something that is in fact not true. The most recent case law arising out of Mrs. Kramer's home judicial circuit and affirmed by Kentucky's highest court holds that Ohio law does not apply. On the contrary, due to the *Saleba* opinion and extensive other authorities cited therein, (to paraphrase WCMC's argument) it is WCMC that "certainly should have known that [*Kentucky*] law (particularly with respect to peer review) would govern any lawsuit" it filed against Mrs. Kramer in a Kentucky state court. It chose to file here anyway.

WCMC next argues that Mrs. Kramer should not receive the protections of Kentucky law because "she did not pay her bills and thereby forced West Chester Hospital to purse [sic] judgment against her in Kentucky." (Response at 7) Here again, it seems that Mrs. Kramer was right, where WCMC was wrong. First, she has no obligation to pay bills for care that is revealed to be negligent, tortious, and/or medically unnecessary. Moreover, the financial hardships of Mrs. Kramer were in large part caused by the negligent and disabling care rendered by WCMC and Dr. Durrani. This is the same negligent care for which WCMC greedily pursued garnishment of wages as late as early 2014, more than six months after Dr. Durrani had fled the jurisdiction to avoid justice to patients such as Mrs. Kramer. Of course, Mrs. Kramer did not "force" WCMC to sue her, and in fact the hospital has since tried to dismiss its suit (albeit in order to forum shop, not for altruistic reasons). Finally, from a purely legal perspective, WCMC's strange, "blame-the-victim" arguments about Mrs. Kramer not paying its bills is irrelevant to the choice of law question resolved by *Saleba*.

Next, WCMC argues that applying Kentucky law to Kentucky medical negligence suits against Ohio hospitals will have a "chilling effect on the willingness of Ohio medical facilities

RPL : 000004 of 000009

Filed          14-CI-00400      06/20/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400     06/20/2014          Dianne Murray, Boone Circuit Clerk

and physicians to provide treatment to Kentucky residents." (Response at 7) This misplaced policy argument should be rejected out of hand. Many Ohio medical providers, including but not limited to UC Health, Christ Hospital, and Beacon Orthopedics,[2] etc., have been rushing to build new offices and facilities in Kentucky and have been vigorously pursuing business in Kentucky in the years since the Kentucky Supreme Court's opinion in *Saleba* in 2009. (*See* UC Health Press Release October 31, 2013, "UC Health Breaks Ground at New Florence Location,"[3] attached as **Exhibit A**; *see also*, Cincinnati Business Courier Article April 19, 2013, "UC Health to Build in Northern Kentucky," attached as **Exhibit B**; Beacon Orthopedics Press Release, October 16, 2013, "Northern Kentucky Ribbon Cutting," attached as **Exhibit C**; Cincinnati Business Courier Article January 23, 2013, "Christ Hospital Medical Office Building to Jump-Start Drawbridge Inn Redevelopment," attached as **Exhibit D**.) These Ohio-based providers have opened offices and facilities in Kentucky since then and regularly market to and accept Kentucky patients.[4] There is no evidence to suggest that *Saleba* or this Court's ruling will drive away Ohio medical facilities and doctors associated with them from Kentucky.

Next, WCMC argues that the many other suits pending in Ohio over WCMC's and Dr. Durrani's misconduct should constitute a "special reason" to ignore Kentucky law and policy in its own courts. (Response at 7) WCMC goes on to argue that forcing the hospital to produce the Peer Review in this Kentucky case "will give this Plaintiff [Mrs. Kramer] access to documents

---

[2] Beacon Orthopedics is a leading Cincinnati, Ohio orthopedic and sports medicine group headed by Cincinnati Reds team physician, Dr. Timothy Kremchek, who coincidentally has been an officer of the Medical Staff at WCMC.

[3] Please also note the "About UC Health" section in the Press Release, which includes the statement: "UC Health . . . includes . . . West Chester Hospital." (Ex. A)

[4] Perhaps, on the other hand, if Kentucky residents were aware that Ohio-based health-care facilities, like West Chester Hospital, will try to sweep evidence of the misdeeds of their credentialed physicians, like Dr. Durrani, under the rug, Kentucky residents would elect to seek treatment with different health-care providers. But again the point that WCMC and UC Health attempt to make on this issue is rebutted by the facts.

Filed          14-CI-00400     06/20/2014          Dianne Murray, Boone Circuit Clerk

RPL : 000005 of 000009

Filed        14-CI-00400     06/20/2014        Dianne Murray, Boone Circuit Clerk

that none of those other plaintiffs . . . will  have access to." (*Id.*)  That is the point of the

Kentucky law and policy – Mrs. Kramer should have access to evidence (i.e., the truth) against

WCMC and Dr. Durrani.  WCMC is essentially asking this Court to restrict Mrs. Kramer's right

to evidence based on the pervasiveness of the medical negligence cases filed against it in another

jurisdiction.  This backwards argument should be rejected.

Not only are WCMC's arguments in this regard not "special reasons" to ignore Kentucky

policy and law, but they are irrelevant to this Court's choice-of-law decision.  If anything, the

fact that several hundred other cases exist against WCMC and Dr. Durrani actually support the

discoverability and importance of the Peer Review. That is, right under the nose of WCMC, with

its support, and possibly in collusion with it, Dr. Durrani was performing hundreds if not

thousands of unnecessary and negligent spinal surgeries. Notably, Ohio cases require affidavits

of merit from physicians in order to file suit. Thus, the "approximately 290" cases against

WCMC in Ohio are all supported by affidavits of merit. These facts further establish the

likelihood of negligent credentialing, aiding and abetting, and civil conspiracy evidence in

possession of WCMC.  Under Kentucky law, Mrs. Kramer should be able to discover that

evidence.

WCMC goes on to argue that the Court should not follow Kentucky law because then

Ohio plaintiffs may gain access to the Peer Review. (*Id.*)  While Movants have no intent to

distribute the Peer Review to Ohio plaintiffs, the admissibility of such evidence in Ohio trials is

an issue for Ohio courts. In other words, even if Ohio plaintiffs "gain access" to the Peer Review,

it will be for their trial courts to determine whether it may be used in their trials. This should

have no bearing on this Court's application of Kentucky law. Moreover, if this Court is

RPL : 000006 of 000009

Filed        14-CI-00400     06/20/2014        Dianne Murray, Boone Circuit Clerk

Filed      14-CI-00400   06/20/2014          Dianne Murray, Boone Circuit Clerk

concerned with this argument, it is easily remedied through entry of a protective order making the Peer Review confidential until trial and for use in this case only.

Next, WCMC argues that "unlike the Plaintiff in *Saleba*, no peer review was ever performed relative to Mrs. Kramer."[5] (Response at 8)  This argument is fallacious for at least two reasons.  First, this Court in *Saleba* ordered production of *all* of the hospital's peer and quality review information related to the defendant cytotechnologist, Karen Saleba—not just reviews of the care provided to the plaintiff in that case. *Saleba*, 300 S.W.3d at 179. Thus, WCMC's argument finds no support in *Saleba*. Second, while peer and quality review of Mrs. Kramer's care would be relevant to her claims, *all* reviews of Dr. Durrani prior to and during his course of treatment of Mrs. Kramer would also be directly relevant to her claim of negligent credentialing. It will show what WCMC knew or should have known about the risk Dr. Durrani posed to patients and the extent and thoroughness of its credentialing of him, and will bear upon whether it was proper to continue allowing him privileges at the hospital, including during the 37 months in which he performed four spinal fusion procedures on her.

Finally, WCMC argues that "forcing the Hospital to produce any other peer review documents" could require it to violate other patients' HIPAA privacy. (Response at 8)  This is a total non-issue, as WCMC certainly may redact any personal identifying information of any other patients from the peer and quality review materials. This procedure of redaction is routinely done in Kentucky, where hospitals must produce peer review, and HIPAA privacy is

---

[5] WCMC bases this on an equivocal statement in an affidavit from one hospital administrator who does not even appear to be part of the committees performing the peer and quality review: "*To the best of my knowledge*, the Hospital never performed a peer review or any treatment provided to Kelli E. Kramer." (Aff. of P. Hawk at ¶ 22 (emphasis added)) From Ms. Hawk's own affidavit, it appears that others are in a better position to have knowledge of the peer review of Dr. Durrani. Further, her statement also gives rise to the question of why WCMC performed no such review.

RPL : 000007 of 000009

Filed      14-CI-00400   06/20/2014      Dianne Murray, Boone Circuit Clerk

protected.  In *Saleba*, this Court ordered the hospital to redact personal identifying information in the peer and quality review.  *Id.*, 300 S.W.3d at 179.  There is no reason to believe that the same procedure would fail to protect the privacy of other patients' personal health information here.

For the foregoing reasons, and those set forth in their Motion to Compel, Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer respectfully ask this Court to order full, complete, and non-evasive responses to their written discovery, particularly those seeking the Peer Review, as set forth in the proposed order submitted with their Motion.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-mailed this 20th day of June, 2014, to the following:

8

RPL : 000008 of 000009

Filed          14-CI-00400      06/20/2014          Dianne Murray, Boone Circuit Clerk

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*
*and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and*
*Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

424705v2

RPL : 000009 of 000009

Filed          14-CI-00400      06/20/2014          Dianne Murray, Boone Circuit Clerk




BOONE

# CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**REPLY IN SUPPORT OF MOTION TO COMPEL**

eFiled: 6/20/2014 ID: 488
By: KRAMER, KELLI E
Pages total: 9     Image size: 0.50 MB

FILED / ENTERED
6/20/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



Case Number: 14-CI-00400

|  | 1 |  | 2 |  | 3 |
|---|---|---|---|---|---|
|  | 4 |  | 5 |  | 6 |
|  | 7 |  | 8 |  | 9 |

9 of 9 thumbnails shown

FILED
BOONE CIRCUIT/DISTRICT COURT
JUN 2 0 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

**COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 14-CI-00400**

WEST CHESTER MEDICAL CENTER
d/b/a WEST CHESTER HOSPITAL, LLC

**PLAINTIFF/
COUNTERCLAIM-DEFENDANT**

v.

KELLI E. KRAMER

**DEFENDANT/
COUNTERCLAIM-PLAINTIFF/**

JAMES KRAMER

**INTERVENING DEFENDANT/
COUNTERCLAIM-PLAINTIFF**

and

JAMES KRAMER
KELLI E. KRAMER

**THIRD-PLAINTIFF PLAINTIFFS**

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

**THIRD-PARTY DEFENDANTS**

## REPLY IN SUPPORT OF PLAINTIFF/COUNTERCLAIM-DEFENDANT WEST CHESTER MEDICAL CENTER D/B/A WEST CHESTER HOSPITAL, LLC'S VOLUNTARY MOTION TO DISMISS

In their 14-page Response to Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC's 4-page motion for voluntary dismissal, Defendants/Counterclaim-Plaintiffs Kelli E. Kramer and James Kramer seek to complicate a very simple issue. In its motion, West Chester Medical Center moved to voluntarily dismiss the collections action it filed against Mrs. Kramer nearly three years ago, on July 20, 2011. Mrs. Kramer never responded to that suit and this Court entered a default judgment against her. That default judgment set undisturbed for three years. Now, because she believes she has a legal claim against West Chester Medical Center, her and her husband want to use this proceeding –

the same proceeding she *ignored three years ago* – to keep West Chester Medical Center from exercising its right to voluntarily dismiss its collections action and possibly removing this action to federal court.

In doing so, Ms. Kramer essentially seeks two things. First, she seeks to manipulate and profit from her indifference toward this Court three years ago to force West Chester Medical Center to litigate a claim it has no interest in litigating and forego its statutory right of removal. Second, she seeks an exception and preferential treatment for her claims. In a virtually identical case, this Court entered an Order allowing West Chester Medical Center to voluntarily dismiss its claim and realign the parties. And if this Court allowed dismissal in a prior case, it should allow it here: Ms. Kramer should be subject to the same treatment and procedural rulings as any other litigant with Dr. Durrani-related claims against West Chester Medical Center.

## ARGUMENT

**I.    West Chester Medical Center should be permitted to dismiss its collections action and seek realignment of the parties for purposes of removal in accordance with this Court's past decisions and federal case law.**

In their Response, the Kramers first contend that West Chester Medical Center's motion for voluntary dismissal should be denied because it is engaging in forum-shopping. In support of this contention, the Kramers rely upon a number of unsubstantiated assumptions about West Chester Medical Center's future litigation tactics, which are subject to change as this litigation proceeds. And while the Kramers describe West Chester Medical Center's intent to voluntarily dismiss the Complaint and seek realignment in derogatory terms, they omit that several federal courts as well as this Court have endorsed the precise procedural path West Chester Medical Center seeks to walk down in this case. *See, e.g., Passmore v. Discover Bank*, No. 1:11-CV-01347, 2012 WL 2332233, at * 1 (N.D. Ohio June 14, 2012); *see also Hrivnak v. NCO Portfolio*

*Management, Inc.*, 723 F. Supp. 2d 1020, 1028 (N.D. Ohio 2010); *cf. Crump v. Wal-Mart Group Health Plan*, 925 F. Supp. 1214, 1220 (W.D. Ky. 1996) (reviewing third-party complaint and noting that grounds for removal on diversity jurisdiction arose when the state court severed a cross-claim and realigned the parties).

This Court in *West Chester Medical Center v. Eder*, Case No. 13-CI-01028 (Boone Cir. Ct. July 25, 2013), allowed West Chester Medical Center to voluntarily dismiss its collections action against the defendant and realign the parties.[1] The facts in *Eder* are virtually the same as those in this case. In *Eder*, this Court entered default judgment against Eder after she failed to respond to West Chester Medical Center's complaint. [Ex. A.] After evidence emerged of Dr. Durrani's alleged Medicare billing fraud, Eder moved for leave to file an answer and counterclaim and to vacate the default judgment. [*Id.*] This Court granted those motions. [*Id.*] In response, West Chester Medical Center moved to voluntarily dismiss its complaint and for realignment of the parties. [*Id.*] This Court agreed and granted the motions. [*Id.*]

Since this Court allowed dismissal and realignment in *Eder*, it should do so in this case. The Kramers are in a position no different from the defendant in *Eder*. Yet the Kramers believe they are exempt from *Eder* and the related federal cases based on a misreading of CR 41.01(2). They say that CR 41.01(2) prohibits this Court from allowing voluntary dismissal because this Court would supposedly lose jurisdiction over their counterclaims through removal. [Def.'s Resp. at 7.] But the text of CR 41.02(2) does not support this assertion, nor does case law.

CR 41.01(2) states that an action "shall not be dismissed against the defendant's objection **unless the counterclaim can remain pending for independent adjudication by the court.**" CR 41.01(2) (emphasis added). The Kramers have already conceded that their counterclaims could have been pleaded as an independent action before this Court. [Def.'s Mot.

---

[1] The relevant pleadings in *Eder* are collectively attached as Exhibit A.

to Set Aside Default J. at 1.]    In their motion to set aside the default judgment, the Kramers stated that they would pursue their claims through either "an original Complaint or by the . . . Answer, Counterclaim and Third-Party Complaint" filed in this case.  [Def.'s Mot. To Set Aside Default J. at 1.]    In doing so, the Kramers admitted that their counterclaims could be independently adjudicated by this Court, notwithstanding West Chester Medical Center's collection action.  They cannot now backtrack on their earlier arguments before this Court.  The fact that this Court allowed the Kramers to assert a counter-claim after vacating the default judgment rather than requiring them to initiate a new lawsuit which would have avoided these procedural wranglings should not now entitle the Kramers to special treatment while at the same time denying West Chester Hospital its statutory rights.

The text of CR 41.02(2) also does not support the Kramers' position because the Rule says nothing about removal.  CR 41.02(2).  But even if the Kramers were correct that the intended purpose of CR 41.02(2) is to prevent removal, then the Rule is unconstitutional under the Supremacy Clause.  *Burton v. Werner Co.*, 335 F. Supp. 2d 734, 735-36 (N.D. Miss. 2004). Indeed, CR 41.02(2), as a state procedural rule, cannot be construed in a way to prevent removal, a right granted by federal statute.  *See Action Auto Stores, Inc. v. United Capitol Insurance Co.*, No. 5:91-CV-32, 1992 WL 21203, at *2 (W.D. Mich. Jan. 13, 1992) ("The Supreme Court has determined that a state's procedure cannot control the privilege of removal granted by federal statute."); *see also General Motors Corp. v. Gunn*, 752 F. Supp. 729, 730 (N.D. Miss. 1990). Thus, neither state nor federal authority supports the Kramers' reading of CR 41.01(2) as it relates to this Court's jurisdiction and removal.

II.    **West Chester Medical Center seeks to dismiss its collections action with prejudice and will not seek to reinstate its claims against Ms. Kramer in another forum.**

The Kramers next argue that West Chester Medical Center's motion for voluntary dismissal should be denied because it "intends to" assert its collection action in another forum. [Def.'s Resp. at 8.] That is wrong; in fact, the proposed order that West Chester Medical Center tendered with its motion to dismiss made clear that it desires to dismiss its collections action *with prejudice*. West Chester Medical Center made its position equally clear in its motion. [Pl.'s Mot. to Dismiss at 3.] West Chester Medical Center does not dispute that a dismissal with prejudice under CR 41.01 operates as an adjudication on the merits. CR 41.01(1). The Kramers simply try to refute an argument that West Chester Medical Center itself has never made.

III.   **The Kramers are the 'true' plaintiffs in this case and should not be able to use their counterclaims to preclude West Chester Medical Center's right to statutory removal as a 'true' defendant.**

The Kramers rely upon *Buchanan County v. Equitable Production Co.*, 788 F. Supp. 2d 497 (W.D. Va. 2011), for the proposition that when a court considers a motion for voluntary dismissal, the court must focus on protecting the defendant's interests. [Def.'s Resp. at 9.] But that argument assumes the Kramers are the actual defendants in this case. They are not. As a number of federal courts have held, when determining a party's status as a "plaintiff" or "defendant," a court should apply a "functional test":

> The plaintiff . . . is the party whose intent to achieve a particular result, such as the recovery of property or money, is the "mainspring of the proceedings," and who is responsible for the continued existence of the action. The party opposing or resisting the claim is the defendant, who may remove.

*Gunn*, 752 F. Supp. 2d at 731 (quoting *Stude*, 346 U.S. at 579-80); *see also International Tin Council v. Amalgamet Inc.*, 645 F. Supp. 879, 881 (S.D.N.Y. 1986); *Allstate Insurance Co. v. Blankenship*, No. Civ.A. 7:05-194-DCR, 2005 WL 2095679, at *2 (E.D. Ky. Aug. 30, 2005).

5

Kentucky law is generally consistent with the "functional test" applied by federal courts. *See Field v. Evans*, 675 S.W.2d 3, 4 (Ky. Ct. App. 1983) (noting that "[c]ertain persons with interests comparable to the plaintiff below had been included as defendants," and that "it was anticipated that . . . the [c]ourt would properly realign the parties"); *cf. Padget v. Steinbrecher*, 355 S.W.3d 457, 460 (Ky. Ct. App. 2011) (noting that the "substance of the pleading" should be "examine[d] . . . to determine its nature").

The Kramers' interests in this litigation are more compatible with those of plaintiffs. They seek to recover money damages from West Chester Medical Center primarily for negligence, among other things. West Chester Medical Center has no interest in pursuing its collections action and is in this case merely to defend against the Kramers' counterclaims. Thus, under the "functional test" adopted by the federal courts and generally accepted under Kentucky law, the Kramers' interest in recovering damages make them the true "plaintiffs" in this case, and West Chester Medical Center, which opposes the Kramers' claims, the true "defendant."

But to the extent the Kramers rely upon *Buchanan*, they quote the case out of context. *Buchanan* is a case in which the plaintiff sought to voluntarily dismiss its claims so it could refile in state court and prevent removal. *Buchanan*, 788 F. Supp. 2d at 499. The plaintiff in *Buchanan* filed a motion for voluntary dismissal after the district court denied its initial motion to remand to state court after removal. *Id.* Assuming the district court granted its motion for voluntary dismissal, the plaintiff intended to refile the action in state court and add non-diverse defendants to destroy diversity jurisdiction and the possibility of future removal. *Id.* The district court denied the motion for voluntary dismissal, partially due to the fact that if the case was remanded to the state court, the defendant would be prejudiced by having to again litigate the propriety of any future efforts to remove. *Id.* at 501.

The real issue in *Buchanan*, then, was whether a litigant could engage in procedural gamesmanship to frustrate the defendant's statutory right to remove. That is precisely what the Kramers intended to do by filing their counterclaim in this Court – a counterclaim that they acknowledged could have been filed and adjudicated separately from West Chester Medical Center's collection action. As noted above, had the Kramers filed their counterclaims as a separate action, West Chester Medical Center would have undoubtedly been able to remove on the basis of diversity jurisdiction. The Kramers are Kentucky citizens while West Chester Medical Center is an Ohio corporation. [Def.'s Resp. at 9; *see also* Def.'s Counterclaim at ¶¶ 1, 4.] Aware of that fact, the Kramers made a conscious decision to file their counterclaims to prevent West Chester Medical Center from exercising its statutory right to removal. The district court in *Buchanan* criticized the use of procedural tactics to avoid the possibility of removal, and thus, when read correctly, actually supports West Chester Medical Center, not the Kramers.[2]

## IV. Conditions on West Chester Medical Center's voluntary dismissal are unwarranted.

The Kramers ask this Court to impose conditions on West Chester Medical Center if the motion to voluntarily dismiss the collections action is granted. The Court should reject the Kramers' request. By seeking voluntary dismissal and realignment of the parties with the intent to remove, West Chester Medical Center is doing nothing but following a procedural roadmap approved by several federal courts. *Passmore*, at *1; *Hrivnak*, 723 F. Supp. 2d at 1028; *cf. Crump*, 925 F. Supp. at 1220. While the Kramers contend that they would be disadvantaged in

---

[2] The other cases cited by the Kramers either support West Chester Medical Center or are distinguishable. In *Donner v. Alcoa, Inc.*, 709 F.3d 694, 695 (8th Cir. 2013), the Eighth Circuit affirmed the denial of a voluntary motion to dismiss intended to destroy diversity jurisdiction and force a remand to state court. The district court in *Donner* had also entered an order disposing of much of the plaintiff's legal claims, so the case remanding to state court made no sense and substantially prejudiced the defendant. *See id.* at 699. In *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 950 (8th Cir. 1999), Eighth Circuit affirmed the decision of a district court to deny voluntary dismissal by the plaintiff after the court had ruled upon the defendant's motion for summary judgment.

discovery, this disadvantage would only occur because the Kramers tried to manipulate and use West Chester Medical Center's collections action to avoid removal and a potential transfer of this case to Ohio in the first place. Had the Kramers properly filed this case as an independent action in this Court, they would be in the same position they are now. But for the fact that Kramer ignored this Court's proceedings in the initial action there would have been no counter-claim to file and they would not have the "advantage" that they now claim will become a disadvantage through proper voluntary dismissal of this claim.

Simply stated, the Kramers will suffer no prejudice if this Court declines to impose conditions on West Chester Medical Center's voluntary dismissal.

## CONCLUSION

For the foregoing reasons, West Chester Medical Center's motion to voluntarily dismiss its Complaint should be granted.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:    (513) 651-6800
FAX:  (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:    (502) 589-5400
FAX:  (502) 581-1087

*Counsel for Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC*



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, this 20th day of June 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:    (859) 341-1881
FAX:  (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:    (859) 578-4444
FAX:  (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff
Kelli E. Kramer and Intervening Defendant James
Kramer*

Frost Brown Todd LLC

 

FILED
BOONE CIRCUIT/DISTRICT COURT
OCT 17 2013
DIANNE MURRAY, CLERK
BY:_____ D.C.

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**THIRD DIVISION**
**CASE NO. 13-CI-1028**

WEST CHESTER MEDICAL CENTER                    PLAINTIFF

    **v.**

                                       DEFENDANT

MONA EDER

---

### MOTION FOR VOLUNTARY DISMISSAL AND REALIGNMENT

---

### NOTICE

Please take notice that the undersigned, on the **29th day of October, 2013 at 9:00 a.m.** in the courtroom of the above Court, will make the Motion and tender the Order set out below.

### MOTION

Pursuant to Rule 41.01(2) of the Kentucky Rules of Civil Procedure, West Chester Medical Center voluntarily moves this Court to dismiss its claims asserted against Mona Eder.

Furthermore, with the voluntary dismissal of West Chester Medical Center's claims, the only remaining claims in this action are those asserted by Mona Eder against West Chester Medical Center, and Third-Party Defendants UC Health, Inc., Dr. Atiq Durrani, and the Center for Advanced Spine Technologies, Inc. As such, West Chester Medical Center hereby moves the Court for an order of realignment of parties, establishing Mona Eder as Plaintiff, and West Chester Medical Center, UC Health, Inc., Dr. Atiq Durrani, and the Center for Advanced Spine Technologies, Inc., as Defendants.



EXHIBIT
A



kwiktag®    064 909 079

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 13-CI-01028

ENTERED
BOONE CIRCUIT/DISTRICT COURT
OCT 3 1 2013
DIANNE MURRAY, CLERK
BY:_____D.C.

**PLAINTIFF**

**WEST CHESTER MEDICAL CENTER**

**VS.**

**DEFENDANT**

**MONA EDER**

## ORDER

West Chester Medical Center, having moved this Court for an Order allowing its voluntary dismissal of its claims asserted against Mona Eder, and the Court having heard arguments of counsel for their positions, and the Court being duly advised does, therefore, pursuant to Rule 41.01(2) of the Kentucky Rules of Civil Procedure, and its discretionary powers, order as follows:

West Chester Medical Center's claims against Mona Eder are hereby **DISMISSED** and the parties are realigned with Mona Eder as Plaintiff, and West Chester as Defendant.

ORDERED this 30 day of October 2013.

_____
JAMES R. SCHRAND, JUDGE
BOONE CIRCUIT COURT

CC: ALL ATTORNEYS AND PARTIES OF RECORD

CERTIFICATE
I, DIANNE MURRAY, clerk of the District/Circuit
Court ... ... ... ... that I have ... ... a copy of the
fore ... ... ... ... ... ... to all parties hereto at
their last known ... ... ... or their counsel of record
This _31_ day of _Octo_____, 2013.
DIANNE MURRAY, DISTRICT/CIRCUIT COURT
_____ D.C.



FILED
BOONE CIRCUIT/DISTRICT COURT
JUN 1 6 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                 PLAINTIFF

VS.

KELLI E. KRAMER                                            DEFENDANT

## AMENDED NOTICE OF HEARING

All parties please take notice that the motion to compel production of discovery which was filed by Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer and was originally scheduled for hearing on June 10, 2014, **will now be heard on June 24, 2014 at 9:00 a.m.,** or as soon thereafter as the parties may be heard. This hearing is being re-noticed at the request of counsel for Defendants West Chester Medical Center and U.C. Health.

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:   859-341-1881
Fax No.:   859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:   859-578-4444
Fax No.:   859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this
_16th_ day of _____, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com\
COUNSEL FOR DEFENDANTS
WEST CHESTER MEDICAL CENTER
AND U.C. HEALTH

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net
CO-COUNSEL FOR WEST CHESTER
MEDICAL CENTER

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co. L.P.A.
312 Walnut Street, Suite 3100
Cincinnati, OH45202
Phone: (513) 421-6630
mlyon@lindhorstlaw.com
COUNSEL FOR ABUBAKAR ATIQ DURRANI, M.D.,
AND C.A.S.T., INC.

_____
David V. Kramer

425344v1

2

# COMMONWEALTH OF KENTUCKY
## BOONE CIRCUIT COURT
## DIVISION III
## CASE NO. 14-CI-00400



**WEST CHESTER MEDICAL CENTER**                                   **PLAINTIFF**

**V.**

**KELLY KRAMER**                                                 **DEFENDANT**

## ORDER

This matter came before the Court on June 10, 2014 on Defendant's Motion to Compel. There were no appearances. The Court being in all ways sufficiently advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that the Defendant's Motion to Compel is **DENIED**.

DATED THIS _____12th_____ DAY OF JUNE 2014.

                                        _____
                                        **JAMES R. SCHRAND, JUDGE**
                                        **BOONE CIRCUIT COURT**

CC.  ALL ATTORNEYS AND PARTIES OF RECORD

Filed        14-CI-00400    06/11/2014        Dianne Murray, Boone Circuit Clerk



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                  DEFENDANT AND
                                                 THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                     THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.              THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

### RESPONSE OF KELLI AND JAMES KRAMER IN OPPOSITION TO WEST CHESTER MEDICAL CENTER'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE [ELECTRONICALLY FILED]

Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer state as follows for their Response in Opposition to Plaintiff West Chester Medical Center's Motion for Voluntary Dismissal. (A separate Response will be filed to the Motion to Dismiss for Lack of Jurisdiction that was received by the undersigned on June 10, 2014.)

### MEMORANDUM IN OPPOSITION

### I.    INTRODUCTION

Now that it suits its designs, Plaintiff West Chester Medical Center ("WCMC") has reversed course with respect to its collections action against Mrs. Kramer for medical expenses arising from one of Dr. Durrani's tortious surgeries performed on her. WCMC pursued collection of these expenses, and just recently – in January 2014, seven months after Dr. Durrani fled the

Filed        14-CI-00400    06/11/2014        Dianne Murray, Boone Circuit Clerk

RES : 000001 of 000014

Filed      14-CI-00400   06/11/2014        Dianne Murray, Boone Circuit Clerk

country to evade responsibility for performing unnecessary and fraudulent procedures on patients such as Mrs. Kramer – actually garnished Mrs. Kramer's wages for hospital charges[1] for one of Dr. Durrani's surgeries on her, and then resisted Mrs. Kramer's attempt to seek relief from the default judgment on that claim. It did all this in Boone County. After Dr. Durrani's misdeeds were exposed and he fled the United States, Mrs. Kramer consulted legal counsel and medical experts, thereby uncovering the tortious conduct Dr. Durrani and WCMC perpetrated against her. If she had not done so, presumably WCMC would still be garnishing her wages for a wrongful surgery performed by a fugitive.

With its tortious conduct brought to light, WCMC now seeks to abandon its attempts to collect hospital charges from Mrs. Kramer, with prejudice.  However, its request to dismiss the collection claim is hardly altruistic. Rather, WCMC seeks to dismiss its collections claim as step one in an multi-step ploy[2] to avoid discovery obligations in Kentucky[3] and to shop for a different choice-of-law for itself by ultimately moving the case to Ohio, where state law is more favorable

---

[1] Since then, WCMC has returned to Mrs. Kramer the wages it garnished from her for the second surgery done on her by Dr. Durrani.

[2] As the undersigned counsel understood from a phone conference with WCMC's counsel, WCMC's plan is to try to move (i.e., forum-shop) the present case into Ohio. **Step one**: WCMC dismisses its claim against Mrs. Kramer. **Step two**: WCMC moves for realignment of the parties, thus ostensibly enabling it to remove the case to federal court (though the case should not be removable in any event since WCMC initially selected the forum). **Step three**: Once removed to the U.S. District Court, Eastern District of Kentucky, WCMC will then move to transfer to the Southern District of Ohio under a (misguided) *forum non conveniens* argument. This is presumably the course WCMC intends to pursue to obtain more favorable law to it than the present forum. Notably, WCMC essentially admits in its Motion that it has engaged in at least part of this strategy in another Boone County action related to another patient of Dr. Durrani, *Eder v. West Chester Medical Center*, Boone Cir. No. 13-CI-1028. (Motion at 4 n. 2), which is now pending on a motion to remand from U.S.D.C., E.D. Ky.  WCMC has more recently tried to shortcut this process by filing a meritless CR 12 motion to dismiss – to dismiss what is in essence a compulsory counterclaim – on jurisdictional grounds.

[3] Peer review is protected from discovery in medical negligence actions under Ohio state law. WCMC seeks to avoid its existing discovery obligations in Kentucky, which require production of peer review and related documents. *Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009).

2

RES : 000002 of 000014

to WCMC. Despite WCMC's protestations otherwise, a substantial degree of legal authority supports a trial court's denial of voluntary dismissal where a party seeks to avoid an adverse ruling or shop for a forum with more favorable law. Further, case law in both Kentucky and federal courts support imposing conditions on voluntary dismissal in lieu of outright denial of such a motion where the dismissal would otherwise disadvantage the party whom the plaintiff originally haled into court.

Since WCMC selected this forum, pursued its claim here, and only now seeks to abandon that claim (but only after Mrs. Kramer discovered and exposed the wrongful conduct underlying the charges it sought to collect), Mr. and Mrs. Kramer ask this Court to deny WCMC's Motion to Dismiss or, in the alternative, to impose the following conditions on the dismissal: (1) WCMC shall not seek realignment of the parties; (2) WCMC must fully and completely respond to Mr. and Mrs. Kramer's outstanding discovery, including the Peer Review that is the subject of their Motion to Compel, prior to the Court granting dismissal; (3) WCMC will not seek to transfer this action to Ohio state or federal court; (4) the dismissal must be with prejudice; and (5) because the dismissal is with prejudice and thus an adjudication on the merits, Mr. and Mrs. Kramer are entitled to introduce to the jury and instruct the jury at trial that WCMC's collections claim has been adjudicated against it on the merits.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.    Overview of Facts.

An overview of the factual background of this case is contained in Mr. and Mrs. Kramer's recently filed Motion to Compel and in the Counterclaim. In short, WCMC's collection action (the subject of its Motion to Dismiss) sought to collect medical fees related to one of the four spinal fusion procedures Dr. Durrani performed on Mrs. Kramer at WCMC in

RES : 000003 of 000014

3

Filed          14-CI-00400   06/11/2014        Dianne Murray, Boone Circuit Clerk

just 37 months. It is those tortious surgeries that are the subject of the Counterclaim against WCMC. Thus, WCMC's claim that its "collections action . . . has no bearing on the merits of the remaining claims brought in the counter-claim" is inaccurate. (WCMC Motion at 3)

    **B.     Procedural Posture.**

    WCMC filed its collection action in Boone District Court, then obtained a default judgment and pursued wage garnishment (as recently as January 2014) against Mrs. Kramer. Mrs. Kramer had the default judgment vacated (over the objection of WCMC) in March 2014 and was granted leave to file her counterclaim against WCMC, and the case was then transferred to Boone Circuit Court on jurisdictional grounds.  Mr. and Mrs. Kramer propounded written discovery on WCMC shortly thereafter. WCMC failed to answer that discovery in a timely manner, and Mr. and Mrs. Kramer have offered to grant an extension of time for it to do so. Counsel for WCMC then informed the undersigned that—extension or not—it would oppose production of Peer Review information related to Dr. Durrani.  As a result, Mr. and Mrs. Kramer filed a Motion to Compel on this subject (currently pending), since the Peer Review is discoverable under unequivocal Kentucky precedent originating in this Court on the exact same issue. Rather than responding to that motion or answering the valid discovery, WCMC initiated step one of its plan to force this case into Ohio.

**III.     THIS COURT SHOULD DENY WCMC'S MOTION TO DISMISS BECAUSE IT IS AN ATTEMPT TO AVOID AN ADVERSE RULING ON DISCOVERY AND AN ATTEMPT TO FORUM-SHOP AND CHOICE-OF-LAW-SHOP INTO A STATE WITH SUBSTANTIVE LAW MORE FAVORABLE TO WCMC. DENIAL OF SUCH A MOTION IS WITHIN THIS COURT'S DISCRETION.**

    Again, WCMC's motion to dismiss its collections claim against Mrs. Kramer is not altruistic.  Rather, WCMC's sole purpose in attempting to dismiss its claim is to improve its argument in support of its plan to realign the parties in this action (making WCMC a defendant

RES : 000004 of 000014

4

Filed          14-CI-00400   06/11/2014        Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

rather than plaintiff). WCMC wants to realign itself as a defendant so it can ostensibly meet the requirements to remove this action to federal court. Only a defendant, not a plaintiff against whom a counterclaim is filed (*see, e.g., Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830-32 (2000), nor a third-party defendant (*see, e.g., First National Bank of Pulaski v. Curry*, 301 F.3d 456, 461 (6th Cir. 2002)), may remove an action to federal court. 28 U.S.C. § 1441(a). Of course, the primary policy behind disallowing plaintiffs to remove actions under the removal statute is that the plaintiff selected the forum in the first place.

If WCMC is permitted to become a defendant through dismissal and realignment, and in turn then removes this case to the Eastern District of Kentucky, WCMC will presumably then attempt to have the case transferred yet again to the Southern District of Ohio.  The purpose of WCMC's intended procedural maneuvering is to force this case into a forum that applies Ohio substantive law[4] and thereby bottle up evidence of its complicity in Dr. Durrani's pattern of egregious conduct.

WCMC desires a change of law to Ohio for at least the following reasons:  (1) Ohio has tort reform that would limit Mr. and Mrs. Kramer's damages in this action; and (2) Ohio has a statute protecting the discovery of physician peer review in this type of action. These legal principles do not apply in the forum that WCMC selected to sue Mrs. Kramer for collection for one of Dr. Durrani's surgeries, the Commonwealth of Kentucky. The Court is respectfully urged to deny WCMC's motion or at least impose conditions on it to prevent substantial prejudice to Mr. and Mrs. Kramer.

Perhaps the most prejudicial and disturbing consequence of WCMC's scheme to work its way into Ohio is that it intends to do so in order to hide potential evidence that it knew or should

---

[4] Under the *Erie Doctrine* it is likely that the Southern District of Ohio will apply Ohio substantive law.

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

RES : 000005 of 000014

have known that Dr. Durrani was engaged in the appalling course of conduct that underlies this lawsuit, hundreds of others, his federal criminal indictment, and his flight to his native Pakistan. That is, WCMC will attempt to hide behind the Ohio peer review privilege in order to refuse to produce evidence of its negligent credentialing, inadequate ongoing quality review, and lack of supervision of Dr. Durrani. That is likely the most relevant evidence that exists relative to Mr. and Mrs. Kramer's claims against WCMC pending in this Court.

On the other hand, the Kentucky Supreme Court has consistently reasoned that protecting peer review of a tortfeasor like Dr. Durrani in a medical negligence action is contrary to civil justice and the search for truth. *See, e.g., Saleba v. Schrand, supra. See also Sisters of Charity Health Systems, Inc. v. Raikes*, 984 S.W.2d 464 (Ky. 1998).[5] Mr. and Mrs. Kramer are citizens of Boone County, part of the pattern of tortious conduct against them occurred in Kentucky, all of the Defendants are amenable to suit in Boone County, and WCMC sued Mrs. Kramer in Boone County on fees arising from the tortious conduct at issue. Therefore, there is no reason for this Court to pave the way for WCMC to deprive Mr. and Mrs. Kramer of the protections of the laws of Kentucky and its Courts.

WCMC's Motion relies on a very sparse and incomplete recitation of federal caselaw, including one case that was annotated in the Kentucky civil procedure treatise authored by the undersigned counsel, for the proposition that a "tactical advantage" alone to the dismissing party is an insufficient ground to deny voluntary dismissal. (Motion at 2) The civil procedure treatise, consisting of Volumes 6 and 7 of West's Kentucky Practice series, consists of three essential

---

[5] In refusing to extend the peer review privilege to medical negligence actions, the Kentucky Supreme Court stated: "We have no doubt that in creating a peer review privilege, the General Assembly's intent and purpose was *not* to hinder an aggrieved patient's search for the truth in a medical malpractice suit against a negligent physician or hospital." *Id.* at 469 (emphasis in original).

RES : 000006 of 000014

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

parts: the text of the Kentucky Rules of Civil Procedure and their history; authors' commentary on the rules; and pertinent case annotations that are basically cut and pasted from West's keynumber headnote system. The annotation in question, one of many thousands included in the treatise for illustrative purposes and/or as a starting point for further research, was first inserted into the 4th edition of the treatise that was published in 1984, and certainly does not equate to commentary that may be attributed to the authors, much less the undersigned counsel, who was licensed for less than a year when the 1984 edition was published.

In any event, WCMC's argument tells less than half the story. It fails to mention the extensive body of legal authority holding: (1) courts may deny voluntary dismissal when the dismissing party does so to seek a new forum that will apply a different body of law; (2) courts should deny voluntary dismissal when the dismissing party does so to avoid an adverse ruling; and (3) courts may impose conditions on voluntary dismissal (often designed to prevent prejudice to the non-moving party).

The Court should note that CR 41.01(2) provides in pertinent part as follows:

> If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action *shall not be dismissed against the defendant's objection* unless the counterclaim can remain pending for independent adjudication by *the court*.

Clearly, the reference to "the court" can refer only to this honorable Court. Thus, the Rule forbids the relief requested by WCMC unless this Court retains jurisdiction over the counterclaim; i.e., prevents the loss of jurisdiction through removal.

While Kentucky courts have not spoken at length on this precise issue before this Court, "[i]t is well established that Kentucky courts rely upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010). WCMC cited favorably this same

RES : 000007 of 000014

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

Filed      14-CI-00400   06/11/2014      Dianne Murray, Boone Circuit Clerk

principle in its Motion, and agreed that it applies to the present issue involving CR 41. *Louisville Label, Inc. v. Hildesheim*, 843 S.W.2d 321 (Ky. 1992) (following federal court interpretation of Fed. R. Civ. P. 41 for CR 41). (Motion at 2 fn. 1). The weight of federal case law provides that the Court either should not dismiss WCMC's claim or should put conditions on it as requested by Mr. and Mrs. Kramer.

**A.   A party cannot voluntarily dismiss a claim to reinstate it in a forum with different substantive law. This is more than a "tactical advantage" according to the caselaw.**

WCMC's citation of the rule that tactical advantage alone is insufficient to deny voluntary dismissal omits the other half of the rule that defeats its argument. The *entirety* of the rule is this:

> As Professors Wright and Miller explain, "dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. It is not a bar to a court-granted dismissal under Rule 41(a)(2) that the plaintiff may obtain some tactical advantage thereby." 9 Wright & Miller, supra, § 2364, at 280–83. *In contrast, however, "[d]ismissal in order to reinstate the action in a forum that will apply a different body of substantive law clearly is disfavored." Id.* § 2364, at 288–89.

*Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 17 (E.D.N.Y. 1996). Thus, where a party like WCMC seeks not just a tactical advantage but also a new forum with different substantive law, a court should deny the motion to dismiss as "clearly...disfavored." *Id. See also Kennedy v. State Farm Mut. Auto. Ins. Co.*, 46 F.R.D. 12 (E.D.Ark. 1969) ("It is clear that plaintiff by her motion [for voluntary dismissal] is seeking something quite different from a tactical procedural advantage. She desires to have her new forum apply to this case another body of substantive law which would or might deprive the defendant of an apparently good defense at this forum.")

This is exactly what WCMC intends to do. That is, it intends to "reinstate the action in a forum that will apply a different body of substantive law [Ohio]." *Id.* Making matters worse, the

RES : 000008 of 000014

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

law of Ohio, where WCMC seeks to move the case, is in certain respects unfavorable to Mr. and

Mrs. Kramer. It deprives them of their right to seek full compensation for their injuries and their

right to discover the Peer Review evidence in favor of their claims. These rights exist in the

Commonwealth of Kentucky but not Ohio. Mr. and Mrs. Kramer are citizens of the

Commonwealth, they were injured as a result of actions of Dr. Durrani some of which occurred

here, they were haled into a Kentucky court for collection of charges for some of that wrongful

conduct, they are entitled to the protections of the Commonwealth's courts and laws, and they

will be seriously prejudiced if WCMC is permitted to go down this road and move this case to

Ohio. This Court has valid jurisdiction over this action, and it should not enter an order that will

undermine either that jurisdiction or the reach and enforcement of Kentucky law.

Many other courts agree with the foregoing principle of law. For example, in *Buchanan*

*Co. v. Equitable Prod. Co.*, 788 F.Supp.2d 497, 499 (W.D.Va. 2011), the court stated that "[i]n

considering a motion for voluntary dismissal, the court '*must focus primarily on protecting the*

*interests of the defendant.*'" *Id.* at 499 (emphasis added) (quoting *Davis v. USX Corp.*, 819 F.2d

1270, 1273 (4th Cir.1987)). Thus, protecting Mr. and Mrs. Kramer's interests are paramount

here. The *Buchanan* court went on to deny the motion for voluntary dismissal and stated in its

opinion, "Buchanan County is candid about its strategy. It intends to refile the action in the

Circuit Court of Buchanan County and add local business defendants so as to make the case

nonremovable." *Id.*[6] Thus, in *Buchanan*, the plaintiff sought voluntary dismissal to affect the

---

[6] The *Buchanan* Court also denied the motion to dismiss because it would "likely engender additional procedural fencing and prolong the resolution of the dispute to the prejudice of the defendants." *Id.* at 500. This is also the case here. That is, voluntary dismissal is but step one of WCMC's multi-step plan to shift this case through two more courts to get to Ohio. This will cost Mr. and Mrs. Kramer an excessive amount of time and money. Calling WCMC's plan "procedural fencing" would be an understatement.

9

RES : 000009 of 000014

Filed        14-CI-00400    06/11/2014        Dianne Murray, Boone Circuit Clerk

removability of the case – just like WCMC attempts to do here. This Court should deny WCMC's motion, as the court in *Buchanan* did.

Similarly, the court in *Virgil v. Montgomery*, 353 F.Supp.2d 620, 623 (E.D.N.C. 2005), denied voluntary dismissal because plaintiff's "true purpose" was to strip the court of jurisdiction and to shop for a more favorable forum. *Id.* at 623.[7]   Again, this is the same purpose for which WCMC seeks voluntary dismissal.  The examples of these holdings are many. *E.g., Rodriguez v. Marks Bros. Pickle Co., Inc.*, 102 F.R.D. 104, 108 (E.D. Wis. 1984) (denying voluntary dismissal where plaintiff's reason for dismissing was to return to Texas state court from Wisconsin federal court, thereby avoiding the application of the Wisconsin law); *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 987–88 (5th Cir.1989) (affirming denial of voluntary dismissal where party sought to refile in another jurisdiction with different substantive law).

**B.     A party cannot voluntarily dismiss a claim to avoid an adverse ruling by the Court. This is more than a "tactical advantage" according to the case law.**

WCMC filed its Motion to Dismiss *after* Mr. and Mrs. Kramer filed their Motion to Compel the Peer Review on Dr. Durrani. Mr. and Mrs. Kramer are confident that under *Saleba v. Schrand, supra,* 300 S.W.3d 177, and other Kentucky law, the Peer Review is absolutely discoverable. Accordingly, Mr. and Mrs. Kramer believe that WCMC will suffer an adverse ruling from this Court on the Motion to Compel and will be ordered to produce the Peer Review. As set forth above, WCMC plans to remove this case to federal court and then presumably transfer it to Ohio in order to avoid the adverse ruling requiring it to produce the Peer Review. "[A] party is not permitted to dismiss merely to escape an adverse decision nor to seek a more

---

[7] "The Court suspects that the true purpose of Plaintiff's motions is to strip this Court of jurisdiction over this matter. Plaintiff cannot try to choose a forum simply for the sake of achieving a presumed advantage in the administration of justice, either from the Court or the jury pool. Fairness to all in the litigation process warrants the suppression of undisciplined forum shopping." *Id.*

Filed        14-CI-00400    06/11/2014        Dianne Murray, Boone Circuit Clerk

RES : 000010 of 000014

favorable forum." *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013) (quoting *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011)); *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999); *see also* the authority cited *supra* in the preceding subsection. Because WCMC seeks to avoid an adverse ruling on Mr. and Mrs. Kramer's Motion to Compel the Peer Review through its voluntary dismissal, this Court should deny WCMC's Motion.

**IV.   ALTERNATIVELY, THIS COURT SHOULD MAKE WCMC'S DISMISSAL SUBJECT TO CONDITIONS THAT WILL PREVENT THE PREJUDICE IT INTENDS TO INFLICT ON MR. AND MRS. KRAMER THROUGH THE DISMISSAL.**

Both the Kentucky rule and the federal Rule 41, as well as interpreting case law, state that the Court may impose conditions and terms on granting a motion for voluntary dismissal. CR 41.01(2); Fed. R. Civ. P 41(a)(2). Accordingly, in *Louisville Label, Inc. v. Hildesheim*, a case cited by WCMC, the Kentucky Supreme Court held that it is proper for a trial court to impose terms and conditions on a voluntary dismissal in order to provide equitable relief to the non-moving party. *Id.*, 843 S.W.2d at 325-26. Further, the Court stated that if the party seeking voluntary dismissal does not like the conditions imposed by the trial court, then it is free to withdraw its motion to dismiss. *Id.* at 325 (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2366, at 177). In the event that this Court is inclined to grant WCMC's Motion, Mr. and Mrs. Kramer request the following conditions, which are designed to mitigate the prejudice to them.

   **A.   WCMC shall not seek realignment of the parties.**

If WCMC is required to remain a plaintiff – its original choice in Boone County – then it will not likely be able to engage in its plan to force this case into Ohio. This should dispose of the prejudice that would result from WCMC avoiding its discovery obligations under Kentucky

RES : 000011 of 000014

Filed          14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

law and maintain Mr. and Mrs. Kramer's right to full compensation for their damages (as opposed to Ohio's limitations thereon).

**B.      WCMC must fully and completely respond to Mr. and Mrs. Kramer's outstanding discovery, including the Peer Review that is the subject of their Motion to Compel, prior to the Court granting dismissal.**

This will mitigate at least one of the ill effects of WCMC's plan to move this case into Ohio, where it may be permitted to hide the Dr. Durrani Peer Review. Moreover, this type of condition has been recognized as valid under similar situations. For example, the court in *Eaddy v. Little*, 234 F.Supp. 377 (D.C.S.C. 1964), stated:

> Defendant argues that dismissal would prejudice its rights heretofore noticed as to the production of certain documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. *The Court therefore finds it proper, for protection of defendant that the production of such documents be a prerequisite to a voluntary dismissal without prejudice*; under such circumstances defendant can lose no substantial right by the dismissal.

*Id.* at 380 (emphasis added). Likewise, the court in *Esquivel v. Arau*, 913 F.Supp. 1382 (C.D. Cal. 1996), confirmed that: "Examples of 'conditions' other than costs that a district court may impose on dismissal under Rule 41(a)(2) are: *production of certain documents*; . . . Such terms are meant to reduce inconvenience to the defendant." *Id.* at 1390 n. 13. (emphasis added) (internal citations omitted).

**C.      WCMC will not seek to transfer its action to Ohio federal court.**

This condition would obviously avoid the prejudice to Mr. and Mrs. Kramer from the application of Ohio law to discovery and damages; however, it may be difficult to enforce if this action is removed. The court in *Esquivel* confirmed that a similar condition is available for courts to impose on voluntary dismissal, specifically, a covenant not to sue. *Id.*, 913 F.Supp. at 1390 n. 13. Similarly, this would be a covenant not to transfer the case to Ohio.

12

RES : 000012 of 000014

**D.      The dismissal is with prejudice.**

WCMC should not be permitted to re-file its collections action if it dismisses it.  The claim arises out of the same series of transactions and occurrences as Mr. and Mrs. Kramer's tort claims (the Dr. Durrani surgeries at WCMC), and it should be adjudicated along with those claims. WCMC's motion indicates that it is willing to dismiss the claim with prejudice.

**E.      Because the dismissal is with prejudice and thus an adjudication on the merits, Mr. and Mrs. Kramer are entitled to introduce to the jury and request that the Court instruct the jury at trial that WCMC's medical fee collection claim was brought and has been adjudicated against them on the merits.**

A dismissal with prejudice constitutes an adjudication on the merits of the claim. *Shaffer v. Morgan*, 815 S.W.2d 402, 404 (Ky. 1991). WCMC's collections claim against Mrs. Kramer is a contract claim for medical services. Mrs. Kramer answered this claim by denying liability based on, among other things, failure of consideration. That is, she is excused from her contractual performance (payment) because WCMC's consideration (the medical services) fails due to the medical negligence and other tortious conduct of WCMC and Dr. Durrani. Mrs. Kramer is entitled to a favorable adjudication of this claim on the merits in this action. If WCMC wishes to dismiss this claim, then it will constitute an adjudication on its merits, and Mrs. Kramer should be able to present this to the jury.

**V.     CONCLUSION.**

For the foregoing reasons, Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer respectfully ask this Court to deny Plaintiff West Chester Medical Center's Motion to Dismiss its claim against Mrs. Kramer or, in the alternative, to impose the conditions set forth above in order to remove or mitigate the substantial prejudice to which Mr. and Mrs. Kramer could otherwise be subjected.

RES : 000013 of 000014



Filed        14-CI-00400   06/11/2014          Dianne Murray, Boone Circuit Clerk

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-mailed this 11th day of June, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH 45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

423255v4

14

RES : 000014 of 000014




| BOONE | FILED / ENTERED |
|---|---|
| **CI 14-CI-00400** | 6/11/2014 |
| WEST CHESTER MEDICAL CENTER, KRAMER,KELLI | BOONE |
| | Dianne Murray, Boone Circuit Clerk |
| **RESPONSE TO MOTION FOR VOLUNTARY DISMISSAL** | BY: _____ D.C. |

eFiled: 6/11/2014 ID: 399
  By: KRAMER, KELLI E
Pages total: 14    Image size: 0.62 MB

Case Number: 14-CI-00400

9 of 14 thumbnails shown

MNH

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-00400



**WEST CHESTER MEDICAL CENTER**                                    **PLAINTIFF**

**v.**

**KELLI E. KRAMER**                                                **DEFENDANT**

---

### WEST CHESTER MEDICAL CENTER AND UC HEALTH'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION
### AND
### MEMORANDUM IN OPPOSITION TO KELLI E. KRAMER'S MOTION TO COMPEL

---

West Chester Hospital and UC Health (together, the "Hospital") bring this Motion to Dismiss and Memorandum in Opposition to Defendant Kelli Kramer's Motion to Compel. Although this litigation was initiated by West Chester Hospital as a simple collections action for unpaid bills, Ms. Kramer has asserted counterclaims against the Hospital that have vastly increased the scope of litigation. Ms. Kramer now seeks to compel discovery of information that would be automatically undiscoverable under Ohio law if she had paid her bills. That information should be deemed undiscoverable under these circumstances as well.

As an initial matter, Ms. Kramer's Counterclaims against the Hospital should be dismissed and refiled in Butler County, Ohio. There are currently hundreds of cases pending there against West Chester Hospital and these same Third Party Defendants, many of which were initiated by Kentucky residents because Kentucky courts have no personal jurisdiction over West Chester Hospital. None of the provisions of Kentucky's long-arm statute apply to provide jurisdiction over West Chester Hospital with regard to the claims raised in Ms. Kramer's Counterclaim and Third Party Complaint. And even if the Court were to agree that filing

collection litigation constitutes "acting" in Kentucky, there is no reasonable or direct nexus between that action (initiation of a collections action) and the claims that Ms. Kramer seeks to bring (negligence, negligent credentialing, etc.). Without some direct nexus between the Hospital's alleged actions in Kentucky and Ms. Kramer's claims, this Court is without jurisdiction and the matter must be dismissed.

If the Court ultimately determines that it has personal jurisdiction over the Hospital, this Court should apply Ohio law to Ms. Kramer's request for peer review documents and information and should deny her request according to that law. Ms. Kramer cites only one case in support of her motion and improperly assumes that different facts here should lead to the exact same result. Applying the *Saleba* test to the facts before this Court, there are numerous special reasons why this Court must apply Ohio's peer review laws to Ms. Kramer's requests – not the least of which is that Ms. Kramer is only in this position because she failed to pay her bills in a timely manner.

### A.    Relevant Facts

West Chester Hospital initiated this action as a collections matter in July 2011 due to Ms. Kramer's failure to pay her bills.[1] West Chester Hospital's only alleged contact with Kentucky is that it occasionally uses Kentucky courts to pursue judgment for unpaid bills against Kentucky residents.[2] Ms. Kramer acknowledges that the medical care provided to her – and the subject of her Counterclaim and Third Party Complaint – was provided by Dr. Durrani[3] and that the vast majority of that care was provided by Dr. Durrani at various offices located in Kentucky.[4]

---

[1] Counterclaim and Third Party Complaint at ¶ 5.
[2] *Id.* at ¶ 6.
[3] Counterclaim and Third Party Complaint at ¶¶ 14-35.
[4] *Id.* at ¶¶ 21, 22, 23.

2

West Chester Hospital was the location where Dr. Durrani performed surgeries, and the only interactions that West Chester Hospital or UC Health had with Ms. Kramer occurred when she left Kentucky to visit West Chester Hospital's facility in Butler County, Ohio for surgery.[5] UC Health is named in the Counterclaim and Third Party Complaint as the corporate parent of West Chester Hospital. Ms. Kramer has not made any allegations of wrongdoing on the part of UC Health apart from the alleged actions and inactions of West Chester Hospital.[6]

**B.     Kentucky has No Personal Jurisdiction Over West Chester Hospital**

Kentucky recognizes a two-step process for determining whether a Court has personal jurisdiction.[7] First, the Court must examine the long-arm statute of KRS 454.210 to determine whether the cause of action arises from conduct or activity of the defendant that fits into one of the categories. Second, even if the conduct fits within the scope of the long-arm statute, the Court then must also examine whether exercise of jurisdiction would offend a non-resident party's due process rights.

1.     The Kentucky Long-Arm Statute Does Not Grant Jurisdiction

KRS 454.210 grants jurisdiction over non-resident defendants in nine enumerated circumstances, none of which apply here. Kentucky courts analyzing the long-arm statute have held that an Ohio physician who provided medical treatment to a Kentucky resident was not subject to jurisdiction in Kentucky when the treatment was provided out-of-state and the resident then returned to Kentucky.[8] The same conclusion was reached when a Kentucky physician referred a Kentucky resident to a non-resident medical provider.[9]

---

[5] *Id.* at ¶¶ 17, 24, 27, 32.
[6] *Id.* at ¶ 7.
[7] *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011).
[8] *Kennedy v. Ziesmann*, 526 F.Supp.1328 (E.D.Ky. 1981).
[9] *Bondurant v. St. Thomas Hospital*, 366 S.W.3d 481 (2011).

3

The only allegation that Ms. Kramer makes in an effort to support jurisdiction against West Chester Hospital is that it occasionally seeks to collect unpaid amounts due from Kentucky residents. But the initiation of collections actions cannot constitute the basis for jurisdiction over Ms. Kramer's claims of negligence and negligent credentialing. The Supreme Court of Kentucky has held that there must be "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction."[10] This single allegation that West Chester Hospital initiates collections actions in Kentucky is insufficient to support any claim of jurisdiction against the Hospital for the injuries and claims alleged by Ms. Kramer.

Through Dr. Durrani, Ms. Kramer engaged West Chester Hospital to provide services to her in Ohio. West Chester Hospital did not provide any services to Ms. Kramer in Kentucky, and had no interaction with Ms. Kramer in Kentucky prior to initiating the original collections action. Because West Chester Hospital engaged in no act or omission in Kentucky that gave rise to Ms. Kramer's claims in her Counterclaim and Third Party Complaint, the Kentucky long arm statute is inapplicable and Ms. Kramer's Counterclaim and Third Party Complaint must be dismissed as to the Hospital.[11] Ms. Kramer is not without a remedy, as she may still refile her claims against the Hospital in Butler County, Ohio where jurisdiction is proper.

2.   Exercise of Jurisdiction Would Offend Federal Due Process Standards

Even if the Court finds that Ms. Kramer's claims meet one of the exceptions of the Kentucky long arm statute, they certainly do not comport with federal standards of due process. The Due Process Clause permits the exercise of either general personal jurisdiction or specific personal jurisdiction.[12]

---

[10] *Caesars Riverboat* at 58.
[11] *Bondurant* at 486.
[12] *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 627-28 (6th Cir. 1998).

4

"General jurisdiction exists when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'"[13] In this case, the only continuous and systematic contact that Ms. Kramer alleges West Chester Hospital has with Kentucky is that it occasionally initiates collections actions against patients who have not paid their bills. This single alleged connection with Kentucky certainly does not arise to the level of providing Kentucky with general jurisdiction over all claims that could be asserted against West Chester Hospital.

In contrast, specific jurisdiction exists where the action arises out of or is related to the defendant's specific contacts with the forum.[14] As such, specific jurisdiction is properly exercised only when the non-resident defendant "has 'certain minimum contacts' with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[15] The Sixth Circuit has devised a three-part test to determine the outer limits of specific jurisdiction. First, the Court must determine whether the non-resident purposefully availed himself of the privilege of acting within the forum state or causing a consequence there. Second, the Court must determine whether the cause of action alleged against the non-resident arises from the alleged instate activities. And finally, the Court must determine whether jurisdiction would be reasonable. Here, even though West Chester Hospital occasionally avails itself of the privilege of bringing collections lawsuits against non-paying former patients, there is absolutely no legitimate argument that Ms. Kramer's alleged injuries arise from West Chester Hospital's exercise of that privilege. As such, it would be unreasonable for the Hospital to expect to be haled into Court in Kentucky regarding matters unrelated to the collection actions, and Ms. Kramer's Counterclaim and Third Party Complaint should be dismissed as to the Hospital.

---

[13] *Id.* (citations omitted).
[14] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (citations omitted).
[15] *Wilson*, 85 S.W.3d at 592.

C.    **Even if this Court Claims Jurisdiction, Special Circumstances Dictate that Ohio Law Should Apply to Discovery of Peer Review Files**

If the Court decides that it has personal jurisdiction over the Hospital related to Ms. Kramer's claims, it must not simply look to the conclusion of *Saleba* as Ms. Kramer did in her Motion to Compel. Rather, the Court must utilize the test set forth in *Saleba* and apply that test to the different facts and circumstances of this case. Those different facts and circumstances should lead this Court to the opposite conclusion that special circumstances dictate that Ohio law should apply and privilege the Hospital's peer review documents from discovery.

The Kentucky Supreme Court in *Saleba* quoted the *Restatement (Second) of Conflict of Laws* (1971) for the proposition that "evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect."[16] In this case, as in *Saleba*, there is no question that Ohio has the most significant relationship with any peer review documents related to Dr. Durrani. The Ohio resident in *Saleba* could not present the Court with any special reason why Ohio law should apply to them, but the Hospital here can point to several.

First, the Kentucky Supreme Court emphasized the fact that the Kentucky resident in *Saleba* sought treatment from a Kentucky physician and had no say or even advance notice of the fact that her lab tests would be analyzed by an Ohio lab.[17] As far as she knew, all of her care and treatment was being provided in Kentucky. In this case, however, Ms. Kramer sought treatment from a Kentucky physician but knowingly left Kentucky and went to Ohio for her surgeries. This is not a case where an unwitting patient might have been "ambushed" by Ohio's more protective

---

[16] *Saleba v. Schrand*, 300 S.W.3d 177, 182 (Ky. 2009).
[17] *Id.* at 182.

6

laws governing peer review documents. At the time she was seeking treatment, Ms. Kramer certainly should have known that Ohio law would govern any eventual lawsuit.

Second, the Plaintiff in *Saleba* apparently had personal jurisdiction over the non-resident Defendants from the start. Here, the only way that Ms. Kramer has even gotten to the point of arguing that Kentucky law should apply to her claims against West Chester Hospital is because she did not pay her bills and thereby forced West Chester Hospital to purse judgment against her in Kentucky. Under any other circumstances (such as those faced by the vast majority of Dr. Durrani's former patients), Ms. Kramer would have been required to sue West Chester Hospital in Butler County, Ohio and would definitively be subject to Ohio's peer review statutes. As a policy matter, there could be a severe chilling effect on the willingness of Ohio medical facilities and physicians to provide treatment to Kentucky residents if this Court holds that those facilities and physicians automatically expose themselves to Kentucky's peer review standards any time they initiate a collection action to recover money due them.

Third, there are approximately 290 other cases making the same claims against the Hospital and these same Third Party Defendants in Ohio. In all of those cases, Ohio courts will be applying Ohio law to determine what documents are protected by Ohio's peer review statute. If the Hospital is forced to produce peer review documents in this Kentucky case, it will give this Plaintiff access to documents that none of those other plaintiffs – including many Kentucky residents – will have access to. Moreover, if the Hospital is forced to produce peer review documents in this case, it is more than likely that Plaintiffs in other cases will also gain access to those documents and effectively render the protections afforded to this Ohio hospital under Ohio law a nullity. The Hospital certainly could not expect its Ohio statutory protections to be eliminated simply because it attempted to collect unpaid bills.

7

Fourth, and finally, Dr. Durrani performed many surgeries at the Hospital, but unlike the Plaintiff in *Saleba*, no peer review was ever performed relative to Ms. Kramer.[18] Forcing the Hospital to produce any other peer review documents could require it to produce documents containing significant personal information in violation of other patients' HIPAA-right to privacy.

Although Ms. Kramer would like this Court to simply look at the conclusion drawn by the *Saleba* court, the Court must follow the process set forth by the *Saleba* Court and first determine whether there are any special reasons why Ohio's peer review laws should apply. The factual differences between this case and *Saleba*, combined with the odd procedural posture and negative policy ramifications provide ample reason for this Court to determine that Ohio law should govern the production of peer review documents, even if this Court elects to retain jurisdiction over the case.

**D.    The Requested Peer Review Files are Not Discoverable Under Ohio Revised Code Section 2305.252**

R.C. 2305.252 is entitled "Confidentiality of proceedings and records within scope of peer review committee" and states in relevant part:

> Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action…arising out of matters that are the subject of evaluation and review by the peer review committee. No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or

---

[18] See affidavit of Paula Hawk at ¶ 23.

8

> records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. An individual who testifies before a peer review committee…or provides information to a peer review committee shall not be prevented from testifying as to matters within the individual's knowledge, but the individual cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peer review committee, or any opinion the individual formed as a result of the peer review committee's activities.

Boiled down to its core principle, litigants may only discover the underlying information that may have prompted peer review proceedings from original sources. Original sources are not permitted to reference anything related to the peer review proceedings and may only testify regarding their personal knowledge. No information about the peer review proceedings or documents presented to any peer review committee may be obtained from the Hospital.

The established policy of the State of Ohio with regard to peer review and credentialing is that the process should be maintained as confidential. "[T]he Legislature has chosen to place great, but not impossible, restrictions on access to the peer review and credentialing committee's records in the apparent desire to protect free discussion at such committee's review process."[19] Ohio has determined that the public interest is best served by continuing to improve and analyze health care services through protecting "the overall *process* of peer review" with confidentiality, "the absence of which would make participants reluctant to engage in an honest criticism for fear of loss of referrals, loss of reputation, retaliation, and vulnerability to tort actions."[20] This confidentiality is intended to provide an "impenetrable protection of confidentiality" to peer review proceedings.[21] The current R.C. 2305.252 is a relatively recent revision to the long-

---

[19] *Filipovic v. Dash*, 2006 WL 1521468, 2006-Ohio-2809 (5th Dist. App., May 22, 2006) at ¶ 31.

[20] *Stewart v. Vivian*, 2012-Ohio-228 (12th Dist. App., Jan. 23, 2012) at ¶25, citing *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333 and *Browning v. Burt*, 66 Ohio St.3d 544, 562, 613 N.E.2d 993 (1993).

[21] *Id.* at ¶ 28, citing *Tenan v. Huston*, 165 Ohio App.3d 185, 2006-Ohio-131 at ¶ 23 ("current R.C. 2305.252 manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings.") and *Bansal*, supra, at ¶ 17 ("R.C. 2305.252 implicitly extends full and unconditional protection to records generated by the 'non-original source,' i.e., the peer review committee.").

9

standing peer review privilege. It was enacted by the General Assembly in 2003 with the specific

purpose of making the privilege more resolute. Prior to the revision, "judicial decisions were

diluting the legislature's intention to protect the peer review process."[22] "The current version of

the statute uses clear language expressing the legislature's intent…to establish an express

mandate that peer review proceedings and records are to remain confidential."[23] But it

simultaneously protects the interests of litigants by allowing individuals to testify about their

personal knowledge, even if that knowledge was utilized within a peer review process.[24]

The statute explicitly contemplates that both documents and information about the peer

review proceedings are confidential and are not subject to discovery.[25] Dates, subject matter of

the proceedings, and perhaps most importantly a list of individuals participating are all

fundamental components of peer review proceedings and R.C. 2305.252 prohibits discovery of

this information. Where a witness has personal knowledge of events underlying the peer review

process, that witness' testimony is limited to "matters within the individual's knowledge," and

the individual is prohibited from testifying about the peer review proceedings.[26] In *Huntsman v.*

*Aultman Hosp.* a trial court had ordered a hospital to provide a privilege log from which peer

review documents could be identified and then obtained from original sources.[27] The appellate

court held that such an order improperly discloses to the requesting parties what documents the

peer review committee used and "violates the clear intention of the statute."[28] The Court

acknowledged that although documents may be procured from original sources, the plaintiff was

---

[22] *Stewart* at ¶ 21.
[23] *Id.*
[24] *Id.* at ¶ 29.
[25] R.C. 2305.252 ("Proceedings and records within the scope of a peer review committee…shall be held in confidence and shall not be subject to discovery…")
[26] R.C. 2305.252 reinforces this concept by stating that no individual involved in the peer review process "shall be permitted or required to testify…as to any evidence or other matter produced or presented during the proceedings."
[27] 160 Ohio App.3d 196, 2005-Ohio-1482.
[28] *Id.* at ¶27.

10

not permitted to obtain these documents or any information about these documents from the hospital.[29]

The intent of R.C. 2305.252, expressed by its plain and unambiguous language, is that although information about alleged bad acts on the part of physicians may ultimately be discoverable, that information may only be obtained from individuals who have personal knowledge about those alleged bad acts. R.C. 2305.252 is very clear that everything about the peer review process – both the documents utilized in the proceeding and any information about the proceeding itself – are confidential and protected from discovery.

**E.      The Hospital's Peer Review and Credentialing Process**

Ohio Courts analyzing the privilege granted by R.C. 2305.252 have held that a party claiming the privilege may do so either by submitting disputed documents to the trial court for in camera inspection, or by presenting an affidavit "containing information necessary for the trial court to adjudge whether the privilege attaches."[30] According to the statute, the information required in order to determine whether or not the privilege attaches is whether: (1) a valid peer review committee as defined by the statute existed, and (2) whether the information sought is within the scope of that committee and arose out of matters that are the subject of evaluation and review by the peer review committee.[31]

Attached hereto is the affidavit of Paula Hawk. As stated in that affidavit, The Hospital has at all times relevant to this litigation established and maintained a Credentials Committee and Medical Executive Committee responsible for reviewing applications for credentialing and

---

[29] *Id.* See also, *Trangle v. Rojas*, 150 Ohio App.3d 549, 782 N.E.2d 617, 2002-Ohio-6510 (holding that the names of individuals who served on a peer review committee is not discoverable).
[30] *Id.* at ¶ 15, citing *Bansal v. Mt. Carmel Health Sys. Inc.*, Franklin App. No. 09AP-351, 2009-Ohio-6485 at ¶14.
[31] R.C. 2305.252.

privileging of the Medical Staff.[32] In the course of performing their duties, these Committees received information related to Dr. Durrani on at least three occasions.[33] In addition, the Hospital maintains Peer Review Committees, various Performance Improvement Committees, a Performance Improvement Council, and a Medical Executive Committee, which are all responsible for receiving and acting upon reports concerning patient care quality review in various facets of the Hospital's operation.[34] In the course of performing their duties, these Committees may have received various reports pertaining to Dr. Durrani concerning his activities.[35] All of the information prepared for or presented to these Committees related to Dr. Durrani is privileged and may not be obtained from the Hospital.

A "peer review committee" entitled to the confidentiality of R.C. 2305.252 is defined as "a utilization review committee, quality assessment committee, performance improvement committee or other committee that does either of the following: (a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care; (b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions."[36] A specific example of a "peer review committee" is "board or committee of a hospital…when reviewing professional qualifications or activities of health care providers."[37] As set forth in the above-referenced affidavit, there can be no question that the Hospital's committees with knowledge of Dr. Durrani's credentialing, quality of care, or other peer review are all "peer review

---

[32] Affidavit of Paula Hawk at ¶¶ 3-8.
[33] *Id.* at ¶ 9.
[34] *Id.* at ¶¶ 10-19.
[35] *Id.* at ¶ 19.
[36] R.C. 2305.25(E)(1).
[37] R.C. 2305.25(E)(2)(c).

committees" according to this definition. Similarly, it is evident that these committees existed at the times pertinent to this litigation.

The second requirement for a finding of privilege is satisfied because the information and documents requested by Plaintiff, by their very nature, fall within the scope of the duties of these committees. Plaintiff has not asked for any particular documents (which request may require the Hospital to demonstrate that the document was used within the scope of a peer review committee). Ms. Kramer has instead asked for "Dr. Durrani's credentialing, human resources, peer review and related files."[38] Given the broad nature of this request, The Hospital is not required to provide evidence of any specific peer review event to establish the privilege; the existence of such events is assumed in the requests themselves. Peer review and related files fall within the scope of the Peer Review Committees, the Improvement Committees, the Performance Improvement Council, and the Medical Executive Committee. Credentialing and human resources information fall within the scope of the Credentials Committee and the Medical Executive Committee. As such, Plaintiff is asking for information that she is not entitled to receive. To the extent that any documents relating to these subjects were created by or for these committees, and to the extent that these committees held any proceedings relating to Dr. Durrani, those proceedings and documents are privileged.[39]

**F.    Conclusion**

This Court should decline jurisdiction over Ms. Kramer's counterclaims and Third Party Complaint because there is no personal jurisdiction over the Hospital related to Ms. Kramer's allegations. If the Court decides that it does have jurisdiction, Ohio law should govern the

---

[38] Motion at p. 5.
[39] See Affidavit at ¶¶ 9, 14, 17. Defendants acknowledge that if any documents relating to these subject areas were created or provided to Defendants outside the scope of the proceedings of these committees, those documents may be subject to production if they are not otherwise protected by another applicable privilege.

production of peer review and protect any peer review documents from production in this matter due to special circumstances in the procedural posture of this litigation.

However, if the Court rules against the Hospital on both of those issues, the Hospital further requests that the Court take additional precautions to protect the Hospital in compelling the production of any documents. The Hospital does not believe that these protections would be sufficient, but in the event that a production is compelled, the Court must protect any personal information related to any individuals identified in the peer review documents, must take measures to protect the confidentiality of these peer review records so that they are not made available to any individuals suing the Hospital in Ohio.

Moreover, the Hospital wishes to point out that many of the requested documents will also be protected by attorney-client privilege, which is a separate but concurrent privilege from the peer review privilege. Because the Hospital believes that Ohio law should apply even if this Court retains jurisdiction, it has not provided Ms. Kramer a privilege log relating to peer review documents. Such a privilege log would automatically involve disclosure of protected information under Ohio law.[40] If this Court ultimately determines that Kentucky law should apply, the Hospital reserves the right to move the Court for a protective order relating to any documents or other requested information protected by attorney-client privilege or any other privilege available.

---

[40] *Huntsman v. Aultman*, 160 Ohio App.3d 196, 2005-Ohio-1482.

14

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio  45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical
Center*

## **CERTIFICATE OF SERVICE**

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 10th day of June, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky 41011

*Co-counsel for Kelli E. Kramer and James Kramer*

_____
Counsel for Plaintiff

0123682.0615403  4816-9869-2635v1

16

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-C-2056

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

v.

KELLI E. KRAMER                                              DEFENDANT.

---

AFFIDAVIT OF PAULA HAWK IN SUPPORT OF WEST CHESTER MEDICAL
CENTER AND UC HEALTH'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION
AND
MEMORANDUM IN OPPOSITION TO KELLI E. KRAMER'S MOTION TO COMPEL

---

STATE OF OHIO            )
                         ) ss:
COUNTY OF HAMITLON       )

     I, Paula Hawk, first being duly cautioned and sworn, state that the following is true, under penalty of perjury:

1.    I am the Division Director of Physician Relations, Medical Staff Office, Case Management and Social Service for West Chester Hospital, LLC (the "Hospital"). I have been in this and related positions for almost six years.

2.    In the course of my duties I have become extremely familiar with the Hospital's credentialing and peer review processes. I am furthermore familiar with those processes as they apply particularly to Dr. Abubakar Atiq Durrani. The credentialing and peer review processes are separate, but somewhat interrelated.

3.    When a physician seeks appointment at the Hospital, they are required to submit an application. The information on the application is vetted by Hospital staff, additional information is sought by Hospital staff, and all of the collected information is presented to the Credentials Committee.

4.    The Credentials Committee is made up entirely of medical physicians and surgeons, and is a committee of the Hospital responsible for professional credentialing and for reviewing the professional qualifications of individuals providing or seeking to provide health care at the Hospital.

5.    Upon being presented with an application and other information collected by Hospital staff that may raise red flags or other questions, the Credentials Committee reviews the

1

credentialing file and votes by yeas and nays whether or not to recommend approval of an application.

6.   The recommendation of the Credentials Committee is presented to the Medical Executive Committee of the Hospital on a monthly basis. The Medical Executive Committee performs the final review of the professional qualifications of individuals providing or seeking to provide health care at the Hospital, and makes the final determination with regard to the credentialing and privileging of Medical Staff at the Hospital, including Dr. Durrani.

7.   Physicians approved for privileges at the Hospital are required to reapply for privileges and go through this process a minimum of every two years.

8.   This process has been the same from the time that Dr. Durrani was first appointed until now.

9.   Dr. Durrani was before the Credentials Committee and Medical Executive Committee related to credentialing and privileging on three different occasions during his tenure as a privileged surgeon at the Hospital: once for his initial appointment and twice to consider reappointment.

10.  The Hospital has also established and maintains two internal physician Peer Review Committees: one for surgeons and one for medical doctors. Each Peer Review Committee is a committee of the Hospital responsible for providing quality review activities involving the competence of, professional conduct of, quality of care provided by, or other activities of individual health care providers. The Peer Review Committees were first established around the same time that Dr. Durrani was first appointed.

11.  Reports of potentially anomalous events related to physician activities, no matter how minor, may be submitted to the Peer Review Committees by anyone. Upon receipt of a report, the Hospital staff may investigate and present a file to the Peer Review Committee.

12.  The Peer Review Committee reviews each reported incident and assigns the incident a rating corresponding to the severity of the incident.

13.  In addition to its role in credentialing, the Medical Executive Committee is also responsible for providing quality review activities involving the competence of, professional conduct of, quality of care provided by, and activities of individual health care providers. The Peer Review Committee reports to the Medical Executive Committee and may escalate particular matters to the Medical Executive Committee if it deems it necessary.

14.  To the extent that the Peer Review Committee or Medical Executive Committee have any documents or information in their possession related to Dr. Durrani's quality assurance and other activities, such documents and information would have been created by or for the Peer Review Committee or Medical Executive Committee for purposes of reviewing his activities, professional conduct, competence, and quality of care.



applicable committee, and the information was used by the committee in the performance of its duties.

22.   To the best of my knowledge, the Hospital never performed a peer review of any treatment provided to Kelli E. Kramer.

Further Affiant sayeth naught.

Date: June _10th_, 2014

Sworn to before me and subscribed in my presence this ____ day of June, 2014.

Notary Public

WCHLibrary 0123682.0605681  176988v3

BILL J PALICESIS
Notary Public, State of Ohio
My Commission Does Not Expire
RC147.03

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 14-CI-00400

FILED
BOONE CIRCUIT/DISTRICT COURT
MAY 30 2014
DIANNE MURRAY, CLERK
BY:_____.D.C.

WEST CHESTER MEDICAL CENTER
d/b/a WEST CHESTER HOSPITAL, LLC

PLAINTIFF/
COUNTERCLAIM-DEFENDANT

v.

KELLI E. KRAMER

DEFENDANT/
COUNTERCLAIM-PLAINTIFF/

JAMES KRAMER

INTERVENING DEFENDANT/
COUNTERCLAIM-PLAINTIFF

and

JAMES KRAMER
KELLI E. KRAMER

THIRD-PLAINTIFF PLAINTIFFS

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

THIRD-PARTY DEFENDANTS

### NOTICE - MOTION - ORDER

Please take notice that the undersigned will make the attached motion and tender the accompanying order on June 24, 2014 at 9:00 A.M. before the Boone Circuit Court in accordance with Local Rule 5.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:    (513) 651-6800
FAX:  (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:    (502) 589-5400
FAX:  (502) 581-1087

*Counsel for Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC*

2



# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, this 3Ḓth day of May 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:     (859) 341-1881
FAX:   (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:     (859) 578-4444
FAX:   (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff
Kelli E. Kramer and Intervening Defendant James
Kramer*

Bill J. Paliobeis

C:\Users\sdr\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\FU3MU6AJ\Kramer-West Chester Medical Center - NMO - 4833-2347-5482 1 (3).doc



6-24-2014

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION III**
**CIVIL ACTION NO. 14-CI-00400**



FILED
BOONE CIRCUIT/DISTRICT COURT
MAY 3 0 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

WEST CHESTER MEDICAL CENTER
d/b/a WEST CHESTER HOSPITAL, LLC

                              **PLAINTIFF/**
         **COUNTERCLAIM-DEFENDANT**

v.

KELLI E. KRAMER

                             **DEFENDANT/**
     **COUNTERCLAIM-PLAINTIFF/**

JAMES KRAMER

        **INTERVENING DEFENDANT/**
     **COUNTERCLAIM-PLAINTIFF**

and

JAMES KRAMER
KELLI E. KRAMER

       **THIRD-PLAINTIFF PLAINTIFFS**

v.

ABUBAKAR ATIQ DURRANI
CENTER FOR ADVANCED SPINE TECH, INC.
UC HEALTH, INC.

      **THIRD-PARTY DEFENDANTS**

**MOTION TO VOLUNTARILY DISMISS COMPLAINT IN ACCORDANCE WITH**
**CR 41.01(2) BY PLAINTIFF/COUNTERCLAIM-DEFENDANT WEST CHESTER**
**MEDCIAL CENTER D/B/A WEST CHESTER HOSPITAL, LLC**

Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester

Hospital, LLC, by and through counsel, hereby moves this Court for voluntary dismissal of the

Complaint filed in this case nearly three years ago, on July 20, 2011. West Chester Medical

Center files this motion seeking voluntary dismissal because Defendant/Counterclaim-Plaintiff

Kelli E. Kramer rejected its offer to enter into an agreed order dismissing the Complaint.

Plaintiff apparently has rejected West Chester Medical Center's request to voluntarily dismiss its

sole claim pursuant to CR 41.01(1) because she believes it is an attempt to gain a "tactical

advantage" in further litigating this case.

When parties cannot stipulate to dismiss an action, CR 41.01(2) provides that a voluntary dismissal can be achieved "upon order of the court and upon such terms and conditions as the court deems proper." CR 41.01(2). Thus, when a plaintiff voluntarily seeks dismissal, it should be generally granted unless "the opposing party will suffer some substantial injustice or be substantially prejudiced." *Sublett v. Hall*, 589 S.W.2d 888, 893 (Ky. 1979). As Kramer's legal counsel has noted in his definitive treatise on Kentucky Civil Procedure, substantial injustice or substantial prejudice under CR 41.01(2) *does not occur simply because the plaintiff will receive a tactical advantage through voluntary dismissal.* (Emphasis added). 7 KURT A. PHILIPPS, JR., DAVID V. KRAMER & DAVID W. BURLEIGH, KENTUCKY PRACTICE SERIES RULES OF CIVIL PROCEDURE RULE 41.01 (Westlaw 2013) (citing *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir. 1982)).[1]

Instead, substantial injustice or substantial prejudice consists of analyzing "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.* (collecting cases). And when the defendant alleges a counterclaim, another factor a trial court must consider is whether the counterclaim "can remain pending for independent adjudication by the court." CR 41.01(2).

---

[1] The treatise also explains that in interpreting CR 41.01, Kentucky courts generally follow federal court interpretations of Fed. R. Civ. P. 41 due to the similarities between the rules. *See* PHILIPPS, ET AL., *supra* ("Rule 41 substantially follows FRCP 41 and consists of four sub-rules relating to voluntary and involuntary dismissals of claims, counterclaims, cross-claims, or third-party claims."); *see also Louisville Label, Inc. v. Hildesheim*, 843 S.W.2d 321, 324 (Ky. 1992) (following federal court interpretation of Fed. R. Civ. P. 41 to interpret CR 41.01(2)). Federal courts are uniform in holding that tactical advantages obtained through voluntary dismissals are insufficient grounds to deny such relief. *See, e.g., Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 503 (6th Cir. 2007) (collecting cases).

In the case at bar, the District Court set aside West Chester Medical Center's nearly three year old default judgment against Kramer and transferred this case to this Court just over two months ago. [Order, Mar. 24, 2014.] No trial date has been set. No party has filed a motion for summary judgment or other dispositive motion. No trial preparation expense or effort has been incurred by Kramer as to this claim. No discovery has been conducted on this claim. In discussions between legal counsel, West Chester Medical Center has repeatedly stated that it has no intentions of pursuing the claims contained in the original 2011 Complaint. In fact, West Chester Medical Center has offered to dismiss its claims and the 2011 Complaint with prejudice due to the factual allegations in Kramer's counterclaim and what she claims is newly discovered evidence in this case.

In her motion to set aside the default judgment this Court entered against her nearly three years ago, Kramer made clear that she would pursue her claims through either "an original Complaint or by the . . . Answer, Counterclaim and Third-Party Complaint" filed in this case. [Def.'s Mot. to Set Aside Default J. at 1.] In doing so, Kramer conceded that her counterclaims against West Chester Medical Center could have been brought -- and *adjudicated* -- in a separate action. Indeed, compared to the factual allegations asserted in the 2011 Complaint, Kramer's counterclaims require different factual discovery, present new factual and legal issues, and include parties not named in the original action. Simply put, the "collections action" which West Chester Hospital seeks to dismiss has absolutely no bearing on the merits of the remaining claims brought in the counter-claim. The dismissal of it will not in away be prejudicial to Kramer.

In refusing to enter an agreed order of dismissal pursuant to CR 41.01(1), thus necessitating this motion, Kramer's legal counsel accuses West Chester Medical Center of "forum-shopping" because they believe West Chester Medical Center will ultimately seek realignment of the parties and removal to

3

federal court.[2]  That objection should be rejected for two reasons.  First, as noted above, the fact that a plaintiff gains some tactical advantage by dismissing an action does not constitute substantial prejudice, and generally does not warrant the denial of a motion to dismiss.  This is a well-settled rule of law that Kramer's own counsel cites in the aforementioned Treatise he helped co-author.  *See* PHILLIPS ET AL., *supra* at 2.  Second, West Chester Medical Center filed this suit three years ago based on very different facts, received a default judgment in its favor, and thus could not anticipate the filing of Kramer's counterclaim.  Kramer admits that had this Court denied her motion to set aside the default judgment, she would have pursued her case as an independent action, which would have been removable to federal court based on diversity jurisdiction.  But by filing her counterclaim here, Kramer has sought to take advantage of a judicial proceeding that she willingly ignored three years ago to now deny West Chester Medical Center its statutory right to removal.  Thus, in reality, it is Kramer who is engaging in forum-shopping, and this Court should not reward her indifference and dilatory conduct in the original action while denying West Chester Hospital's statutory rights after now deciding to file this counter-claim.

Under CR 41.01(2) Kramer has no valid basis to object to the voluntary dismissal of West Chester Medical Center's 2011 Complaint.  She has suffered no prejudice or injustice, let alone the *substantial* prejudice and injustice sufficient to preclude West Chester Medical Center from voluntarily dismissing its own Complaint.  West Chester Medical Center has no interest in pursuing its Complaint and should not be compelled by this Court to do so.  Accordingly, West Chester Medical Center's motion to voluntarily dismiss its Complaint should be granted.  A proposed order has been tendered with this Motion.

---

[2] It should be noted that this Court previously allowed a dismissal of Plaintiff's "collections action" claim and subsequent re-alignment of the parties in *Mona Eder v. West Chester Medical Center*, Boone Cir., No. 13-CI-1028.

Respectfully submitted,

Bill J. Paliobeis
Michael E. Nitardy
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
PH:     (513) 651-6800
FAX:   (513) 651-6981

-and-

Junis L. Baldon
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363
PH:     (502) 589-5400
FAX:   (502) 581-1087

*Counsel for Plaintiff/Counterclaim-Defendant West Chester Medical Center d/b/a West Chester Hospital, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served, by depositing same in the United States Mail with sufficient postage prepaid, this 30th day of May 2014 upon:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
PH:    (859) 341-1881
FAX:  (859) 341-1469

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
PH:    (859) 578-4444
FAX:  (859) 578-4440

*Co-Counsel for Defendant/Counterclaim-Plaintiff*
*Kelli E. Kramer and Intervening Defendant James*
*Kramer*


_____
Bill J. Paliobeis

 

BOONE

## CI 14-CI-00400

WEST CHESTER MEDICAL CENTER,
KRAMER,KELLI

**MOTION TO COMPEL**

eFiled: 5/27/2014 ID: 191
   By: KRAMER, KELLI E
Pages total: 8    Image size: 0.47 MB

Case Number: 14-CI-00400

FILED / ENTERED
5/27/2014
BOONE
Dianne Murray, Boone Circuit Clerk
BY: _____ D.C.



| 1 | 2 | 3 |
| 4 | 5 | 6 |
| 7 | 8 | |

8 of 8 thumbnails shown

Filed        14-CI-00400   05/27/2014         Dianne Murray, Boone Circuit Clerk

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                              PLAINTIFF

VS.

KELLI E. KRAMER                              DEFENDANT AND
                                             THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                 THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                  THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

## **MOTION TO COMPEL**
### [ELECTRONICALLY FILED]

Come now the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party
Plaintiff James Kramer (collectively, "Movants"), by and through counsel, and pursuant to Rules
33, 34, and 37 of the Kentucky Rules of Civil Procedure, respectfully move this Court for an
Order compelling full, complete, and non-evasive answers to Movants' interrogatories and
requests for production of documents propounded on Plaintiff West Chester Medical Center.   A
memorandum in support and proposed order are attached.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017

COM : 000001 of 000008

Filed          14-CI-00400     05/27/2014          Dianne Murray, Boone Circuit Clerk

Phone No.:     859-341-1881
Fax No.:       859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:       859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

COM : 000002 of 000008

2

Filed          14-CI-00400     05/27/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400    05/27/2014          Dianne Murray, Boone Circuit Clerk

## MEMORANDUM IN SUPPORT

### I.  FACTUAL AND PROCEDURAL BACKGROUND

#### A.   Overview of Facts.

The Counterclaim and Third-Party Complaint contain a relatively detailed recitation of the tortious conduct known to Movants at this juncture; that is, prior to West Chester Medical Center's answering Movants' discovery (which is overdue).   The following brief factual overview, however, places this Motion in some context.

Third-Party Defendant Dr. Durrani performed four spinal fusion surgeries and many other lesser procedures on Kelli Kramer from 2009 through 2012.  The four fusion surgeries were unnecessary, ill-conceived, and/or negligently performed.  Some of them involved the improper implantation of the Medtronic, Inc. product "Infuse" into Mrs. Kramer's spine, though it was not FDA-approved for that use.  The use of this unapproved product occurred without Mrs. Kramer's knowledge, much less informed consent.  Rather, Dr. Durrani had engaged in a widespread scheme of defrauding patients, including Mrs. Kramer, into these procedures for the sole purpose of profiteering off the impairment or destruction of their health.  Dr. Durrani is currently under federal indictment for this fraudulent scheme and has fled the United States, apparently to his native Pakistan, to avoid justice.

Dr. Durrani performed all four of the fusion surgeries on Mrs. Kramer at West Chester Medical Center ("WCMC").  WCMC had granted Dr. Durrani medical privileges to perform these surgeries and thereafter failed to appropriately monitor the quality and necessity of his care.  Upon information and belief, Dr. Durrani performed hundreds, if not thousands, of such tortious procedures at WCMC.  WCMC was in a unique position, and was in fact required, to control, monitor, and oversee the conduct and consequences of Dr. Durrani's practice of

COM : 000003 of 000008

3

Filed          14-CI-00400     05/27/2014        Dianne Murray, Boone Circuit Clerk

medicine in its hospital. Further, WCMC was custodian of the medical record that reflected serious problems with Dr. Durrani's surgeries, and it provided financial support, medical facilities, medical devices, hardware, products, billing and insurance payment support, staff support, medicines, and tangible items for Dr. Durrani's use. In short, WCMC either purposely aided and abetted Dr. Durrani's fraudulent scheme or, at a minimum, was so grossly negligent and reckless as to constitute willful blindness to it.

Finally, while the surgeries were performed at WCMC in Butler County, Ohio, Mrs. Kramer treated with Dr. Durrani primarily in his Kentucky office. Accordingly, many of Dr. Durrani's fraudulent statements to induce Mrs. Kramer into having the surgeries, as well as his violation of informed consent, occurred in Kentucky. WCMC and its parent company, UC Health, has had systematic and continuous contacts with Kentucky, including dealings in Kentucky related to Mrs. Kramer and this very case. They routinely avail themselves of this forum and profit off their business in the Commonwealth. UC Health has had facilities located in Boone County, Kentucky, for years, and is currently constructing another large health-care facility in Florence.

**B.    Procedural Posture.**

On March 31, 2014, Movants propounded interrogatories and requests for production on WCMC. (attached as **Exhibit A**) The answers to this discovery were originally due on or about April 30, 2014. Having failed to receive answers and responses to this discovery for seven weeks, Movants e-mailed counsel for WCMC on May 21, 2014 (see D. Kramer e-mail, 5/21/14, attached as **Exhibit B**), offering an extension until May 28, 2014 (twice the original response time) on the condition that WCMC advise Movants by Friday, May 23, 2014, as to whether it

4

COM : 000004 of 000008

Filed        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk

intends to object to producing Dr. Durrani's credentialing, human resources, peer review and related files (the "Peer Review").[1]

The purpose of the condition was to enable Movants to go ahead and raise the issue of the discoverability of the Peer Review with the Court forthwith, should WCMC erroneously assert a privilege and object to producing the requested documents and information. Counsel for WCMC acknowledged Movants' offer of extension and request related to its position on Peer Review, but confirmed that WCMC objects to production of Dr. Durrani's credentialing, peer review, and human resources files. (See B. Paliobeis e-mail, 5/23/2014, attached as **Exhibit C**) To date, WCMC has not answered discovery (three weeks overdue) and has refused to produced the Peer Review, despite controlling Kentucky case law on precisely the same issue, arising out of this very Court, and unequivocally rejecting WCMC's position. *See Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009). Movants will honor their offered extension to WCMC to respond to discovery by agreeing to an extension until 14 days after the date of hearing on this motion, but Movants request that the Court issue an Order compelling production of the Peer Review over WCMC's objection on that date.

## II.   CREDENTIALING, HUMAN RESOURCES, PEER REVIEW, AND RELATED QUALITY MANAGEMENT FILES ARE DISCOVERABLE IN THIS ACTION.

A request for the Peer Review of Dr. Durrani is reasonably calculated to lead to the discovery of admissible evidence, which of course is the scope of discovery under CR 26.02. This action involves claims of medical negligence, negligence in hospital administration, and

---

[1] As part of the "Peer Review," Movants include all interrogatories and requests for production that relate to investigating, reviewing, credentialing, supervising, performing quality assurance review, holding root cause analyses, investigating sentinel events, personnel actions, discipline, and similar issues. In other words, Movants seek to avoid WCMC attempting to evade discovery obligations by overly technical or overly limited interpretation as to what is the "Peer Review." The Peer Review includes the information sought in Interrogatories Nos. 11, 17, 18, 19, and 20, and Requests for Production Nos. 2, 9, 12, 13, 14, 17, and 19.

COM : 000005 of 000008

Filed        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk

negligence in hiring, credentialing, supervision, and retention of Dr. Durrani by WCMC, among other claims. The information that is contained or should be contained in the requested files relates directly to these claims. It will likely lead to the discovery of admissible evidence on all Movants' claims. In fact, the contents of those files may be the best evidence available bearing on the claims against WCMC.

The discoverability of the Peer Review at issue here is an open-and-shut matter of law in Kentucky. It is plainly discoverable. As stated above, the Kentucky Supreme Court has spoken directly and unequivocally on this exact issue under very similar facts in *Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009). Like the present case, *Saleba* involved a motion to compel production of peer review from an Ohio hospital that had been sued in the Boone Circuit Court on medical negligence and related claims. *Id.* The defendant hospital objected to production, arguing that Ohio's peer review privilege applied and that the Kentucky peer review statute also precluded disclosure. *Id.* This Court, the Kentucky Court of Appeals, and the Kentucky Supreme Court all roundly rejected the Ohio hospital's arguments in *Saleba* and ordered production of the peer review and personnel files of the physician involved. *Id.*

## III.  CONCLUSION

*Saleba* is directly on point. WCMC's Peer Review on Dr. Durrani is not subject to privilege and is discoverable. By the time this Motion is heard, WCMC will have had nearly 75 days to respond to Movants' discovery. For the foregoing reasons, Movants, Kelli and James Kramer, respectfully request that this Court order WCMC to fully and completely respond to Interrogatories Nos. 11, 17, 18, 19, and 20, and Requests for Production Nos. 2, 9, 12, 13, 14, 17, and 19 within 14 days of the entry of the Order, and that the Court order WCMC to fully and

COM : 000006 of 000008

Filed        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk

completely respond to the balance of the outstanding discovery within the same 14 days of the

entry of the Order.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
                rmclane@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

## ULCR 5(C) CERTIFICATATION OF COUNSEL

I hereby certify that Movants have attempted to resolve the discovery dispute that is the subject of this Motion by extrajudicial means and by conferring with counsel for Plaintiff West Chester Medical Center and that counsel have been unable to resolve their differences.

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

## NOTICE

Please take notice that the foregoing will come on for hearing on June 10, 2014, at 9:00 a.m., or as soon thereafter as counsel may be heard.

COM : 000007 of 000008

Filed        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400   05/27/2014          Dianne Murray, Boone Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed and e-mailed this 27th day of May, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center and UC Health*

Michael F. Lyon, Esq.
David E. Williamson, Esq.
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street
Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Counsel for Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.*

/s/ David V. Kramer
David V. Kramer
Ryan M. McLane

8

COM : 000008 of 000008

Filed          14-CI-00400       05/27/2014          Dianne Murray, Boone Circuit Clerk




| | |
|---|---|
| BOONE<br><br>**CI 14-CI-00400**<br><br> WEST CHESTER MEDICAL CENTER,<br>KRAMER,KELLI<br><br>**EXHIBITS A, B, C** | **FILED / ENTERED**<br>5/27/2014<br>BOONE<br>Dianne Murray, Boone Circuit Clerk<br>BY: _____ D.C. |

eFiled: 5/27/2014 ID: 191
  By: KRAMER, KELLI E
Pages total: 18    Image size: 1.34 MB

Case Number: 14-CI-00400







COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                              DEFENDANT AND
                                             THIRD-PARTY PLAINTIFF
AND

JAMES KRAMER                                 THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                  THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

### FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO PLAINTIFF, WEST CHESTER MEDICAL CENTER BY DEFENDANT KELLI E. KRAMER AND THIRD-PARTY PLAINTIFF JAMES KRAMER

Come now the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer, by and through counsel, and pursuant to Rules 33 and 34 of the Kentucky Rules of Civil Procedure, propound the following Interrogatories and Requests for Production upon Plaintiff, West Chester Medical Center, to be answered fully by said Plaintiff and under oath within forty-five (45) days after the service hereof. These are deemed continuing discovery requests, and any knowledge of the attorneys of the Plaintiff or any other agents of the Plaintiff shall be deemed to be knowledge of the Plaintiff.

Should there be no sufficient space to complete your answer, you may complete it in sequence on a separate appendix to the Answers and identify it appropriately. The word "you"

EXH : 000001 of 000018

as used herein refers to West Chester Medical Center, and/or its attorneys, agents, employees, investigators or other representatives.

## INTERROGATORIES

1.     Please state the full name, residence, business address, title, and position of all persons who assisted in the preparation of the answers to these Interrogatories and Requests for Production.

**ANSWER:**


2.     Please identify all persons known to you who have or may have discoverable matter pertaining to this lawsuit, giving the name, address, and job classification of each such person identified and a brief description of the discoverable information they may have.

**ANSWER:**


3.     Please fully describe the name and corporate status of West Chester Medical Center from August 1, 2009 through present.  Please include in your answer a full description of the nature of the relationship between West Chester Medical Center and UC Health.

**ANSWER:**


4.     For each physician, nurse, agent and/or employee of West Chester Medical Center who participated in the medical care and/or treatment of Kelli Kramer on or about August 29,

EXH : 000002 of 000018

2

2009, September 2-4, 2009, June 8, 2010, June 16-21, 2010, May 30, 2012, October 10, 2012, and any other dates from August 1, 2009 through present (collectively, the "Applicable Dates"), and please state the name, address and job classification of each such person, and indicate the nature and scope of the person's participation or assistance.

**ANSWER:**

5.     Please fully describe the substance of each conversation that Kelli Kramer had with any physician, nurse, agent and/or employee of West Chester Medical Center regarding the treatment received at West Chester Medical Center on the Applicable Dates, including in your answer the date and time of each such conversation, and the names of each party to the conversation.

**ANSWER:**

6.     Please describe in detail the events leading up to and the circumstances under which Kelli Kramer was treated at West Chester Medical Center on the Applicable Dates.

**ANSWER:**

7.     Please identify all tests that physicians, nurses, agents, and/or employees of West Chester Medical Center performed or ordered to be performed on Kelli Kramer while she was under the care of West Chester Medical Center, including for each such test:

EXH : 000003 of 000018

3

Filed ·          14-CI-0040⬤ 05/27/2014          Dianne Murray, B⬤ne Circuit Clerk

A.     The name of the test that was ordered;

B.     The name and address of the person who performed the test;

C.     The date and time that the test was ordered;

D.     The orders or instructions that were given to employees regarding the test; and

E.     The reason(s) that the test was indicated for Kelli Kramer.

**ANSWER:**

8.     If you contend that any other person, firm or entity caused or contributed to Kelli Kramer's injuries, identify each person, firm, or entity by name, address, and employer, and state the reasons for your contentions.

**ANSWER:**

9.     Please state the name, job title and employment status of all employees and/or agents who were called in to assist in treatment of Kelli Kramer on the Applicable Dates.

**ANSWER:**

10.     Please identity and describe in detail any and all written or unwritten guidelines, including but not limited to rules, bylaws, instructions, standing orders, clinical pathways, care

EXH : 000004 of 000018

Filed          14-CI-00400     05/27/2014          Dianne Murray, Boone Circuit Clerk

Filed          14-CI-00400     05/27/2014          Dianne Murray, Boone Circuit Clerk

plans, protocols, policies and/or procedures, and/or similar documents of West Chester Medical

Center which were in existence on the Applicable Dates with regard to:

     A.    surgery, spinal surgery, and/or pre-operative procedures;

     B.    presence of third parties during medical procedures (e.g., agents of

pharmaceutical or medical equipment companies);

     C.    documentation, patient charting, and/or preparation of operative reports;

     D.    use of implants during surgery, including without limitation bone

morphogenetic protein 2 ("BMP-2") and similar products and/or substances;

     E.    supervision of physicians, credentialing of physicians, delineation of

privileges, and/or loss of privileges;

     F.    peer review, quality review, quality management, root cause analyses, and

sentinel events.

Please include in your answer the date each was instituted.  Further, if any of these have been

changed, updated, or otherwise revised since August 1, 2009, please state the dates for such

changes, updates, or revisions and include all versions in your answer.

**ANSWER:**

     11.    Please describe in detail any documentation made or received by West Chester

Medical Center's employees, agents, nurses and/or servants that is not contained in Kelli

Kramer's medical records and/or medical charts regarding their treatment and/or the

complications that occurred during, or after the procedures performed on Kelli Kramer and

specify the location of and custodian of any such records.

EXH : 000005 of 000018

Filed          14-CI-00400     05/27/2014          Dianne Murray, Boone Circuit Clerk

**ANSWER:**

12.    Please state if there is any liability insurance in force that protects you from claims such as those involved in this action, and if so, please identify for each policy the name and address of the insurer, the type and number of the policy, the policy limits, the policy limits remaining available for the claims alleged in this action, and the name of the insured(s) under the policy.

**ANSWER:**

13.    Please provide the name, address, and occupation of each expert witness that you expect to call at trial of this matter.  With each such expert that is listed, please provide the subject on which the expert is expected to testify, the substance of the facts and opinion to which the expert is expected to testify and a summary of the grounds for each opinion.

**ANSWER:**

14.    Please describe in detail any and all exhibits you plan to introduce into evidence or upon which you intended to rely in your defense or use during the depositions, hearings, and trial in this action, including in your answer the full name and address of the person who has the care, custody or control of each exhibit.

**ANSWER:**

6

EXH : 000006 of 000018

, Filed    .        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk

15.    Please list all treatises, textbooks, or other authority to be introduced or otherwise used during the depositions, hearings, and trial in this action, including in your answer a list of the specific pages of such publications which will be relied upon for your defense or in the examination or cross-examination of any witnesses.

**ANSWER:**

16.    Please describe the relationship between West Chester Medical Center and Abubakar Atiq Durrani, M.D. during the Applicable Dates.

**ANSWER:**

17.    Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which any aspect of the care and/or treatment of Kelli Kramer was discussed and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**

18.    Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which any aspect of the care provided by Dr. Durrani to any patient

7

EXH : 000007 of 000018

was discussed and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**

19.     Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which the West Chester Medical Center's relationship with Dr. Durrani was discussed (including without limitation whether to revoke his privileges, whether to discontinue West Chester Medical Center's relationship Dr. Durrani, whether to discipline, reprimand, or counsel Dr. Durrani in any way, whether to continue to allow Dr. Durrani to use BMP-2 at West Chester Medical Center, etc.) and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**

20.     Please state whether Dr. Durrani's treatment of Kelli Kramer or any other patient was the subject of any peer review, grand rounds, morbidity and mortality report, Root Cause Analysis, Sentinel Event, or quality review, management, and/or assurance meetings, conferences, or discussions, and if so please state:

A.     The name, address and title of each person who participated in or assisted those reports, meetings, conferences or discussions;

B.     The date on which each such meeting, conference, or discussion occurred;

8

EXH : 000008 of 000018

C.      Whether there are any documents (including emails and electronically stored information) that recorded or otherwise memorialized those meetings, conferences, or discussions;

D.      The name, address and title of all persons who are in possession of those documents.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1.      Please produce copies of the declaration sheets of any insurance policy(ies) identified in your response to Interrogatory #12 that would cover potential liability.

**RESPONSE:**

2.      Please produce copies of all files, records, reports, notes, logs and/or similar materials, that have been made or kept by West Chester Medical Center, its employees, agents, and/or servants in connection with the care and treatment procedures of Kelli Kramer, including but not limited to those contained in Kelli Kramer's medical records and/or medical chart maintained by West Chester Medical Center, its agents and/or employees.

**RESPONSE:**

EXH : 000009 of 000018

9

. Filed '            14-CI-00400   05/27/2014         Dianne Murray, Boone Circuit Clerk

3.     Please produce copies of all exhibits that you will introduce or otherwise use during the depositions, hearings, and trial of this action.

**RESPONSE:**

4.     Please provide copies of any written reports of experts that you intend to call at trial and also a copy of the C.V. of each such expert.

**RESPONSE:**

5.     Please produce copies of all treatises, textbooks, articles, or other documents identified in your response to Interrogatory # 15.

**RESPONSE:**

6.     Please produce any and all documents concerning or supporting your contention that other persons or entities caused or contributed to the injuries of Kelli Kramer, as referred to in Interrogatory # 8.

**RESPONSE:**

10

EXH.: 000010 of 000018

7.     Please produce copies of all guidelines, including but not limited to rules, bylaws, instructions, standing orders, clinical pathways, care plans, protocols, policies and/or procedures, and/or similar documents of West Chester Medical Center as set forth in Interrogatory # 10.

**RESPONSE:**

8.     Please produce any and all video, digital and/or electronic memorialization used by you for purposes of training and/or instructing physicians, physician's assistants, nurses and/or other medical personnel which discusses, describes, depicts and/or makes reference to surgery, spinal surgery, pre-operative procedures, documentation, use of implants during surgery, including without limitation, bone morphogenetic protein 2 ("BMP-2") and similar products and/or substances.

**RESPONSE:**

9.     Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and Abubakar Atiq Durrani, M.D.

**RESPONSE:**

10.     Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and UC Health.

**RESPONSE:**

11

EXH : 000011 of 000018

· Filed ·                    14-CI-00400    05/27/2014          Dianne Murray, Boone Circuit Clerk

11.    Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and Medtronic, Inc. and/or any of Medtronic's subsidiaries, parent and/or sister companies, agents, employees, and principals.

**RESPONSE:**

12.    Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to any review, assessment, or investigation made with respect to and/or pertaining to the treatment and care of Plaintiff Kelli Kramer by West Chester Medical Center and/or UC Health and Dr. Durrani.

**RESPONSE:**

13.    Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to any review, assessment, or investigation made with respect to and/or pertaining to the treatment and care provided by Dr. Durrani to any patients at West Chester Medical Center.

**RESPONSE:**

12

EXH : 000012 of 000018

14.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to West Chester Medical Center's credentialing of Dr. Durrani, including without limitation his entire credentials file, personnel file, and similar human resources files.

**RESPONSE:**

15.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to the use of BMP-2 and/or any similar implants and products at West Chester Medical Center.

**RESPONSE:**

16.     Please provide a complete and certified copy of the medical record for Kelli Kramer at West Chester Medical Center.

**RESPONSE:**

17.     Please provide a complete copy of the audit trail for the medical record of Kelli Kramer for treatment on the Applicable Dates, including without limitation, information as to who accessed those records, when, and whether modifications were made.

13

EXH : 000013 of 000018

**RESPONSE:**

18.     Please provide a complete copy of the medical bills for treatment to Kelli Kramer.

**RESPONSE:**

19.     Please provide all documents related to complaints to you concerning Dr. Durrani's medical care or other conduct at West Chester Medical Center, including internal complaints.

**RESPONSE:**

20.     Produce all documents identified, referenced, or relied upon in answering the foregoing Interrogatories.

**RESPONSE:**

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:       859-341-1469

14

EXH : 000014 of 000018

Filed        14-CI-00400   05/27/2014        Dianne Murray, Boone Circuit Clerk

e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this 31· day of March, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*

Center for Advanced Spine Technologies, Inc.
Gregory A Bacon, Registered Agent
6905 Burlington Pike
Florence, KY 41042

Abubakar Atiq Durrani, M.D.
Address Unknown
c/o Kenton Circuit Clerk

UC Health, Inc.
GH&R Business Services, Inc., Registered Agent
511 Walnut Street
1900 Fifth Third Center
Cincinnati, OH 45202

David V. Kramer
Ryan M. McLane

415613v1

EXH : 000015 of 000018

Filed        14-CI-00400    05/27/2014        Dianne Murray, Boone Circuit Clerk



**From:** Kramer, David
**Sent:** Wednesday, May 21, 2014 5:40 PM
**To:** 'Paliobeis, Bill J.'
**Cc:** Buttelwerth, Sheila; Paul Schachter; McLane, Ryan M.; Owens, Ann; Ernst, Leigh Ann;
**Subject:** RE: RE:

Bill,

After further consideration, we respectfully decline to agree to voluntary dismissal of West Chester Medical Center's claim against Mrs. Kramer. Your client selected this forum to pursue its collection claim and wage garnishment for charges for a surgery that it knew or should have known was wrongful, resisted vacating the default judgment, and only now, when it suits West Chester, seeks to abandon its claim. The proposed dismissal is hardly altruistic. Rather, it is merely step one in your client's admitted plan of forum-shopping and choice-of-law shopping, which we intend to vigorously resist. Contrary to your suggestion, we are not opposing dismissal just to make you "jump through hoops." I assure you that is not the way we practice, which should be evident from our having reached out to you about filing an answer followed by the two agreed extensions of time for you to file an answer. We certainly have a reasonable basis, supported by pertinent legal authority, for withholding our agreement to dismissal of your claim. As well, we have a considerable amount of case law supporting the Court's discretion and authority to deny a motion to voluntarily dismiss in this circumstance, where it is being sought in order to obtain a more favorable forum or body of law.

On another note, your client's discovery responses are several weeks overdue at this time. We conditionally offer your client until next Wednesday, May 28, 2014, to provide full and complete responses as a gesture of compromise. That is double the original response time, so I would expect that it will not be a problem. As a condition of this extension, we ask that you advise us by Friday May 23 at 12:00 p.m. whether you intend to object to producing Dr. Durrani's credentialing, peer review, and human resources files, all of which are discoverable under Kentucky law. If you do intend to object, or if you fail to so advise us, then we will go ahead and file a motion to compel so we can resolve that issue timely. We look forward to hearing from you by the foregoing deadline.

We trust the foregoing information will prove useful. If you have any other questions or comments, please advise.

- Dave Kramer
David V. Kramer
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hill, Kentucky 41017
direct dial 859-426-2124
fax 859-341-2456
email dkramer@dbllaw.com
website www.dbllaw.com
blog http://civilprocedure.dbllaw.com/
🖨 Please consider the environment before printing this message.

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution, or copying of it or its contents is prohibited. If you have received this communication in error, please notify Dressman Benzinger LaVelle psc immediately at (859) 341-1881, and delete this email from your computer. Any statements made herein regarding tax matters, including attachments, may not be relied upon by anyone to avoid tax penalties and are not to be used or referred to in any publication or marketing materials.



**From:** Paliobeis, Bill J. [mailto:BPaliobeis@fbtlaw.com]
**Sent:** Friday, May 23, 2014 10:15 AM
**To:** Kramer, David
**Cc:** Buttelwerth, Sheila; Paul Schachter; McLane, Ryan M.; Owens, Ann; Ernst, Leigh Ann,; Haggerty, Walter E.
**Subject:** RE: RE:

Dave- I appreciate the extension of time to answer your discovery. As you can imagine, with hundreds of these lawsuits and more every day responding to discovery is quite time consuming. I suspect we will need additional time beyond May 28th.

However, in the meantime, as requested below please be advised that after thoroughly researching the issue we believe that there are legitimate grounds to object to the production of "Dr. Durrani's credentialing, peer review, and human resources files" at this time. As such we will not produce this information.

Thank you. Have a great holiday weekend.

-Bill

**From:** Kramer, David [mailto:dkramer@dbllaw.com]
**Sent:** Wednesday, May 21, 2014 5:40 PM
**To:** Paliobeis, Bill J.
**Cc:** Buttelwerth, Sheila; Paul Schachter; McLane, Ryan M.; Owens, Ann; Ernst, Leigh Ann,
**Subject:** RE: RE:

Bill,

After further consideration, we respectfully decline to agree to voluntary dismissal of West Chester Medical Center's claim against Mrs. Kramer. Your client selected this forum to pursue its collection claim and wage garnishment for charges for a surgery that it knew or should have known was wrongful, resisted vacating the default judgment, and only now, when it suits West Chester, seeks to abandon its claim. The proposed dismissal is hardly altruistic. Rather, it is merely step one in your client's admitted plan of forum-shopping and choice-of-law shopping, which we intend to vigorously resist. Contrary to your suggestion, we are not opposing dismissal just to make you "jump through hoops." I assure you that is not the way we practice, which should be evident from our having reached out to you about filing an answer followed by the two agreed extensions of time for you to file an answer. We certainly have a reasonable basis, supported by pertinent legal authority, for withholding our agreement to dismissal of your claim. As well, we have a considerable amount of case law supporting the Court's discretion and authority to deny a motion to voluntarily dismiss in this circumstance, where it is being sought in order to obtain a more favorable forum or body of law.

On another note, your client's discovery responses are several weeks overdue at this time. We conditionally offer your client until next Wednesday, May 28, 2014, to provide full and complete responses as a gesture of compromise. That is double the original response time, so I would expect that it will not be a problem. As a condition of this extension, we ask that you advise us by Friday May 23 at 12:00 p.m. whether you intend to object to producing Dr. Durrani's credentialing, peer review, and human resources files, all of which are discoverable under Kentucky law. If you do intend to object, or if you fail to so advise us, then we will go ahead and file a motion to compel so we can resolve that issue timely. We look forward to hearing from you by the foregoing deadline.

EXH : 000017 of 000018

We trust the foregoing information will prove useful. If you have any other questions or comments, please advise.

- Dave Kramer
David V. Kramer
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hill, Kentucky 41017
direct dial 859-426-2124
fax 859-341-2456
email dkramer@dbllaw.com
website www.dbllaw.com
blog http://civilprocedure.dbllaw.com/
Please consider the environment before printing this message.
Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution, or copying of it or its contents is prohibited. If you have received this communication in error, please notify Dressman Benzinger LaVelle psc immediately at (859) 341-1881, and delete this email from your computer. Any statements made herein regarding tax matters, including attachments, may not be relied upon by anyone to avoid tax penalties and are not to be used or referred to in any publication or marketing materials.

EXH : 000018 of 000018

**COMMONEALTH OF KENTUCKY**
**BOONE DISTRICT COURT**
**CASE NO.** ~~11-CI-2056~~
14-CI-400

BOONE CIRCUIT/DISTRICT COURT

MAY 1 4 2014

DIANNE MURRAY, CLERK
BY:_____D.C.

| | | |
|---|---|---|
| **WEST CHESTER MEDICAL CENTER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **ANSWER OF COUNTERCLAIM** |
| **KELLI KRAMER AND JAMES KRAMER** | : | **DEFENDANTS WEST CHESTER** |
| | : | **HOSPITAL LLC AND UC HEALTH TO** |
| | : | **DEFENDANTS/THIRD PARTY** |
| Defendants/Third Party Plaintiffs | : | **PLAINTIFFS' COUNTERCLAIM AND** |
| | : | **THIRD PARTY COMPLAINT** |
| v. | : | |
| | : | |
| **ABUBAKAR ATIQ DURRANI, M.D., et al.** | : | |
| | : | |
| Third Party Defendants. | : | |

Come now Plaintiff West Chester Hospital, LLC and Third-Party Defendant UC Health ("Counterclaim Defendants"), by and through counsel, and for their Answer to Defendants/Third Party Plaintiffs' ("Counterclaim Plaintiffs") Counterclaim and Third-Party Complaint state and aver as follows:

### FIRST DEFENSE

1.    Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations set forth in Paragraphs 1 and 2.

2.    The allegations contained in Paragraph 3 are not directed at these answering Counterclaim Defendants and thus no response is required.

3.    Counterclaim Defendants acknowledge that West Chester Hospital was a limited liability company authorized to transact business in the State of Ohio under the name "West Chester Hospital." Counterclaim Defendants deny the remaining allegations contained in Paragraph 4.

4.     Counterclaim Defendants admit that they initiated a lawsuit and have pursued collections options related to unpaid bills for medical services provided. Counterclaim Defendants deny the remaining allegations contained in Paragraph 5.

5.     Counterclaim Defendants deny the allegations in Paragraph 6.

6.     Counterclaim Defendants admit that UC Health was a licensed corporation and that West Chester Hospital was a member of UC Health. Counterclaim Defendants deny the remaining allegations contained in Paragraph 7.

7.     Counterclaim Defendants admit that UC Health transacts business in Kentucky, but denies the remaining allegations in Paragraph 8.

8.     Counterclaim Defendants deny the allegations in Paragraph 9.

9.     Counterclaim Defendants admit that West Chester Hospital is a hospital that provides competent and qualified nursing services, care and treatment by and through its nurse, employees and medical staff. Counterclaim Defendants deny the remaining allegations contained in Paragraph 10.

10.     Counterclaim Defendants deny the allegations contained in Paragraph 11.

11.     The allegations contained in Paragraphs 12 and 13 call for a legal conclusion and do not require a response. To the extent a response may be required, Counterclaim Defendants deny these Paragraphs.

12.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 14, 15, and 16.

13.     To the extent the allegations contained in Paragraph 17 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

14.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 18, 19, 20, 21, 22, and 23.

15.     To the extent the allegations contained in Paragraph 24 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

16.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 25 and 26.

17.     To the extent the allegations contained in Paragraph 27 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

18.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 28, 29, 30, and 31.

19.     To the extent the allegations contained in Paragraph 32 are consistent with the medical records, said allegations are admitted. To the extent they are not, said allegations are denied.

20.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 33, 34, 35, and 36.

21.     In response to Paragraph 37, Counterclaim Defendants state that they are without sufficient knowledge to form a belief as to the truth of Dr. Durrani's interest in Medtronic, and further affirmatively state that they had no obligation to disclose such a relationship, if one existed.

22.     Counterclaim Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraphs 38 and 39.

3

23.     In response to Paragraph 40 and 41, Counterclaim Defendants affirmatively state that they had no obligation to disclose Dr. Durrani's use of BMP-2/Infuse and further deny the remaining allegations as they relate to West Chester and UC Health.

24.     The allegations contained in Paragraphs 42 through 45 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

25.     In response to Paragraph 46, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

26.     In response to Paragraph 47, Counterclaim Defendants admit a duty to provide care by and through its employees within the standard of care applicable under like or similar circumstances. To the extent the allegations set forth in Counterclaim Plaintiffs' Counterclaim and Third Party Complaint allege a breach of said duty, said Counterclaim Defendants deny same.

27.     Counterclaim Defendants deny the allegations contained in Paragraphs 48 and 49.

28.     The allegations contained in Paragraphs 50 through 53 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

29.     In response to Paragraph 54, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

30.     Counterclaim Defendants deny the allegations contained in Paragraphs 55, 56, 57, 58, 59, and 60.

31.     Paragraphs 61 and 62 contain no factual allegations and therefore do not require a response. TO the extent a response may be required, Counterclaim Defendants deny the allegations of Paragraphs 61 and 62.

32.     Counterclaim Defendants deny the allegations contained in Paragraphs 63, 64, 65, 66, 67, 68, 69, and 70.

33.     In response to Paragraph 71, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

34.     Counterclaim Defendants deny the allegations contained in Paragraphs 72, 73, 74, and 75.

35.     The allegations contained in Paragraphs 76 through 80 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

36.     In response to Paragraph 81, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

37.     Paragraphs 82 and 83 set forth a legal conclusion which requires no response. To the extent a response may be required, Counterclaim Defendants deny said allegations.

38.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 84, 85, and 86.

39.     The allegations contained in Paragraph 87 for a legal conclusion and do not require a response. To the extent a response may be required, Counterclaim Defendants deny Paragraph 87.

40.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 88.

41.     Counterclaim Defendants deny the allegations contained in Paragraph 89.

42.     In response to Paragraph 90, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

43.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraph 91.

44.     Counterclaim Defendants deny the allegations contained in Paragraph 92 and 93.

45.     Counterclaim Defendants are without sufficient information to form a belief as to the truth of the allegations in Paragraphs 94.

46.     Counterclaim Defendants deny the allegations contained in Paragraph 95, 96, 97, and 98.

47.     The allegations contained in Paragraphs 99 through 107 do not pertain to these Counterclaim Defendants. To the extent a response is required by these Counterclaim Defendants, said allegations are denied.

48.     In response to Paragraph 108, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

49.     Counterclaim Defendants deny the allegations contained in Paragraphs 109, 110, and 111.

50.     In response to Paragraph 112, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

51.     Counterclaim Defendants deny the allegations contained in Paragraphs 113 and 114.

52.     In response to Paragraph 115, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

53.     Counterclaim Defendants deny the allegations contained in Paragraphs 116, 117, 118, 119, 120, and 121.

54.     In response to Paragraph 122, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

55.     Counterclaim Defendants are without sufficient information for form a belief as to the truth of the allegations in Paragraph 123.

56.     Counterclaim Defendants deny the allegations contained in Paragraph 124.

57.    In response to Paragraph 125, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

58.    Counterclaim Defendants deny the allegations contained in Paragraph 126.

59.    In response to Paragraph 127, Counterclaim Defendants incorporate their responses to each and every allegation in the paragraphs above.

60.    Counterclaim Defendants deny the allegations contained in Paragraph 128.

## SECOND DEFENSE

61.    The Counterclaim and Third Party Complaint fails to state a claim upon which relief may be granted as to these answering Counterclaim Defendants, including, but not limited to, a failure to state a claim for negligence, fraud, negligent credentialing or negligent retention, breach of hospital administrative duty, lack of informed consent, civil conspiracy, aiding or abetting, and joint venture.

## THIRD DEFENSE

62.    The Counterclaim and Third Party Complaint fails to join an indispensible party required for the just and complete adjudication of the claims.

## FOURTH DEFENSE

63.    The injuries and/or damages alleged in the Counterclaim and Third Party Complaint, which are denied, are the result of a pre-existing condition and/or underlying pathology. Accordingly, the alleged acts and/or omissions of these answering Counterclaim Defendants are not the proximate cause of Counterclaim Plaintiffs' alleged injuries and/or damages; nor may said injuries and/or damages be attributed, in whole or in part, to these Counterclaim Defendants.

## FIFTH DEFENSE

64.    If Counterclaim Plaintiffs sustained injuries and/or damages as a result of the acts and/or omissions of any person, such injuries and/or damages are the result of acts and/or omissions

of persons not under the direction, supervision and/or control of these answering Counterclaim Defendants and for whom Counterclaim Defendants are not liable.

## SIXTH DEFENSE

65.   Any injuries and damages as alleged are the result of an unforeseeable and untoward event and/or circumstance over which these answering Counterclaim Defendants had no control; and, as such, constitute an act of God for which these Counterclaim Defendants cannot be held liable.

## SEVENTH DEFENSE

66.   If Counterclaim Plaintiffs suffered any injuries and/or damages as alleged, which allegations are denied, such injuries and/or damages are the result of a superseding intervening cause, thereby effectively eliminating any liability on the part of these Counterclaim Defendants.

## EIGHTH DEFENSE

67.   If Counterclaim Plaintiffs suffered any injuries and/or damages due to the acts and/or omissions of any persons, which allegations are denied, Counterclaim Plaintiffs knowingly, intelligently and voluntarily assumed the risk of such injuries and/or damages, thereby eliminating entirely or reducing proportionately any liability of these answering Counterclaim Defendants.

## NINTH DEFENSE

68.   Counterclaim Plaintiffs have failed to mitigate the damages claimed herein.

## TENTH DEFENSE

69.   The Counterclaim and Third Party Complaint as to these answering Counterclaim Defendants is barred by the applicable statute of limitations.

## ELEVENTH DEFENSE

70.    At all times relevant hereto, the care rendered to the Counterclaim Plaintiffs by Counterclaim Defendants and their employees was provided according to accepted standards of care.

## TWELFTH DEFENSE

71.    Counterclaim Defendants hereby give notice that they intend to rely upon, utilize and assert any affirmative defenses that become apparent during the course of discovery and thereafter and, accordingly, reserve the right to amend their Answer to assert the same.

WHEREFORE, Counterclaim Defendants, West Chester Hospital LLC and UC Health, pray for judgment as follows:

1.    Counterclaim Plaintiffs take nothing by their action;

2.    The Counterclaim and Third Party Complaint be dismissed;

3.    Counterclaim Defendants be awarded costs incurred to date; and

4.    Any such additional relief as this Court may deem proper.

Respectfully submitted,

Walter E. Haggerty, Esq. (0005610)
Bill J. Paliobeis (0066666)
Austin W. Musser (0085606)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel. (513) 651-6800
Fax (513) 651-6981
Email: whaggerty@fbtlaw.com
          bpaliobeis@fbtlaw.com
          amusser@fbtlaw.com.
*Attorneys for Counterclaim Defendants*
*West Chester Hospital, LLC and UC Health*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the

following by electronic and ordinary U.S. Mail service this 14th day of May, 2014:

David V. Kramer, Esq.
Ryan M. McLane, Esq.
DRESSMAN BENZINGER LAVELLE PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
Email: dkramer@dbllaw.com
        rmclane@dbllaw.com

*Co-Counsel for Defendant/Counterclaim-*
*Plaintiff Kelli E. Kramer and Intervening*
*Defendant James Kramer*

Paul J. Schachter, Esq.
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Parkway
Suite No. 210
Ft. Wright, KY 41011
Email: pschachter@pschachter.com

*Co-Counsel for Defendant/Counterclaim-*
*Plaintiff Kelli E. Kramer and Intervening*
*Defendant James Kramer*

Bill J. Paliobeis (0066666)
FROST BROWN TODD LLC

4823-7446-3259 2

 

**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**CASE NO. 14-CI-400**

| | |
|---|---|
| WEST CHESTER MEDICAL CENTER, etc., et al. | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| KELLI KRAMER, et al. | : |
| Defendant. | : |

FILED
BOONE CIRCUIT/DISTRICT COURT
MAY 1 3 2014
DIANNE MURRAY, CLERK
BY:_____JW_____D.C.

---

### ANSWER TO THIRD-PARTY COMPLAINT OF DEFENDANTS, ABUBUKAR ATIQ DURRANI AND THE CENTER FOR ADVANCED SPINE TEHCHNOLOGIES, INC.

---

Abubakar Atiq Durrani, M.D. ("Durrani") and Center for Advanced Spine Technologies, Inc. ("CAST," collectively referred to with Durrani as "these defendants"), by and through counsel, and for their Answer to the Third-Party Complaint in this action, state as follows:

#### FIRST DEFENSE

1.     The Third-Party Complaint fails to state a claim against these defendants upon which relief can be granted.

#### SECOND DEFENSE

2.     These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 1 and 2 of the Third-Party Complaint, and therefore deny them.

3.     Paragraph 3 of the Third-Party Complaint is admitted.

4.     These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 of the Third-Party Complaint, and therefore deny them.

## "FACTUAL ALLEGATIONS"

5.   In response to the Paragraphs of the Third-Party Complaint titled "Factual Allegations (Paragraphs 14 through 41), these defendants state as follows:

- They admit Defendant, Abubakar Atiq Durrani, M.D. was licensed to, and did, practice medicine in the Commonwealth of Kentucky.

- They admit that CAST was a corporation authorized to transact business in the State of Ohio and Commonwealth of Kentucky.

- They admit if, in fact, the medical records confirm it, that, from time to time, Dr. Durrani provided medical services to Third-Party Plaintiff, but the specifics of the services he provided as stated in the Third-Party Complaint are denied. If, in fact, Dr. Durrani or CAST did not provide any services to Third-Party Plaintiff, then it is denied.

- They admit when the corporation known as "CAST" existed, Dr. Durrani was an employee of it.

- These defendants admit BMP-2 is marketed, sold and distributed by a corporation known as Medtronic under the trade name "Infuse".

- They admit that accompanying the product known as BMP-2 was certain written information; however, the specific information as stated in the Third-Party Complaint is denied.

- They deny that Third-Party Plaintiff was not properly advised of the use of BMP-2 and, further, deny that Third-Party Plaintiff has suffered any harm from the use of BMP-2 if, in fact, it was used in his surgery.

- The balance of the "Factual Allegations" of the Third-Party Complaint concerning any allegations of "Infuse/BMP-2" is denied and/or denied for want of knowledge.

- These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the balance of the Paragraphs that comprise the "Factual Allegations" portion of the Third-Party Complaint, and therefore deny them.

6.   In response to Paragraph 42 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

7.     In response to this portion of the Amended Complaint, these answering Defendants deny that any act or omission of them, or either of them, in the care and treatment of Plaintiff, was negligent.

8.     In response to Count I of the Third-Party Complaint for Negligence, set forth at Paragraphs 43 through 45 of the Third-Party Complaint, these defendants deny they are liable as indicated in this Count or in any other manner and, further, deny that they had the duties as set forth in said Count and/or the Third-Party Complaint.

9.     In response to Paragraph 46 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

10.     These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 47, 48, and 49 of the Third-Party Complaint, and therefore deny them.

11.     In response to Paragraph 50 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

12.     These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 51 of the Third-Party Complaint, and therefore deny them.

13.     Paragraphs 52 and 53 of the Third-Party Complaint are denied.

14.     In response to Paragraph 54 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

15.     In response to Count IV of the Third-Party Complaint for Negligent Hiring, Retention, Credentialing, and Supervision, set forth at Paragraphs 55 through 70, these defendants deny they are liable as indicated in this Count or in any other manner and, further, deny that they had the duties as set forth in said Count and/or the Third-Party Complaint.

16.     In response to Paragraph 71 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

17.     These defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 72, 73, 74, and 75 of the Third-Party Complaint, and therefore deny them.

18.     In response to Paragraph 76 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

19.     In response to Count VI for Battery against Dr. Durrani, at Paragraphs 77 through 80 of the Third-Party Complaint, these defendants deny that any act or omission of them as alleged, or in any other manner, was a battery or that they, or either of them, committed a battery against Third-Party Plaintiff.

20.     In response to Paragraph 81 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

21.     In response to Count VII for Lack of Informed Consent against Dr. Durrani, at Paragraphs 82 through 89 of the Third-Party Complaint, these defendants deny that the proper informed consent was not obtained from Third-Party Plaintiff, deny that the specific allegations of this Count of the Third-Party Complaint and, further, deny that informed consent was required, or, if it was, that any harm or damage has resulted to Third-Party Plaintiff from the use of any of the products or devices used in the surgeries performed by Dr. Durrani, if any.

22.     In response to Paragraph 90 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

23.     In response to Count VIII of the Third-Party Complaint for Fraud against Dr. Durrani and CAST, at Paragraphs 91 through 98 of the Third-Party Complaint, these

Defendants deny the paragraphs that comprise said Count of the Third-Party Complaint and, further, deny that any act or omission of them, or either of them, was fraudulent.

24.    In response to Paragraph 99 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

25.    In response to Count IX of the Third-Party Complaint for Vicarious Liability against CAST, at Paragraphs 100 through 107 of the Third-Party Complaint, these defendants admit that Dr. Durrani was an employee of CAST during the time CAST was in existence and that he was an owner of CAST during that timeframe and, further, that when he performed surgeries, he was in the course and scope of his employment with CAST; the balance of said paragraphs comprising said Count are denied.

26.    In response to Paragraph 108 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

27.    In response to Count X of the Third-Party Complaint for Civil Conspiracy against Dr. Durrani and CAST, beginning at Paragraph 109 of the Third-Party Complaint, these defendants deny the paragraphs that comprise said Count of the Third-Party Complaint.

28.    With respect to paragraphs 110 through 121 of the Third-Party Complaint, the copy of the Third-Party Complaint served on these defendants with the summons did not include any Paragraphs numbered 110 through 121, and skips from page 23 to 26.  These defendants are, therefore , without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 110 through 121, and therefore deny them.

29.    In response to Paragraph 122 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

30.    In response to Count XIII of the Third-Party Complaint for Loss of Consortium against Dr. Durrani and CAST, at Paragraphs 123 and 124 of the Third-Party Complaint,



these defendants deny any act or omission on their part caused Third-Party Plaintiff's husband any loss of consortium.

31.    In response to Paragraph 125 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

32.    Paragraph 126 of the Third-Party Complaint is denied.

33.    In response to Paragraph 127 of the Third-Party Complaint, these defendants incorporate by reference their prior admissions and denials set forth in this Answer.

34.    Paragraph 128 of the Third-Party Complaint is denied.

### THIRD DEFENSE

35.    The Third-Party Complaint is barred or proportionately reduced by Third-Party Plaintiffs' own contributory negligence.

### FOURTH DEFENSE

36.    Third-Party Plaintiff has failed to properly mitigate her damages.

### FIFTH DEFENSE

37.    No act or omission of these defendants, or either of them, was a proximate cause, or cause, of Plaintiff's injuries and damages.

### SIXTH DEFENSE

38.    Plaintiff's Third-Party Complaint is barred by the applicable statute of limitations and/or repose.

### SEVENTH DEFENSE

39.    There has been a failure and/or insufficiency of service and/or process.

### EIGHTH DEFENSE

40.    The alleged negligence of these defendants (which negligence is specifically denied) was extinguished by an intervening agent whose negligence proximately caused injury to Third-Party Plaintiff and was not foreseeable by these defendants.



## NINTH DEFENSE

41.    Third-Party Plaintiff's injuries and damages, if any, were caused or contributed to by other independent, unforeseeable, intervening and superseding causes for which these defendants are not liable.

## TENTH DEFENSE

42.    To the extent Third-Party Plaintiff's medical bills have been paid by others who may have a subrogation interest, Plaintiff's Third-Party Complaint is not prosecuted in the name of the real party in interest.

## ELEVENTH DEFENSE

43.    The alleged injuries to Third-Party Plaintiff are not the result of any act or omission or failure to act on the part of these defendants, but, rather, are the result of an event which occurred naturally and over which these defendants had no control.

## TWELFTH DEFENSE

44.    The injuries and damages alleged in Plaintiff's Third-Party Complaint, if any, are the result of a preexisting condition and/or pathology and, accordingly, any acts or omissions of these defendants cannot be deemed the proximate cause of the alleged injuries and damages to Third-Party Plaintiff.

## THIRTEENTH DEFENSE

45.    Third-Party Plaintiff's underlying pathology was such that the optimal medical and/or surgical intervention at any time in the clinical course would not prevent the pathological condition which caused Third-Party Plaintiff's injuries or led to her current alleged damages.

 

## FOURTEENTH DEFENSE

46.     These defendants request that the negligence of any and all parties or non-parties be apportioned by the fact finder and the appropriate percentages for each, if any such negligence exists.

## FIFTEENTH DEFENSE

47.     These defendants avail themselves of each and every right of set off, credit, cap, or other limitation on Plaintiff's damages, if any, pursuant to Kentucky statutory and case law.

## SIXTEENTH DEFENSE

48.     The conduct of these defendants (or any of their agents or employees) does not warrant imposition of punitive damages under applicable law.

## SEVENTEENTH DEFENSE

49.     Plaintiff's claim for punitive damages is in violation of and is barred by the Fifth and Fourteenth Amendments to the United States Constitution.

## EIGHTEENTH DEFENSE

50.     Plaintiff's claim for punitive damages is in violation of and is barred by the prohibition of *ex post facto* laws contained within §10, ¶1 of Article I of the United States Constitution.

## NINETEENTH DEFENSE

51.     Plaintiffs' claim for punitive damages is in violation of and is barred by the prohibitions against excessive fines and cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution.

## TWENTIETH DEFENSE

52.     The provision of the relief requested, of the performance in lieu of which such relief is required, will be contrary to law.



## **TWENTY-FIRST DEFENSE**

53.    In the interest of brevity and judicial economy, these defendants incorporate by reference, as if fully rewritten, each and every affirmative defense available to them under the Kentucky Rules of Civil Procedure, and, further, reserve the right to amend their Answer should the need arise.

WHEREFORE, having fully answered the Third-Party Complaint, these defendants, Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc. hereby demand that the within Third-Party Complaint against them be dismissed and that they may go hence without delay, with costs, and for all other relief to which they are entitled in the matter.

Michael F. Lyon
David E. Williamson        (#94877)
LINDHORST & DREIDAME CO., L.P.A.
312 Walnut Street, Suite 3100
Cincinnati, OH  45202-4048
(513) 421-6630 phone
(513) 421-0212 facsimile
mlyon@lindhorstlaw.com
dwilliamson@lindhorstlaw.com
*Attorneys for Third-Party Defendants, Abubakar Atiq
Durrani, M.D. and Center for Advanced Spine
Technologies, Inc.*

## **JURY DEMAND**

These defendants, Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc., hereby demand a trial by jury on all issues herein.

David E. Williamson

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by electronic and/or regular U.S. Mail on this ___13th___ day of May, 2014.

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LAVELLE
207 Thomas More Parkway
Crestview Hills, KY  41017
dkramer@dbllaw.com
rmclane@dbllaw.com

Paul J. Schachter
SCHACHTER HENDY & JOHNSON
909 Wright's Summit Pkwy, Ste. 210
Ft. Wright. KY 41011
pschachter@pshachter.com

David E. Williamson
Attorney at Law



**COMMONWEALTH OF KENTUCKY**
**BOONE CIRCUIT COURT**
**DIVISION THREE**
**CASE NO. 14-CI-00400**

WEST CHESTER MEDICAL CENTER
d/b/a or now known as
WEST CHESTER HOSPITAL, LLC                    **PLAINTIFF**

**VS.**

**KELLI KRAMER, et al**                       **DEFENDANTS**

<u>**REPORT OF WARNING ORDER ATTORNEY**</u>

Comes now DAVID L. DRAKE, Warning Order Attorney for the Defendant,

Abubakar Atiq Durrani, MD, and for his report states as follows:

1.   That he is now and was at all times mentioned herein a duly qualified and
     regularly practicing attorney and a member of the bar.  That as such, he was
     appointed Warning Order Attorney herein for the express purpose of notifying the
     said Defendant of the nature and pendency of this action.

2.   That subsequent to said appointment, he caused a letters to be written on March
     27, 2014, to the aforesaid Defendant, setting forth therein the nature and pendency
     of this action; that said letters were placed in envelopes on March 27, 2014,
     bearing the last known addresses of the Defendant, as provided, with the required
     amount of postage affixed thereto, and duly placed in a regularly maintained
     United States mail depository.

3.   That said letter addressed to the Defendant at 4862 Maxwell Drive, Mason Ohio,
     45040-4619, was returned to the undersigned by the Postal Authorities,
     with the notation "Return to Sender Durrani Moved Left No Address Unable to
     Forward ".

That the letter addressed to the Defendant at 4800 Bethany Road, Mason, Ohio 45040-9821, was not returned to the undersigned.

4.    That the undersigned has made a careful examination of the record herein, and found that there is no defense that can be raised on behalf of the Defendant.

WHEREFORE, the Warning Order Attorney prays:

A)    That this report by accepted by the Court, filed of record and made an integral part of these proceedings.

B)    That he be allowed a reasonable fee for his service herein rendered.

C)    For any and all other relief to which the Defendant might appear entitled.

DAVID L. DRAKE
Warning Order Attorney
300 Madison Avenue, Suite 200
Covington, Ky. 41011
(859) 491-3399
(859) 491-3622 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading was sent via regular U.S. Mail, postage prepaid, on this the ___9___ day of ___April___ 2014 to the attorney for the Plaintiff: and other parties to the action.

Hon. David V. Kramer
Dressman Benzinger LaVelle PSC
207 Thomas More Parkway
Crestview Hills, KY 41017

Hon. Paul J. Schachter
Schachter Hendy & Johnson
909 Wright's Summit Parkway, Ste 210
Ft. Wright, KY 41011

Hon. Bill J. Paliobeis
Frost Brown Todd LLC
3300 Great American tower
301 East Fourth Street
Cincinnati, OH 45202

DAVID L. DRAKE



Alison Lundergan Grimes
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Boone County
6025 Rogers Lane
Burlington, KY 41005-0586

FROM:      SUMMONS DIVISION
           SECRETARY OF STATE

FILED
BOONE CIRCUIT/DISTRICT COURT
MAY 1 2 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

RE:        CASE NO: 14-CI-400

DEFENDANT: **CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC**
**C/O GREGORY A BACON, REGISTERED AGENT**

DATE:      May 8, 2014

USPS Certified Mail ID: 71922677001001901661

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

April 22, 2014

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

April 22, 2014

We are enclosing the undelivered letter bearing the postal mark:

Not Deliverable As Addressed/Unable to Forward

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to: 14-C1-400

SECRETARY OF STATE
PO BOX 718
FRANKFORT, KY 40602-0718

Pintek for Advanced
Spine Technologies Inc.

Article Number: 7013 2630 0001 7416 0649
(Transfer from service label)

PS Form 3811, July 2013    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
   BRIAN HOWARD              ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
   APR 2 2 2014

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

   BY CLERK  D.C.

3. Service Type
   ☐ Certified Mail®      ☐ Priority Mail Express™
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

| AOC-105            Doc. Code: CI<br>Rev. 5-03<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice      www.kycourts.net<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No.   14-CI-400<br>Court      [✓] Circuit [ ] District<br>County     Boone |

WEST CHESTER MEDICAL CENTER                                                  **PLAINTIFF**

**VS.**

KELLI KRAMER, et al.                                                         **DEFENDANT**

vs.

ABUBAKAR ATIQ DURRANI, M.D., et al.                         THIRD PARTY DEFENDANTS

Serve:  Center for Advanced Spine Technologies, Inc.

Serve via Certified Mail:

**Service of Process Agent for Defendant:**

  c/o Gregory A. Bacon, Registered Agent

  10475 Reading Road, Suite 206

  Cincinnati, OH 45241

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

    You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on
the document delivered to you with this Summons.  Unless a written defense is made by you or by an attorney on
your behalf and filed in the Clerk's Office within **20 days** following the day this paper is delivered to you, judgment by
default may be taken against you for the relief demanded in the attached Complaint.

    The name(s) and address(es) of the party or parties demanding relief against you are shown on the document
delivered to you with this Summons.

Date: ____4/15____, 20_14_                        By: _____

---

**Proof of Service**

This Summons was served by delivering a true copy and the Comp_____

this ____ day of _____, 2____.

                                                     Served by _____

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark<br>Here

Sent To

Street, Apt. No.;<br>or PO Box No.

City, State, ZIP+4

SECRETARY OF STATE<br>PO BOX 718<br>FRANKFORT KY 40602-0718



TENDERED
DATE: 5-6-2014
DIANNE MURRAY, CLERK
BOONE CIRCUIT CLERK



COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400



ENTERED
BOONE CIRCUIT/DISTRICT COURT
MAY 09 2014
DIANNE MURRAY, CLERK
BY: _____ D.C.

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

vs.

KELLI E. KRAMER                                               DEFENDANT


## AGREED ENTRY FOR EXTENSION OF TIME TO ANSWER DEFENDANT'S COUNTERCLAIM AND THIRD PARTY COMPLAINT

The parties hereby agree that Plaintiff West Chester Hospital and Third Party Defendant

UC Health shall have up to and including May 15, 2014 in which to answer Defendants' and

Third Party Plaintiff's Counterclaim and Third Party Complaint.


_____
JUDGE

_____
DATE   5/7/14


HAVE SEEN AND AGREE:


/s/ David V. Kramer
per email authorization
David V. Kramer (#39609)
Dressman Benzinger LaVelle PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
Counsel for Kellie E. Kramer and James
Kramer

/s/ Bill J. Paliobeis
Bill J. Paliobeis (#87002)
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Counsel for Plaintiff West Chester Hospital
and Third Party Defendant UC Health


CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit
Court, thereby certify that I have mailed a copy of the
foregoing order and notice to all parties hereto at
their last known addresses or their counsel of record
This _____ day of _____, _____
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____ D.C.

FBT Law Documents 0123682.0615403  4815-6711-0170v1

TENDERED
DATE: 4-23-2014
DIANNE MURRAY, CLERK
BOONE CIRCUIT CLERK





ENTERED
BOONE CIRCUIT/DISTRICT COURT
APR 2 5 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400

WEST CHESTER MEDICAL CENTER                                   PLAINTIFF

vs.

KELLI E. KRAMER                                               DEFENDANT

## AGREED ENTRY FOR EXTENSION OF TIME TO ANSWER DEFENDANT'S COUNTERCLAIM AND THIRD PARTY COMPLAINT

The parties hereby agree that Plaintiff West Chester Hospital and Third Party Defendant

UC Health shall have up to and including May 5, 2014 in which to answer Defendants' and

Third Party Plaintiff's Counterclaim and Third Party Complaint.

_____
JUDGE

_____
4/24/14
DATE

HAVE SEEN AND AGREE:

David Kramer (per email authority)
David V. Kramer (#39609)
Dressman Benzinger LaVelle PSC
207 Thomas More Parkway
Crestview Hills, KY 41017
*Counsel for Kellie E. Kramer and James Kramer*

Bill J. Paliobeis
Bill J. Paliobeis (#87002)
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
*Counsel for Plaintiff West Chester Hospital and Third Party Defendant UC Health*

CERTIFICATE
I, DIANNE MURRAY, clerk of the Boone District/Circuit
Court, thereby certify that I have mailed a copy of the
foregoing order and notice to all parties hereto at
their last known address or their counsel of record
this _25_ day of ___April___, 201_
DIANNE MURRAY
BOONE DISTRICT/CIRCUIT COURT
_____D.C.

CINLibrary 0123682.0615403  3261835v1

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Alison Lundergan Grimes
Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

USPS Certified Mail ID: 71922677001001892303

DATE:          April 7, 2014

DEFENDANT: GH&R BUSINESS SERVICES, INC.

RE:          CASE NO: 14-CI-400

FROM:          SUMMONS DIVISION
                    SECRETARY OF STATE

Circuit Court Clerk
Boone County
6025 Rogers Lane
Burlington, KY 41005-0586

March 31, 2014

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

March 31, 2014

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

The US Postal Service has provided a scanned image of the return receipt confirming receipt of summons. The image is provided to the right of this page.

Kentucky Secretary of State's Office          Summons Division          4/7/2014

---



**UNITED STATES POSTAL SERVICE**

Date Produced: 04/07/2014

KENTUCKY SECRETARY OF STATES OFFICE - COMMONWEALTH:

The following is the delivery information for Certified Mail™ item number 7192 2677 0010 0189 2303. Our records indicate that this item was delivered on 04/04/2014 at 05:50 a.m. in CINCINNATI, OH 45203. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to: 14-CI-400

SECRETARY OF STATE
PO BOX 718
FRANKFORT, KY 40602-0718

UC Health Inc
c/o CHER Business Servc

2. Article Number       7013 2630 0001 7416 7945
   (Transfer from service label)

PS Form 3811, July 2013        Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   HOWARD
   X                              ☐ Agent
                                  ☐ Addressee

B. Received by (Printed Name)    MAR 21 2014   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

                    APR 02 2014

3. Service Type
   ☑ Certified Mail      ☐ Priority Mail Express
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

COMMONWEALTH OF KENTUCKY
BOONE CIRCUIT COURT
CASE NO. 14-CI-400



WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                    DEFENDANT AND
                                                   THIRD-PARTY PLAINTIFF

AND

JAMES KRAMER                                       THIRD-PARTY PLAINTIFF

VS.

ABUBAKAR ATIQ DURRANI, M.D.                        THIRD-PARTY DEFENDANTS

AND

UC HEALTH, INC.

### FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO PLAINTIFF, WEST CHESTER MEDICAL CENTER BY DEFENDANT KELLI E. KRAMER AND THIRD-PARTY PLAINTIFF JAMES KRAMER

Come now the Defendant and Third-Party Plaintiff Kelli E. Kramer and Third-Party Plaintiff James Kramer, by and through counsel, and pursuant to Rules 33 and 34 of the Kentucky Rules of Civil Procedure, propound the following Interrogatories and Requests for Production upon Plaintiff, West Chester Medical Center, to be answered fully by said Plaintiff and under oath within forty-five (45) days after the service hereof. These are deemed continuing discovery requests, and any knowledge of the attorneys of the Plaintiff or any other agents of the Plaintiff shall be deemed to be knowledge of the Plaintiff.

Should there be no sufficient space to complete your answer, you may complete it in sequence on a separate appendix to the Answers and identify it appropriately. **The word "you"**

as used herein refers to West Chester Medical Center, and/or its attorneys, agents, employees, investigators or other representatives.

## INTERROGATORIES

1.      Please state the full name, residence, business address, title, and position of all persons who assisted in the preparation of the answers to these Interrogatories and Requests for Production.

**ANSWER:**

2.      Please identify all persons known to you who have or may have discoverable matter pertaining to this lawsuit, giving the name, address, and job classification of each such person identified and a brief description of the discoverable information they may have.

**ANSWER:**

3.      Please fully describe the name and corporate status of West Chester Medical Center from August 1, 2009 through present.  Please include in your answer a full description of the nature of the relationship between West Chester Medical Center and UC Health.

**ANSWER:**

4.      For each physician, nurse, agent and/or employee of West Chester Medical Center who participated in the medical care and/or treatment of Kelli Kramer on or about August 29,

2009, September 2-4, 2009, June 8, 2010, June 16-21, 2010, May 30, 2012, October 10, 2012, and any other dates from August 1, 2009 through present (collectively, the "Applicable Dates"), and please state the name, address and job classification of each such person, and indicate the nature and scope of the person's participation or assistance.

**ANSWER:**

5.      Please fully describe the substance of each conversation that Kelli Kramer had with any physician, nurse, agent and/or employee of West Chester Medical Center regarding the treatment received at West Chester Medical Center on the Applicable Dates, including in your answer the date and time of each such conversation, and the names of each party to the conversation.

**ANSWER:**

6.      Please describe in detail the events leading up to and the circumstances under which Kelli Kramer was treated at West Chester Medical Center on the Applicable Dates.

**ANSWER:**

7.      Please identify all tests that physicians, nurses, agents, and/or employees of West Chester Medical Center performed or ordered to be performed on Kelli Kramer while she was under the care of West Chester Medical Center, including for each such test:

A.    The name of the test that was ordered;

B.    The name and address of the person who performed the test;

C.    The date and time that the test was ordered;

D.    The orders or instructions that were given to employees regarding the test; and

E.    The reason(s) that the test was indicated for Kelli Kramer.

**ANSWER:**

8.    If you contend that any other person, firm or entity caused or contributed to Kelli Kramer's injuries, identify each person, firm, or entity by name, address, and employer, and state the reasons for your contentions.

**ANSWER:**

9.    Please state the name, job title and employment status of all employees and/or agents who were called in to assist in treatment of Kelli Kramer on the Applicable Dates.

**ANSWER:**

10.    Please identity and describe in detail any and all written or unwritten guidelines, including but not limited to rules, bylaws, instructions, standing orders, clinical pathways, care

plans, protocols, policies and/or procedures, and/or similar documents of West Chester Medical

Center which were in existence on the Applicable Dates with regard to:

     A.    surgery, spinal surgery, and/or pre-operative procedures;

     B.    presence of third parties during medical procedures (e.g., agents of

pharmaceutical or medical equipment companies);

     C.    documentation, patient charting, and/or preparation of operative reports;

     D.    use of implants during surgery, including without limitation bone

morphogenetic protein 2 ("BMP-2") and similar products and/or substances;

     E.    supervision of physicians, credentialing of physicians, delineation of

privileges, and/or loss of privileges;

     F.    peer review, quality review, quality management, root cause analyses, and

sentinel events.

Please include in your answer the date each was instituted.  Further, if any of these have been

changed, updated, or otherwise revised since August 1, 2009, please state the dates for such

changes, updates, or revisions and include all versions in your answer.

**ANSWER:**


11.    Please describe in detail any documentation made or received by West Chester

Medical Center's employees, agents, nurses and/or servants that is not contained in Kelli

Kramer's medical records and/or medical charts regarding their treatment and/or the

complications that occurred during or after the procedures performed on Kelli Kramer and

specify the location of and custodian of any such records.

**ANSWER:**

12.     Please state if there is any liability insurance in force that protects you from claims such as those involved in this action, and if so, please identify for each policy the name and address of the insurer, the type and number of the policy, the policy limits, the policy limits remaining available for the claims alleged in this action, and the name of the insured(s) under the policy.

**ANSWER:**

13.     Please provide the name, address, and occupation of each expert witness that you expect to call at trial of this matter.  With each such expert that is listed, please provide the subject on which the expert is expected to testify, the substance of the facts and opinion to which the expert is expected to testify and a summary of the grounds for each opinion.

**ANSWER:**

14.     Please describe in detail any and all exhibits you plan to introduce into evidence or upon which you intended to rely in your defense or use during the depositions, hearings, and trial in this action, including in your answer the full name and address of the person who has the care, custody or control of each exhibit.

**ANSWER:**

15.    Please list all treatises, textbooks, or other authority to be introduced or otherwise used during the depositions, hearings, and trial in this action, including in your answer a list of the specific pages of such publications which will be relied upon for your defense or in the examination or cross-examination of any witnesses.

**ANSWER:**

16.    Please describe the relationship between West Chester Medical Center and Abubakar Atiq Durrani, M.D. during the Applicable Dates.

**ANSWER:**

17.    Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which any aspect of the care and/or treatment of Kelli Kramer was discussed and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**

18.    Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which any aspect of the care provided by Dr. Durrani to any patient

was discussed and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**


19.    Please state whether any meetings were held by West Chester Medical Center, or in which it participated, at which the West Chester Medical Center's relationship with Dr. Durrani was discussed (including without limitation whether to revoke his privileges, whether to discontinue West Chester Medical Center's relationship Dr. Durrani, whether to discipline, reprimand, or counsel Dr. Durrani in any way, whether to continue to allow Dr. Durrani to use BMP-2 at West Chester Medical Center, etc.) and, if so, the date and place the meeting was held, the purpose for which it was held, and the name, address, position and capacity of each person present.

**ANSWER:**


20.    Please state whether Dr. Durrani's treatment of Kelli Kramer or any other patient was the subject of any peer review, grand rounds, morbidity and mortality report, Root Cause Analysis, Sentinel Event, or quality review, management, and/or assurance meetings, conferences, or discussions, and if so please state:

       A.    The name, address and title of each person who participated in or assisted those reports, meetings, conferences or discussions;

       B.    The date on which each such meeting, conference, or discussion occurred;

C.     Whether there are any documents (including emails and electronically stored information) that recorded or otherwise memorialized those meetings, conferences, or discussions;

D.     The name, address and title of all persons who are in possession of those documents.

**ANSWER:**


## REQUESTS FOR PRODUCTION

1.     Please produce copies of the declaration sheets of any insurance policy(ies) identified in your response to Interrogatory #12 that would cover potential liability.

**RESPONSE:**


2.     Please produce copies of all files, records, reports, notes, logs and/or similar materials, that have been made or kept by West Chester Medical Center, its employees, agents, and/or servants in connection with the care and treatment procedures of Kelli Kramer, including but not limited to those contained in Kelli Kramer's medical records and/or medical chart maintained by West Chester Medical Center, its agents and/or employees.

**RESPONSE:**

3.      Please produce copies of all exhibits that you will introduce or otherwise use during the depositions, hearings, and trial of this action.

**RESPONSE:**

4.      Please provide copies of any written reports of experts that you intend to call at trial and also a copy of the C.V. of each such expert.

**RESPONSE:**

5.      Please produce copies of all treatises, textbooks, articles, or other documents identified in your response to Interrogatory # 15.

**RESPONSE:**

6.      Please produce any and all documents concerning or supporting your contention that other persons or entities caused or contributed to the injuries of Kelli Kramer, as referred to in Interrogatory # 8.

**RESPONSE:**

7.     Please produce copies of all guidelines, including but not limited to rules, bylaws, instructions, standing orders, clinical pathways, care plans, protocols, policies and/or procedures, and/or similar documents of West Chester Medical Center as set forth in Interrogatory # 10.

**RESPONSE:**

8.     Please produce any and all video, digital and/or electronic memorialization used by you for purposes of training and/or instructing physicians, physician's assistants, nurses and/or other medical personnel which discusses, describes, depicts and/or makes reference to surgery, spinal surgery, pre-operative procedures, documentation, use of implants during surgery, including without limitation, bone morphogenetic protein 2 ("BMP-2") and similar products and/or substances.

**RESPONSE:**

9.     Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and Abubakar Atiq Durrani, M.D.

**RESPONSE:**

10.     Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and UC Health.

**RESPONSE:**

11.     Please produce any and all agreements, contracts, and/or documents between West Chester Medical Center and Medtronic, Inc. and/or any of Medtronic's subsidiaries, parent and/or sister companies, agents, employees, and principals.

**RESPONSE:**

12.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to any review, assessment, or investigation made with respect to and/or pertaining to the treatment and care of Plaintiff Kelli Kramer by West Chester Medical Center and/or UC Health and Dr. Durrani.

**RESPONSE:**

13.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to any review, assessment, or investigation made with respect to and/or pertaining to the treatment and care provided by Dr. Durrani to any patients at West Chester Medical Center.

**RESPONSE:**

14.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to West Chester Medical Center's credentialing of Dr. Durrani, including without limitation his entire credentials file, personnel file, and similar human resources files.

**RESPONSE:**

15.     Produce complete, legible copies of any and all reports, emails, correspondence, minutes, exhibits, documents, photographs, statements, data, transcripts, incident reports or other investigative reports of any kind in any form, relating in any way to any to the use of BMP-2 and/or any similar implants and products at West Chester Medical Center.

**RESPONSE:**

16.     Please provide a complete and certified copy of the medical record for Kelli Kramer at West Chester Medical Center.

**RESPONSE:**

17.     Please provide a complete copy of the audit trail for the medical record of Kelli Kramer for treatment on the Applicable Dates, including without limitation, information as to who accessed those records, when, and whether modifications were made.

13



**RESPONSE:**

18.     Please provide a complete copy of the medical bills for treatment to Kelli Kramer.

**RESPONSE:**

19.     Please provide all documents related to complaints to you concerning Dr. Durrani's medical care or other conduct at West Chester Medical Center, including internal complaints.

**RESPONSE:**

20.     Produce all documents identified, referenced, or relied upon in answering the foregoing Interrogatories.

**RESPONSE:**

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:       859-341-1469

e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this
3/ day of March, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com
*Counsel for West Chester Medical Center*

Center for Advanced Spine Technologies, Inc.
Gregory A Bacon, Registered Agent
6905 Burlington Pike
Florence, KY 41042

Abubakar Atiq Durrani, M.D.
Address Unknown
c/o Kenton Circuit Clerk

UC Health, Inc.
GH&R Business Services, Inc., Registered Agent
511 Walnut Street
1900 Fifth Third Center
Cincinnati, OH 45202

David V. Kramer
Ryan M. McLane

415613v1

AOC-110
Rev. 2-07
Page 1 of 1

Doc. Code: AWOA

Commonwealth of Kentucky
Court of Justice   www.courts.ky.gov
Rule CR 4.05; 4.07

**APPOINTMENT OF WARNING ORDER ATTORNEY**

Case No. 14-CI-400
Court Circuit Div.
County Boone

## West Chester Medical Center

PLAINTIFF

VS.

## Abubakar Atiq Durrani, M.D.

DEFENDANT

Not later than fifty (50) days after the date of this Order, the above-named Defendant is warned to appear and answer the Complaint/Petition of the above-named Plaintiff filed against him/her.

David L. Drake
(Name of Attorney)

300 Madison Ave. Suite 200
(Address)

Covington, KY 41011

(859) 491-3399
(Phone number)

a regular practicing attorney of this Court, is appointed to correspond with the Defendant, and to inform him/her by mail concerning the pendency and nature of this action, and to file his/her report in the Clerk's office of this Court within fifty (50) days after the date of this Order.

3/25 , 2014

Diane Murray
_____ Clerk

By: Katie Clayton D.C.



COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO 14-CI-400

WEST CHESTER HOSPITAL, LLC                                    **PLAINTIFF**

v.

KELLI KRAMER, et al.                              **DEFENDANT AND
                                                THIRD-PARTY PLAINTIFFS**

v.

ABUBAKAR ATIQ DURRANI, M.D., et al       **THIRD-PARTY DEFENDANTS**

## AFFIDAVIT FOR WARNING ORDER

After being first duly sworn and cautioned, Affiant states as follows:

1.      Affiant, David V. Kramer, states that he is the attorney for Third-Party Plaintiffs, Kelli Kramer and James Kramer, and that Abubakar Atiq Durrani, M.D. ("Dr. Durrani"), a nonresident, whose last known addresses were 4862 Maxwell Drive, Mason, OH 45040-4619 and 4800 Bethany Road, Mason, OH 45040-9821, is an individual whose current place of residence is unknown to Affiant and Third-Party Plaintiffs.

2.      Affiant believes that Dr. Durrani has fled the United States to avoid civil and criminal liability and that he may currently reside in Pakistan.

3.      Affiant states that further information regarding the whereabouts of Dr. Durrani are currently unknown to Affiant and Third-Party Plaintiffs.

FURTHER AFFIANT SAYETH NAUGHT.

_____
David V. Kramer

1

Sworn to before me and subscribed in my presence this _3rd_ day of March, 2014.

NOTARY PUBLIC

Print Name: Aimee Teague

My Comm. Expires: 11/10/16

413046v1

**AIMEE TEAGUE**
NOTARY EXPIRATION DATE: 11/10/2016
STATE OF KENTUCKY AT LARGE
NOTARY ID 476509



COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. ~~11-C-2056~~
14-CI-400

WESTCHESTER MEDICAL CENTER                                    PLAINTIFF
d/b/a or now known as
WEST CHESTER HOSPITAL, LLC

v.

KELLI KRAMER                                    DEFENDANT AND
                                                THIRD-PARTY PLAINTIFF

And

JAMES KRAMER                                    INTERVENING THIRD-
                                                PARTY PLAINTIFF

v.

ABUBAKAR ATIQ DURRANI, M.D.                     THIRD-PARTY DEFENDANT
[CONSTRUCTIVE SERVICE VIA WARNING ORDER,
AFFIDAVIT ATTACHED]

And

CENTER FOR ADVANCED SPINE                       THIRD-PARTY DEFENDANT
TECHNOLOGIES, INC.

[SERVE VIA CERTIFIED MAIL]
Gregory A Bacon, Registered Agent
6905 Burlington Pike
Florence, KY 41042

And

UC HEALTH, INC.                                 THIRD-PARTY DEFENDANT

[SERVE VIA CERTIFIED MAIL]
GH&R Business Services, Inc.
511 Walnut Street
1900 Fifth Third Center
Cincinnati, OH 45202



## ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT
## (WITH JURY DEMAND ENDORSED HEREON)

Come now, Defendant and Third-Party Plaintiff, Kelli Kramer (hereinafter "Kelli Kramer" or "Mrs. Kramer") and Third-Party Plaintiff James Kramer (hereinafter "James Kramer" or "Mr. Kramer"), by and through counsel, and for their Answer, Counterclaim, and Third-Party Complaint against Plaintiff Westchester Medical Center d/b/a or now known as West Chester Hospital, LLC ("West Chester Hospital"), Third-Party Defendants, Abubakar Atiq Durrani, M.D. ("Dr. Durrani"), Center for Advanced Spine Technologies, Inc. ("CAST"), and UC Health, Inc. ("UC Health"), state as follows:

### ANSWER

1.     Defendant Kelli Kramer denies the allegations in Paragraph 1 of the Complaint.

2.     Defendant Kelli Kramer admits that West Chester Hospital requested payment for certain medical services and that she has not paid and denies the remainder of the allegations of Paragraph 2 of the Complaint.

3.     Defendant Kelli Kramer denies the allegations in Paragraph 3 of the Complaint.

4.     Defendant Kelli Kramer denies any allegations not otherwise specifically addressed.

### FIRST DEFENSE

5.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

6.     Plaintiff lacks standing to bring the claim against Defendant.

### THIRD DEFENSE

2

7.     Any alleged damages claimed by Plaintiff in the Complaint were caused by its own actions or failure to act.

## FOURTH DEFENSE

8.     Alternatively, any alleged damages claimed by Plaintiff in the Complaint were substantially contributed to by its own actions or failure to act.

## FIFTH DEFENSE

9.     Any damages claimed or alleged by Plaintiff in the Complaint were sustained as a direct and proximate result of unforeseeable, superseding, and/or intervening causes for which Defendant bears no liability or responsibility.

## SIXTH DEFENSE

10.     Plaintiff failed to join a necessary and indispensable party(s) to this action.

## SEVENTH DEFENSE

11.     To the extent it has incurred any damages, Plaintiff has failed to mitigate its damages.

## EIGHTH DEFENSE

12.     Defendant states that Plaintiff's damages, if any, were caused or contributed to by the negligence and fault of another party over which Defendant had no control, bears no liability, and bears no responsibility, and thus any judgment or recovery for Plaintiff must be reduced accordingly.

## NINTH DEFENSE

13.     Plaintiff has waived and/or is equitably estopped from asserting the claim set forth in the Complaint.

## TENTH DEFENSE

14.     Defendant states that some or all of Plaintiff's claims are barred by the doctrines of release, accord, satisfaction, estoppel, payment, set-off, laches and/or waiver.

### ELEVENTH DEFENSE

15.     Defendant asserts the defense of failure of consideration and that the medical services allegedly provided by Plaintiff were performed negligently, were performed without her informed consent, were unnecessary, and caused her harm.

### TWELFTH DEFENSE

16.     Defendant affirmatively pleads and relies upon all affirmative defenses set forth in Rules 8.03 and 12.02 of the Kentucky Rules of Civil Procedure that are or may hereafter become applicable to this action and expressly reserves any and all other defenses including affirmative defenses which may become apparent during the course of discovery.

Wherefore, Defendant Kelli Kramer requests that this Court dismiss Plaintiff's claim with prejudice, an award of attorney's fees, trial by jury, and all other relief to which she may be entitled.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

## PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant, Defendant and Third-Party Plaintiff Kelli Kramer and Third-Party Plaintiff James Kramer were residents of and domiciled in Boone County, Kentucky.

2.     At all times relevant, Third-Party Defendant Dr. Abubakar Durrani was licensed to and did in fact practice medicine in the Commonwealth of Kentucky.  On information and belief, Dr. Durrani has fled the United States to avoid criminal and civil liability.  His present whereabouts are unknown to Mr. and Mrs. Kramer.

4

3.      At all times relevant, Third-Party Defendant CAST was licensed to and did in fact perform medical services in the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the Commonwealth of Kentucky (organization no. 0869890) according to the records of the Kentucky Secretary of State.

4.      At all times relevant, Plaintiff West Chester Hospital was first a professional corporation known as West Chester Medical Center and then a limited liability company known as West Chester Hospital, LLC, and was authorized to transact business and perform medical services in the State of Ohio. Since at least August 6, 2010, it has been operating under the trade name West Chester Hospital.

5.      Plaintiff West Chester Hospital sued Kelli Kramer in Boone District Court for collection of hospital charges in July 2011, Case No. 11-C-2056, and attempted as recently as January 2014 to obtain a garnishment of her wages from her Kentucky employer.

6.      Plaintiff West Chester Hospital has regularly availed itself of Boone County courts for collection of charges from patients.

7.      At all times relevant, Third-Party Defendant UC Health was and is a corporation registered to do business in the Commonwealth of Kentucky (Organization No. 0847328 according to the records of the Kentucky Secretary of State) which included, owned, operated and/or managed multiple hospitals including, but not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester Hospital.

8.      Third-Party Defendant UC Health has significant operations in the Commonwealth of Kentucky and in Boone County in particular, has had offices in Florence, Boone County, Kentucky, for several years, is constructing a large medical facility in Boone

County, and has regularly availed itself of Boone County courts for collection of charges from patients.

9.      At all relevant times, Third-Party Defendant UC Health extensively advertised its services to Kentucky residents, including to residents of Boone County.

10.     At all relevant times, Plaintiff West Chester Hospital held itself out to the public, and specifically to Kelli Kramer, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

11.     The amount in controversy exceeds the jurisdictional threshold of this Court.

12.     The subject matter of the Counterclaim and Third-Party Complaint arises out of negligent and/or wrongful medical treatment and pre-operative consultation by Dr. Durrani, much of which occurred in Kenton County, Kentucky, for the surgeries he performed on Mrs. Kramer at Plaintiff West Chester Hospital. The vast majority of Mrs. Kramer's office visits with Dr. Durrani along with the inadequate and deceptive informed consent process for the second, third, and fourth surgeries occurred in Erlanger, Kenton County, Kentucky, a stone's throw from Boone County.

13.     Venue is proper as to Third-Party Defendants Dr. Durrani, CAST, and UC Health under the Kentucky law doctrine of ancillary venue. Venue is proper as to CAST because it designates its registered office and agent as being located at 6905 Burlington Pike Florence, Boone County. Venue is also proper as to UC Health as it is a corporation doing business in Boone County with offices in Boone County. In addition, the present litigation was instituted by West Chester Hospital in Boone County. As well, venue is proper in Boone County under KRS

454.210(4) because Mr. and Mrs. Kramer reside in Boone County. This Court is thus the proper venue to grant Mr. and Mrs. Kramer the relief they seek.

## FACTUAL ALLEGATIONS

14.     In 2009, Kelli Kramer sought treatment for chronic back pain and left leg pain. Her family doctor referred her to Dr. Durrani, who held himself out as a leading spinal physician and surgeon.

15.     Mrs. Kramer had her first office visit with Dr. Durrani on August 20, 2009, for treatment of her back and leg pain. During this first visit, Dr. Durrani recommended surgery and hastily signed her up for spinal surgery to occur in just two weeks at West Chester Hospital.

16.     Dr. Durrani told Mrs. Kramer that she needed surgery and that he could "fix" her, that he could "do things that other doctors could not do," and that "no other doctor around here can do this surgery." He said she would get the feeling back in her left leg and her pain would be eliminated.

17.     On September 2, 2009, Dr. Durrani performed surgery on Mrs. Kramer, which was purportedly anterior spinal fusion at L3-4 and L4-5, at West Chester Hospital in West Chester, Ohio.

18.     In August 2013, Mrs. Kramer learned that as part of the surgery, Dr. Durrani used and implanted Medtronic, Inc. product "Infuse" in her spine along with certain hardware.

19.     Prior to the surgery, Dr. Durrani did not tell Mrs. Kramer that he intended to implant Infuse into her lumbar spine, nor did he tell her that Infuse was not approved by the Federal Food and Drug Administration ("FDA") for this use.

20.     Dr. Durrani did not prepare an operative report for the surgery done on September 2, 2009, until October 30, 2010. That operative report described six procedures allegedly

performed by Dr. Durrani, whereas the contemporaneous records of the surgery indicated he performed only two.

21.     On May 20, 2010, Mrs. Kramer had an office visit with Dr. Durrani at CAST's Erlanger, Kentucky office to address pain in her neck and right arm. Dr. Durrani diagnosed her with C5-C6 cervical disk herniation, C5-C6 cervical spinal stenosis, and C5-C6 foraminal stenosis right side.  Dr. Durrani's recommendations were for Mrs. Kramer to see a pain doctor right away and to schedule another spinal surgery.

22.     On June 15, 2010, Mrs. Kramer returned to Dr. Durrani at CAST for a preoperative discussion. At no time did Dr. Durrani advise her that he was going to use Infuse during the procedure or that such use was not approved by the FDA.

23.     The vast majority of Mrs. Kramer's subsequent office visits with Dr. Durrani occurred at the Kenton County, Kentucky office of Dr. Durrani and CAST.

24.     On June 21, 2010, Dr. Durrani performed the second surgery on Mrs. Kramer, which was purportedly an anterior cervical diskectomy 5-6, anterior cervical fusion using auto and allograft C5-6, placement of anterior interbody cage C5-6, and placement of anterior cervical instrumentation C5-6, at West Chester Hospital.

25.     Mrs. Kramer did not find out that Dr. Durrani had implanted Infuse into her cervical spine on June 21, 2010, until some time in August 2013.

26.     Mrs. Kramer continued to have significant low back pain, and in May 2012 Dr. Durrani recommended another surgical procedure on her low back, consisting of an L2-3 spinal fusion. Dr. Durrani told her "no other surgeon in this area can do this" and "I will fix you." He also said if this surgery doesn't work, "then it's your SI joint." He referred to her condition as "classic trouser pocket pain." He said the surgery would alleviate this pain.

27.    On May 30, 2012, Dr. Durrani performed this surgery on Mrs. Kramer at West Chester Hospital, which was purportedly a direct lateral interbody diskectomy L2-3; direct lateral interbody fusion with auto and allograft L2-3; placement of DLIF Medtronic 10 mm cage L2-3; posterior spinal instrumentation L2, L3; extension of fusion from L2 to L5 to prior fusion using auto and allograft; lumbar laminectomy L2-3, bilateral foraminectomy L2-3; injection of right SI joint.

28.    The surgery did not relieve her back pain, and it made her groin and thigh numb until around October, 2013, when the feeling came back with much worse pain in the groin and thigh. Due to this pain, Dr. Patricia Abello performed surgery on Mrs. Kramer on December 4, 2013, to cut sensory nerves to this area.

29.    When her significant back pain continued after the L2-3 surgery, Dr. Durrani told her that he actually had suspected the problem had been her sacroiliac ("SI") joint, that he had to try the L2-3 extension of her fusion first to rule that out as the source of her pain or else he could not get approval to operate on her SI joint, that her right SI joint was at risk for causing more damage to her spine if he did not fix it quickly, and that it was important to do surgery on her SI joint as soon as possible as her SI joint was in an "ambiguous hyper-mobile state." Thus, the L2-3 surgery was not medically necessary.

30.    Just a little over two months after her third spinal surgery by Dr. Durrani, on August 7, 2012, he recommended a fourth surgery, being SI joint fusion. He said the surgery would relieve her low back pain. He told her several times "I will fix you." He said "no other doctor in this area" and "really no other doctor in this country will touch the SI joint because it takes a very skilled surgeon to do so."

9

31.     Relying on the recommendation and representations of Dr. Durrani, Mrs. Kramer agreed to the fourth surgery by Dr. Durrani.

32.     On October 10, 2012, Dr. Durrani performed this surgery on Mrs. Kramer, which was purportedly a right sacroiliac joint fusion using sacroiliac bone x3, at West Chester Hospital.

33.     The purported SI joint fusion was not medically necessary. In fact, it has made her condition much worse. Her back pain is worse than it was before the surgery, and she feels that her low back is unstable when she walks.

34.     Radiographic testing done in November 2013 revealed that the surgical procedure performed by Dr. Durrani on October 10, 2012, consisted of a fixation of the SI joint, not a fusion, as he represented to her and as he billed for.

35.     Mrs. Kramer continued treating with Dr. Durrani through late July of 2013. As of her last visit to him, he was recommending a fifth surgical procedure, consisting of insertion of pins in the SI joint because "it was a little too loose."

36.     Dr. Durrani is a consultant for Medtronic.

37.     CAST, West Chester Hospital, and UC Health did not inform Mrs. Kramer of Dr. Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

38.     When used off-label, Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

39.     The product packaging for use indicates it causes an increased risk of cancer four times greater than other bone graft alternatives.

40.     Dr. Durrani and West Chester Hospital did not obtain Mrs. Kramer's prior informed consent to use Infuse at all, much less off-label, in her first two surgeries.

41.     Dr. Durrani and West Chester Hospital improperly used Infuse on Mrs. Kramer, causing harm.

## COUNT I – NEGLIGENCE
## (DR. DURRANI AND CAST)

42.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

43.     Third-Party Defendants Dr. Durrani and CAST owed Mr. and Mrs. Kramer the duty to exercise the degree of skill, care and diligence that a reasonably competent and prudent physician and health-care provider would have exercised under like or similar circumstances.

44.     Third-Party Defendants breached these duties by failing to exercise the requisite degree of skill, care, and diligence that ordinary competent and prudent health care providers, specialists, and surgeons would have exercised under the same or similar circumstances through, among other things, negligent surgery, improper diagnosis, medical mismanagement and mistreatment of Mrs. Kramer, including but not limited to unnecessary surgery, failed surgery, improper performance of surgery, use of Infuse, and improper follow up care addressing the patient's concerns.

45.     The aforementioned acts and omissions by the Third-Party Defendants were the direct and proximate cause of and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of time and wages, permanent impairment of ability to earn income, loss of the ability to perform usual and customary activities, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT II – NEGLIGENCE
## (WEST CHESTER HOSPITAL AND UC HEALTH)

46.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

47.     West Chester Hospital and UC Health owed Mrs. Kramer the duty to exercise the degree of skill, care, and diligence a reasonably competent and prudent health care provider would have exercised under like or similar circumstances.

48.     West Chester Hospital and UC Health breached that duty by failing to exercise the requisite degree of skill, care and diligence that a reasonably competent and prudent health care provider would exercise under like or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Mrs. Kramer.

49.     The aforementioned acts and omissions by West Chester Hospital and UC Health were the direct and proximate cause of and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of time and wages, permanent impairment of ability to earn income, loss of the ability to perform usual and customary activities, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT III – BREACH OF DUTY OF FIDELITY
## (DR. DURRANI)

50.     Mr. and Mrs. Kramer incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

51.     Dr. Durrani owed Mrs. Kramer the duty of fidelity to act with the utmost good faith and to speak fairly and truthfully, to fully disclose his findings on examination and the opinions he holds, to inform her of the diagnosis and the known risks or dangers inherent therein

so that she could make an intelligent decision regarding the course of treatment, and if her ailment was beyond Dr. Durrani's knowledge, ability or capacity to treat with reasonable success, he had a duty to disclose the situation to Mrs. Kramer and to advise her to consult another specialist.

52.     Dr. Durrani breached theses duties by failing to act with the utmost good faith and to speak fairly and truthfully to Mrs. Kramer, failing to fully disclose his findings on examination and the opinions he held with regard to Mrs. Kramer's condition, failing to inform her of the accurate and true diagnosis and the known risks or dangers inherent therein so that she could make an intelligent decision regarding the course of treatment, failing to advise her of his conflict of interest, and failing to disclose to Mrs. Kramer that Dr. Durrani was incompetent to treat her with reasonable success and failing to refer her to a competent specialist.

53.     The aforementioned acts and omissions by Dr. Durrani were the direct and proximate cause of and were substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of time and wages, permanent impairment of ability to earn income, loss of the ability to perform usual and customary activities, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT IV -- NEGLIGENT HIRING, RETENTION, CREDENTIALING, AND SUPERVISION (CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

54.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

55.     Dr. Durrani's conduct over the course of hundreds or thousands of surgeries, many of which were unnecessary and/or used products such as Infuse that were not approved by

the FDA for their use, presented a foreseeable risk of harm to patients of CAST, West Chester Hospital, and UC Health.

56.     CAST, West Chester Hospital, and UC Health were responsible for the hiring, credentialing, granting staff privileges, screening, oversight, and conduct of its residents, physicians, nurses, and those physicians with privileges at the hospital, including Dr. Durrani.

57.     CAST, West Chester Hospital, and UC Health were in a unique position to control, monitor, and oversee the conduct and consequences of residents, physicians, nurses, and those physicians with privileges, including Dr. Durrani.

58.     CAST, West Chester Hospital, and UC Health owed Mr. and Mrs. Kramer a direct duty to exercise ordinary care in hiring, credentialing, granting staff privileges, continuing staff privileges, screening, and overseeing of its health care professionals, and monitoring the quality and necessity of the care provided by them, including Dr. Durrani.

59.     CAST, West Chester Hospital, and UC Health provided Dr. Durrani, inter alia, financial support, medical facilities, medical devices, hardware, and products, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

60.     CAST, West Chester Hospital, UC Health, and Dr. Durrani participated in experiments using Infuse on patients, including Mrs. Kramer, without obtaining proper informed consent, thereby causing harm to Mrs. Kramer.

61.     Upon information and belief, West Chester Hospital and UC Health requested Dr. Durrani resign from West Chester Hospital.

62.     Upon information and belief, Dr. Durrani resigned from West Chester Hospital after a negotiated agreement with West Chester Hospital and UC Health's administration.

63.     West Chester Hospital, as part of its quality management and peer review processes, should have noted the delay in Dr. Durrani's preparation of an operative report on October 31, 2010, for her surgery that was done nearly 14 months previously, on September 2, 2009.

64.     West Chester Hospital should also have noted and taken action on the fact that in his operative report done 14 months after the surgery, Dr. Durrani claimed to have performed six procedures on September 2, 2009, when in fact contemporaneous records indicate he performed only two.

65.     These discrepancies should have resulted in heightened review of Dr. Durrani's medical records and procedures by West Chester Hospital.

66.     West Chester Hospital was negligent in not performing such review (or, if it was performed, then it performed it negligently or with a willful or reckless disregard), and in retaining Dr. Durrani as a member of its medical staff without limitations or restrictions on his clinical privileges.

67.     CAST, West Chester Hospital, and UC Health breached their duties to Mr. and Mrs. Kramer, inter alia, by not overseeing the quality of Dr. Durrani's care, including medical necessity and the accuracy of his medical records, and by not controlling the actions of Dr. Durrani and the physicians, nurses, staff, and those with privileges, during the medical treatment of Mrs. Kramer at West Chester Hospital and elsewhere.

68.     CAST, West Chester Hospital, and UC Health breached their duty to Mrs. Kramer by a lack of care in the selection, hiring, retention, oversight, credentialing, granting and continuing privileges, and support of Dr. Durrani during the medical and surgical treatment of Mrs. Kramer at West Chester Hospital and elsewhere.

69.   But for the lack of care of CAST, West Chester Hospital, and UC Health and their acts and omissions herein described, Dr Durrani would not have been granted or permitted to retain staff privileges at West Chester Hospital or otherwise been able to negligently treat Mrs. Kramer, and she would not have been injured.

70.   The acts or omissions of CAST, West Chester Hospital, and UC Health herein described were a direct and proximate cause and were substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages are continuing into the future indefinitely.

## COUNT V – BREACH OF HOSPITAL ADMINISTRATIVE DUTY
## (WEST CHESTER HOSPITAL AND UC HEALTH)

71.   Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

72.   West Chester Hospital and UC Health owed Mrs. Kramer the duty to enforce their medical staff bylaws, rules and regulations, policies, procedures, protocols, and similar administrative guidelines.

73.   Under the circumstances set forth herein, West Chester Hospital and UC Health knew or reasonably should have known that its agents, employees, servants, ostensible agents, agents by estoppel, physicians with privileges, independent contractors, and others it allowed to render medical treatment, including without limitation Dr. Durrani, committed violations of its medical staff bylaws, rules and regulations, policies, procedures, protocols, and similar administrative guidelines.

74.     Notwithstanding its knowledge, West Chester Hospital and UC Health took no action or took insufficient action to enforce its medical staff bylaws, rules and regulations, policies, procedures, protocols, and similar administrative guidelines and to redress the violations thereof.

75.     West Chester Hospital's and UC Health's breach of this duty was the direct and proximate cause of and a substantial factor in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment.  These damages are continuing into the future indefinitely.

### COUNT VI – BATTERY
### (DR. DURRANI)

76.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

77.     Dr. Durrani committed battery against Mrs. Kramer by performing a surgery that was unnecessary, contraindicated for Mrs. Kramer's medical condition, and for which he did not properly obtain consent, inter alia, by using Infuse in ways and for surgeries not approved by the FDA and medical community and by the failure to provide this information to the Plaintiff.

78.     Dr. Durrani did not obtain Mrs. Kramer's consent to use Infuse on her or to implant that material in her body.

79.     Mrs. Kramer would not have agreed to the surgeries if she knew that the surgeries were unnecessary, not approved by the FDA, and not indicated.

80.     The aforementioned battery by Dr. Durrani was the direct and proximate cause of and a substantial factor in causing Mrs. Kramer to sustain severe and grievous injuries,

prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages are continuing into the future indefinitely.

## COUNT VII – LACK OF INFORMED CONSENT
## (DR. DURRANI AND WEST CHESTER HOSPITAL)

81.     Mr. and Mrs. Kramer incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

82.     As set forth in KRS 304.40-320 and the common law of Kentucky, Dr. Durrani had a duty to obtain informed consent from Mrs. Kramer prior to rendering medical treatment to her.

83.     This duty included that Dr. Durrani provide such information to Mrs. Kramer that a reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures.

84.     Dr. Durrani failed to obtain informed consent by failing to provide Mrs. Kramer with information such that she would have a general understanding of the procedures that he performed on her, the materials he used and implanted into her body, medically acceptable alternatives, and the substantial risks and hazards of the treatments, procedures, and materials used and implanted into Mrs. Kramer's body that are recognized among the medical community.

85.     Dr. Durrani further failed to obtain informed consent from Mrs. Kramer by performing surgeries that were unnecessary and, inter alia, by using Infuse in ways and for surgeries not approved by the FDA.

86.     Dr. Durrani did not obtain Mrs. Kramer's consent to use Infuse on her or to implant that material in her body, nor to perform surgeries that were medically unnecessary.

87.     West Chester Hospital did not obtain Mrs. Kramer's informed consent to the same procedures and for the same use and implantation of materials.

88.     Mrs. Kramer would not have agreed to the surgeries if she knew that the surgeries were not medically necessary or that they involved implantation of material in a manner not approved by the FDA.

89.     Dr. Durrani's and West Chester Hospital's breach of informed consent was the direct and proximate cause of and a substantial factor in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages are continuing into the future indefinitely.

## COUNT VIII -- FRAUD
## (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

90.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

91.     Dr. Durrani made material, false representations related to Mrs. Kramer's treatment including: stating the surgeries were medically necessary, that Dr. Durrani would "fix [Mrs. Kramer]," that more conservative treatment was unnecessary and futile, that failure to

undergo the procedures would make her condition worse, that the procedures were accurately reported on her medical records and on his bills for services, and that the surgery was successful.

92.    Dr. Durrani, CAST, West Chester Hospital, and UC Health also fraudulently concealed and failed to disclose hidden and material facts, where the circumstances set forth herein placed an obligation on Dr. Durrani, CAST, West Chester Hospital, and UC Health to make such disclosures. The fraudulent concealment by Dr. Durrani, CAST, West Chester Hospital, and UC Health and their failures to disclose include without limitation failing to act with the utmost good faith and to speak fairly and truthfully to Mrs. Kramer, failing to fully disclose their findings on examination and the opinions they held with regard to Mrs. Kramer's condition, failing to inform Mrs. Kramer of the accurate and true diagnosis and the known risks or dangers inherent therein so that she could make an intelligent decision regarding the course of treatment, failing to advise her that procedures performed on her by Dr. Durrani were unnecessary, and failing to advise her of the use of Infuse and the fact such use was off-label.

93.    Dr. Durrani, CAST, West Chester Hospital, and UC Health knew or should have known that such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth or falsity. Dr. Durrani, CAST, West Chester Hospital, and UC Health further knew of the concealed facts and knew of their obligation to disclose material facts, yet they chose not to makes such disclosures or were recklessly indifferent as to making those disclosures.

94.    Dr. Durrani manipulated his diagnosis and the medical tests to recommend surgery that he knew was not indicated. Dr. Durrani was operating a scam in which he would receive referrals through the facility and the medical community, conduct experiments on behalf

of Medtronic using its products, and perform those surgeries on whomever his patients were regardless of medical need.

95.     Dr. Durrani, CAST, West Chester Hospital, and UC Health made the misrepresentations, concealments, and failures to disclose both before and after the surgeries with the intent of misleading Mr. and Mrs. Kramer into reliance upon them. Specifically, the misrepresentations were made to induce payment for the surgeries, without which Dr. Durrani would not have performed the surgeries, and to induce Mrs. Kramer to undergo the surgeries without regard to medical need.

96.     Mrs. Kramer did in fact rely and was justified in her reliance on the misrepresentations, concealments, and failures to disclose because a patient has a right to trust their physician and that the facility is overseeing the doctor to ensure the patients of that physician that the physician is competent and trustworthy. There is no expectation that a doctor will have so compromised his/her medical judgment as to endanger their patients in experimental and unnecessary surgeries. Mrs. Kramer relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at their health-care facility as assurance that the facility was overseeing Dr. Durrani and vouching for his surgical abilities. The facility expected this reliance to induce patients to trust the facility would only allow surgeons who are competent and trustworthy to perform surgeries there.

97.     Dr. Durrani's scheme required the cooperation, either through complicity or through affirmative support, of the facilities at which he operated; they either had to turn a blind eye to what was happening or take steps to support it, otherwise it would have been impossible for Dr. Durrani to do this.

98.     The fraud of Dr. Durrani, CAST, West Chester Hospital, and UC Health set forth in the preceding paragraphs was the direct and proximate cause of and a substantial factor in causing Mrs. Kramer to undergo unnecessary and negligently performed surgeries, including the off-label and concealed use of Infuse, and in causing Mrs. Kramer to suffer severe and grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages are continuing into the future indefinitely.

## COUNT IX -- VICARIOUS LIABILITY
## (CAST)

99.     Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

100.    At all times relevant, Dr. Durrani was an agent, servant, employee, ostensible agent, and/or agent by estoppel of CAST.

101.    Upon information and belief, Dr. Durrani was a shareholder, owner, director, and/or member manager of CAST, and therefore had a direct financial motive and interest in CAST's profits.

102.    CAST held itself out to the public as being able to competently provide medical and surgical services of the type offered to Mrs. Kramer and negligently provided to Mrs. Kramer as described herein.

103.    Dr. Durrani was performing within his scope of employment, agency, ostensibly agency, agency by estoppel, and for the financial gain of the CAST when dealing with Mrs. Kramer.

104.    CAST is responsible for harm caused by acts of its employees, agents, ostensible agents, agents by estoppel, and owners under the theory of respondent superior, vicarious liability, ostensible agency, and/or agency by estoppel.

105.    The negligent, tortious, and other wrongful acts of Dr. Durrani alleged herein were undertaken within the scope of Dr. Durrani's employment, agency, ostensible agency, agency by estoppel, and/or other relationship with CAST.

106.    CAST is liable for the negligent, tortious, and other wrongful acts of Dr. Durrani alleged herein.

107.    CAST's acts and omissions by and through Dr. Durrani were a direct and proximate cause and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT X – CIVIL CONSPIRACY
## (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

108.    Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

109.    Dr. Durrani, CAST, West Chester Hospital, and UC Health tacitly, implicitly, and/or expressly entered into an unlawful or corrupt combination or agreement to do by concerted action the wrongful acts alleged herein by providing financial support, medical facilities, medical devices, hardware, products, billing and insurance payment support, staff support, medicines, and tangible items for use on patients, including Mrs. Kramer.

110.    Dr. Durrani, CAST, West Chester Hospital, and UC Health profited from such wrongful conduct at the expense and to the harm of Mrs. Kramer.

111.    The acts and omissions of Dr. Durrani, CAST, West Chester Hospital, and UC Health were the direct and proximate cause and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

### COUNT XI – AIDING AND ABETTING
### (CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

112.    Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

113.    CAST, West Chester Hospital, and UC Health aided and abetted Dr. Durrani's wrongful acts alleged herein by providing financial support, control, medical facilities, medical devices, hardware, and products, billing and insurance payment support, staff support, medicines, and tangible items for use on patients, including Mrs. Kramer.

114.    Said acts and omissions of Dr. Durrani, CAST, West Chester Hospital, and UC Health were the direct and proximate cause and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT XII – JOINT VENTURE
## (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

115.   Mr. and Mrs. Kramer incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

116.   Dr. Durrani, CAST, West Chester Hospital, and UC Health tacitly, implicitly, and/or expressly had an agreement to engage in the conduct set forth in the preceding paragraphs, including without limitation, to provide the subject surgeries and attendant medical treatment to Mrs. Kramer and to share in the profits and losses of such conduct.

117.   The prevailing common purpose of their enterprise was to profit from performing a high volume of surgeries and the attendant medical treatment. Dr. Durrani performed the surgeries while the other members of the enterprise provided financial support, medical facilities, medical devices, hardware, products, billing and insurance payment support, staff support, medicines, and tangible items for use on patients, including Mrs. Kramer.

118.   Dr. Durrani, CAST, West Chester Hospital, and UC Health had a common pecuniary interest in their enterprise.

119.   Dr. Durrani, CAST, West Chester Hospital, and UC Health in fact profited from their enterprise and wrongful conduct at the expense and to the harm of Mrs. Kramer.

120.   Upon information and belief, Dr. Durrani, CAST, West Chester Hospital, and UC Health had equal rights to a voice in the direction of the enterprise, which gave an equal right of control over it.

121.   The acts and omissions of Dr. Durrani, CAST, West Chester Hospital, and UC Health were the direct and proximate cause and substantial factors in causing Mrs. Kramer to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, loss of the ability to perform usual and

customary activities, loss of time and wages, permanent impairment of ability to earn income, and substantial medical expenses and treatment. These damages will continue into the future indefinitely.

## COUNT XIII – LOSS OF CONSORTIUM
### (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

122.   Mr. and Mrs. Kramer incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

123.   Mr. and Mrs. Kramer are and have been legally married at all relevant times.

124.   The wrongful conduct of Dr. Durrani, CAST, West Chester Hospital, and UC Health set forth above is the direct and proximate cause of and a substantial factor in causing Mr. Kramer past and future loss of consortium including without limitation the loss of services, assistance, aid, society, companionship and conjugal relationship between him and his wife, Kelli E. Kramer. These damages will continue into the future indefinitely.

## COUNT XIV – PUNITIVE DAMAGES
### (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

125.   Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

126.   The conduct of Dr. Durrani, CAST, West Chester Hospital, and UC Health referenced above constitutes oppression, fraud, malice, reckless indifference, wanton conduct, and/or gross negligence sufficient to warrant the imposition of punitive damages under Kentucky law.

## COUNT XV – ATTORNEY'S FEES
### (DR. DURRANI, CAST, WEST CHESTER HOSPITAL, AND UC HEALTH)

127.   Mr. and Mrs. Kramer incorporate by reference each and every allegation in the paragraphs above.

128.    The conduct of Dr. Durrani, CAST, West Chester Hospital, and UC Health referenced above warrant the imposition of attorney's fees against Dr. Durrani, CAST, West Chester Hospital, and UC Health under Kentucky law and equity.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Kelli and James Kramer demand judgment against Dr. Durrani, CAST, West Chester Hospital, and UC Health on all claims. Mr. and Mrs. Kramer further request an award including:

1.      Past medical bills;

2.      Future medical bills;

3.      Lost income and benefits;

4.      Lost future income and benefits;

5.      Impairment of ability to earn income;

6.      Past pain and suffering;

7.      Future pain and suffering;

8.      All incidental costs and expenses incurred as a result of their injuries;

9.      The damages to their credit as a result of their injuries;

10.     Loss of consortium;

11.     Punitive damages;

12.     Costs;

13.     Attorney's fees;

14.     Interest;

15.     All property loss;

16.     Dismissal with prejudice of West Chester Hospital's claims;

17. Trial by jury on all claims;

18. Any and all other relief to which they are entitled.

Respectfully submitted,

David V. Kramer
Ryan M. McLane
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
CO-COUNSEL FOR KELLI KRAMER
AND JAMES KRAMER
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail: dkramer@dbllaw.com
rmclane@dbllaw.com

Paul J. Schachter
Schachter Hendy & Johnson
909 Wright's Summit Parkway, Ste. 210
Ft. Wright, KY 41011
CO-COUNSEL FOR KELLI KRAMER
AND JAMES KRAMER
Phone No.:    859-578-4444
Fax No.:      859-578-4440
e-mail: pschachter@pschachter.com

412510v4

| C-105          Doc. Code: CI | | Case No. | 14-CI-400 |
| :--- | :--- | :--- | :--- |
| v. 5-03 | | Court | [✓] Circuit [ ] District |
| age 1 of 1 | | | |
| Commonwealth of Kentucky | CIVIL SUMMONS | County | Boone |
| Court of Justice    www.kycourts.net | | | |
| CR 4.02; CR Official Form 1 | | | |

WEST CHESTER MEDICAL CENTER                                    **PLAINTIFF**

**VS.**

KELLI KRAMER, et al.                                          **DEFENDANT**

vs.

ABUBAKAR ATIQ DURRANI, M.D., et al.                 THIRD PARTY DEFENDANTS

Serve:  Center for Advanced Spine Technologies, Inc.

Serve via Certified Mail:
**Service of Process Agent for Defendant:**

c/o Gregory A. Bacon, Registered Agent

6905 Burlington Pike

Florence, KY 41042

**THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on
the document delivered to you with this Summons. Unless a written defense is made by you or by an attorney on
your behalf and filed in the Clerk's Office within 20 days following the day this paper is delivered to you, judgment by
default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document
delivered to you with this Summons.

Date: ___3/25___, 2014

By: _____

**U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | |
| :--- | :--- | :--- |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

**Proof of Service**

This Summons was served by delivering a true copy and the Comp_

this _____ day of _____, 2_____

Served by: _____

Sent To _____

Street, Apt. No., or PO Box No. _____

City, State, ZIP+4 _____

| AOC-105    Doc. Code: CI | | Case No. | 14-CI-400 |
|---|---|---|---|
| Rev. 5-03<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.kycourts.net<br>CR 4.02; CR Official Form 1 | CIVIL SUMMONS | Court<br><br>County | [✓] Circuit [ ] District<br><br>Boone |

WEST CHESTER MEDICAL CENTER            **PLAINTIFF**

**VS.**

KELLI KRAMER, et al.                      **DEFENDANT**

vs.
ABUBAKAR ATIQ DURRANI, M.D., et al.     **THIRD PARTY DEFENDANTS**
Serve: UC Health, Inc.

Serve via Certified Mail:

**Service of Process Agent for Defendant:**

c/o GH&R Business Services, Inc.

511 Walnut Street

1900 Fifth Third Center

Cincinnati, OH 45202

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

··· You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this Summons. Unless a written defense is made by you or by an attorney on your behalf and filed in the Clerk's Office within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: ___3/25___, 2_014_

By: _____

---

**Proof of Service**

This Summons was served by delivering a true copy and the Comp

this _____ day of _____, 2_____

Served by _____

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**O F F I C I A L   U S E**

| Postage | $ | |
|---|---|---|
| Certified Fee | | |
| Return Receipt Fee<br>(Endorsement Required) | | Postmark<br>Here |
| Restricted Delivery Fee<br>(Endorsement Required) | | |
| Total Postage & Fees | $ | |

SECRETARY OF STATE
PO BOX 718
FRANKFORT, KY 40602-0718

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

7013 2630 7416 7945

 

# Case History

Generated: 03/24/2014  2:43:08PM

## WESTCHESTER MEDICAL CENTER,   VS. KRAMER, KELLI E.

14-CI-400

| County | BOONE |
| Court | DISTRICT Court |
| Opening Judge | HON. CHARLES T. MOORE |
| Current Judge | |
| Closing Judge | HON. CHARLES T. MOORE |

FILED
BOONE CIRCUIT DISTRICT COURT
MAR 2 4 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

| | | Page # |
|---|---|---|
| | **Scheduled Event**<br>MOTION NOT REQUIRING HEARING | |
| 07/20/2011 | **Case Filed**<br>CONTRACT | |
| 07/20/2011 | **Document Filed**<br>COMPLAINT / PETITION<br>AP | |
| 07/20/2011 | **Summons Filed** - KRAMER, KELLI   @00000188024<br>E.<br>PERSONAL SERVICE | |
| 07/23/2011 | **Summons Served/Recalled** -   @00000188024<br>**KRAMER, KELLI E.**<br>PERSONAL SERVICE | |
| 09/16/2011 | **Motion Filed**<br>MOTION FOR DEFAULT JUDGMENT<br>ATTORNEY FOR PLAINTIFF | |
| 09/20/2011 | **Case Disposed**            62   Days<br>DEFAULT JUDGMENT | |
| 09/20/2011 | **Motion Disposed**            -4   Days<br>MOTION FOR DEFAULT JUDGMENT<br>ATTORNEY FOR PLAINTIFF | |
| 09/20/2011 | **Document Filed**<br>JUDGMENT -DEFAULT<br>JUD | |
| 09/20/2011 | **NOE to All Counsel of Record and**<br>**Parties Not Represented by Counsel.**<br>JUDGMENT -DEFAULT<br>FIRST CLASS MAIL | |
| 01/17/2014 | **Document Filed**<br>GARNISHMENT - AFFIDAVIT FOR WAGE<br>*ST ELIZABETH* | |
| 01/28/2014 | **Document Filed**<br>RETURN OF SERVICE<br>*ST. ELIZABETH SERVED 1-25-2014* | |
| 03/03/2014 | **Motion Filed**<br>MOTION - OTHER<br>ATTORNEY FOR PLAINTIFF<br>*MOTION OF DEF. TO SET ASIDE DEFAULT JUDGMENT & FOR RELIEF FROM JUDGMENT, TO FILE ANS,*<br>*COUNTERCLAIM, & 3RD PARTY COMPLAINT & TO TRANSFER CASE TO BOONE CIRCUIT COURT* | |
| 03/03/2014 | **Motion Filed**<br>MOTION TO INTERVENE<br>ATTORNEY FOR PLAINTIFF<br>*JAMES KRAMER TO INTERVENE AS DEF & 3RD PARTY PLAINTIFF* | |
| 03/07/2014 | **Document Filed**<br>NOTICE OF HEARING<br>AD<br>*AMENDED* | |

DISTRICT Court            11-C-02056

## WESTCHESTER MEDICAL CENTER,   VS. KRAMER, KELLI E.

14-CI-400

| | |
|---|---|
| County | BOONE |
| Court | DISTRICT Court |
| Opening Judge | HON. CHARLES T. MOORE |
| Current Judge | |
| Closing Judge | HON. CHARLES T. MOORE |

Page #

| Date | Event | |
|---|---|---|
| 03/10/2014 | **Scheduled Event**<br>MOTION HOUR<br>HON. CHARLES T. MOORE | Mar 10 2014 at 1:00 PM |
| 03/10/2014 | **Document Filed**<br>CIVIL DOCKET<br>JUD<br>*CONT 3-24-14 1PM NOT 9AM* | |
| 03/18/2014 | **Document Filed**<br>ORDER - AGREED<br>JUD<br>*EXTENDING TIME FOR PLAINTIFF TO RE SP. TO DEF. MOTION TO SET ASIDE DF J AND FOR RELIEF FROM JUDGMENT, TO FILE ANS., COUNTERCLAIM & THIRD-P ARTY COMP. AND TRANS. CASE TO BOON E CIRCUIT CT. & 3RD PARTY PLAINTIF* | |
| 03/18/2014 | **NOE to All Counsel of Record and Parties Not Represented by Counsel.**<br>ORDER - AGREED<br>FIRST CLASS MAIL<br>*EXTENDING TIME FOR PLAINTIFF TO RE SP. TO DEF. MOTION TO SET ASIDE DF J AND FOR RELIEF FROM JUDGMENT, TO FILE ANS., COUNTERCLAIM & THIRD-P ARTY COMP. AND TRANS. CASE TO BOON E CIRCUIT CT. & 3RD PARTY PLAINTIF* | |
| 03/18/2014 | **Document Filed**<br>NOTICE - OTHER<br>AP<br>*NOTICE OF APPEARANCE FOR ICHAEL E. NITARDY & BILL J. PALIOBEIS* | |
| 03/18/2014 | **Document Filed**<br>MEMORANDUM<br>AP<br>*IN OPPOSITION* | |
| 03/21/2014 | **Document Filed**<br>REPLY<br>AP<br>*IN SUPPORT OF MOTION* | |
| 03/24/2014 | **Scheduled Event**<br>MOTION HOUR<br>HON. CHARLES T. MOORE | Mar 24 2014 at 1:00 PM |
| 03/24/2014 | **Document Filed**<br>NOTICE - OTHER<br>AD<br>*FILING OF AFFIDAVIT* | |
| 03/24/2014 | **Document Filed**<br>AFFIDAVIT<br>AD<br>*KELLI KRAMER* | |
| 03/24/2014 | **Document Filed**<br>ORDER - OTHER<br>JUD<br>*ANSWER, COUNTERCLAIM,A ND THIRD PA RTY COMPLAINT OF DEF ARE FILED TR ANSFER TO BOONE CIRCUIT COURT* | |

DISTRICT Court        11-C-02056        Page 2 of 3

WESTCHESTER MEDICAL CENTER,   VS. KRAMER, KELLI E.

14 · CI- 400

| | |
|---|---|
| County | BOONE |
| Court | DISTRICT Court |
| Opening Judge | HON. CHARLES T. MOORE |
| Current Judge | |
| Closing Judge | HON. CHARLES T. MOORE |

Page #

| | |
|---|---|
| 03/24/2014 | **NOE to All Counsel of Record and Parties Not Represented by Counsel.** |
| | **ORDER - OTHER** |
| | **FIRST CLASS MAIL** |
| | *ANSWER, COUNTERCLAIM,A ND THIRD PA RTY COMPLAINT OF DEF ARE FILED TR ANSFER TO BOONE CIRCUIT COURT* |



COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
DIVISION II
CASE NO. 11-CI-2056



ENTERED
BOONE CIRCUIT/DISTRICT COURT
MAR 2 4 2014
DIANNE MURRAY, CLERK
BY:_____D.C.

WEST CHESTER MEDICAL CENTER                              PLAINTIFFS

VS.

KELLI E. KRAMER                                          DEFENDANT

## ORDER

This matter having come before the Court on motion of Defendant, Kelli E. Kramer, to set aside the default judgment entered herein on September 20, 2011, and for relief from said judgment, and to file her Answer, Counterclaim, and Third-Party Complaint, and on motion of her husband James P. Kramer to intervene as a Defendant and Third-Party Plaintiff, and on their motion to transfer this action to the Boone Circuit Court, and the Court having heard the arguments of parties and being in all ways sufficiently advised;

IT IS HEREBY ORDERED that Defendant's motion to set aside the default judgment and for relief from judgment is granted. The Default Judgment entered herein on September 20, 2011, is hereby vacated.

IT IS FURTHER ORDERED that the tendered Answer, Counterclaim, and Third-Party Complaint of Defendant Kelli E. Kramer and Intervening Defendant and Third-Party Plaintiff James P. Kramer are deemed filed of record as of this date. Mr. and Mrs. Kramer shall pay the filing fees associated with their pleadings within a reasonable time of the entry of this Order.

IT IS FURTHER ORDERED that upon filing of the Counterclaim and Third-Party Complaint this action exceeds the jurisdictional limit of this Court and is therefore transferred to the Boone Circuit Court.

This is the __24th__ day of __March__, 2014

_(signature)_

HON. CHARLES T. MOORE, JUDGE

Distribution to:

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011

David V. Kramer
Ryan M. McLane
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017

C. Edward Noe
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202

Order prepared by:

David V. Kramer (#39609)
859-341-1881

412367v1



FILED
BOONE CIRCUIT/DISTRICT COURT

**MAR 2 4 2014**

DIANNE MURRAY, CLERK
BY: _CXC_                    D.C.

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-CI-2056

WEST CHESTER MEDICAL CENTER                    PLAINTIFF

VS.

KELLI E. KRAMER                                DEFENDANT

### NOTICE OF FILING OF AFFIDAVIT

All parties please take notice that the original Affidavit of Kelli Kramer is herewith being

filed on this date.

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:   859-341-1881
Fax No.:     859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:   859-578-4444
Fax No.:     859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and
James Kramer*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was e-mailed and
mailed this 24th day of March, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net

_____
David V. Kramer

415412v1

# AFFIDAVIT

Affiant, Kelli Kramer, having been duly sworn and cautioned, states under oath as follows:

1.       I hereby verify that the facts stated in the Motion to Set Aside Default Judgment, Reply in Support of Motion to Set Aside Default Judgment and the Answer, Counterclaim and Third Party Complaint are true to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Kelli Kramer

*COMMONWEALTH OF KENTUCKY*
*COUNTY OF KENTON*

Subscribed and sworn to before me, a Notary Public, this 24th day of March, 2014.

_____
Notary Public
Commission expires: 11/10/16

415264v1

**AIMEE TEAGUE**
NOTARY EXPIRATION DATE: 11/10/2016
STATE OF KENTUCKY AT LARGE
NOTARY ID 476509

1:00 PM          DI          **BOONE**

Run Date: 03/21/2014  9:51:40AM          DocketList.Rp

Court    1A          ROOM 1A - 1ST FLOOR COURTHOUSE

Prep Info  @00000094316    03/21/2014  9:51:40AM

Judge    HON. CHARLES T. MOORE

**03/24/2014 Court Docket**

Page 1 of 7

---

**1          DI   11-C-02056          WESTCHESTER MEDICAL CENTER,   VS. KRAMER, KELLI E.**

☐

☑ KRAMER, DAVID V.                          ATTORNEY FOR DEFENDANT (CIVIL)          KRAMD
☐ SCHACHTER, PAUL J.                        ATTORNEY FOR DEFENDANT (CIVIL)          SCHAP
☐ C. EDWARD NOE,                            ATTORNEY FOR PLAINTIFF                  NOEC
☑ NITARDY, MICHAEL E.                       ATTORNEY FOR PLAINTIFF                  NITAM
☐ KRAMER, KELLI E.                          DEFENDANT / RESPONDENT
☐ WESTCHESTER MEDICAL CENTER,               PLAINTIFF / PETITIONER
   ☐ Bail Credit Denied    ☐ Danger to self or others   ☐ Flight Risk
          Bail Set:                        Posted:

**MOTION HOUR**          *Hearing Held —*

---

**2          DI   12-C-02564          HAY, CHARLES R , ET AL VS. SLONE, CHARLES**

☐

☐ WOLOSHIN, MARK H                          ATTORNEY FOR DEFENDANT (CIVIL)          WOLOM
☐ BLANKENSHIP, RANDY J.,                    ATTORNEY FOR PLAINTIFF                  BLANR
☐ SLONE, CHARLES                           DEFENDANT / RESPONDENT
☐ SLONE CONSTRUVTION,                      DOING BUSINESS AS
☐ HAY, CHARLES R                            PLAINTIFF / PETITIONER
☐ HAY, FAYE L                               PLAINTIFF / PETITIONER
   ☐ Bail Credit Denied    ☐ Danger to self or others   ☐ Flight Risk
          Bail Set:                        Posted:

*C/N All Parties*

**MOTION HOUR**          *Cont to 4/7/14, 1pm by Agreement*          *Charles T. Moore*

---

03/24/2014          1A          1:00 PM          Page 1 of 7          Judge Signature:

FILED
BOONE CIRCUIT/DISTRICT COURT

MAR 2 1 2014

DIANNE MURRAY CLERK
BY: _____ D.C.

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-CF-2056
11-C-2056

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                               DEFENDANT

### REPLY IN SUPPORT OF

### MOTION OF DEFENDANT KELLI E. KRAMER TO SET ASIDE DEFAULT JUDGMENT AND FOR RELIEF FROM JUDGMENT, TO FILE ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT, AND TO TRANSFER CASE TO BOONE CIRCUIT COURT

### AND

### MOTION OF JAMES KRAMER TO INTERVENE AS DEFENDANT AND THIRD-PARTY PLAINTIFF

Come now Defendant, Kelli E. Kramer, and Movant James Kramer, by counsel, and for their Reply in Support of Mrs. Kramer's Motion to Set Aside Default Judgment and for Relief from Judgment, to File Answer, Counterclaim, and Third Party Complaint, and to Transfer Case to Boone Circuit Court, and Mr. Kramer's Motion to Intervene as Defendant and Third-Party Plaintiff (the "Reply") state as follows.

Plaintiff argues in its Response that Mr. and Mrs. Kramer's Motion should be denied "because Mrs. Kramer cannot demonstrate a valid excuse for her default, and because she cannot show the absence of prejudice to West Chester." (Response at 3)  However, Plaintiff provides absolutely no support for its conclusory statements.  On the contrary, Mr. and Mrs. Kramer's Motion (and the Answer, Counterclaim, and Third-Party Complaint attached thereto) contains an extensive factual account demonstrating exceptionally good cause for setting aside default.  In short, Mr. and Mrs. Kramer show the fact that the very charges West Chester is attempting to

collect herein arise out of the egregiously tortious conduct of Dr. Durrani committed against Mrs. Kramer, which West Chester permitted and supported in its hospital, and which Mrs. Kramer had no reason to believe was tortious until the last few months.

The negligence, lack of informed consent, battery, fraud, and other tortious acts of Dr. Durrani and West Chester had been concealed from Mrs. Kramer until recently. For example, Mrs. Kramer did not learn until almost two years after entry of the Default Judgment that Dr. Durrani, with West Chester's knowledge, implanted Bone Morphogenetic Protein 2 (BMP-2) into her body without her consent and despite the fact that it was not approved by the FDA for the use Dr. Durrani made of it. This includes the surgery for which West Chester is attempting to collect medical bills by way of wage garnishment in the instant case. Had Mrs. Kramer known at the time West Chester filed its Complaint that it was trying to collect medical bills for a surgery in which it aided, abetted, and facilitated Dr. Durrani's recently discovered wrongful conduct, Mrs. Kramer would have defended West Chester's claim. These critical facts were unknowable to Mrs. Kramer at the time of West Chester's Complaint. *The delay is the fault of Dr. Durrani and West Chester, not Mrs. Kramer—she is the victim.*

West Chester ignored the foregoing facts as well as the host of others included in Mr. and Mrs. Kramer's Motion. In light of this, West Chester's repetitious statements that Mrs. Kramer has "demonstrated no valid excuse" ring hollow. Additionally, Mrs. Kramer may also obtain relief from judgment where "it is no longer equitable that the judgment should have prospective application." CR 60.02. This clearly applies here. The equities involved indisputably favor setting aside the default judgment. To permit West Chester to continue collecting on a judgment for medical bills under these circumstances, without a trial on the merits, would impede justice and actually encourage concealment. West Chester's position demonstrates that it intends to

continue pursuing profit from Dr. Durrani's misconduct, despite that fact that its aiding and abetting of Dr. Durrani – a one-man mass tortfeasor who is now an international fugitive from justice – has devastated the health and lives of persons like Mrs. Kramer. The Court should exercise its discretion to put a stop to it until the merits can be heard.

Finally, West Chester will not be prejudiced by setting aside the default. West Chester's claim is simple and involves only collection of medical bills. No evidence has gone stale, there is no danger of Mrs. Kramer absconding (she obviously intends to avail herself of the Court for her Counterclaim), and West Chester will have to defend Mrs. Kramer's case whether the default is set aside or not. If anything, the evidence needed to properly adjudicate West Chester's claim *on the merits* is only now coming to light. The fact that West Chester may lose on the merits is not undue prejudice. Nor is the bringing of claims against West Chester in Boone County, Kentucky unduly prejudicial. West Chester is clearly subject to both the jurisdiction and venue of this Court for the claims that Mrs. Kramer seeks to assert herein.

West Chester and Mr. and Mrs. Kramer agreed on one key point in Kentucky law: "default judgments are disfavored and the trial court is vested with broad discretion to set them aside." *Asset Acceptance, LLC v. Moberly*, 241 S.W.3d 329, 332 (Ky. 2007). Plaintiff tried to twist this point into supporting denial of Mr. and Mrs. Kramer's Motion. On the contrary, the fact that the Kentucky Supreme Court stated that default judgments are ***disfavored and*** that courts have discretion ***to set them aside*** clearly indicates that courts should err on the side of exercising that discretion so that justice is accomplished. Under the facts that have but recently come to light, justice favors exercising this Court's discretion to grant Mr. and Mrs. Kramer's Motion.

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:        859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:        859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and*
*James Kramer*

## NOTICE

Please take notice that the foregoing will come on for hearing on March 24, 2014, at 1:00 p.m., or as soon thereafter as counsel may be heard.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this 2/5t day of March, 2014, to the following:

Bill J. Paliobeis, Esq.
Michael E. Nitardy, Esq.
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, Kentucky 41042
Phone (859) 817-5900
Fax (859) 282-5902
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net


_____
David V. Kramer

415066v1

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-C-2056

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

v.

KELLI E. KRAMER                                              DEFENDANT.



---

**WEST CHESTER MEDICAL CENTER'S MEMORANDUM IN OPPOSITION TO
KELLI E. KRAMER'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND FOR
RELIEF FROM JUDGMENT, TO FILE, ANSWER, COUNTERCLAIM AND THIRD-
PARTY COMPLAINT AND TRANSFER CASE TO BOONE CIRCUIT COURT
AND
MOTION OF JAMES KRAMER TO INTERVENE
AS DEFENDANT AND THIRD-PARTY PLAINTIFF**

---

Now comes Plaintiff West Chester Medical Center. ("West Chester"), by and through

counsel, and for its Memorandum in Opposition to Kelli E. Kramer's ("Mrs. Kramer") Motion to

Set Aside Default Judgment and for Relief from Judgment, to File, Answer, Counterclaim and

Third-Party Complaint and Transfer Case to Boone Circuit Court and Motion of James Kramer

("Mr. Kramer") to Intervene as Defendant and Third-Party Plaintiff ("Motion"), filed by hereby

states as follows.

**I.      INTRODUCTION AND BACKGROUND.**

The default judgment Mrs. Kramer seeks to set aside was obtained on September 20,

2011 - - almost two and a half years ago.  The significant passage of time alone demonstrates

Mrs. Kramer cannot satisfy the necessary elements for the relief she seeks because over a year

has passed since the entry of the judgment and Mrs. Kramer cannot explain her failure to

properly respond to the complaint in this matter.

Because setting aside the default judgment would not be proper, the additional relief

sought by the Kramers in their Motion should likewise be denied.  The Kramers seek relief that

1

would allow them to bring a civil action for alleged negligence (and other alleged claims) against West Chester and three other defendants (Abubakar Durrani, M.D., Centers for Advanced Spinal Technologies ("CAST"), and UC Health) ) *See Motion.* As a result, the Kramer's attempt to have the default judgment set aside is truly a tactic to get their negligence action filed in a Kentucky state court. But the separate issues of Mrs. Kramer's default judgment and the potential civil action should not be combined. Just because the Kramers want to bring a civil action that would include West Chester as a defendant does not mean that setting aside the default judgment in this matter is either necessary or proper. The Kramers are free to assert such claims in a separate action even if the relief they seek in their Motion is denied. Accordingly, because the default judgment should not be set aside, the Kramer's motion should be denied in its entirety.

## II.   ARGUMENT.

### A. Setting Aside the Default Judgment in this Matter is Not Justified Under Either CR 55.02 or CR 60.02.

Civil Rule 55.02 states that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02."

In turn, Civil Rule 60.02 states:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. **The motion shall be made within a reasonable time, and on grounds**

2

(a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

(Emphasis added).

For the reasons discussed below, Mrs. Kramer fails to satisfy the requirements of either CR 55.02 or CR 60.02.

## 1. Mrs. Kramer cannot meet the requirements of CR 55.02.

In fleshing out the requirements under CR 55.02, the Court in *S.R. Blanton Development, Inc. v. Investors Realty and Management Co., Inc.*, 819 S.W.2d 727 (Ky. Ct. App. 1991) stated: "[t]he moving party must show: '(1) a valid excuse for default, (2) a meritorious defense to the claim, and (3) absence of prejudice to the nondefaulting party.'" *Id.* at 729, *quoting 7 Ky.Prac., CR 55.02*, Comment 2. The Court added that "[a]ll three elements must be present to set aside a default judgment." *Id.*

Here, because Mrs. Kramer cannot demonstrate a valid excuse for her default, and because she cannot show the absence of prejudice to West Chester, she cannot meet the elements under CR 55.02. In affirming the lower court's denial of a motion to set aside a default judgment in *S.R. Blanton*, the Court noted that while certain valid defenses might be available to the moving party on the underlying claim, it was also "necessary to show a valid excuse for the default and an absence of prejudice to the nondefaulting party." *Id.* The Court added that "the idea of fairness must be viewed from both sides." *Id.*

Mrs. Kramer offers no reason for her failure to answer and defend the underlying complaint in this matter. The passage of over two and a half years since the entry of the judgment indicates there can be no valid excuse. In addition, since that time, on information and

3

belief, Mrs. Kramer has made some payments on the judgment.  Given that her arrival to this case is so late in the game, she can have no credible "valid excuse" for the default.  Further, due to the passage of time, and West Chester's reasonable reliance on same, Mrs. Kramer cannot show that vacating the judgment would not be prejudicial to West Chester.

The Court in *S.R. Blanton* also addressed the assertion that default judgments are generally not favored.  The Court stated that while they are not favored, "the trial court is vested with broad discretion in such matters, and its judgment will not be disturbed unless that discretion has been abused."  *Id.*  (Internal citation omitted).  The Court concluded that due to the underlying defendant's lack of good reason for not answering the complaint and the prejudice to the underlying plaintiff, the trial court had not abused its discretion in denying the motion to set aside the default judgment.  Likewise, because Mrs. Kramer can provide no valid excuse for failing to answer the underlying complaint, and because she cannot show West Chester would not be prejudiced through the vacation of the judgment, Mrs. Kramer's Motion should be denied.

### 2.  Mrs. Kramer cannot meet the requirements of CR 55.02.

Even if Mrs. Kramer could satisfy CR 55.02, she cannot satisfy CR 60.02.  As stated above, judgment in this matter was rendered over two and a half years ago.  Under CR 60.02, a motion to set aside a judgment must be pursued within a reasonable time, and for the reasons espoused under CR 60.02(a), (b), and (c), within one year of the judgment.  Mrs. Kramer clearly cannot meet CR 60.02(a)-(c).

Mrs. Kramer also cannot meet the remaining provisions of CR60.02.  The two provisions relied upon in the Motion are CR 60.02(e) ("the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application) and CR60.02(f) ("any other reason of an extraordinary nature justifying relief.")   Neither is

4

applicable nor appropriate here.

First, under CR 60.02, a motion seeking relief for the reasons under CR 60.02(d)-(f) must still be brought within a "reasonable" time. Given the facts of the case and the prejudice to West Chester, two and a half years cannot be deemed a "reasonable" time.

Second, Mrs. Kramer's purported justification for satisfying CR 60.02(e) or (f) is not sufficient to warrant setting aside the default judgment in this matter. Mrs. Kramer essentially argues that because she wants to bring a civil action against Dr. Durrani, CAST, UC Health, and West Chester, she meets the requirements of CR 60.02(e) and (f). But Mrs. Kramer admits in her Motion that she will be bringing the civil action whether or not she is granted the relief sought in the Motion. The Answer, Counterclaim, and Third-Party Complaint attached to the Motion includes a prayer for relief for "an award of past medical bills." If, in her new case, Mrs. Kramer proves that certain services were unnecessary and should not have been performed, then she may receive damages that reimburse her for such payments. Until that time, there is no justification for re-opening a collection matter that concluded over two and a half years ago. As a result, it cannot be argued that the setting aside of the default judgment is necessary to stop the "prospective application of the judgment" or for reasons rising to an "extraordinary nature justifying relief" because Mrs. Kramer has affirmed she will be seeking that alleged relief elsewhere. For these reasons, Mrs. Kramer cannot satisfy any of the parts to CR 60.02.

**B. Mrs. Kramer Should Not Be Granted Leave to File An Answer, Counterclaim, and Third-Party Complaint and Mr. Kramer Should Not Be Granted Leave to Intervene.**

As demonstrated above, Mrs. Kramer's motion should be denied because she cannot satisfy either CR 55.02 or CR 60.02. As a result, the relief further requested in the Motion should be denied as moot. The Motion itself asserts that regardless of the outcome on the

Motion to Set Aside the Default Judgment, the Kramers will be bringing a civil action against the parties recited in the Answer, Counterclaim, and Third-Party Complaint attached to the Motion. As such, denying the Motion in its entirety will not result in denying the Kramers their day in court on the claims they allege in the Answer, Counterclaim, and Third-Party Complaint attached to the Motion. Because of this, the Motion should be denied in its entirety.

## III.   CONCLUSION.

For the foregoing reasons, Plaintiff West Chester Medical Center respectfully requests that this Court deny Kelli E. Kramer's Motion to Set Aside Default Judgment and for Relief from Judgment, to File Answer, Counterclaim, and Third-Party Complaint, and to Transfer Case to Boone Circuit Court and Motion of James Kramer to Intervene as Defendant and Third-Party Plaintiff. A proposed order is being tendered herewith.

Respectfully submitted,

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio  45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center*

6

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 18th day of March, 2014 to the following:

David V. Kramer
Ryan M. McLane
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky 41011

*Co-counsel for Kelli E. Kramer and*
*James Kramer*

Counsel for Plaintiff

7

**COMMONWEALTH OF KENTUCKY**
**BOONE DISTRICT COURT**
**CASE NO. 11-C-2056**



FILED
BOONE CIRCUIT DISTRICT COURT
MAR 1 3 2014
DIANNE MURRAY, CLERK
BY: _____ D.C.

WEST CHESTER MEDICAL CENTER                          **PLAINTIFF**

v.

KELLI E. KRAMER                                      **DEFENDANT.**

---

## NOTICE OF APPEARANCE OF BILL J. PALIOBEIS, MICHAEL E. NITARDY, AND FROST BROWN TODD LLC

---

This is to notify the Court and all counsel of record that attorneys Bill J. Paliobeis, KBA No. 87002, and Michael E. Nitardy, KBA No. 91613 of Frost Brown Todd LLC, 7310 Turfway Road, Suite 210, Florence, Kentucky 41042, hereby enter their appearance as counsel for Plaintiff West Chester Medical Center in the above-styled matter.

Respectfully submitted,

FROST BROWN TODD LLC

Bill J. Paliobeis (87002)
Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
bpaliobeis@fbtlaw.com
mnitardy@fbtlaw.com

*Co-Counsel for West Chester Medical Center*

1

## CERTIFICATE OF SERVICE

Plaintiff certifies that a true copy of the foregoing has been served via United States mail, postage prepaid, on this 18th day of March, 2014 to the following:

> David V. Kramer
> Ryan M. McLane
> DRESSMAN BENZINGER LA VELLE PSC
> 207 Thomas More Parkway
> Crestview Hills, Kentucky 41017
>
> Paul J. Schachter
> SCHACHTER, HENDY & JOHNSON, PSC
> 909 Wright's Summit Pkwy., Ste. 210
> Ft. Wright, Kentucky  41011
>
> *Co-counsel for Kelli E. Kramer and*
> *James Kramer*

Counsel for Plaintiff

CINLibrary 0123682.0615403  3242526v1

2



**COMMONWEALTH OF KENTUCKY**
**BOONE DISTRICT COURT**
**CASE NO. 11-C -2056**

WEST CHESTER MEDICAL CENTER                                      **PLAINTIFF**

v.

KELLI E. KRAMER                                                 **DEFENDANT.**

---

### AGREED ORDER
**EXTENDING TIME FOR PLAINTIFF TO RESPOND TO KELLI E. KRAMER'S**
**MOTION TO SET ASIDE DEFAULT JUDGMENT AND FOR RELIEF FROM**
**JUDGMENT, TO FILE, ANSWER, COUNTERCLAIM AND THIRD-PARTY**
**COMPLAINT AND TRANSFER CASE TO BOONE CIRCUIT COURT**
**AND**
**MOTION OF JAMES KRAMER TO INTERVENE**
**AS DEFENDANT AND THIRD-PARTY PLAINTIFF**

---

Upon agreement of the parties, as signified below, and with the Court otherwise being sufficiently advised, it is hereby ORDERED that:

Plaintiff West Chester Medical Center shall have up to and including March 18, 2014 in which to file a response to Kelli E. Kramer's Motion to Set Aside Default Judgment and for Relief from Judgment, to File Answer, Counterclaim, and Third-Party Complaint, and to Transfer Case to Boone Circuit Court and Motion of James Kramer to Intervene as Defendant and Third-Party Plaintiff.

SO ORDERED this *17th* day of *MARCH*, 2014.

JUDGE, BOONE DISTRICT COURT

1

**AGREED TO:**

David V. Kramer (39609)
Ryan M. McLane (92925)
DRESSMAN BENZINGER LA VELLE PSC
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881 (telephone)
(859) 341-1469 (facsimile)
dkramer@dbllaw.com
rmclane@dblaw.com

*Co-counsel for Kelli E. Kramer and
James Kramer*

Michael E. Nitardy (91613)
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
(859) 817-5900 (telephone)
(859) 283-5902 (facsimile)
mnitardy@fbtlaw.com

*Co-Counsel for West Chester Medical Center*

Paul J. Schachter
SCHACHTER, HENDY & JOHNSON, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, Kentucky 41011
(859) 578-4444 (telephone)
(859) 578-4440 (facsimile)
pschachter@pschachter.com

*Co-counsel for Kelli E. Kramer and
James Kramer*

C. Edward Noe
NOE & MACLEID CO., LPA
810 Sycamore Street, 4th Fl.
Cincinnati, Ohio 45202
(513) 381-7333 (telephone)
(513) 381-1390 (facsimile)
ednoe@one.net

*Co-Counsel for West Chester Medical Center*

CINLibrary 0123682.0615403  3241504v1

2

AOC-S-CN   Doc Code: NH
Rev. 7-99

**Commonwealth of Kentucky
Court of Justice**



**Court Notice**

Generated: 03/10/2014

Case Number **11-C-02056**

Court **DISTRICT**

County **BOONE**

*Plantiff*, **WESTCHESTER MEDICAL CENTER,**    VS. **KRAMER, KELLI E.,** *Defendant*

C. EDWARD NOE,
810 SYCAMORE STREET  STE.102
CINCINNATI OH 45214

You are hereby notified that the above case is scheduled/rescheduled for:

| Date | Time | Location |
|------|------|----------|
| 03/24/2014 | 01:00 PM | ROOM 1A - 1ST FLOOR COURTHOUSE |
| BOONE COUNTY COURTHOUSE, 1ST FLOOR 6025 ROGERS LANE BURLINGTON KY 41005 | | |

in **BOONE DISTRICT.**

FILED

03-10-2014

Circuit/District Clerk, DIANNE MURRAY

By _____ , DC

DI     11-C-02056
WESTCHESTER MEDICAL CENTER,    VS. KRAMER, KELLI E.

| AOC-S-CN    Doc Code: NH | Case Number **11-C-02056** |
| Rev. 7-99 | Court **DISTRICT** |
| **Commonwealth of Kentucky**<br>**Court of Justice** | County **BOONE** |

**Court Notice**

*Plaintiff,* WESTCHESTER MEDICAL CENTER,    VS. KRAMER, KELLI E., *Defendant*

KRAMER, DAVID V.
207 THOMAS MORE PARKWAY
CRESTVIEW HILLS KY 41017

You are hereby notified that the above case is scheduled/rescheduled for:

| Date | Time | Location |
|------|------|----------|
| 03/24/2014 | 01:00 PM | ROOM 1A - 1ST FLOOR COURTHOUSE |
| BOONE COUNTY COURTHOUSE, 1ST FLOOR 6025 ROGERS LANE BURLINGTON KY 41005 | | |

in **BOONE DISTRICT.**

DI    11-C-02056
WESTCHESTER MEDICAL CENTER,    VS. KRAMER, KELLI E.

**FILED**

**03-10-2014**

Circuit/District Clerk, DIANNE MURRAY

By _____, DC

1:00 PM          DI          BOONE 357          Run Date: 03/07/2014 12:36:54PM     DocketList.Rpt

Court    1A          ROOM 1A - 1ST FLOOR COURTHOUSE          Prep Date: 00000093917    03/07/2014 12:36:53PM

Judge    HON. CHARLES T. MOORE          **03/10/2014 Court Docket**
                                        Page 1 of 3

Start of docket 1

| 1 | DI | 11-C-02056 | **WESTCHESTER MEDICAL CENTER, VS. KRAMER, KELLI E.** |

☐

☐ C. EDWARD NOE,                    ATTORNEY FOR PLAINTIFF          NOEC
☐ KRAMER, KELLI E.                  DEFENDANT / RESPONDENT
☐ WESTCHESTER MEDICAL CENTER,       PLAINTIFF / PETITIONER

☐ Bail Credit Denied   ☐ Danger to self or others   ☐ Flight Risk
   Bail Set:                         Posted:

```
            ENTERED
BOONE CIRCUIT/DISTRICT COURT
        MAR 1 0 2014
      DIANNE MURRAY, CLERK
BY:_____D.C.
```

**MOTION HOUR**
MOTION - OTHER                      ATTORNEY FOR PLAINTIFF
*MOTION OF DEF. TO SET ASIDE DEFAULT JUDGMENT & FOR RELIEF FROM JUDGMENT, TO FILE ANS,*
*COUNTERCLAIM, & 3RD PARTY COMPLAINT & TO TRANSFER CASE TO BOONE CIRCUIT COURT*
MOTION TO INTERVENE                 ATTORNEY FOR PLAINTIFF
*JAMES KRAMER TO INTERVENE AS DEF & 3RD PARTY PLAINTIFF*

*Con't 3/24/14, 1pm NOT 9am*

| 2 | DI | 13-C-01800 | **TIME AUTO SALES, INC., VS. HICKS, ERIC** |

☐

☑ SCHULTZ, JOHN                     ATTORNEY FOR PLAINTIFF          SCHUZ
☑ HICKS, ERIC                       DEFENDANT / RESPONDENT
☐ TIME AUTO SALES, INC.,            PLAINTIFF / PETITIONER

☐ Bail Credit Denied   ☐ Danger to self or others   ☐ Flight Risk
   Bail Set:                         Posted:

**OTHER HEARING**

**SUMMONS**
  DI 13-C-01800          CI

03/10/2014    1A    1:00 PM          Page 1 of 3          Judge Signature:_____

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-CI-2056

FILED
BOONE CIRCUIT/DISTRICT COURT
MAR 07 20..
DIANNE MURRAY, CLERK

WEST CHESTER MEDICAL CENTER                              PLAINTIFF

VS.

KELLI E. KRAMER                                         DEFENDANT

## AMENDED NOTICE OF HEARING ON MOTION

Please take notice that the motion by Defendant, Kelli E. Kramer to set aside default judgment and for relief from judgment, filed on March 3, 2014, which was scheduled to be heard on March 10, 2014, has been rescheduled, and will now come on for hearing on <u>March 24, 2014, at 9:00 a.m.,</u> or as soon thereafter as counsel may be heard.

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:     859-341-1881
Fax No.:       859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:     859-578-4444
Fax No.:       859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this 7ᵗʰ day of March, 2014, to the following:

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4ᵗʰ Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net

_____
David V. Kramer

413570v1

2



FILED
BOONE CIRCUIT/DISTRICT COURT
MAR 03 2014
DIANNE MURRAY, CLERK
BY:_____ D.C.

COMMONWEALTH OF KENTUCKY
BOONE DISTRICT COURT
CASE NO. 11-CI-2056

WEST CHESTER MEDICAL CENTER                                    PLAINTIFF

VS.

KELLI E. KRAMER                                                DEFENDANT

### MOTION OF DEFENDANT KELLI E. KRAMER TO SET ASIDE DEFAULT JUDGMENT AND FOR RELIEF FROM JUDGMENT, TO FILE ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT, AND TO TRANSFER CASE TO BOONE CIRCUIT COURT

### AND

### MOTION OF JAMES KRAMER TO INTERVENE AS DEFENDANT AND THIRD-PARTY PLAINTIFF

Defendant, Kelli E. Kramer, by counsel, respectfully moves the Court to set aside the default judgment entered herein on September 20, 2011, and for relief from judgment, pursuant to Rules 55.02 and 60.02, and further requests leave of the Court to file the attached Answer, Counterclaim, and Third-Party Complaint, and for transfer of the present Civil Action to the Boone Circuit Court for jurisdictional reasons, and for grounds states as follows:

1.      In the past several months, Defendant has learned that the surgery underlying the present collection action for which default judgment was entered was performed on her without her informed consent and/or in a negligent manner. Defendant intends to file a lawsuit, whether by an original Complaint (if the present motion is not granted) or by the attached Answer, Counterclaim and Third-Party Complaint (**Exhibit A**) (if the present motion is granted) against Plaintiff, West Chester Medical Center, as well as against its corporate parent, UC Health, Inc., and against the orthopedic surgeon who performed four spinal fusion surgeries on Defendant at

West Chester Medical Center in just 37 months, Dr. Abubakar Atiq Durrani, and his employer or health-care facility, the Center for Advanced Spine Technologies, Inc. ("CAST").

2.      Defendant Kelli E. Kramer continued under a course of treatment by Dr. Durrani until she learned of Dr. Durrani's arrest for billing fraud in July, 2013. At that time, Dr. Durrani was recommending a fifth spinal surgical procedure on Defendant. Dr. Durrani is now a fugitive from justice. On information and belief, Dr. Durrani fled to his native Pakistan to avoid civil liability and criminal prosecution by the federal government for, inter alia, false billing and performing unnecessary surgeries on patients.

3.      Surgeries performed by Dr. Durrani on Defendant Kelli Kramer at West Chester Medical Center were lumber spinal fusion of L3-4 and L4-5 on September 2, 2009; cervical spinal fusion of C5-6 on June 21, 2010; lumbar spinal fusion at L2-3 on May 30, 2012; and a sacroiliac joint fusion on October 10, 2012.

4.      It was not until obtaining portions of her medical records from Dr. Durrani and West Chester Medical Center in or around August, 2013, that Defendant first learned that Dr. Durrani, with West Chester Medical Center's knowledge, used a Medtronic bone graft stimulator (Bone Morphogenetic Protein 2 (BMP-2), marketed and sold under the trade name "Infuse") that was not approved by the U.S. Food & Drug Administration for such use in her first two surgeries, including the surgery underlying the default judgment in this matter.

5.      More recently, after considerable delays in obtaining more of her medical records from Westchester Medical Center and Dr. Durrani, the undersigned counsel has obtained within the last several weeks a neurosurgical review of the surgeries performed on Defendant by Dr. Durrani at West Chester Medical Center.  In all four of those procedures, there was one or more of the following wrongful acts committed by Dr. Durrani and West Chester Medical Center:

breach of informed consent; fraud; medical negligence; and performance of unnecessary procedures. In addition, also within the last several weeks, Defendant has received information indicating that Plaintiff, West Chester Medical Center, was negligent in re-credentialing, monitoring, and/or retaining Dr. Durrani as a member of its medical staff with privileges to perform the surgeries that he performed on Defendant, including the procedure underlying the default judgment.

6.      Kentucky law firmly holds that a trial court "has an inherent right to vacate the [default] judgment, and should be liberal in this respect in order that the litigant in default may not be deprived of his day in court." *Liberty Nat. Bank & Trust Co. v. Kummert*, 305 Ky. 769, 771 205 S.W.2d 342 (Ky. 1947). *See also*, *Educator & Exec. Insurers, Inc. v. Moore*, 505 S.W.2d 176, 178 (Ky.1974); *Jacobs v. Bell*, 441 S.W.2d 448, 449 (Ky. 1969). Moreover, the Kentucky Supreme Court has explicitly noted that Kentucky law disfavors default judgments: "As often noted, ***default judgments are disfavored*** and ***the trial court is vested with broad discretion to set them aside***." *Asset Acceptance, LLC v. Moberly*, 241 S.W.3d 329, 332 (Ky. 2007) (emphasis added).

7.      Defendant submits that the foregoing circumstances, in light of the very recent discovery of the wrongful nature of the surgeries performed on her by Dr. Durrani at Plaintiff West Chester Medical Center, including the one underlying the default judgment, constitute "good cause shown" for setting aside the default judgment within the meaning of CR 55.02, as well as a showing that "it is no longer equitable that the judgment should have prospective application" under CR 60.02(e), and/or "other reason of an extraordinary nature justifying relief" under CR 60.02(f), justifying relief from the judgment under those Rules.

3

8.      These facts particularly justify the relief available through CR 55.02 and 60.02 because not only were critical facts unknowable to Mrs. Kramer at the time of the judgment, but they were concealed through the fraud and the ongoing course of negligent treatment of Dr. Durrani — a physician negligently credentialed by Plaintiff West Chester to perform multiple negligent, unnecessary or otherwise wrongful surgeries at West Chester, including the one that is the subject of the very bills Plaintiff seeks to collect. Defendant's lack of knowledge of the wrongful nature of the Plaintiff's conduct underlying the default judgment at the time it was entered fully justifies the relief in this motion. *See, e.g., Davis v. Home Indem. Co.*, 659 S.W.2d 185, 188 (Ky. 1983) (holding that CR 60.02 codifies the common law writ of *coram nobis*, which permits a court to vacate a judgment for equitable reasons on facts that could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court).

9.      The setting aside of the default judgment is further justified by equitable principles in that just a few weeks ago, on or about January 17, 2014, Plaintiff West Chester Medical Center attempted to use the default judgment to impose a garnishment of Defendant's wages at her employer, St. Elizabeth Medical Center.

10.     The Court should note that in a similar action filed by West Chester in Boone Circuit Court, the Court set aside a default judgment in favor of West Chester Medical Center against a defendant/patient of West Chester Medical Center and Dr. Durrani. In that case, styled *West Chester Medical Center v. Mona Eder*, Case No. 13-CI-1028, the default judgment was set aside and the defendant/patient was permitted by the Boone Circuit Court to file an answer and counterclaim against West Chester Medical Center, as well as a Third-Party complaint against Dr. Durrani and UC Health.

4

11.     It would be grossly inequitable to permit this default judgment to stand in light of the circumstances described above and particularly now that West Chester Medical Center is attempting to garnish Defendant's wages to collect charges for medical care that Defendant has only recently learned was wrongful.

12.     The Kentucky Supreme Court has emphasized the liberality with which leave to amend a pleading is to be granted. *See, e.g., American Auto. Ins. Co. v. Bartlett,* 560 S.W.2d 6, 9 (Ky. 1977); *Johnson v. Reeves,* 556 S.W.2d 445, 447 (Ky. 1977); *Caldwell v. Bethlehem Mines Corp.,* 455 S.W.2d 67, 68 (Ky. 1970). Further, leave is particularly appropriate when amendment will not *significantly* prejudice the opposing party, for the important policy of Rule 15 is that the case be tried on its merits. *See Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986) (stating that even "light" prejudice is not a bar to amendment) (emphasis added).

13.     There is no prejudice to West Chester Medical Center caused by setting aside this default judgment and permitting the Answer, Counterclaim, and Third-Party Complaint to be filed, since Defendant is going to sue West Chester Medical Center, UC Health and Dr. Durrani in any event, and this existing action brought by West Chester Medical Center against Defendant is the most logical forum for bringing such claims. The claims asserted in the attached Answer, Counterclaim and Third-Party Complaint are clearly not time-barred due to both the discovery rule of KRS 413.140(2) and the "continuous course of treatment doctrine" adopted by the Kentucky Supreme Court. *See, e.g., Harrison v. Valentini,* 184 S.W.3d 521 (Ky. 2006).

14.     Moreover, West Chester Medical Center has been in the best position to uncover its and its physician's negligence and wrongful conduct, not Mrs. Kramer. In fact, West Chester Medical Center has been fully aware of the tortious conduct perpetrated by Dr. Durrani at its hospital for many months. Over the past two years or so, hundreds of cases have been filed

against Dr. Durrani (many of which include West Chester Medical Center), who (on information and belief) has now fled the country. Yet West Chester Medical Center has chosen as recently as a few weeks ago to continue to prosecute its judgment against Mrs. Kramer based on medical bills for services related to Dr. Durrani's surgeries. The equities strongly favor setting this default aside, so Mrs. Kramer can seek the truth, present her claims and defenses to a jury, and obtain justice for the appalling conduct of Dr. Durrani and West Chester Medical Center toward her.

15.     With regard to the Third-Party Complaint, Dr. Durrani, CAST, and UC Health are joint tortfeasors with Westchester Medical Center, and UC Health owns and/or operates Westchester Medical Center and is liable and/or vicariously liable for its actions. "In Kentucky, a negligent tort-feasor is probably a necessary party under CR 19.01 because of apportionment of fault and causation pursuant to KRS 411.182." 6 Kentucky Practice, "Rules of Civil Procedure Annotated," CR 19.01, Comment 3 at p. 466 (6th ed. 2005). Jurisdiction and venue over all of these parties is addressed in the attached tendered Answer, Counterclaim, and Third-Party Complaint.

16.     For all of the foregoing reasons, Defendant also respectfully moves the Court for leave to file the Answer, Counterclaim, and Third-Party Complaint tendered herewith, which will result in transfer of this matter to the Boone Circuit Court.

17.     For the foregoing reasons, Movant James Kramer, husband of Kelli E. Kramer, moves for leave to intervene in the present action as a Defendant and Third-Party Plaintiff to assert his loss of spousal consortium claim.

18.     Finally, since the amount in controversy in the claims sought to be asserted by Defendant Kelli E. Kramer exceed the jurisdictional limits of this Court, Defendant also respectfully requests an Order transferring this matter to the Boone Circuit Court.

WHEREFORE, for the reasons stated above, Defendant, Kelli E. Kramer, respectfully requests that the Court set aside the default judgment and grant her relief from the judgment under Civil Rules 55.02 and 60.02.  In addition, the Defendant respectfully states that the foregoing circumstances fully justify an Order permitting Defendant to file the attached Answer, Counterclaim, and Third-Party Complaint, an Order granting her husband James Kramer leave to intervene herein as a Defendant and Third-Party Plaintiff, and an Order transferring this matter to the Boone Circuit Court. A proposed Order is tendered herewith.

Respectfully submitted,

David V. Kramer (#39609)
Ryan M. McLane (#92925)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Phone No.:    859-341-1881
Fax No.:      859-341-1469
e-mail address: dkramer@dbllaw.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

Paul J. Schachter
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Pkwy., Ste. 210
Ft. Wright, KY 41011
Phone No.:    859-578-4444
Fax No.:      859-578-4440
pschachter@pschachter.com
*Co-Counsel for Kelli E. Kramer and James Kramer*

## NOTICE

Please take notice that the foregoing will come on for hearing on March 10, 2014, at 1:00 p.m., or as soon thereafter as counsel may be heard.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed this _3ᵈ_ day of _March_, 2014, to the following:

C. Edward Noe Esq.
Noe & Macleid Co., LPA
810 Sycamore Street, 4ᵗʰ Fl.
Cincinnati, OH 45202
cednoe@cincilaw.net

David V. Kramer

412353v1

8

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

11-C-2086

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Tom Buggs_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

_Tom Buggs_   1-25-14

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7013 1710 0002 2049 6380

PS Form 3811, February 2004   Domestic Return Receipt

AOC-150       Doc. Code: GAW
Rev. 7-08

Commonwealth of Kentucky
Court of Justice   www.courts.ky.gov



**AFFIDAVIT FOR ORDER**
**... AGE GARNISHMENT**

Case No._____

Court_____

County_____

Commonwealth of Kentucky
Boone County
Dianne Murray
Circuit Court Clerk

**JUDGMENT CREDITOR:**

Receipt Number: 02-0083184-A

DATE: 01/22/2014

TIME: 03:42 PM

**Amount Due: $**

**Probable Court Costs: $**

**Judgment Date:**

*** (M) CIVIL-OTHER ***

**Creditor's Attorney:**

CASE NO: 11-C-02056

RECEIVED FROM: NOE AND MACLEID
ACCOUNT OF: KELLI E KRAMER

| | | |
|---|---|---|
| 1. | Garnishment CS(W(K)) | 10.00 |
| 2. | Postage/Cert. Mail MCFO(K(H)) | 10.30 |
| | **TOTAL:** | **$20.30** |
| | **CHECK:** | **$20.30** |
| | *****DIFF:** | **0.00** |

*** Check Number: 7796

FILED
BOONE CIRCUIT/DISTRICT COURT
JAN 17 2014
DIANNE MUR...

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | |
|---|---|---|
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006         See Reverse for Instructions

...or or is the Judgme...

...reon (subject to an...

...d to be indebted to...
... Garnishment will b...

...nt is Creditor's Attor...

...arnishment against t...
...e required to answe...

Prepared By: D.Murray/AB
** MCFO=Money Collected for Others
** CS=Charge for Services

Filing (KYCOURTS)                    Page 1 of 1

**Affiant**

...fiant this_____5_____ day of_____

THERESE LARRICK
Notary Public, State of Ohio
My Commission Expires 07-27-2015

**Notary Public**

P17 - Judgment Entry rev. 2/12/97 hal

110781/p17

# BOONE DISTRICT COURT

## CASE NO: 11-C-2056

**ENTERED**
BOONE CIRCUIT DISTRICT COURT
SEP 20 2011
DIANNE MURRAY, CLERK
BY_____ DC

WESTCHESTER MEDICAL CENTER
7700 UNIVERSITY DRIVE
WESTCHESTER, OHIO  45069

Plaintiff

VS.                                                    **JUDGMENT**

KELLI E KRAMER
5966 ETHAN DRIVE
Burlington KY 41005

Defendant

The within matter having come on for hearing before the Court on the Motion of the Plaintiff, it appearing to the Court that the Defendant was duly served with summons, and that said Defendant failed to file or serve an answer or other responsive pleading to the Complaint herein with the time permitted by law, it further appearing to the Court that the Plaintiff's claim in the sum of $3,711.98 is still due and owing to said Plaintiff, and the Court being otherwise sufficiently advised:

Now, therefore, it is hereby **ORDERED** and **ADJUDGED** that the Plaintiff recover of the Defendant(s) judgment in the sum of $3,711.98, plus interest, plus Plaintiff's costs herein expended, for all of which execution may issue as provided by law.

Dated at BOONE, COUNTY, KY, this 19th date of

September, 2011.

_____
Judge



P17 rev 2/21/97 hal

110781/p17

## BOONE DISTRICT COURT

### CASE NO: <u>11-C-2056</u>

WESTCHESTER MEDICAL CENTER  :
      Plaintiff  :
        :
VS.  :**MOTION FOR DEFAULT JUDGMENT**
        :
KELLI E KRAMER  :
        :
        :
      Defendant  :

Plaintiff moves the Court for judgment by default as set forth in the Complaint heretofore filed.   Plaintiff, by and through counsel, certifies that:

(1)    No papers have been served on Plaintiff's counsel by the Defendant in default;

(2)    Defendant was served, more than twenty (20) days prior to this Motion.

The balance due on the obligation is $3,711.98, upon which there are no setoffs or deductions due.  Therefore, the balance due the Plaintiff from the Defendant is $3,711.98 plus interest and the costs of this action.

Plaintiff, by counsel, further certifies that a copy of the foregoing Motion was served upon the Defendant by regular U.S. Mail at his last known address on the ___13___ day of ____ Sept, 2011.

By:_____

C. EDWARD NOE 0001757/KY BAR 51925
Attorney for the Plaintiff
Noe & MacLeid Co., LPA
810 SYCAMORE ST. 4TH FL.
CINCINNATI, OHIO 45202
513/381-7333

P17 - military affidavit - 2/14/97

110781/p17

## STATE OF OHIO, COUNTY OF HAMILTON, SS:

## AFFIDAVIT

Personally appeared before me, the undersigned, a Notary Public for and in said county and state, the undersigned Attorney for Plaintiff and duly authorized to execute this Affidavit, and states that affiant, to the best of his knowledge, information and belief, the Defendant is not in the military service as defined in the Soldiers' and Sailors' Civil Act of 1940 and Amendments thereto.

Affiant further says that the obligation sought to be enforced in this suit is not an obligation against a surety, guarantor, endorser or other person liable, primarily or secondarily, for a party in the military service to the best of his knowledge, information and belief.

_____
Attorney for Plaintiff

Sworn to and subscribed before me this 13 day of

Sep, 2011.

THERESE LARRICK
Notary Public, State of Ohio
My Commission Expires 03-24-2015

_____
Notary Public - State-at-Large

My commission expires: _____

110781

AOC-82-105

COMMONWEALTH OF KENTUCKY
COURT OF JUSTICE

CR 4.02, CR OFFICIAL FORM 1

CIVIL SUMMONS

CASE NO  11 - C - 2056

BOONE COUNTY

DISTRICT COURT

WESTCHESTER MEDICAL CENTER                                          PLAINTIFF

VS

KELLI E KRAMER
5966 ETHAN DRIVE
Burlington KY 41005                                DEFENDANT

FILED
BOONE CIRCUIT/DISTRICT COURT

JUL 2 6 2011

DIANNE MURRAY, CLERK
BY _____ DC

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANTS:

        You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with this summons.  Unless a written defense is made by you or by an attorney in your behalf within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

        The names(s) and address(es) of the party or parties demanding such relief against you or his (their) attorney(s) are shown on the document delivered to you with this summons.

DATE: 7-20-2011  Clerk: _Dianne M. Murray_

                                    By _____ D.C.

PROOF OF SERVICE

This summons was served by delivering a true copy and the complaint (or other) initiating document to:

_____

This _____ day of _____, 20 .

Served By: _____

MICHAEL A. HELMIG
BOONE COUNTY SHERIFF

COURT _Boone_
EXECUTE _KELLI E KRAMER_
THIS _23_ DAY OF _JULY 11_
BY _R. NELMS 1554_
_DEPUTY 3756_



110781

BOONE DISTRICT COURT
__ Division
CASE NO. 11-C-2056

WESTCHESTER MEDICAL CENTER
7700 UNIVERSITY DRIVE
WESTCHESTER, OHIO 45069

           Plaintiff           Judge

vs.



FILED
BOONE CIRCUIT/D STRICT COURT

JUL 2 0 2011

DIANNE MURRAY, CLERK
BY _____ DC

KELLI E KRAMER          COMPLAINT
5966 ETHAN DRIVE
Burlington KY 41005

           Defendant

1. Defendant , KELLI E KRAMER ("Defendant") owes  Plaintiff, WESTCHESTER MEDICAL CENTER

("Plaintiff") for medical services provided.

    2. Plaintiff has requested payment of said account and Defendant  has  refused payment.

    3.  Defendant owes  Plaintiff $3,811.98.  Attached as Exhibit "A" is a copy of said account.

    WHEREFORE,  judgment should be granted in favor of the Plaintiff against Defendant  in the amount of $3,811.98

plus interest from and after date of judgment at the legal rate provided by law, all costs of this action and any further relief to

which the Plaintiff may be entitled.

          C. EDWARD NOE KY BAR 51925
          Attorney for the Plaintiff
          Noe & MacLeid Co., L.P.A.
          810 SYCAMORE ST. 4TH FL.
          CINCINNATI, OHIO 45202
          513/381-7333

STATEMENT OF ACCOUNT
WESTCHESTER MEDICAL CENTER

MAY 26 2011

KELLI E KRAMER
5966 ETHAN DRIVE
BURLINGTON KY 41005

| PATIENT #       | PATIENT NAME          | D.O.S.   | BALANCE |
|-----------------|-----------------------|----------|---------|
| 219682701 0000  | MILLER KRAMER, KELLI E | 06/02/10 | 430.40  |
| 219696883 0001  | MILLER KRAMER, KELLI E | 06/01/10 | 430.40  |
| 219712657 0000  | MILLER KRAMER, KELLI E | 06/21/10 | 2951.18 |

TOTAL BALANCE DUE:    3811.98